UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENIY SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMENETS<br>    Plaintiffs,<br><br>v.<br><br>ANDREI MANN and MICHAEL HELLMAN,<br>    Defendants. | Case No. 1:21-cv-40068-NMG |

**DEFENDANT MICHAEL HELLMAN's MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS**

Defendant, Michael Hellman respectfully submits this memorandum in support of his motion to dismiss the claims against him.

**INTRODUCTION**

Plaintiffs allege that Defendant Andrei Mann borrowed millions of dollars from them "under false pretenses with no intent to repay the plaintiffs" and that Mr. Hellman gave Mr. Mann "support and assistance." Complaint, Introduction. Mr. Mann was a highly successfully publisher and business person who, years after taking out the loans in question, suffered financial reversals that led to default.[1] See Complaint ¶¶ 12-14 (Mann was prominent and successful, from respected family and moved in wealthiest circles), 16 (took a decade for plaintiffs to

---

[1] Mr. Mann is undergoing an insolvency proceeding in Russia at the time of this filing. Plaintiffs' complaint in this Court is an effort to end run and to subvert this Russian proceeding. A true copy of a certified translation of a decision by the Moscow Arbitration Court, dated May 14, 2021, is attached hereto as Exhibit 1. See id. at 1 (court declared Mann bankrupt March 16, 2020 and launched a liquidation of his assets).

"discover" Mann was not as successful as claimed). By the Plaintiffs' own allegations, Mann persuaded them to loan him the money at issue "[t]hrough his professional reputation." Id. ¶ 15.

Only three of the plaintiffs – Petr Dmitriev, Arseniy Shchepin and Georg Shchepin – actually assert claims against Mr. Hellman, and those claims are highly duplicative assertions of a purported conspiracy with Mr. Mann to defraud them. See Complaint, Counts III, XI, XVI-XIX. Nowhere in the Complaint do the plaintiffs provide any allegation resembling the sort of specific allegations of fraud necessary to support their claims against Mr. Hellman. Fed. R. Civ. P. 9(b). The Court should dismiss all claims against Mr. Hellman contained in the Complaint.

## ALLEGATIONS IN THE COMPLAINT AGAINST MR. HELLMAN

### I. The Claims against Mr. Hellman

The Complaint contains few allegations against Mr. Hellman, nearly all conclusory. Although the Complaint asserts nineteen claims for relief, only six are asserted against Mr. Hellman, and four of those counts are duplicative:

**Count III** asserts a civil conspiracy claim on behalf of Petr Dmitriev to defraud him into loaning $1,500,000 to Mann. Complaint ¶¶ 115-19.

**Count XI** asserts a civil conspiracy claim on behalf of Arseniy and Georgy Shchepin to defraud them out of $1,200,000 in trust assets. Complaint ¶¶ 162-66.

**Count XVI** asserts a fraud claim on behalf of Dmitriev in connection with the $1,500,000 loan.

**Count XVII** asserts a civil conspiracy claim on behalf of Dmitriev to defraud him into loaning $1,500,000 to Mann, in a count that is nearly verbatim the same as Count III. Complaint ¶¶ 192-96; compare Complaint ¶¶ 115-119.

**COUNT XVIII** asserts a fraud claim on behalf of Arseniy and George Shchepin relating to the $1,200,000 in trust assets. Complaint ¶¶ 197-203.

**COUNT XIX** asserts a civil conspiracy claim on behalf of Arseniy and George Shchepin relating to the trust assets, which is substantively identical to Count XI. Complaint ¶¶ 204-207; compare Complaint ¶¶ 162-66.

### I.     Dmietriev Allegations

On February 6, 2012, Dimitriev allegedly loaned Mann $1,500,000, interest free. Id. ¶ 26 & Ex. 1. By Dimitriev's own allegation, he relied on the income from Mann's company, S-Info, to pay the loan. Id. ¶¶ 13, 27. Mann told Dimitriev he owned significant real estate in Russia and would have no trouble repaying the loan. Id. ¶ 28. Mann also agreed to give Dmitriev a security interest in 51 shares of Callisto Media Corporation ("Callisto") to secure the loan. Id. ¶ 29.

Mann executed the loan documents in Moscow, Russia. Id. ¶ 31. Mr. Hellman notarized them. Id. ¶¶ 30-32. Mann asked for the loan in cash. Id. ¶ 34. Dmitriev alleges that neither Mr. Hellman nor Mann told Dmitriev that Mann wanted the loan in cash so that he could represent the money as his own funds when transferring it to his children and "various business entities." Id. ¶ 35. He further alleges that neither Mr. Hellman nor Mann disclosed that Mr. Hellman was the owner and founder of Callisto. Id. ¶ 36. According to Dmitriev, neither Mr. Hellman nor Mann disclosed that they had worked together for years to create numerous business entities in Massachusetts to "conceal or destroy traces of asset withdrawals from Russia." Id. ¶ 37.

After Dmitriev made the original loan to Mann in 2012, the loan agreement was extended six times, as recently as March 5, 2018. Id. ¶ 38. Mr. Hellman notarized each extension in

Russia. Id. ¶ 39. Dmitriev alleges that Mr. Hellman's "presence and endorsement of the loan agreement extensions provided a false air of legitimacy to the deals," and he "repeatedly assured Dmitriev that everything was above board." Id. ¶ 40.

Mann allegedly did not intend to repay the loan and "converted the funds for his personal use." Id. ¶¶ 41-42. The loan agreement is with Mann individually. Complaint, Exhibit 1.[2]

## II.     George and Arseniy Shchepin Allegations

Daria Latour is the mother of Georgy Shchepin and Arseniy Shchepin. Id. ¶ 52. She has known Mann since 1989 and her ex-husband worked with Mann at S-Info from 1989 until about 2000. Id. ¶ 43. She knew he was the General Director and primary shareholder of S-Info, and he led her to believe the company was very profitable. Id. While her husband was working for S-Info, Mann introduced her to Mr. Hellman, who told allegedly her he was Mann's business partner and a representative of S-Info. Id. ¶ 44. Her family became close to Mann and Mr. Hellman; they celebrated holidays together and were friends. Id. ¶ 45.

In 2001, after they separated, Latour and her ex-husband, Dimitry, met with Mr. Hellman to discuss forming a trust for their children. Id. ¶ 48. They agreed to establish a trust with the law firm, Choate, Hall & Stewart LLP ("Choate"), with which Mr. Hellman allegedly told them he had a relationship. Id. ¶ 49. Mann served as the trustee. Id. ¶ 51. Dimitry deposited $500,000 in trust for each son, Georgy Shchepin and Arseniy Shchepin. Id. ¶ 52. Latour and Dimitry executed the trust documents at Choate's offices. Id. ¶ 53. At some point, Mr. Hellman allegedly told Georgy and Arseniy that he was a Massachusetts-barred attorney. Id. ¶¶ 165, 200.

---

[2]     Because Dmitriev loaned the money to Mann individually, the allegation that Mann "converted the funds for his personal use" makes no sense. Compare Complaint ¶ 41 with Complaint Exhibit 1.

In June 2016, the trusts were closed and Mann (the trustee) transferred the funds to accounts in Russia that he had opened in George and Arseniy's names. Id. ¶ 62. From there, Mann allegedly transferred the funds to another account. Id. Mann allegedly has kept the money that was held in trust for them. Id. ¶ 203.

**ARGUMENT**

Plaintiffs' claims against Mr. Hellman fail to meet the pleading standards applicable to fraud claims. Dmitriev loaned money to Defendant Andrei Mann, and after a period of years, Mann allegedly defaulted on the loan. Nowhere in the Complaint is there any cognizable allegation against Hellman to support the vague assertion that Mann did not intend to repay the loan or that Hellman somehow "conspired" with Mann to defraud Dmitriev.

Similarly, the Shchepin brothers allege that Mann misappropriated funds he held for them as a trustee. There is allegation tying anything Mr. Hellman allegedly did wrong to Mann's alleged misappropriation of their trust funds. There is no logical connection between the allegations that Mr. Hellman helped set up the trust with Choate and the allegation that Mann, as trustee, took the money for himself. The Court should dismiss the claims against him.

**I.     The Standard of Review Requires Plaintiffs to Alleged Plausible Claims and to Allege Fraud with Particularity.**

As a starting place, it is well settled that to survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although courts accept a plaintiff's allegations as true at the pleading stage, this tenet "is inapplicable to legal conclusions." Hamilton v. Partners Healthcare Sys., Inc., 209 F. Supp. 3d 379, 386 (D. Mass. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Claims that rest solely on "threadbare recitals of the elements of a cause of action" must be dismissed. Id. (citing Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011)). Speculative allegations

that do not allege the necessary facts to support a plaintiff's claims but permit a court to infer only "the mere possibility of misconduct" fail to state a plausible claim. Iqbal, 556 U.S. at 679.

It is also well settled that a plaintiff alleging fraud must do so with particularity. Fed. R. Civ. P. 9(b) ("Rule 9(b)"); Ezell v. Lexington Ins. Co., 286 F. Supp. 3d 292, 299 (D. Mass. 2017) (plaintiff "must specify the time, place, and content of an alleged false representation"). The Rule 9(b) standard applies not only to the fraud counts of the Complaint but also to the conspiracy counts, which are premised on allegations of fraud. Doyle v. Hasbro, Inc. 103 F.3d 186, 194 (1st Cir. 1996); Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985); Tomaselli v. Beaulieu, 2010 U.S. Dist. LEXIS 42611, at *33 (D. Mass.); see also Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 21-22 (1st Cir. 2017) (applying Rule 9(b) to a state law intentional interference claim); N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) ("[T]he case law here and in other circuits reads Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud.").

## II.     Dmitriev Fails to State a Claim against Mr. Hellman.

### A. Dmitriev Alleges No Fraudulent Conduct by Hellman that Caused his Alleged Loss.

Dmitriev's allegations against Mr. Hellman establish only that he flew to Moscow to notarize the loan agreements and thereby allegedly lent "an air of legitimacy," and that he assured Dmitriev that Mann would repay him. See Complaint ¶¶ 188-196. Dmitriev also alleges that Mr. Hellman failed to disclose to Dmitriev that he had founded Callisto and that he and Mann were creating multiple entities to defraud people. Id. ¶ 37.

Dmitriev's allegations against Mr. Hellman fail to state a claim against him for numerous reasons.

- There is no allegation that Mann failed to give Dmitriev a security interest in Callisto or any allegation that would illuminate why it mattered if Mr. Hellman founded Callisto. See Doyle v. Hasbro, Inc., 103 F.3d 186, 193 (1st Cir. 1996) (In order to state a claim for fraudulent misrepresentation, the plaintiff must allege: (1) that the statement was knowingly false; (2) that [defendants] made the false statement with the intent to deceive; (3) that the statement was material to the plaintiffs' decision . . .; (4) that the plaintiffs reasonably relied on the statement; and (5) that the plaintiffs were injured as a result of their reliance.").

- Dmitriev does not allege any facts to establish that he relied on anything Mr. Hellman said or did not say. Doyle, 103 F.3d at 193 (plaintiff must rely on allegedly material misstatement).

- Dmitriev does not allege any basis for Hellman to assume a duty to volunteer information. Mackenzie v. Flagstar Bank, FSB, 2013 U.S. Dist. LEXIS 3571, at *24 (D. Mass. Jan. 9, 2013) (fraud claim based on alleged non disclosure dismissed in absence of duty to speak).

- Statements that Mann would repay the loan are mere non-actionable puffery. Costa v. Fca Us Llc, 2021 U.S. Dist. LEXIS 107610, at *30 (D. Mass. June 8, 2021) ("general statements about big-picture concepts such as trust, security, reputation, and safety are non-actionable puffery").

- The allegations concerning forming entities to defraud people are conclusory and circular. See Lorenzana v. S. Am. Rests. Corp., 799 F.3d 31, 35 (1st Cir. 2015) (conclusory allegations insufficient to state a claim even under more lenient standard

of Rule 8). Dmitriev alleges no facts to show any entity was created or used to defraud him.

- There are no allegations that Mr. Hellman had any motive to help Mann defraud Dmitriev that would make claims against Mr. Hellman at all plausible. Hosseini v. Capital One, 217 F. Supp. 3d 441, 451, 454-455 (D. Mass. 2016) (complaint must allege specific facts to make it reasonable to believe defendant knew statements to be false and misleading, and a basis to infer scienter).

- There are no allegations to establish a common tortious plan between Mr. Hellman and Mann. Tomaselli v. Beaulieu, 2010 U.S. Dist. LEXIS 42611, at *33-34 (D. Mass.) (quoting Kurker v. Hill, 44 Mass. App. Ct. 184, 189, 689 (1998)); Varney v. R.J. Reynolds Tobacco Co., 118 F. Supp. 2d 63, 68 (D. Mass. 2000) (citing Hayduk, 775 F.2d at 443).

- Dmitriev alleges no fact to support his conclusory assertion that Mann never intended to pay him back and indeed, this conclusion is at odds with other, factual allegations in the Complaint. See Lorenzana., 799 F.3d at 35 (conclusory allegations insufficient to state a claim).

- There are no allegations or reason to believe Mr. Hellman knew that Mann would not pay Dmitriev back. See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009) (affirming dismissal where complaint did not put forward enough "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading")

Notarizing the loan documents and telling Dmitriev that Mann would pay him back cannot suffice to state a claim for fraud or conspiracy against Mr. Hellman. Mann's financial

reversals and default on Dmitriev's loan are unfortunate, but there is no basis whatsoever to impose liability on Mr. Hellman for the unpaid loan to Mann.

### III. The Shchepin Brothers Fail to State a Claim against Mr. Hellman.

The Shchepin brothers allege in substance that Mann, their trustee, misappropriated the money in their trust funds. Complaint ¶ 203.[3] None of their allegations connect the dots between anything Hellman allegedly did wrong and Mann's misappropriation of the money Mann held in trust for them. Rather, Georgy and Arseniy expressly allege that Choate set up the trusts, Mann was the trustee, and Mann took their money. Complaint ¶¶ 51, 53, 62. The only allegations against Mr. Hellman are that he falsely told them that they needed to close out their trust account with Choate (which was true) and that he told them he was a Massachusetts-barred attorney (which he never did). Assuming for the sake of argument, however, that he made the statements alleged and further assuming for the sake of argument that they were false, these allegations are entirely irrelevant to their claim that their trustee – Mann – stole their money. See Veilleux v. NBC, 206 F.3d 92, 124 (1st Cir. 2000) ("The chain of causation can be interrupted by an intervening cause, which forecloses a defendant's liability.") (applying Maine law).

---

[3]    This allegation is false. The Shchepins used the funds to repay a debt they owed to co-plaintiff Yusup Osmanov. See Exhibit 1 at 5.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all counts of the Complaint asserted against Mr. Hellman.

                                                    Respectfully Submitted,

                                                    */s/ Sean T. Carnathan*
                                                    Sean T. Carnathan, BBO No. 636889
                                                    *scarnathan@ocmlaw.net*
                                                    **O'Connor, Carnathan and Mack LLC**
                                                    67 South Bedford Street, Suite 400W
                                                    Burlington, Massachusetts 01803
Dated: August 19, 2021                   T: (781) 359-9000

## CERTIFICATE OF SERVICE

I hereby certify that I filed this document through the Court's ECF MA E-file system, and that it will be sent electronically to the registered participants listed to receive electronic filings in this case on August 19, 2021.

                                                    */s/ Sean T. Carnathan*
                                                    Sean T. Carnathan