# EXHIBIT 8




# ARBITRATION COURT OF THE CITY OF MOSCOW

17, Bolshaya Tulskaya Str., Moscow, 115225
http://www.msk.arbitr.ru

Phone: 600-99-26

## RULING

Moscow  
May 14, 2021

Case No. A40-291728/18-101-368F

The resolutive part of the Ruling was announced on April 29, 2021.
The Decision in its entirety was prepared on May 14, 2021.
The Arbitration Court comprised of:
Judge: I.A. Belova (judge code: 101-368F), with the clerk of the court D.N. Kazakov preparing the court record,
having examined, under the case of adjudication of insolvency (bankruptcy) of Mr. Andrei Yurievich Mann (DOB: December 21, 1957; Tax ID: 770803076025, address: 32/1 Marshala Biryuzova Str., # 71, Moscow), the request by Arsen Akhmedovich Komutaev, with appearances as noted in the hearing minutes during an open hearing,

**DETERMINED**:

The Court Ruling of March 20, 2019, in regards to Andrei Yurievich Mann (DOB: December 21, 1957; Tax ID: 770803076025, address: 32/1 Marshala Biryuzova Str., # 71, Moscow), put in place the debt restructuring process; appointed Sergei Aleksandrovich Mukha (Tax ID: 231299408664, mailing address: P.O. Box 4801, Krasnodar, 350063) as the financial manager. This notification was published in the *Kommersant* paper on March 30, 2019.

The Court Decision of March 16, 2020 held Andrei Yurievich Mann (DOB: December 21, 1957; Tax ID: 770803076025, address: 32/1 Marshala Biryuzova Str., # 71, Moscow) bankrupt, put in place the property disposal process, appointed Elena Nikolaevna Tyapinskaya (mailing address: 11a Gagarina Str., Ste. 1, Vologda, 16002) as the financial manager.

The court session examined the request by Arsen Akhmedovich Komutaev to include 116,491,345.50 rubles as the principal debt and 54,415,773.49 rubles as the loan interest, of which 65,000,000 rub as secured by pledge into the register of the debtor's creditors' claims.

The financial manager did not appear in court, they had been notified in accordance with Articles 121 and 123 of the Arbitration Procedure Code of the Russian Federation. The case hearing was held in accordance with Article 156 of the Arbitration Procedure Code of the Russian Federation.

A debtor's representative made a motion to postpone the court proceedings to be able to review the case files.

An A.A. Komutaev's representative objected to sustaining the motion to postpone the court proceedings.

An OOO CB Ergobank's representative also objected to postponing the court proceedings.

The debtor's representative made a motion to obtain the original documents and send a request to the Russian State Register.

The A.A. Komutaev's representative provided the original documents for a review by the court, objected to obtaining the evidence, and insisted on satisfying the asserted claims.

The OOO CB Ergobank's representative objected in regards to the asserted claims.

The Court, having examined the written materials of the case, has arrived at the following conclusions.

According to Article 223 of the Arbitration Procedure Code of the Russian Federation, cases on insolvency (bankruptcy) are considered by an arbitration court in accordance with the rules stipulated in the Arbitration Procedure Code of the Russian Federation with details identified by the Federal law regulating delinquency (bankruptcy) issues.

According to Paragraph 1 of Article 213.1 of the Federal Law: On Delinquency (Bankruptcy), the relations associated with bankruptcy of individuals and not regulated by this Chapter are regulated by Chapters I- III.1, VII, VIII, Paragraph 7 of Chapter IX and Paragraph 2 of Chapter XI of this Federal Law.

Having examined the filed motion on postponement of the court proceedings, the Court dismissed it due to the absence of the procedural basis.

According to Part 5 of Article 158 of the Arbitration Procedure Code of the Russian Federation, an arbitrate court may postpone a court proceeding if it acknowledges that the proceeding cannot be currently held due to, among other reasons, the absence of individuals participating in the case or the absence of other participants of the arbitration process, technical issues associated with the use of technology tools for conducting court sessions, as well as at upholding a motion on postponement of a court proceeding from a party due to the necessity of providing additional evidence by that party, or at implementing of other procedural actions.

The postponement of a court proceeding is a right, but not a duty of the Court. If the Court dismisses a motion to postpone a court proceeding, the Court does not see grounds for sustaining this motion because the court proceeding was repeatedly postponed in the past, thereby having given sufficient time to the Debtor for familiarizing themselves with the case files.

In accordance with Part 4 of Article 66 of the Arbitration Procedure Code of the Russian Federation , an individual participating in the case without a capability to independently obtain evidence from the individual that holds the case has a right to file a motion for discovery to the arbitrate court.

In addition, Paragraph 2 of Part 4 of Article 66 of the Arbitration Procedure Code of the Russian Federation stipulates that a motion for discovery shall identify the evidence, states which circumstances that are relevant for the case can be established by this discovery and indicates the reasons preventing from obtaining discovery, and the location of the discovery. An arbitrate court has a right to dismiss this motion if they consider it irrelevant to the case.

Considering Part 1 of Article 65, Parts 1 and 2 of Article 66 of the Arbitration Procedure Code of the Russian Federation, the Court shall assist the parties participating in the case regarding implementation of their rights while on its behalf limiting itself to the right of providing additional evidence.

Therefore, the Law stipulates a right, but not an obligation to the Court for a motion of discovery to confirm legitimacy of the arguments of a party since as stated above the burden of proof lays on the claimant, which is connected to the principle of competitiveness in an arbitration proceeding.

The original documents have been provided to the Court, there is no need to submit a request to the Russian National Directorate (ROSEESTR) because statements from the Unified State Register of Real Estate (EGRN) have been provided, according to which the property belongs to A.Yu. Mann, the Debtor; no alienation of property data is available.

Having examined the motion for discovery, the Court does not find grounds to grant it.

According to Paragraph 4 of Article 213.24 of the Bankruptcy Law, in the procedure of the property disposal, the list of creditors' and the authorized agency's claims shall be examined in accordance with Article 100 of this Federal Law. The deadline for closing the register missed by the creditor claiming an excusable delay can be reinstated by the arbitrate court.

According to Article 142 of the Bankruptcy Law, the creditors' claims register shall be closed upon two months after the date of publishing the debtor's bankruptcy data and initiating the bankruptcy proceedings.

This information was published by the financial manager in the *Kommersant* paper on March 21, 2020. These claims were submitted to the Arbitration Court of the City of Moscow on May 20, 2020, i.e., within the legally established timeframe.

Based on the provisions of Articles 71, 100, and 142 of the Russian Federation Civil Code Bankruptcy Law and Paragraph 26 of Order No. 35 of the Plenum of the Higher Arbitration Court of the Russian Federation of June 22, 2012 entitled: On Several Procedural Questions Related to Examining Bankruptcy Cases, an arbitrate court examines justification and scope of the creditors' claims regardless of disagreements of these claims between the debtor and the individuals who, on the one hand, have a right to state appropriate objections and, on the other hand, assert a claim to the creditors; the creditors' claims for which no objections have been received shall be examined by the arbitration court to verify their validity and grounds for their including into the creditors' claims register.

According to Paragraph 1 of Article 8 of the Russian Federation Civil Code, civil rights and duties are based on the grounds prescribed by the law and other legislative instruments, as well as on the actions of individuals and legal entities that although are not prescribed by the law or such instruments, but due to the general principles and fair language of the civil legislation, create civil rights and duties.

In accordance with Paragraph 5 of Article 16 of the Bankruptcy Law, the creditors' claims register uses the Russian Federation currency for recording creditors' claims. The creditors' claims denominated in foreign currency are recorded in accordance with Article 4 of this Federal Law.

In view of Paragraph 4 of Section 1 of Article 4 of the Bankruptcy Law, the composition and amount of monetary obligations and mandatory payments denominated in foreign currency shall be determined in rubles at the rate established by the Central Bank of the Russian Federation on the date of introduction of each procedure applied in the bankruptcy case and following after the maturity of the relevant obligation.

Pursuant to the case files, Yu.M. Osmanov and the Debtor signed Loan Agreement No. 18/4-2 on April 8, 2017, according to which Yu.M. Osmanov granted a loan to the Debtor in the amount of $1,776,079 USD through December 30, 2017 at 25% annual interest rate.

Paragraph 1.7 of the Loan Agreement states that all repayment and interest payment settlements on this loan shall be made in rubles at the rate established by the Central Bank of the Russian Federation on the date of issue (receipt) of funds.

For the purpose of securing the Debtor's obligations in accordance with Loan Agreement No. 18/4-2 of April 18, 2017, Yu.M. Osmanov and the Debtor signed the Subsequent Real Estate Pledge Agreement of September 8, 2017, under the provisions of which the Debtor transferred the following property belonging to him on the right of ownership as a pledge: a plot of land with the total area of 1,362 m$^2$ with the cadastral number of 50:20:005 02 11:0403 located at the address: Moscow Region, Odintsovskiy District, Uspensky so, village of DSK Ranis, ZAO «SKZ», lot 260/1; non-residential structure (a banya) with the total area of 86.5 m$^2$ with the cadastral number of 50:20:0050211:403 located at the address: Moscow Region, Odintsovskiy District, village of Nikolina Gora, ter. ZAO «SKZ-4», lot 260/1, s/p Uspenskoe. The Pledge Agreement was registered in accordance with the procedure provided for by law, with the following entry made into the Unified State Register of Real Estate (EGRN): No. 50:2050050211:040350/020/2017-14 (the plot of land), No. 50:20:0050211 453 1 -50/010/2018-2 (the non-residential structure).

The Debtor did not fulfil his obligations under Loan Agreement No. 18/4-2 of April 18, 2017.

On July 23, 2018, Yu.M. Osmanov and S.M. Guseinov signed the Assignment of Claim (Cession) Agreement according to which Yu.M Osmanov assigned to S.M. Guseinov the rights of claim to the Debtor in regards to Loan Agreement No. 18/4-2 of April 18, 2017 and the Subsequent Real Estate Pledge Agreement of September 8, 2017.

Further on, S.M. Guseinov and A.A. Komutaev (the Creditor) signed the Assignment of Claim (Cession) Agreement of February 8, 2019, under the terms of which S.M. Guseinov assigned to the

Creditor the rights of claim to the debtor in regards to Loan Agreement No.18/4-2 of April 18, 2017 and the Subsequent Real Estate Pledge Agreement of September 8, 2017.

Clause 2.7 of the Subsequent Real Estate Pledge Agreement of September 8, 2017 (as amended by Supplemental Agreement No.2) states that the total value of the pledged property is estimated by the parties as 65,000,000 rubles.

According to Paragraph 1 of Article 808 of the Russian Federation Civil Code, a loan agreement between individuals shall be made in writing if its amount exceeds at least ten times the minimum wage established by law, and if the lender is a legal entity – for any amount. The provisions of Paragraph 2 of Article 808 of the Russian Federation Civil Code stipulate that, to confirm the loan agreement and its terms, the borrower may provide a receipt or other document stating that the lender has provided him the certain amount of cash.

In accordance with the explanations provided in Paragraph 35 of the mentioned above Order of the Plenum of the Higher Arbitration Court of the Russian Federation and in accordance with Paragraph 1 of Article 363 of the Russian Federation Civil Code, if a debtor fails to perform or improperly performs surety-secured obligations, the guarantor and the debtor shall be liable to the creditor jointly and severally unless the law or surety agreement provides for the subsidiary liability of the guarantor. Applying the stated above provision of the Russian Federation Civil Code, the courts shall proceed from the following: if the guarantor and the main debtor are liable jointly and severally, the fact of non-performance or improper performance of the secured obligation is sufficient for bringing a claim against the guarantor, and the creditor is not obliged to prove that he has attempted to obtain performance from the debtor (for instance, by sending a claim to the debtor, bringing a legal action, etc.).

Due to the Debtor's default on obligations under Loan Agreement No. 18/4-2 of April 18, 2017, the Creditor contacted the arbitration court with a request to include claims of the Debtor's creditors into the register.

According to Paragraph 26 of Order No. 35 of the Plenum of the Higher Arbitration Court of the Russian Federation of June 22, 2012: On Several Procedural Issues Related to Examining Bankruptcy Cases, when assessing the credibility of the existence of a claim based on the transfer of cash to the debtor confirmed only by his receipt or cash receipt pay-in slip, the court shall take into account, among other things, the following circumstances: whether the creditor's financial situation (considering his income) allowed to provide the debtor with the appropriate funds, whether there is satisfactory information in the case on how the received funds were spent by the debtor, whether the receipt of these funds was reflected in accounting and tax accounting records, reporting, etc.

These explanations of the Higher Arbitration Court of the Russian Federation are primarily aimed at the inadmissibility of inclusion into the register of creditors' claims to the detriment of the interests of other creditors, of claims based solely on a receipt or cash receipt pay-in slip, which could be generated as a result of an agreement between the creditor and the debtor pursuing the purpose of creating documentary evidence of the validity of such claims.

According to Article 2 of Federal Law No.115-FZ of August 7, 2001: On Countering Legalization (Laundering) of Proceeds From Crime and Financing of Terrorism, legalization (laundering) of proceeds from crime, -giving a lawful form to the possession, use or disposal of funds or other property obtained as a result of the commission of a crime.

In the context of the listed provisions of law and these explanations, the claimant positioning himself as a creditor is obliged to confirm his ability to provide funds, taking into account his financial situation at the time when a loan agreement is considered concluded, but also information on the source of origin of the specified funds. If there are doubts about the reality of the loan agreement, the court may require the submission of documents indicating transactions with these funds, including the source of their receipt and their expenditure.

The Creditor presented the documents that fully confirm the financial ability of Yu.M. Osmanov to issue funds to the Debtor in the amount specified in the Agreement.

Specifically, the materials of the case presented debit memos No.13 of December 24, 2013 and No. 45087 of December 26, 2013, according to which Yu.M. Osmanov purchased foreign currency – US

dollars for 115,704,396.89 rubles (which amounted to $3,511,450.38 USD) and for 58,004,160 rubles (which amounted to $1,776,000 USD).

In addition, on December 26, 2013, Yu.M. Osmanov received a loan of 60,091, 439 rubles and 49 kopecks from Igor Alexandrovich Sazonov, which is confirmed by Payment Order No.714 dated December 26, 2013.

On July 27, 2015, Yu.M. Osmanov received a loan of 2,782,895 rubles from Larisa Anatolyevna Vinogradova, which is confirmed by Payment Order No.1 dated July 28, 2015.

On June 1, 2016, Yu.M. Osmanov received a loan of 15,695,445 rubles from Sergei Igorevich Timokhovich, which is confirmed by Yu.M. Osmanov's receipt dated June 1, 2016.

On July 8, 2016, Arseniy Dmitrievich Schepin transferred 40,953,314.44 rubles to Yu.M. Osmanov's account as the loan repayment, which is confirmed by Payment Order No.735 dated July 8, 2016.

On July 8, 2016, Georgiy Dmitrievich Schepin transferred 40,982,796.02 rubles to Yu.M. Osmanov's account, which is confirmed by Payment Order No.726 dated July 8, 2016.

Therefore, the case materials contain necessary documents that allow to establish the availability of funds in the required amount and their subsequent transfer by Mr. Yu.M. Osmanov to the Debtor.

So the debtor confirmed receipt of the loan in Paragraph 2.2 of the Agreement.

The claimant provided applicable, admissible, and sufficient evidence of issuing the loan to A.Yu. Mann and the financial ability to issue the loan.

According to Part 1 of Article 65 of the Arbitration Procedure Code of the Russian Federation, each person participating in the case shall prove the obligations to which they refer as the basis for their claims and objections. According to the procedural rules of evidence (Articles 65, 68 of the APC RF), the claimant is obliged to prove the legality of his claims with admissible evidence. The parties shall exercise equal rights to present evidence and bear the risk of consequences of their performance or non-performance of procedural actions, including provision of evidence of the validity and legality of their claims or objections (Articles 8, 9 of the APC RF).

The documents provided in the case materials reflect the fact of the actual implementation of the economic transaction of the Creditor with the Debtor and confirm the validity of the Creditor's claim.

According to Article 340 of the Civil Code of the Russian Federation (hereinafter referred to as CC RF), the value of the collateral unless otherwise provided by law or by agreement of the parties with foreclosure of the pledged property at the initial sale price, is determined by agreement of the parties unless otherwise required by law.

Clause 2.7 of the Subsequent Real Estate Pledge Agreement of September 8, 2017 (as amended by Supplemental Agreement No.2) states that the total value of the pledged property is estimated by the parties as 65,000,000 rubles.

According to the explanations in Paragraph 1 of Order No.58 of the Plenum of the Higher Arbitration Court of the Russian Federation of July 23, 2009 entitled: On Some Issues Related to Satisfying the Requirements of the Pledge Holder in the Bankruptcy of the Pledge Giver, on establishing and including into the register of bankruptcy creditors' claims secured by the debtor's pledged property, the courts must take into account the following.

If the court has not previously examined the pledge holder's claim for foreclosure on the pledged property, the court when establishing the creditor's claims, checks whether the right of the pledge holder arose in accordance with applicable rules (whether there is a proper pledge agreement, whether the circumstances entailing the occurrence of the pledge have occurred by virtue of law,) whether it has ceased to exist on the grounds provided for by law, whether the debtor has pledged property in kind (whether the possibility of its foreclosure remains).

It should be noted that a characteristic feature of disputes on a pledged property foreclosure (a type of which is establishing of pledge claims in a bankruptcy case) is also that the execution of a judicial act on satisfaction of claims in the absence of the Defendant's property in kind is impossible in any event (for instance, no auctions can be held because their object is unavailable). Therefore, if there are objections

of the opposite party, any doubt to whether this property is available or not, as a general rule, shall be interpreted in favor of recognizing the existence of a pledge.

Since the case materials do not provide evidence of the absence of the debtor's pledged property, the court has no grounds for refusing to satisfy the creditor's claims for inclusion of his claims into the debtor's creditors' register of claims as secured by the pledge of the debtor's property.

A similar legal reasoning is articulated in Ruling No.305-ES17-9931 of the Supreme Court of the Russian Federation.

Under these circumstances, the court concludes that there are grounds for satisfying the claims filed by the creditor.

Under the aforementioned circumstances, the claim by Arsen Akhmedovich Komutaev in the amount of 22,233,148 rubles as the principal debt and 13,991,528 rubles as the loan interest shall be included into the debtor's creditors' claims register, the court refuses the amount exceeding the specified ones.

In view of the above and pursuant to Articles 4, 16, 32, 100, 213.24 of the Federal Law: On Insolvency (Bankruptcy), Articles 13, 65, 71, 123, 156, 176, 184, 185, 223 of the APC RF, the court

**R U L E D:**

In regards to motions for the postponement of the court session and the discovery of evidence – to dismiss.

Arsen Akhmedovich Komutaev's claim to Andrei Yurievich Mann in the amount of 116,491,345.50 rubles as the principal debt, 54,415,773.49 rubles as the loan interest – to consider justified.

To include into the creditors' claims register of the Debtor, Mr. Andrei Yurievich Mann, the debt in the amount of 116,491,345.50 rubles as the principal debt, 54,415,773.49 rubles as the loan interest, into the third phase of satisfaction, of which 65,000,000 rubles as secured by pledge.

This Ruling shall enter into force immediately and may be appealed within ten days to the Ninth Arbitration Court of Appeal.

**JUDGE**                                                                                                **I.A. Belova**

## CERTIFICATE OF TRANSLATOR

I, Tatyana Albert, herewith state that I am a U.S. citizen, that by virtue of my education and work experience, I am a professional translator and interpreter from, and into, the Russian language and that the foregoing translation of the document: Court Ruling of May 14, 2021 in the Russian language is true and correct, to the best of my knowledge.   Made in Washington, D.C.

Date: August 16, 2021

Tatyana Albert

 

900001703_28717526



# АРБИТРАЖНЫЙ СУД ГОРОДА МОСКВЫ
115225, г.Москва, ул. Большая Тульская, д. 17
http://www.msk.arbitr.ru

Тел. 600-99-26

**О П Р Е Д Е Л Е Н И Е**

г. Москва                                                                   Дело № А40-291728/18-101-368Ф
14 мая 2021г.

Резолютивная часть определения объявлена 29 апреля 2021г.
Определение в полном объеме изготовлено 14 мая 2021г.
Арбитражный суд в составе:
Судьи: Беловой И.А. (шифр судьи 101-368Ф),
при ведении протокола судебного заседания секретарем Казаковым Д.Н.
рассмотрев в открытом судебном заседании в рамках дела о признании несостоятельным (банкротом) гражданина Манн Андрея Юрьевича (21.12.1957г.р., ИНН 770803076025, адрес: г.Москва, ул. Маршала Бирюзова д.32 корп.1 кв.71), требование Комутаева Арсена Ахмедовича,
с участием лиц, указанных в протоколе судебного заседания,

**УСТАНОВИЛ**:

Определением суда от 20 марта 2019г. в отношении гражданина Манн Андрея Юрьевича (21.12.1957г.р., ИНН 770803076025, адрес: г.Москва, ул. Маршала Бирюзова д.32 корп.1 кв.71) введена процедура реструктуризации долгов гражданина, финансовым управляющим утвержден Муха Сергей Александрович (ИНН 231299408664, адрес для направления корреспонденции: 350063, г.Краснодар, а/я 4801). Сообщение об этом опубликовано в газете «Коммерсантъ» от 30.03.2019г.

Решением суда от 16.03.2020г. гражданин Манн Андрей Юрьевич (21.12.1957г.р., ИНН 770803076025, адрес: г.Москва, ул. Маршала Бирюзова д.32 корп.1 кв.71) признан несостоятельным (банкротом), введена процедура реализации имущества, финансовым управляющим утверждена Тяпинская Елена Николаевна (адрес для корреспонденции: 160002, г. Вологда, ул. Гагарина, д.11а, оф.1).

В судебном заседании рассматривалось требование Комутаева Арсена Ахмедовича о включении в реестр требований кредиторов должника задолженности в размере 116 491 345,50 руб. – основной долг, 54 415 773,49 руб. – проценты за пользование займом, из которых 65 000 000 руб. как обеспеченные залогом.

Финансовый управляющий в судебное заседание не явился, извещен в порядке ст. 121, 123 АПК РФ. Дело рассматривалось в порядке ст. 156 АПК РФ.

Представитель должника заявил ходатайство об отложении судебного заседания с целью ознакомления с материалами дела.

Представитель Комутаева А.А. в удовлетворении ходатайства об отложении судебного заседания возражал.

Представитель ООО КБ «Эргобанк» также возражал против отложения судебного заседания.

1

Представитель должника заявил ходатайство об истребовании оригиналов документов и направлении запроса в Росреестр.

Представитель Комутаева А.А. представил оригиналы документов на обозрение суда, возражал против истребования доказательств, настаивал на удовлетворении заявленных требований.

Представитель ООО КБ «Эргобанк» по заявленным требованиям возражал.

Суд, исследовав письменные материалы дела, пришел к следующим выводам.

В соответствии со ст. 223 АПК РФ дела о несостоятельности (банкротстве) рассматриваются арбитражным судом по правилам, предусмотренным АПК РФ с особенностями, установленными федеральным законом, регулирующим вопросы несостоятельности (банкротства).

Согласно п. 1 ст. 213.1 ФЗ «О несостоятельности (банкротстве)» отношения, связанные с банкротством граждан и не урегулированные настоящей главой, регулируются главами I - III.1, VII, VIII, параграфом 7 главы IX и параграфом 2 главы XI настоящего Федерального закона.

Рассмотрев заявленное ходатайство об отложении судебного заседания, суд отказывает в его удовлетворении ввиду отсутствия процессуальных оснований.

В соответствии с частью 5 статьи 158 Арбитражного процессуального кодекса Российской Федерации арбитражный суд может отложить судебное разбирательство, если признает, что оно не может быть рассмотрено в данном судебном заседании, в том числе вследствие неявки кого-либо из лиц, участвующих в деле, других участников арбитражного процесса, в случае возникновения технических неполадок при использовании технических средств ведения судебного заседания, а также при удовлетворении ходатайства стороны об отложении судебного разбирательства в связи с необходимостью представления ею дополнительных доказательств, при совершении иных процессуальных действий.

Отложение судебного разбирательства является правом, а не обязанностью суда. Отказывая в удовлетворении ходатайства об отложении судебного заседания, суд не усматривает оснований для его удовлетворения, поскольку судебное заседание уже неоднократно откладывалось, тем самым, Должнику было предоставлено достаточно времени для ознакомления с материалами дела.

В силу части 4 статьи 66 Арбитражного процессуального кодекса Российской Федерации лицо, участвующее в деле и не имеющее возможности самостоятельно получить необходимое доказательство от лица, у которого оно находится, вправе обратиться в арбитражный суд с ходатайством об истребовании данного доказательства.

Также из положений абзаца 2 части 4 статьи 66 Арбитражного процессуального кодекса Российской Федерации, следует, что в ходатайстве об истребовании доказательств должно быть обозначено доказательство, указано, какие обстоятельства, имеющие значение для дела, могут быть установлены этим доказательством, указаны причины, препятствующие получению доказательства, и место его нахождения. Арбитражный суд также вправе отказать в удовлетворении такого ходатайства, если сочтет, что оно не относится к делу.

С учетом положений части 1 статьи 65, частей 1, 2 статьи 66 Арбитражного процессуального кодекса Российской Федерации суд оказывает содействие участвующим в деле лицам в реализации их прав, со своей стороны ограничиваясь правом предложения представить дополнительные доказательства.

Таким образом, законодательством суду предоставлено право, а не установлена обязанность истребования дополнительных доказательств в подтверждение правомерности доводов стороны, поскольку, как указано выше, бремя доказывания обстоятельств лежит на их заявителе, что связано с принципом состязательности в арбитражном процессе.

Оригиналы документов в суд предоставлены, необходимость направления запроса в Управление Росреестра отсутствует, поскольку представлены выписки из ЕГРН, согласно которым имущество принадлежит должнику Манн А.Ю., сведений об отчуждении имущества отсутствуют.

Изучив ходатайство об истребовании доказательств суд не находит оснований для его удовлетворения.

В соответствии с п. 4 ст. 213.24 Закона о банкротстве, в ходе процедуры реализации имущества гражданина требования конкурсных кредиторов и уполномоченного органа подлежат

рассмотрению в порядке, предусмотренном статьей 100 настоящего Федерального закона. Пропущенный кредитором по уважительной причине срок закрытия реестра может быть восстановлен арбитражным судом.

В соответствии со ст. 142 Закона о банкротстве, реестр требований кредиторов подлежит закрытию по истечении двух месяцев с даты опубликования сведений о признании должника банкротом и об открытии конкурсного производства.

Такое сообщение опубликованы финансовым управляющим в газете «КоммерсантЪ» от 21.03.2020г. Настоящие требования были предъявлены в Арбитражный суд г. Москвы 20.05.2020г., то есть в установленный законом срок.

Исходя из норм статей 71 , 100, 142 Закона о банкротстве, пункта 26 постановления Пленума Высшего Арбитражного Суда Российской Федерации № 35 от 22.06.12 "О некоторых процессуальных вопросах, связанных с рассмотрением дел о банкротстве", проверка обоснованности и размера требований кредиторов осуществляется арбитражным судом независимо от наличия разногласий относительно этих требований между должником и лицами, имеющими право заявлять соответствующие возражения, с одной стороны, и предъявившим требование кредитором, с другой стороны, требование кредиторов, по которым не поступили возражения, рассматриваются арбитражным судом для проверки их обоснованности и наличия оснований для включения в реестр требований кредиторов.

В соответствии с п. 1 ст. 8 ГК РФ гражданские права и обязанности возникают из оснований, предусмотренных законом и иными правовыми актами, а также из действий граждан и юридических лиц, которые хотя и не предусмотрены законом или такими актами, но в силу общих начал и смысла гражданского законодательства порождают гражданские права и обязанности.

Согласно пункту 5 статьи 16 Закона о банкротстве в реестре требований кредиторов учет требований кредиторов ведется в валюте Российской Федерации. Требования кредиторов, выраженные в иностранной валюте, учитываются в реестре требований кредиторов в порядке, установленном статьей 4 настоящего Федерального закона.

В силу абзаца четвертого пункта 1 статьи 4 Закона о банкротстве состав и размер денежных обязательств и обязательных платежей, выраженных в иностранной валюте, определяются в рублях по курсу, установленному Центральным банком Российской Федерации, на дату введения каждой процедуры, применяемой в деле о банкротстве и следующей после наступления срока исполнения соответствующего обязательства.

Как следует из материалов дела, 8 апреля 2017 года между Османовым Ю.М. и Должником был заключен Договор займа №18/4-2, по условиям которого Османов Ю.М. предоставил Должнику заем в размере 1 776 079 долларов США на срок до 30.12.2017 года под 25% годовых.

Пунктом 1.7. Договора займа предусмотрено, что все расчеты по возврату денежных средств и уплате процентов по настоящему займу производятся в рублях по курсу ЦБ РФ на день выдачи (получения) денежных средств.

В качестве обеспечения обязательств Должника по договору займа №18/4-2 от 18.04.2017 года между Османовым Ю.М. и Должником был заключен Договор последующего залога недвижимого имущества от 08.09.2017 года, по условиям которого в качестве залога Должником было передано следующее принадлежащее ему на праве собственности имущество: земельный участок общей площадью 1361 кв.м., кадастровый номер 50:20:005 02 11:0403, расположенный по адресу: Московская область, Одинцовский район, Успенский со., пос. ДСК «Ранис», ЗАО «СКЗ», уч. 260/1; нежилое здание (баня) общей площадью 86,5 кв.м., кадастровый номер 50:20:0050211:403, расположенное по адресу: Московская область, Одинцовский район, п. Николина Гора, тер. ЗАО «СКЗ-4», уч. 260/1, с/п Успенское. Договор залога зарегистрирован в предусмотренном законом порядке, о чем в ЕГРН внесена запись №50:2050050211:0403-50/020/2017-14 (земельный участок), №50:20:0050211 453 1 -50/010/2018-2 (нежилое здание).

Обязательства по Договору займа №18/4-2 от 18.04.2017 года Должником не были исполнены.

23 июля 2018 года между Османовым Ю.М. и Гусейновым С.М. был заключен Договор уступки права требования (цессии), по условиям которого Османов Ю.М. уступил Гусейнову С.М. права требования к Должнику по Договору займа №18/4-2 от 18.04.2017 года, Договору последующего залога недвижимого имущества от 08.09.2017 года.

Впоследствии, между Гусейновым С.М. и Комутаевым А.А. (Кредитором) был заключен Договор уступки права требования (цессии) от 08.02.2019 года, по условиям которого Гусейнов С.М. уступил Кредитору права требования к Должнику по Договору займа №18/4-2 от 18.04.2017 года, Договору последующего залога недвижимого имущества от 08.09.2017 года.

Пунктом 2.7 Договора последующего залога недвижимого имущества от 08.09.2017г. (в редакции Дополнительного соглашения №2) установлено, что общая стоимость заложенного имущества оценена сторонами в 65 000 000 руб.

Согласно п. 1 ст. 808 ГК РФ договор займа между гражданами должен быть заключен в письменной форме, если его сумма превышает не менее чем в десять раз установленный законом минимальный размер оплаты труда, а в случае, когда заимодавцем является юридическое лицо, - независимо от суммы. Положениями п. 2 ст. 808 ГК РФ предусмотрено, что в подтверждение договора займа и его условий может быть представлена расписка заемщика или иной документ, удостоверяющие передачу ему заимодавцем определенной денежной суммы.

Согласно разъяснениям, данным в п. 35 указанного постановления Пленума Высшего Арбитражного Суда Российской Федерации в соответствии с п. 1 ст. 363 ГК РФ при неисполнении или ненадлежащем исполнении должником обеспеченного поручительством обязательства поручитель и должник отвечают перед кредитором солидарно, если законом или договором поручительства не предусмотрена субсидиарная ответственность поручителя. Применяя указанное положение ГК РФ, суды должны исходить из следующего: если поручитель и основной должник отвечают солидарно, то для предъявления требования к поручителю достаточно факта неисполнения либо ненадлежащего исполнения обеспеченного обязательства, при этом кредитор не обязан доказывать, что он предпринимал попытки получить исполнение от должника (в частности, направил претензию должнику, предъявил иск и т.п.).

В связи с неисполнением должником обязательств по договору займа №18/4-2 от 18.04.2017 года, кредитор обратился в арбитражный суд с требованием о включении в реестр требований кредиторов должника.

В соответствии с п. 26 Постановление Пленума ВАС РФ от 22.06.2012 N 35 "О некоторых процессуальных вопросах, связанных с рассмотрением дел о банкротстве" при оценке достоверности факта наличия требования, основанного на передаче должнику наличных денежных средств, подтверждаемого только его распиской или квитанцией к приходному кассовому ордеру, суду надлежит учитывать среди прочего следующие обстоятельства: позволяло ли финансовое положение кредитора (с учетом его доходов) предоставить должнику соответствующие денежные средства, имеются ли в деле удовлетворительные сведения о том, как полученные средства были истрачены должником, отражалось ли получение этих средств в бухгалтерском и налоговом учете и отчетности и т.д.

Указанные разъяснения Высшего Арбитражного Суда Российской Федерации направлены, прежде всего, на недопустимость включения в реестр требований кредиторов, в ущерб интересам других кредиторов, требований, основанных исключительно на расписке или квитанции к приходному кассовому ордеру, которые могли быть изготовлены вследствие соглашения кредитора и должника, преследовавших цель создания документального подтверждения обоснованности таких требований.

Согласно ст. 2 Федерального закона от 07.08.2001 N 115-ФЗ "О противодействии легализации (отмыванию) доходов, полученных преступным путем, и финансированию терроризма" легализация (отмывание) доходов, полученных преступным путем, - придание правомерного вида владению, пользованию или распоряжению денежными средствами или иным имуществом, полученными в результате совершения преступления.

По смыслу перечисленных норм права и указанных разъяснений заявитель, позиционирующий себя в качестве кредитора, обязан подтвердить свою возможность предоставления денежных средств с учетом его финансового положения на момент, когда договор займа считается заключенным, но и сведения об источнике происхождения указанных денежных средств. При наличии сомнений в реальности договора займа, суд может потребовать представления документов, свидетельствующих об операциях с этими денежными средствами, в том числе об источнике их получения и их расходовании.

Кредитором представлены документы, в полной мере подтверждающие финансовую возможность Османова Ю.М. выдать денежные средства Должнику в размере, указанном в Договоре.

Так в материалы дела представлены мемориальные ордера от 24.12.2013 года № 13 и от 26.12.2013 года №45087, согласно которым Османов Ю.М. приобрел иностранную валюту - доллары США на сумму 115 704 396,89 рублей (что составило 3 511 450,38 долларов США) и на сумму 58 004 160 рублей (что составило 1 776 000 долларов США).

Кроме того, 26 декабря 2013 года Османов Ю.М. получил заем в сумме 60 091 439 рублей 49 копеек от Сазонова Игоря Александровича, что подтверждается Платежным поручением № 714 от 26.12.2013 года.

27 июля 2015 года Османов Ю.М. получил заем в сумме 2 782 895 рублей от Виноградовой Ларисы Анатольевны, что подтверждается Платежным поручением №1 от 28.07.2015 года.

01 июня 2016 года Османов Ю.М. получил заем в сумме 15 695 445 рублей от Тимоховича Сергея Игоревича, что подтверждается распиской Османова Ю.М. от 01.06.2016 года.

08 июля 2016 года Щепин Арсений Дмитриевич перечислил на счет Османова Ю.М. денежные средства в размере 40 953 314,44 рублей в качестве возврата займа, что подтверждается Платежным поручением №735 от 08.07.2016 г.

08 июля 2016 года Щепин Георгий Дмитриевич перечислил на счет Османова Ю.М. денежные средства в размере 40 982 796,02 рублей, что подтверждается Платежным поручением №726 от 08.07.2016 г.

Таким образом, в материалах дела имеются необходимые документы, позволяющие, установить наличие денежных средств в необходимом размере и их последующую передачу Османовым Ю.М. Должнику.

Так получение займа Должник подтвердил в пункте 2.2. договора.

Заявитель представил относимые, допустимые, достоверные и достаточные доказательства выдачи займа Манн А.Ю. и наличие финансовой возможности выдать заем.

Согласно ч. 1 ст. 65 АПК РФ каждое лицо, участвующее в деле, должно доказывать обязательства, на которое оно ссылается как на основание своих требований и возражений. В соответствии с процессуальными правилами доказывания (ст. ст. 65, 68 АПК РФ) заявитель обязан доказать допустимыми доказательствами правомерность своих требований. Сторона пользуются равными правами на представление доказательств и несут риск наступления последствий совершения или несовершения ими процессуальных действий, в том числе представления доказательств обоснованности и законности своих требований или возражений (ст.ст. 8, 9 АПК РФ).

Представленные в материалы дела документы отражают факт реального осуществления хозяйственной операции кредитора с должником и подтверждают обоснованность заявленного требования кредитора.

Согласно ст. 340 Гражданского кодекса Российской Федерации (далее по тексту также – ГК РФ) стоимость предмета залога, которая если иное не предусмотрено законом либо соглашением сторон при обращении взыскания на заложенное имущество начальной продажной ценой, определяется соглашением сторон, если иное не установлено законом.

Пунктом 2.7 Договора последующего залога недвижимого имущества от 08.09.2017г. (в редакции Дополнительного соглашения №2) установлено, что общая стоимость заложенного имущества оценена сторонами в 65 000 000 руб.

Согласно разъяснениям, содержащимся в пункте 1 постановления Пленума Высшего Арбитражного Суда Российской Федерации от 23.07.2009 № 58 «О некоторых вопросах, связанных с удовлетворением требований залогодержателя при банкротстве залогодателя», при рассмотрении вопроса об установлении и включении в реестр требований конкурсных кредиторов, обеспеченных залогом имущества должника, судам необходимо учитывать следующее.

Если судом не рассматривалось ранее требование залогодержателя об обращении взыскания на заложенное имущество, то суд при установлении требований кредитора проверяет, возникло ли право залогодержателя в установленном порядке (имеется ли надлежащий договор о залоге, наступили ли обстоятельства, влекущие возникновение залога в силу закона), не прекратилось ли оно по основаниям, предусмотренным законодательством, имеется ли у должника заложенное имущество в натуре (сохраняется ли возможность обращения взыскания на него).

Следует отметить, что характерная особенность споров об обращении взыскания на заложенное имущество (разновидностью которых является установление залоговых требований в деле о банкротстве) состоит еще и в том, что исполнение судебного акта об удовлетворении требований в условиях отсутствия имущества у ответчика в натуре в любом случае невозможно (например, не могут быть проведены торги, потому что отсутствует их предмет), в связи с чем при наличии возражений противоположной стороны любые сомнения по вопросу о том, имеется ли данное имущество либо нет, по общему правилу, должны быть истолкованы в пользу признания наличия залога.

Поскольку в материалы дела не представлены доказательства отсутствия залогового имущества должника, у суда отсутствуют основания для отказа в удовлетворении требований кредитора о включении его требований в реестр требований кредиторов должника, как обеспеченных залогом имущества должника.

Аналогичная правовая позиция изложена в [определении](#) Верховного Суда Российской Федерации от 20.11.2017 № 305-ЭС17-9931.

При таких обстоятельствах суд приходит к выводу о наличии оснований для удовлетворения заявленных кредитором требований.

При указанных обстоятельствах, требование Комутаева Арсена Ахмедовича в размере 22 233 148 руб. – основной долг, 13 991 528 руб. – проценты, подлежит включению в реестр требований кредиторов должника, в сумме превышающий указанных размер суд отказывает.

На основании изложенного и руководствуясь ст. ст. 4, 16, 32, 100, 213.24 ФЗ «О несостоятельности (банкротстве)», ст.ст. 13, 65, 71, 123, 156, 176, 184, 185, 223 АПК РФ, суд

**О П Р Е Д Е Л И Л:**

В удовлетворении ходатайств об отложении судебного заседания и истребовании доказательств, - отказать.

Требование Комутаева Арсена Ахмедовича к Манн Андрею Юрьевичу в размере 116 491 345,50 руб. – основной долг, 54 415 773,49 руб. – проценты за пользование займом, - признать обоснованным.

Включить в реестр требований кредиторов должника - Манн Андрея Юрьевича задолженность в размере 116 491 345,50 руб. – основной долг, 54 415 773,49 руб. – проценты за пользование займом, в третью очередь удовлетворения, из которых 65 000 000 руб. как обеспеченные залогом.

Данное определение вступает в силу немедленно и может быть обжаловано в десятидневный срок в Девятый арбитражный апелляционный суд.

**СУДЬЯ**                                                                                                                                **И.А. Белова**