IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMINETS

Plaintiffs,

v.

ANDREI MANN and MICHAEL HELLMAN

Defendants.

LEAVE TO FILE GRANTED BY THE COURT'S MINUTES ORDER DATED OCTOBER 29, 2021

CIVIL ACTION No. 21cv40068=NMG

**(PROPOSED) REPLY OF DEFENDANT ANDREI MANN TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE COMPLAINT**

By and through his undersigned counsel, Defendant Andrei Mann ("Mann") respectfully files his Reply to the Opposition of the Plaintiffs to the Motion to Dismiss.

In sum, the Opposition is contradictory on its points, for example, trying to prevent a *forum nonconveniens* ruling but making the arguments to the contrary. In the portion discussing the Complaint's deficiencies, the Opposition is on a lean side, the Plaintiffs having little to say. Markedly, the Memorandum in Opposition has an unnecessarily large portion retelling the Complaint on six pages, without any necessity to do so, an enormous space dedicated to the various Standards of Review, presented on several occasions. The Exhibit is misplaced, but it only contradicts the points in the Complaint. Mann will address the most objectionable issues.

**(a) Plaintiffs' Retelling the Complaint, But with Modifications, Was Improvident and Prejudicial.**

The Plaintiffs' Memorandum contains disproportions, dedicating the Court's attention to unnecessary or redundant topics, but containing tacit omissions where the Plaintiffs failed to make points. Of course, the Plaintiffs are free to structure their Memorandum. However, the way it is

1

done in their Memorandum is prejudicial to Mann and otherwise inefficient. Nearly one-third of the narrative (pages 1-6) is dedicated to retelling the Complaint, with references to the Paragraphs, but without quotations. As a result, that came out as a scrambled variant of the Complaint's allegations, retold again, but with modifications. The rule of thumb for motions to dismiss is that the pleading speaks for itself, and it is improvident to "retell" it. If one follows the summary of the allegations, those are not identical to the Complaint, tainted by an effort to take care of the deficiencies noted in the MTD. The plan was apparently to impact the consideration by the Court with another, a scrambled version of the Complaint, not identical to what was pleaded. The Court should decline to consider that part of the Memorandum (pages 1-6) as an improper attempt to "amend" and take care of the deficiencies in the Memorandum.

As to the structure, the Plaintiffs have included disproportionate sections dedicated to Standards of Review. Unusually, instead of one such Section, the Plaintiffs have included about six subsections, "Legal Standard," overloaded with authorities. As a result, the Memorandum is improvidently structured, overloaded with the "legal standards," but omitting the essential points in the MTD. The Memorandum included a new document that has not been submitted in a proper format. That document could have been included in the Complaint of June 22, 2021. There was no excuse to fail, including it then, but to submit it now. That also operates in favor of the argument that the Complaint should be dismissed with leave to amend or even without leave.

Nonetheless, the Plaintiffs persisted in their false presentation of the purported debt to Plaintiffs Georgy and Arseny Schepins. Those brothers transferred the money to Plaintiff Osmanov. The Plaintiffs ignored Mann's Declaration, albeit admitting that it is persuasive.

**(b) Objection to the Plaintiffs' Putting Improper Verbal Labels on the Defendant.**

As another indispensable objection, Mann objects to the Plaintiffs' casually stating in their Memorandum the term "fraud" on 29 occasions ("Mann's fraud" and the like), without qualifying

it that it is about allegations only. Mann has never been convicted of any felonies involving moral turpitude. Even bankruptcy proceedings in Russia do not establish any ill will. Business is business. Statistically, over 90 percent of newly registered entities go out of business within several years. That does not make their principals "frauds" or criminals. Where a pleading may, by necessity, use the terminology without adding "alleged," that does not excuse a Memorandum missing the qualification word "alleged" because none of the allegations of fraud has been adjudged. Without qualifying words, such Memorandum is excessively prejudicial to Mann. Such a slogan-type style of allegations falls short of the requirements of F.R.Civ.P. 12(e) when the Complaint is "so vague or ambiguous that the party cannot reasonably prepare a response."

By way of context and protestation, Mann's corporations and companies had been in business for about 30 years. S-Info was at one point in the list of 500 largest companies in Europe, and one of its publications had the largest circulation in Russia, exceeding 4.5 million copies. The Plaintiffs knew all that and invested into S-Info and its affiliates for that reason.

It is highly prejudicial to Mann that the Plaintiffs claim he left Russia to evade prosecution. Instead, the fact is that the Manns flew to the U.S. on August 11, 2018, in connection with the anticipated birth of a grandson two weeks later. Finally, Mann's home is in the U.S.

**(c) Exhibit to Memorandum Is Defective and Should not Be Considered.**

The Plaintiffs annexed to the Memorandum an Affidavit of an American attorney to authenticate a Russian document, albeit with a translation. The one-page Affidavit shows, on its face, that it was negligently prepared without proofreading. The Affidavit says that the date was "on June 13, 2918" (*sic*), meaning nearly 800 years from now. More importantly, the American attorney should not provide such Affidavits, rather have the clients in Russia do their verification. For example, Attorney Sparks has no personal knowledge for her statement: "3. On June 4, 2020, the Chief Directorate of the Ministry of Internal Affairs of Russia for the City of Moscow issued

a warrant…." Instead, Attorney Lauren E. Sparks wrote: "1. I am counsel for the plaintiffs in the above-entitled action and have personal knowledge of the facts set forth in this Affidavit." That is patently incorrect. Attorney Sparks could not have personal knowledge of such facts.

The inference could be drawn that something is wrong with such a document if none of the 7 Russian Plaintiffs provided an Affidavit to authenticate it. An Affidavit should state the source, how, when, and why such a document, if authentic—came into the hands of the Plaintiffs.

If it were a legitimate internal law enforcement document—which Mann doubts it is--, it is an internal letter from one colonel to another. Such documents may not be disclosed outside of the Interior bodies of the government. To obtain internal correspondence within the Interior Ministry if illegal in Russia. The fact that the Plaintiffs obtained a copy of such a document, in itself, reveals that there are irregularities with such a criminal case. The very same Plaintiffs who now attack Mann in Boston had previously attacked him in Moscow, misusing, as it appears, the connections at the law enforcement.[1]

The oddities don't stop there. It is customary that the Russian law enforcement officials sign documents by hand, to avoid misuse of electronic means. Here, instead of a live signature, one can see a strange electronic signature. The photograph enhances that oddity, showing that the document is bound by a cotton string, not used in Russia for electronic documents.

The letter says that "a number of criminal intelligence measures…is being conducted". Since Mann's residing in the U.S. is in the public information, a disturbing inference can be made that those law enforcement officers engaged in criminal intelligence in the U.S. What is "criminal

---

[1] Mann's Russian representative started a private investigation into the provenance of the internal letter between two colonels of the Interior, not available to the public. Connecting the dots, Plaintiff Oleg Semenets used to be a prosecutor in the City of Schelkovo, Moscow Region, and worked with another prosecutor, who is the godfather to Semenets's daughter. Currently, that former colleague of Semenets occupies a high position of the Deputy Prosecutor General of Russia. Should these circumstances are proven, then it appears that official positions in the Interior may have been misused towards a private gain of Semenets.

intelligence" in the interpretation of the Russian colonels of police?  Mann's Declaration pointed, at Para 49, connecting the dots that he and his wife were secretly followed, raising the inference that those are interrelated pieces of information, where the illegal "criminal intelligence" is being conducted in the U.S., in violation of the laws in this country.

On a formalistic side, Attorney Sparks failed to verify the Affidavit in a manner, and with the statutorily required words under 28 U.S. Code § 1746 '*Unsworn declarations under penalty of perjury*.'  Based on that formal failure to authenticate and an improper statement about personal knowledge, the Court should either strike such an Affidavit as defective or decline to consider it.

To set the record straight, it is plausible that multiple Plaintiffs could orchestrate a criminal case with their resources and connections instead of following the civil case procedure.  However, for the last three years, Mann has never received any official document from law enforcement bodies.  In any event, the principle is that any person is innocent unless found guilty in a Court of Law.  This Court should refuse to consider the innuendoes of the Plaintiffs.

> **(d) The Plaintiffs Failed to Explain How Lumping Together of Different Claims Helps Adjudication; Such Approach is Prejudicial to the Defendant.**

The Complaint has a fundamental defect.  It leaves an inference that the Plaintiffs possibly attempt to save money on bringing together the claims belonging to different cases.

The Plaintiffs' argument as though this is beneficial to Mann is wholly misplaced. Instead, the truth is to the contrary; lumping together unrelated claims is highly prejudicial.  The Memorandum admits that.  The Plaintiffs, at p. 19 of their Memo, admit: "The documentary evidence relevant to each specific claim may be different, but documents regarding Mann's financial status over the years will be critical to all of the claims."  However, the claims brought by different Plaintiffs (except for maybe the Schepin brothers) are different.  Financial documents relating to Mann's business must be tailored to the particular needs of the different claims unrelated to each other.  Particular defendants have no business to review financial documents unrelated to

the factual claims of a concrete Plaintiff. From the Plaintiffs' Memorandum, it follows that every Plaintiff wishes to get access to *all of the financial documentation* of Mann, even if it is unrelated to them. For that other reasons, joining diverse Plaintiffs, even if commercially advantageous to the Plaintiffs, should not be allowed as prejudicial. As mentioned above, a joint trial will be highly prejudicial; the Plaintiffs would use evidence for one claim to spread over other claims. Such an approach is contrary to the basics of fairness and due process under the 5th Amendment.

    **(e) The Plaintiffs Missed to Provide Excuse of Their Failure to Comply with Rule 19(C).**

In its MTD, Mann cited six entities that should have been joined in this action.[2] As mentioned before, even the Plaintiffs' Complaint cites S-Infor LLC on 20 occasions. The interests of those entities are interwoven with the claims against Mann. Some of the claims cannot be resolved in their absence at all.

The Plaintiffs have failed to provide excuses or justifications for their failure to comply with F.R.Civ.P. Rule 19(c) uses the term "must" as to the Plaintiffs' obligation. Ref. 19 (c) Pleading the Reasons for Nonjoinder".[3] The Rules are written for a reason. The verb "must" is clear. The Plaintiffs, prima facie, failed to comply with F.R.Civ.P. Rule 19(c). Therefore, dismissal is necessary or required by a plain text of Rule 19(c).

    **(f) The Plaintiffs Misconstrued Applicability of Rule 19 In This Case.**

Mann also disagrees with the Plaintiffs' reading of *Pujol v. ShearsoniAm. Express, Inc.*, 877 F.2d 132 (1st Cir. 1989) (Breyer, 1.). Efficiency and due process were used for a different proposition, to eliminate parallels suits, e.g., "These rules seek to involve "as many apparently

---

[2] (1) S-Info LLC, Massachusetts; (2) OOO S-Info (Moscow), (3) Callisto Media Group LLC (Massachusetts); (4) Publishing House S-Info (Moscow); (5) First Crandull Construction, Inc. (Massachusetts) and (6) the registered subsidiary with the same corporate name in Moscow.

[3] "...a party must state: (1) the name, if known, of any person who is required to be joined if feasible but is not joined; and (2) the reasons for not joining that person."

concerned persons as is compatible with efficiency and due process." Id. (quoting Nuesse v. Camp, 385 F.2d 694, 700 (D.C.Cir.1967)); Friedenthal, Kane & Miller, Civil Procedure 336 (1985) ("The basic objective underlying all claim and party joinder rules is rendering complete justice with as little litigation as possible."). *Pujol*, at *135. The Hon. Breyer who penned that opinion also cited another authority: "*Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc*., 668 F.2d 76, 78 (1st Cir.1982) (Rule 19 "furthers several related policies, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete relief in a single action, and the interest of absentees in avoiding" prejudice)." Ibid, *136. That makes perfect sense in this case. Complete adjudication is impossible without the Plaintiffs' bringing in the corporate defendants, at a minimum those incorporated in the U.S., starting from S-Info LLC (Massachusetts). Without prejudice to other entities, that company  The Plaintiffs merely attempt to make up for their failure to add such defendants as defendants with a misplaced interpretation of the applicable case law, that rather makes a point contrary to what the Plaintiffs argue. This Court should order the Plaintiffs to add the indispensable parties before addressing other points. The example of S-Info LLC (MA), closed on a technicality of not filing the annual reports within the last three years, is as easy for joining as it could get. Exh. 9 to the Mann Declaration.

### (g) Plaintiffs Misconstrued Russian Procedural Law, That Does not Require Personal Appearance in Civil Cases.

Another striking break-down of the logic in the Plaintiffs' Memorandum is their argument that Mann is not available in Russia for the civil claims against Mann that they had been prosecuting in the Russian Courts. However, the opposite is true. There is no requirement in Russia for a personal presence in the Court or anywhere in the course of the civil cases. Instead, the contrary is true. An attorney attends most and sometimes all of the procedural events in the civil cases, and it is up to the party if they would elect to come in person to the Court. It is noteworthy that depositions are disallowed under the Civil Procedural Code of Russia.

The Plaintiffs created a mess of factual and procedural comments, mixing up the civil case and the criminal investigation case (if it is correctly opened and active at all). The Plaintiffs transpose the procedure in the criminal cases, which requires a defendant's personal presence and allows pre-trial questioning. That is not the same as civil cases; nobody preempts the Plaintiffs from prosecuting their claims in Moscow at the collection stage in the bankruptcy matter.

**(h) Forum Shopping and Duplication of Civil Proceedings in Two Countries Should not Be Allowed. Witch Hunt of Plaintiffs.**

For the last three years, the Plaintiffs had vigorously participated in the judicial proceedings they initiated. They attended the hearings, used all their procedural rights to the fullest. At no time had it been alleged in the Russian courts that their rights were violated in the local courts or did not have enough access to obtain evidence or get the rulings.

The Plaintiffs' Memorandum implicitly admits that they have prosecuted the civil claims and are now at the collection stage, through a receiver authorized by the Court to marshal and manage assets for distribution. The latest development in Moscow is that the collection procedure has been extended to March 10, 2022. See Opp., at p. 11 ("Further, and as is apparent from the bankruptcy proceeding against Mann in Russia, Mann has few if any assets in Russia…") In brackets, Mann submits that there have been very considerable assets frozen in Russia, in the millions of dollars. In January of 2021, the auction of the realty and other valuables owned by Mann was announced to yield to the Plaintiffs here about $3.5 million. Altogether the assets in Russia, subject to collection and in the dozens of millions of dollars.

It is only speculative on the part of the Plaintiffs to impress upon the U.S. District Court what would happen if the bankruptcy does not yield enough assets to satisfy the adjudged debts of Mann. Why would the Plaintiffs not await the outcome of the bankruptcy proceedings by next March to see if their adjudged claims get satisfied in full? This Court should dismiss the Complaint

without prejudice until the Plaintiffs can plead how much the claims were, which part in dollar amounts would have been satisfied, and the outstanding balance—if any—would still remain.

Applying the tenets of continental law in Europe, the Russian courts typically allow only damages directly tied to the proven losses, namely specific losses of money or property caused by defendants. There is no such thing as consequential damages, punitive or exemplary damages for fraud, or "trebling" of damages that exist under American law. It is well known that the American courts allow much higher awards for similar civil transgressions than the Courts in Europe. Here, what we see is forum shopping brought to the extreme, with a caveat. Usually, claimants merely select a forum most convenient to them and proceed in it. Here, the Plaintiffs have already proceeded in the Russian Court. Yet, even though the Russian Court proceedings are in full swing regarding the damages and collection, the Plaintiffs then filed duplicative proceedings in the U.S. District Court, which is not right. Mann has to foot the legal bills in one forum, Moscow, and then yet, the legal bills in Boston. The Plaintiffs' strategy, aiming at the exhaustion of resources of the opposing parties, is unfair and should not be allowed. That is especially true that the Plaintiffs divide all legal fees, on information and belief, by seven, using the same attorneys in both forums. Yet, Mann is squeezed to defend himself with his attorneys on his own.

The Plaintiffs' playing with proceedings in several forums at the same time should be rebutted. It is not only forum shopping but also a witch hunt after Mann. The American judiciary should not be used to dispense its limited or scarce resources to do a "second" job after the Russian Courts have already started adjudication and have adjudged nearly all of the claims. Viewed otherwise, this Court may see such an array of attacks on Mann in different courts in different jurisdictions as now abusive of the American jurisprudence. The Plaintiffs are now unnecessarily using a "second shot" at suing Mann and de facto persecuting him by all means. The Plaintiffs should have sued litigation in the U.S., but not use American litigation as a sort of "backup".

### (i) The Plaintiffs' Own Memorandum Admitted that Courts in Moscow Are Proper Forum.

Astonishingly, the Memorandum is self-defeating on the issue of forum non conveniens" The Plaintiffs admitted on p. 18: "In fact, the claims in the complaint are based on the same series of occurrences that took place in Moscow over decades among a group of friends and business associates." However, the Plaintiffs defeat their own argument that they need the second forum in Boston. The Court should hold that the Plaintiffs' admission or acknowledgment is binding on them. Indeed, the Plaintiffs wish to achieve the objectives that are self-exclusionary, and one argument defeats another. Again, the Plaintiffs annexed a highly prejudicial Exhibit, eventually between two colonels, in violation of the regulations and the discipline divulging a copy to the Plaintiffs, yet argue that Moscow is essentially *forum nonconveniens* for them from this point on.

### Conclusion.

The Opposition contained many self-defeating arguments, the outcome being that the Complaint is severely flawed and should be dismissed.

Dated: September 9, 2021.

Respectfully submitted,

                                                    _____/George Lambert/
George Lambert, Esq.
MA bar # 568769; D.C. bar #979327, FL bar #1022697
The Lambert Law Firm
100 Cambridge St., 14th Fl.,
Boston, MA 02114
1025 Connecticut Ave., #1000 NW
Washington, D.C., 20036
Tel. (617) 925 7500; (202) 640 1897, Fax (800) 952 1950
Email: Lawoffice2279@gmail.com

## CERTIFICATE OF SERVICE

  The undersigned certifies that on this day, September 9, 2021, the foregoing Proposed Reply was served on the parties as follows:

Kenneth C. Pickering
Lauren E. Sparks,
Mirick, O'Connell, DeMallie & Lougee LLP
100 Front Street
Worcester MA 01608-1477
Tel. (508) 791-8500
kpickering@mirickoconnell.com
lsparks@mirickoconnell.com
Attorneys for all Plaintiffs;

Sean T. Carnathan
O'Connor, Carnathan and Mack LLC
67 South Bedford Street, #400W
Burlington, MA 01803
781-359-9002, Fax: 781-359-9001
Email: scarnathan@ocmlaw.net
Attorney for Defendant Michael Hellman

Date: September 9, 2021

               */George Lambert/*
               _____
               George Lambert

Case 1:21-cv-40068-DLC  Document 24-1  Filed 10/29/21  Page 11 of 11