IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMINETS<br><br>     Plaintiffs,<br><br>          v.<br><br>ANDREI MANN and MICHAEL HELLMAN<br><br>     Defendants. | CIVIL ACTION No. 21cv40068-NMG<br><br><br>**VERIFIED COUNTERCLAIM OF DEFENDANT ANDREI MANN,**<br><br>**AGAINST DEFENDANTS IN COUNTERCLAIM DARIA LATOUR, ARSENYI SHCHEPIN, AND GEORGY SHCHEPIN** |
| ANDREI MANN<br><br>     Plaintiff in Counterclaim<br><br>          v.<br><br>PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMENETS<br><br>     Defendants in Counterclaim | **I. ACCOUNTING;**<br>**II. FRAUDULENT CONCEALMENT;**<br>**III. BREACH OF CONTRACT;**<br>**IV. MONEY HAD AND RECEIVED;**<br>**V. UNJUST ENRICHMENT;**<br>**VI. RESTITUTION;**<br>**VII. CIVIL CONSPIRACY;**<br>**VIII. DAMAGE TO BUSINESS REPUTATION;**<br>**IX. MISREPRESENTATION;**<br>**X. MISAPPROPRIATION;**<br>**XI. DECLARATORY RELIEF;**<br>**XII. INJUNCTIVE RELIEF.** |

**Preamble**

The present Counterclaim is brought, simultaneously with the Answer to the Complaint,

by an American investor, ANDREI MANN, against his DARIA LATOUR and her sons ARSENYI

SHCHEPIN and GEORGY SHCHEPIN.  This Counterclaim is brought as a part of the Answer to

the Complaint brought by said party and four more parties.  The Counterclaim includes accounting

and damages based on fraud, fraudulent concealment, breach of contract, and seeking, in the

alternative, equitable relief, e.g., unjust enrichment, damage to business reputation. The action also seeks damages for civil conspiracy among the Defendants in the Counterclaim and other damages.

## PARTIES.

1.      The plaintiff in Counterclaim ANDREI MANN (hereinafter MANN) is a resident of the Commonwealth of Massachusetts, with offices in Newton and the State of New York, having resided in the City of New York. For over 30 years, MANN has been an entrepreneur, running several businesses, with a substantial portion of the activities in the publishing industry. For example, one of MANN's publications exceeded a circulation of 4.5 million copies. MANN is also an investor with investment projects in various jurisdictions internationally.

2.      The defendant in Counterclaim DARIA LATOUR (LATOUR) is an individual who lived in Massachusetts in the 1990s, when LATOUR's then-husband DMITRY Shchepin worked at S-Info, managed by MANN. In or about 2000, LATOUR and her children moved back to Moscow. LATOUR has been residing at 5 Skakovaya St., Apt. 33-34, Moscow, Russia. LATOUR is Defendant in the Counterclaim because she confiscated the repayment by MANN of the loan to her concluded in 2010 and engaged in other fraudulent schemes.

3.      The defendant in Counterclaim ARSENYI SCHEPIN (ARSENYI) is the son of LATOUR and DMITRY Shchepin (currently in divorce). On information and belief, ARSENYI has been residing at the same address as LATOUR, 5 Skakovaya St., Apt 33-34, Moscow, Russia. ARSENYI is Defendant in the Counterclaim because he was the beneficiary of a trust whose operation LATOUR and her co-conspirator attributed to MANN, fraudulently demanding from MANN the trust money with which MANN had nothing to do.

4.     The defendant in Counterclaim, GEORGY SCHEPIN (GEORGY), is the son of LATOUR and DMITRY Shchepin (currently in divorce).  On information and belief, GEORGY has been residing at the address, Tomsk Region, City of Strezhevoy, 4th Mikroraion, 404, Apt 89, Town Strezhevoy, Tomsk Region, Russia. GEORGY is Defendant in the Counterclaim because he was the beneficiary of a trust, whose operation LATOUR and her co-conspirator attributed to MANN, fraudulently claiming the trust money from MANN, whereas MANN had nothing to do with that trust.

## JURISDICTION.

5.     This Court has jurisdiction in this action over these three Defendants in Counterclaim residing, on information and belief, in the Russian Federation because they submitted themselves to the jurisdiction of this Court while filing a Complaint on June 22, 2021.

## FACTS RELEVANT TO ALL COUNTS OF COUNTERCLAIM.

### A. DARIA LATOUR'S BUSINESS ASSOCIATION WITH ANDREI MANN IN MOSCOW, LATOUR'S ACTS IN BAD FAITH

6.     In approximately 1989, MANN got acquainted with LATOUR and DMITRY SCHEPIN (DMITRY), LATOUR's husband at the time.  DMITRY was MANN's partner at S-Info, incorporated in Moscow that MANN managed.  MANN and the LATOUR family had their respective summer houses in Moscow Region next to each other.  The children in the families of MANN and LATOUR were well acquainted.

7.     In the 1990s, LATOUR and her family resided mainly in Massachusetts, benefitting from the salary and various benefits that DMITRY, LATOUR's husband at the time, obtained from S-Info, MANN's publishing and media business.

8.     In 1997 and 1998, LATOUR and DMITRY caused several trusts to be set up in Massachusetts for their sons, initially with Fleet National Bank (now merged into Bank of America).

9.     In or about 2000, LATOUR and DMITRY returned to Russia to reside in Moscow.

10.    In 2001, LATOUR and DMITRY flew to Boston again.  MANN had no recollection of whether they contacted him during his trip.

11.    As MANN learned later, they used a Russian attorney, Igor Gurinovich (Gurinovich), who advised them about the placement of their money without any relation to MANN.

12.    On information and belief, Gurinovich recommended to them a law firm, Choate Hall & Stewart LLP (Choate), in Boston.  LATOUR and DMITRY had sufficient information themselves after they had lived in Boston for several years.

13.    MANN had nothing to do with the trusts of LATOUR's sons.  As the disclosure of a subpoena to Choate in 2022 has shown, the trust documentation did not show MANN's name anywhere; MANN was not a settlor, not a trustee, and not a manager of the trust of any kind.

14.    Instead, the trust documentation said that Fleet National Bank was the institutional trustee for the sons of LATOUR and DMITRY.  Thereby MANN had no connections with anyone at that bank and had nothing to do with the bank's attorneys setting up the trust documentation for LATOUR's sons.

15.    On September 12, 2008, MANN concluded with LATOUR in Moscow a business agreement, under which LATOUR provided to MANN $445,418 for management for two years, with a 13% interest rate.  The monthly repayments on that loan arrangement amounted to $4,825.

16.    MANN and LATOUR reformed that agreement on February 1, 2010, concluding a revised loan agreement.  According to that second agreement, LATOUR loaned MANN for business development $494,760.  The monthly amounts for repayment constituted $5,360.

17.    MANN dutifully complied with the terms of the repayments and had those timely paid, both interest and the principal amount.

18.    MANN repaid that loan in installments of up to or about $6,000 per month for over ten years. Those installments were regularly paid by the 20th day of each month in several ways. MANN also made large installments, towards the principal amount from time to time.

19.    MANN paid installments to LATOUR, per her request, in several ways:

(A) First, the payments were deposited on LATOUR's Citibank card #4193 4901 6869 2XXX.

(B) MANN delivered LATOUR cash in the same amount.

(C) MANN's the manager of S-Info Nikolay Kozlov, residing at the address 13-2 Izumrudnaya Street, Apt 332, delivered cash to LATOUR in person.

(D) MANN's office manager Svetlana Vladykina, with an office address at 10A/1 1905 Goda Street, Moscow, made installments by wire or arranged for cash payments.

(E) MANN's drivers and further office employees delivered cash installments to LATOUR to her apartment at 5 Skakovaya St., Apt. 33-34, Moscow.

20.    MANN's repayments to LATOUR by MANN of the loan were corroborated by the witnesses, emails, and other business records.  For example, a track of emails from LATOUR's email address: kontoft@hotmail.com establishes that.  Additionally, messages from LATOUR's telephone number in Moscow, (7) 906 760 156XX, and her number in Spain (34) 646 513 7XX to MANN's telephone establish the same.

21.     For example, the repayments are confirmed by the correspondence from LATOUR to MANN.  For example, on February 15, 2016, LATOUR wrote to MANN: "Hello, my dear:) What is heard about this month's repayment?  Can I receive half in roubles and half as €3,000 (Euros) this time?  I kiss you, and a good day to you."

22.     On April 14, 2016, LATOUR instructed MANN: "As usual, I am approaching you with a pecuniary purpose.  May I receive repayment, as the last time, half in roubles and half in Euros?  And, if possible, in the hundred banknotes?  Thank you in advance, my personal guardian angel".)

23.     On June 14, 2016, LATOUR advised MANN that she was leaving on the 22nd or 23rd, depending on the son's exam.  LATOUR instructed MANN: "I would be super to receive my installment this week.  And, if possible, half in Euros and half in rubles (as usual).  You can deposit the remainder on my debit card in rubles (already in July).  My kisses.  Pass my greetings to all of yours ; ) Thank you for everything."  MANN responded: "Money is coming to you today.  Please let me know… Greetings to the sons".

24.     From August 14 to 19, 2016, the correspondence between LATOUR and MANN establishes that LATOUR also provided instructions to route the repayments to her mother, in 64,000 rubles, or an equivalent of $1,100, an amount of €1,500 to LATOUR's debit card.  The correspondence shows that another installment of €5,000 (Euros) was paid.  As a result, LATOUR got paid about $8,500 that month alone.

25.     By mid-2018, MANN's repayments to LATOUR amounted to about $600,000 in interest and more than $400,000 in repayment of the principal amount, for over $1 million.

26.     To MANN's knowledge, in or about mid-2018, MANN's former employee YUSUP OSMANOV (OSMANOV), who controlled MANN's business documentation in

Moscow, approached LATOUR.  MANN learned that OSMANOV came on a certain occasion to LATOUR's home to convince her to participate in a scheme to confiscate MANN's assets.

27.     OSMANOV is a Russian national whose address is 4/7 Troilinskiy pereulok, Apt 65, Moscow, 119002.  OSMANOV had worked for MANN and his business for several years. OSMANOV used his access to financial and other documentation and, breaching his fiduciary obligations, turned against MANN, causing various monetary damages and causing other harm to MANN.

28.     On information and belief, OSMANOV unlawfully convinced LATOUR that she should not have to give credit to MANN's repayments since 2008 because he controlled the evidence on the repayments and could deprive MANN of that evidence.

29.     Until OSMANOV entered into a conspiracy with LATOUR, the latter was content with repayments from MANN.  LATOUR did not claim not to be paid from 2008 through 2018.

30.     However, in 2018, LATOUR suddenly changed her position to falsely claim as though MANN had not paid her back anything.  LATOUR demanded to repay interest and loan of 2010.

### B. ILLEGAL CONVERSION BY YUSUP OSMANOV OF BUSINESS RECORDS AND COMMERCIAL PAPERS OF MANN

31.     Namely, using his access to MANN's business documentation, in or about 2019, OSMANOV, despite his fiduciary obligations to his employer MANN, started to use various pretexts not to provide to MANN the necessary documentation, including concerning LATOUR, as necessary.

32.     As it turned out, OSMANOV, abusing his access to the boxes of documents, converted MANN's business documentation and valuable commercial papers belonging to

MANN.  OSMANOV entered a conspiracy with LATOUR to write off all repayments installments made by MANN since 2008 and demand MANN repay the loan anew.

33.    Furthermore, OSMANOV approached other parties in a business relationship with MANN and, on information and belief, proposed to ruin MANN's businesses, confiscating his assets and proposing financial benefits to such parties.

34.    Using his access to the business records, OSMANOV converted the financial records memorializing the repayments of the loan to LATOUR, all in furtherance of their conspiracy to convert MANN's funds that he had paid to LATOUR.

35.    LATOUR was a conscious and voluntary participant in that conspiracy and collusion with OSMANOV, claiming that MANN should make repayment to her a second time.

36.    Implementing that conspiracy, all of a sudden, on May 8, 2019, LATOUR filed a lawsuit against MANN in Moscow, claiming 46,618,037 rubles, which amounted to about $715,000.

37.    Using the fact that OSMANOV had converted MANN's business records, LATOUR concealed the fact of repayments in this case.  LATOUR also used the fact that MANN was in the U.S.

38.    LATOUR made fraudulent claims in this Court, silencing the repayments and hiking an alleged debt to her, even though, as of the decision of the Russian Court on August 17, 2021, she was stricken from the list of MANN's creditors.  LATOUR was obligated to disclose it but failed to do so.

## C. FALSE CLAIMS CONCERNING TRUST OF LATOUR'S SONS

39.     On information and belief, in June of 2016, DMITRY, the main contributor to the trust in Massachusetts, upon agreement with LATOUR, ARSENYI, and GEORGY, closed that trust in Massachusetts.

40.     They caused the trust proceeds, approximately $600,000 for each of both sons, a total of $1.2 million, to be transferred to the account or account at Otkrytye bank, a Russian bank in Moscow.    Again, MANN had nothing to do with those transactions nor control over the account(s) at Otkrytye bank.

41.     MANN has little information about what happened to that money, whereas MANN had no control over such an account or accounts at Otrytye Bank.

42.     From oral information, OSMANOV confided that those funds were transferred to his own, OSMANOV's, account.    According to OSMANOV, both ARSENYI and GEORGY owed money, and the funds were routed under his control at that bank.

43.     LATOUR and her co-conspirator and accomplice OSMANOV began to make false representations and provide falsified documentation to various parties, as though MANN had access to the account at Otkrytye Bank, which he did not have.

44.     LATOUR and OSMANOV ignored that MANN had no signature right for the account(s) at Otkryetye bank and had no access to bank statements from that account or accounts. MANN could not possibly transfer anything out of that account or those accounts.

45.     In or about 2019, LATOUR, assisted by OSMANOV, ARSENYI, and GEORGY, made false statements to the law enforcement in Russia to fabricate a criminal case and use it to confiscate all of MANN's assets in Russia and divide those among the participants in the conspiracy.

46.     By fabricating a criminal case and making various untrue statements to other parties, LATOUR, assisted by ARSENYI, GEORGY,  caused intentional harm to MANN, his businesses, and his business reputation by confiscating and sharing his assets in Russia.

47.     On August 17, 2021, LATOUR was excluded from the list of MANN's creditors by a Court in Moscow.  That decision has operated that MANN is not LATOUR's debtor.

### D. LATOUR JOINING THE CONSPIRACY OF FABRICATING CRIMINAL MATTER IN RUSSIA FOR EXTORTING FROM MANN.

48.     On information and belief, in mid-2018, one of the purported creditors of MANN, namely YURI RYAZANOV (RYAZANOV), who invested in S-Info and whose investment with interest was mainly repaid, called and met with LATOUR.  RYAZANOV, in conjunction with OSMANOV and SEMENETS, impressed upon LATOUR that if she joined their conspiracy to fabricate the criminal matter against MANN.

49.     That conspiracy was illegal because it was based on the concealment of the documents and facts showing the repayment of the purported debts from S-Info and MANN.

50.     In June of 2018, Major of Justice I.N. Evlampieva, the senior investigator of the Interior Ministry for Krasnopresnensky District for Moscow, opened the criminal case against MANN under false pretenses.

51.     LATOUR was aware that RYAZANOV was misusing access to and connections in the Interior Ministry to harm MANN and "knock out" from MANN as much money as possible.

52.     RYAZANOV, assisted by OSMANOV, organized LATOUR's visits to the investigator, involving ARSENYI and GEORGY as purported witnesses, inducing all three to file or sign false complaints against MANN.

53.     For example, on April 4, 2019, LATOUR and ARSENYI provided testimony to the investigator in the presence of OSMANOV, who "corrected" the testimony of both.  Such purported investigation and collection of evidence violated the law.

54.     On April 11, 2019, OSMANOV likewise accompanied GEORGY to the investigator, who was unlawfully present in the room, "correcting the testimony."

55.     In November 2019, OLEG SEMENETS (SEMENETS), another purported creditor of MANN, joined the conspiracy to elevate the matter.  SEMENETS, who had gone to a law school, abused his acquaintance and connection with one of the high-ranking prosecutors to push the investigation and criminal matter.

56.     At all times, LATOUR, joined by ARSENYI and GEORGY, was a willing co-conspirator with RYAZANOV, OSMANOV, and later SEMENETS providing false information and testimony, intentionally omitting that her investments had been substantially repaid.

57.     As a result, LATOUR, joined by ARSENYI and GEORGY, achieved the goals of destroying MANN, freezing and confiscating all of his assets in Russia for pecuniary gain by illegal means.

### COUNT I. ACCOUNTING

58.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-57, with the same force as though repled again and further state as follows.

59.     As mentioned above, in or about 2018, OSMANOV, using MANN's absence from Russia, converted MANN's business documentation and commercial papers held in boxes and stored in computers in MANN's office in Moscow.

60.     LATOUR, ARSENYI, and GEORGY willingly supported OSMANOV's illegal activities, participating in the benefits of MANN's inability to use his business documentation.

61.    MANN demands that all accounting documentation controlled by OSMANOV, with the encouragement or participation of LATOUR, ARSENYI, and GEORGY, be returned to MANN and accounted for.

62.    LATOUR, ARSENYI, and GEORGY should be ordered to produce the banking records from Russia concerning the trust described above to establish the actual scenario of what happened with the trust proceeds for $1.2 million, on information and belief, placed by DMITRY to the benefit of his sons with LATOUR.

63.    That accounting should include the information from Otkrytye Bank regarding the statements on the account where the money was deposited upon the wire transfer(s) from Boston.

64.    MANN is entitled to an accounting stated against LATOUR, ARSENYI, and GEORGY.

## COUNT II.  FRAUDULENT CONCEALMENT.

65.    Plaintiffs incorporate by reference the allegations in preceding Paragraphs 1-57, with the same force as though repled again and further state as follows.

66.    These Defendants in Counterclaim acts satisfied the elements of a fraudulent concealment claim are as follows:

(1) the LATOUR defendants concealed or failed to disclose a material fact of repayments;

(2) the LATOUR defendants knew that the material fact, repayments, should be disclosed;

(3) the LATOUR defendants knew of their concealment of or failure to disclose the material facts;

(4) the defendants had a duty to disclose repayments to the investigators; and

(5) MANN and other persons detrimentally relied on the concealed information, where MANN was unaware that the LATOUR defendants joined the conspiracy against him.

67.     In or about 2018, LATOUR, using the conspiracy with OSMANOV, arranged that nearly all evidence of MANN's repaying her about $1 million become unavailable to MANN while being confiscated by OSMANOV.

68.     LATOUR fraudulently concealed in this matter and before other parties the evidence of the repayment of about $1 million, essentially willing that MANN repaid the same loan for the second time.

69.     In or about 2016 onwards, DMITRY, LATOUR, ARSENYI, and GEORGY moved the sons' trust proceeds from Massachusetts to Moscow, placing those onto an account or accounts at Otkrytye bank.

70.     LATOUR, ARSENYI, and GEORGY used that fraudulent concealment to make false claims, as though MANN had anything to do with the trust money, which was untrue.

71.     Plaintiff MANN is entitled to damages for fraudulent concealment stated against OSMANOV.

## COUNT III.  BREACH OF CONTRACT.

### (against DARIA LATOUR only)

72.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-57 with the same force as though repled against and further states as follows.

73.     On September 12, 2008, MANN and LATOUR concluded in Moscow the first business investment contract.

74.     On February 1, 2010, MANN and LATOUR reformed that contract.

75.     MANN made all installments due to LATOUR for over ten years, until mid-2018, when LATOUR entered into a conspiracy with OSMANOV.

76.     During that relationship, MANN paid LATOUR about $1 million, including $600,000 in interest payments alone and over $400,000 in repayments of the principal amount.

77.     LATOUR concealed repayment of about $1 million in this matter and before third parties, thereby acting in breach of contract.

78.     Plaintiff MANN is entitled to damages for breach of contract stated against LATOUR.

## COUNT IV.  MONEY HAD AND RECEIVED.

79.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-57, with the same force as though repled again and further state as follows.

80.     As stated above, MANN repaid LATOUR a total of about $1 million, representing money had and received.  MANN has information and believes that LATOUR routed substantial portions of those proceeds to her sons ARSENYI and GEORGY.  Accordingly, both are right parties in the present Count.

81.     The present Count is stated in addition or the alternative to the claims based on the contract.

82.     Plaintiff MANN is entitled to damages based on the equitable theory of money had and received against LATOUR.

## COUNT V.  UNJUST ENRICHMENT.

83.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-57, with the same force as though repled again and further state as follows.

84.     As stated above, MANN was making regular loan repayments from LATOUR in regular payments by the 20th day of each month.  Those were stopped only in mid-2018 when LATOUR entered into a conspiracy with OSMANOV and started to act against MANN.

85.     LATOUR got unjustly enriched for about $1 million, which she did not include in the claim made against MANN.

86.     MANN believes and has information that LATOUR routed a portion of the proceeds paid by MANN to her sons, ARSENYI and GEORGY.  Therefore, both are the proper parties under the present Count.

87.     The present Count is stated in addition or the alternative to the claims based on the contract.

88.     Plaintiff MANN is entitled to the cause of action based on damages for unjust enrichment against LATOUR.

## COUNT VI.  RESTITUTION.

### (against DARIA LATOUR only)

89.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-57, with the same force as though repled again and further state as follows.

90.     As stated above, LATOUR elected to ignore the repayments made to her under two contracts.  Therefore, LATOUR has opened the door to a claim of restitution of about $1 million paid by MANN back to MANN.

91.     The present Count is stated in addition or the alternative to the claims based on the contract.

92.     Plaintiff MANN is entitled to the cause of action based on the restitution of $1 million from LATOUR to the full extent allowed by the law.

## COUNT VII.  CIVIL CONSPIRACY.

93.     Plaintiffs incorporate by reference the allegations in preceding Paragraphs 1-57, with the same force as though repled again and further state as follows.

94.     The alleged facts establish that the elements of civil conspiracy have been met, where

(1) an agreement between the LATOUR defendants and other persons, e.g., RYAZANOV, OSMANOV, and SEMENETS, was formed by June of 2018;

(2) that conspiracy was to perform an unlawful act, to extort money that had already been paid, basically seeking to make the payments for the second time;

(3) the parties put together a fabrication of the facts involving repayments

(4) damages to MANN ensued due to acts done under the conspiracy.

95.     In approximately mid-2018, as evidence shows, OSMANOV entered into a conspiracy with LATOUR and her sons ARSENYI and GEORGY.

96.     On information and belief, that civil conspiracy was orchestrated by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it, including for LATOUR's and her sons' benefit, albeit illegally.

97.     It was a part of the conspiracy that OSMANOV withheld the documentary evidence on MANN's repayment to LATOUR of about $1 million so that LATOUR made false claims against MANN.

98.     LATOUR was assisted, on information and belief, in that conspiracy, by her sons ARSENYI and GEORGY and by SEMENETS and RYAZANOV.

99.     As the evidence of ARSENYI's and GEORGY's participation in that conspiracy, the fraudulent allegations against MANN concerning their trust proceeds transferred in 2016 to the

account or accounts at Otkrytye bank in Moscow could not be made without their approval and participation.

100.    The purpose of that civil conspiracy was unlawful, namely to deprive MANN of assets, his access to documentation, and his entitlement to dividends and assets.

101.    Plaintiff MANN is entitled to damages for civil conspiracy stated against LATOUR, ARSENYI, and GEORGY.

## COUNT VIII.  DAMAGE TO BUSINESS REPUTATION.

102.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-57 with the same force as though repled against and further states as follows.

103.    In approximately mid-2018, as evidence shows, OSMANOV entered into a conspiracy with LATOUR and her sons ARSENYI and GEORGY, intending to keep MANN out of Russia, confiscate all of his assets in Russia and divide those among the participants.

104.    On information and belief, that civil conspiracy was orchestrated by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it, including for LATOUR's and her sons' benefit, albeit illegally.

105.    As evidence shows, OSMANOV, supported by LATOUR, ARSENYI, and GEORGY, orchestrated a criminal case opened by the Interior Ministry in Russia and an arrest warrant.

106.    It was a part of the conspiracy to mislead the law enforcement in Moscow that OSMANOV withheld the documentary evidence on MANN's repayment to LATOUR of about $1 million to encourage LATOUR to make false claims against MANN.  LATOUR was assisted, on information and belief, in that conspiracy to damage MANN's business reputation by her sons ARSENYI and GEORGY.

107.    As the evidence of ARSENYI's and GEORGY's participation in the intentional damages to MANN's business reputation, the fraudulent allegations against MANN concerning their trust proceeds transferred in 2016 to the account or accounts at Otkrytye bank in Moscow could not be made without their approval and participation.

108.    The purpose of that damage to MANN's business reputation was to ruin MANN's business in Russia, confiscate his assets, and divide those among the participants in the conspiracy.

109.    The loss to MANN's business reputation exceeded $10 million, given the volume of the assets and MANN's business expectations based on his businesses operated in Russia.

110.    Plaintiff MANN is entitled to damages for damage to business reputation caused by LATOUR, ARSENYI, and GEORGY.

## COUNT IX.  MISREPRESENTATION.

111.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-57 with the same force as though repled against and further states as follows.

112.    LATOUR, ARSENYI, and GEORGY undertook (1) false statements to the Russian investigators and other persons concerning material facts; (2) they knew that their representations were false; (3) they had an intention that the representation induced other parties to act on it; which resulted in (4) consequent injury to MANN, while various parties acted in reliance on their representations.

113.    As facts supported by evidence show, MANN arranged for regular payments, usually every month, to LATOUR, which the latter subsequently concealed.

114.    However, in approximately mid-2018, as evidence shows, OSMANOV entered into a conspiracy with LATOUR and her sons ARSENYI and GEORGY to keep MANN out of Russia and confiscate all of his assets in Russia and divide those among the participants.

115.    On information and belief, that civil conspiracy and misrepresentations accompanying it were orchestrated by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it, including for LATOUR's and her sons' benefit, albeit illegally.

116.    As evidence shows, LATOUR, ARSENYI, and GEORGY, in a conspiracy, made misrepresentations to the Russian investigators concerning MANN, as though MANN did not repay the interest, loan principal, thus orchestrating a criminal case opened by the Interior Ministry in Russia, along with an arrest warrant.

117.    The misrepresentations by the conspiracy's participants misled the law enforcement as though MANN did not repay LATOUR approximately $1 million.

118.    On information and belief, ARSENYI and GEORGY participated in, endorsed, or ratified the misrepresentations by LATOUR concerning their trust proceeds that were placed in 2016 to the account or accounts at Otkrytye bank in Moscow.  Those transactions could not be made without their approval and participation.

119.    Those misrepresentations were to ruin MANN's business in Russia, confiscate his assets, and divide those among the participants in the conspiracy.

120.    MANN is entitled to damages based on misrepresentation by LATOUR, ARSENYI, and GEORGY.

//

## X.  MISAPPROPRIATION.

### (against DARIA LATOUR only)

121.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-57 with the same force as though repled against and further states as follows.

122.    As mentioned above, MANN repaid or paid LATOUR about $1 million from 2008 to 2018.

123.    However, while making misrepresentations and undertaking concealment of facts, LATOUR withheld information from various parties, including the law enforcement, on a total of about $1 million that MANN paid to LATOUR in repayment of the loan under the agreements dated September 12, 2008, and February 1, 2010.

124.    Since LATOUR renounced the fact that her investment had been substantially repaid, LATOUR placed $1 million outside of those contracts, which amounted to misappropriation by LATOUR.

125.    The present Count is pleaded as an alternative and in addition to claims based on breach of contract.

126.    MANN is entitled to damages based on LATOUR's misappropriation.

## XI.  DECLARATORY RELIEF.

127.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-57 with the same force as though repled against and further states as follows.

128.    On February 24, 2022, the Russian Federation started its invasion of Ukraine.  In response, the U.S. imposed several sanctions, including prohibiting U.S. citizens from paying in dollars to citizens or residents of Russia.

129.    On April 6, 2022, and other dates, the U.S. President signed the Executive Orders imposing sanctions against Russia, affecting its residents.  Under powers vested in the President by the Constitution and the U.S. laws, including the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) (IEEPA), the National Emergencies Act (50 U.S.C. 1601 et seq.), and section 301 of title 3, United States Code.  Several Departments have engaged in implementing that and other Executive Orders concerning the U.S. sanctions.

130.    The Department of the Treasury implemented that and other Executive Orders, imposing various financial sanctions.  The sanctions prohibit U.S. citizens, such as MANN, from paying anything to Russian citizens and residents in U.S. dollars.

131.    As a law-abiding person, MANN is prohibited from paying anything to the LATOUR Defendants, as long as the U.S. sanctions continue to be in force.

132.    The alleged facts also satisfy all elements for granting declaratory relief, such as:

- (a)  a bona fide, actual, present practical need for a declaration that the U.S. citizen, MANN, is prohibited from paying anything to these Defendants because

- (b) the declaration concerns a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts;

- (c) a right of the complaining party is dependent upon the facts or the law applicable to the facts;

- (d) parties have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or the law;

- (e) the antagonistic and adverse interest(s) are all before the Court by a proper process; and

- (f) the relief sought is not merely giving legal advice or the Answer to questions propounded for curiosity.

133.    Plaintiff MANN is entitled to declaratory relief.

## XII.  INJUNCTIVE RELIEF (TEMPORARY INJUNCTION)

134.    The alleged facts satisfy the elements to establish entitlement to a preliminary injunction, to wit:

- (1) the likelihood of irreparable harm to MANN;

- (2) the unavailability of an adequate remedy at law;

- (3) a substantial likelihood of success on the merits, given a pattern of the law violations by defendants; and

- (4) consideration of the public interest.

135.    Based on the sanctions imposed by the U.S. against Russia, affecting Russian nationals and residents, the LATOUR defendants should be enjoined from demanding from MANN any payments in U.S. dollars.

136.    The public interest in the U.S. imposes an obligation on the judicial branch to assure that foreigners do not demand from U.S. citizens any payments to them in U.S. dollars for as long as the U.S. sanctions are in force.

137.    Furthermore, MANN seeks an injunction against the LATOUR defendants not to make misrepresentations to the Russian law enforcement representatives that are knowingly and intentionally false.

138.    Plaintiff MANN is entitled to relief of a temporary injunction against the LATOUR defendants.

**WHEREFORE**, Plaintiff MANN prays for the relief in this action as follows:

- Orders to LATOUR, ARSENYI, and GEORGY directing their accounting for MANN's investments and other transactions cited above, allowed by local law and international business standards to the full extent.

- Damages inclusive interest, and/or to the full extent of the applicable law, on all Counts for which damages are sought.

- In the alternative, restitution by LATOUR of all money paid by MANN.

- Damages for breach of contract, damage to business reputation, and on other Counts, where damages are proper.

- To the extent allowed by the applicable law, punitive and/or exemplary damages relating to fraudulent concealment, civil conspiracy, and breach of fiduciary duties claims.

- Such other and further relief as the Court will find just and fair.

- Attorney's fees and costs are allowed by the applicable Federal Rules of Civil Procedure.

Dated: April 25, 2022.    Respectfully submitted,


_____/signed George Lambert/
George Lambert, Esq.
MA bar #568769
100 Cambridge Street, 14th Floor
Boston, MA 02114
Tel. (617) 925 7500, fax (800) 852 1950
Email: Lawoffice2279@gmail.com
Attorney for Defendant and Plaintiff
in Counterclaim Andrei MANN

23

## VERIFICATION

I, ANDREI MANN, party in the present action, state and declare that to the best of my knowledge, the factual allegations stated herein are true and correct.

Andrei Mann,

Date: April 25, 2022

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day, April 25, 2022, the foregoing Answer was served via efiling by Pacer on the parties as follows:

Kenneth C. Pickering
Lauren E. Sparks,
Mirick, O'Connell, DeMallie & Lougee LLP
100 Front Street
Worcester MA 01608-1477
Tel. (508) 791-8500
kpickering@mirickoconnell.com
lsparks@mirickoconnell.com
Attorneys for all Plaintiffs;

Sean T. Carnathan
O'Connor, Carnathan and Mack LLC
67 South Bedford Street, #400W
Burlington, MA 01803
781-359-9002, Fax: 781-359-9001
Email: scarnathan@ocmlaw.net
Attorney for Defendant Michael Hellman

Date: April 25, 2022

*/George Lambert/*
_____

George Lambert