IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETR DMITRIEV, DARIA DMITRIEV, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMINETS<br><br>      Plaintiffs,<br><br>       v.<br><br>ANDREI MANN and MICHAEL HELLMAN<br><br>      Defendants.<br><br>ANDREI MANN<br><br>      Plaintiff in Counterclaim<br><br>       v.<br><br>PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMENETS<br><br>      Defendants in Counterlaim | CIVIL ACTION No. 21cv40068-NMG<br><br>**VERIFIED COUNTERCLAIM OF DEFENDANT ANDREI MANN**<br><br>**AGAINST PLAINTIFF AND DEFENDANT IN COUNTERCLAIM PETR DMITRIEV**<br><br>**I.  ACCOUNTING**<br>**II.  FRAUDULENT CONCEALMENT**<br>**III.  BREACH OF CONTRACT**<br>**IV.  MONEY HAD AND RECEIVED**<br>**V.  UNJUST ENRICHMENT**<br>**VI.  RESTITUTION**<br>**VII.  CIVIL CONSPIRACY**<br>**VIII.  DAMAGE TO BUSINESS REPUTATION**<br>**IX.  MISREPRESENTATION** |

**Preamble**

The present Counterclaim is brought, simultaneously with the Answer to the Complaint,

by an American investor, ANDREI MANN, against his PETR DMITRIEV.  That Counterclaims

is brought as part of the Answer to the Complaint brought by said party, as well as by six more

parties.   The Counterclaim includes accounting and damages based on fraud, fraudulent

concealment, breach of contract, and seeking, in the alternative, equitable relief, e.g., unjust

1

enrichment, damage to business reputation.  The action also seeks damages for civil conspiracy among the Defendants in the Counterclaim and other damages.

## PARTIES.

1.     The plaintiff in Counterclaim ANDREI MANN (hereinafter MANN) is a resident of the Commonwealth of Massachusetts, with offices in Newton and the State of New York, having resided in the City of New York.  For over 30 years, MANN has been an entrepreneur, running several businesses, with a substantial portion of the activities in the publishing industry.  For example, one of MANN's publications' circulation exceeded 4.5 million copies. MANN is also an investor with investment projects in various jurisdictions internationally.

2.     The defendant in Counterclaim PETR DMITRIEV (DMITRIEV) is an individual currently residing at Jerushalaim st., 4/8, Bat Yam, Israel.  On information and belief, DMITRIEV holds two passports, Russian and Israeli.  DMITRIEV first got acquainted and worked together with MANN at Meditsinskaya Gazeta, a newspaper's editorial officelive in Moscow, in the 1980s. DMITRIEV is the defendant in the Counterclaim because he confiscated the partial repayment by MANN of the loan and engaged in other fraudulent schemes causing damages to MANN.

## JURISDICTION.

3.     This Court has jurisdiction in this action over the defendant in Counterclaim residing, on information and belief, in the Russian Federation because he submitted himself to the jurisdiction of this Court while filing a Complaint on June 22, 2021.

## FACTS RELEVANT TO ALL COUNTS OF COUNTERCLAIM.

## A.  PETR DMITRIEV'S BUSINESS ASSOCIATION WITH ANDREI MANN IN MOSCOW, DMITRIEV'S ACTS IN BAD FAITH

4.      As mentioned above, MANN got acquainted with DMITRIEV in the 1980s, when both worked at Meditsinskaya Gazeta, a newspaper popular in the USSR at the time.

5.      MANN accumulated experience in the publishing business in Russia.   MANN founded S-Info in Moscow, with a subsidiary in Massachusetts.  Namely, S-Info LLC was listed on the Secretary of State's portal for Massachusetts.

6.      S-Info LLC, the Massachusetts LLC, has been owned by a Russian company, registered on January 17, 2003, with a similar name OOO S-Info, with registered address: 22/40 Pervomaiskaya St., Moscow, 105043.   As mentioned above, the Russian Court's decision of January adjudged that company bankrupt.

7.      Initially, MANN was a 62% stakeholder in that company, along with Tatiana Ivanova (28%) and Igor Gurinovich (10%).

8.      DMITRIEV knew S-info well from his friend YURI RYAZANOV (RYAZANOV), who then worked in S-info in a senior position. DMITRIEV knew that many employees, including RYAZANOV, reinvested part of their income back into S-Info, which brought significant dividends to investors who worked in senior positions in S-Info.

9.      On or about February 6, 2012, DMITRIEV, at his initiative, concluded an investment agreement with MANN, acting in part on behalf of S-Info.  That investment agreement was for the investment amount of $1,500,000.  That amount was for investment in S-Info's business.

10.      That agreement was executed at S-Info's office, at 10A-1 1905 Goda Street, Moscow, Russia.  Both signatories, MANN and DMITRIEV, understood that money under that loan was for investment in S-Info, not for MANN's personal use.

11.     An interest-free loan agreement was DMITRIEV's initiative. DMITRIEV offered to hire him at S-info and pay him a salary that partially covered the interest on the loan. DMITRIEV told MANN that it is more convenient for him to receive a salary at S-Info rather than openly receiving interest on a loan. DMITRIEV made these representations to MANN in connection with DMITRIEV's preparation of documents for his final relocation to Israel.

12.     However, per DMITRIEV's proposal, he received 51% of shares in Callisto Media Corporation (also Callisto), incorporated in Massachusetts, as collateral for his loan.

13.     Callisto Media Corporation, docket 000940760, was incorporated on February 1, 2007, and administratively dissolved on June 30, 2014.  A sister entity, Callisto Media Group LLC, docket 820424564, was registered on March 29, 2005, and administratively dissolved on April 19, 2011.

14.     Additionally, Callisto was registered in Russia, with the exact information as follows: Callisto.  Publishing House Callisto S-Info (in Cyrillic «Калисто.  Издательскои Дом С-Инфо»), INN 77036333271.

15.     MANN was aware that Callisto was the founder of "S-Info Publishing House" and that all corporate taxes are regularly paid in Russia.

16.     DMITRIEV was aware of all the affairs in S-Info and its financial position. DMITRIEV was aware of the structure of this company.  DMITRIEV chose to invest his money in a company he knew well.

17.     In the Complaint in this action, DMITRIEV silenced in his claim that he had received money back on his loan, that he worked for S-Info, and omitted other material facts about his true financial relationship with the company.

18.     DMITRIEV required from MANN that his interest and the major portion of his salary be paid to him in cash.  In the 1990s and early 2000s, that was customary in Russia until the tax authorities adopted more vigorous financial regulations in Russia.  At the same time, in some cases, DMITRIEV used his bank account in Israel to receive funds from S-info.

19.     While DMITRIEV regularly obtained interest and salary in the same package in cash.  Those payments are corroborated by a track of emails from DMITRIEV's email address: petrdmitriev@hotmail.com, and text messages from DMITRIEV's telephone number in Moscow, (7) 903 792 2391, (7) 926 614 1435.

20.     DMITRIEV's regular receipts from S-Info amounted to 276,000 rubles. At the current exchange rate, this was about $5,000 per month. Plus periodic payments, including in dollars, for the return of his investment.

21.     In addition, DMITRIEV requested that his monthly income from S-Info be increased to at least $10,000 per month.  The correspondence shows that DMITRIEV's income from S-Info sometimes reached $15,000 or $17,000 per month.

22.     In total, DMITRIEV received from S-Info, for approximately 6.5 years, about $780,000.  A disclaimer is made that most or nearly all documentation, for a precise number, is under the control of DMITRIEV's co-conspirator YUSUP OSMANOV (OSMANOV).

23.     MANN's payments to DMITRIEV are supported by documentary evidence that MANN has been able to control, such as emails.  For example, on May 25, 2016, MANN and DMITRIEV corresponded that DMITRIEV was receiving 276,000 rubles by a bank transfer and $15,000 in cash at their meeting in person.

24.     The next day, the accountant at S-Info wrote to MANN that 276,000 rubles were sent to DMITRIEV.

25.     In another example, on June 5, 2017, DMITRIEV asked for an update of the wire transfer of $17,000, representing interest on DMITRIEV's investment.

26.     In addition to repayments in cash, DMITRIEV got paid certain amounts through bank accounts, to be established on bank documents.

27.     At one point, DMITRIEV asked that he and MANN have a meeting in Moscow in a restaurant, Oleg Falikovich (Falikovich), a resident of Switzerland.   Per DMITRIEV's representations to MANN, Falkovich proposed various schemes to avoid taxes in Switzerland and elsewhere.  When MANN heard about DMITRIEV's and Falikovich's proposals, MANN rebutted those with declination and subsequently refused to contact Falikovich.

28.     To MANN's knowledge, in addition to an account at the Bank of Israel, DMITRIEV has also used a Swiss bank account at Banque Pupulaire Privee in Zurich, eventually opened through the facilitation of Falikovich.

29.     As evidence shows, DMITRIEV's Swiss account is as follows: Account name: Dmitriev Petr, address of the owner: Izrael, Bat Yam, Jerushalaim st., 4/8, Bat Yam, Israel.  Bank: redacted , bank address : redacted 64 6, correspondent Bank USD: JPMorgane Chase, Swift: CHAS US 33.

30.     While filing the Complaint in this action, DMITRIEV fraudulently concealed that a substantial portion of the debt to him, for business purposes, had been repaid.

31.     On information and belief, DMITRIEV got in contact with OSMANOV, a Russian national whose address is 4/7 Troilinskiy pereulok, Apt 65, Moscow, 119002.  After having worked for MANN and his business for several years, OSMANOV used his access to financial

and other documentation and, breaching his fiduciary obligations, turned against MANN, causing various monetary damages and causing other harm to MANN.

32.     As it transpired later, in the Fall of 2019, co-conspirators OSMANOV and RYAZANOV traveled to Israel to meet with DMITRIEV.

33.     Subsequently, OSMANOV and RYAZANOV began to spread rumors that they were negotiating with a private Israeli firm, "whose employees at one time were the Mossad, the Israeli intelligence service, and were to use these connections to damage MANN." There are witnesses of such conversations of the conspirators.

34.     On information and belief, OSMANOV unlawfully persuaded DMITRIEV that she did not have to give credit to MANN's repayment of the 1.5 million loan because he controlled evidence on the repayments and could deprive MANN of that evidence.

35.     Until DMITRIEV entered into a conspiracy with DMITRIEV, the latter was satisfied with the repayments on the loan.  DMITRIEV did not deny installments of the loan repayment from 2012 through 2018.  However, all of a sudden, DMITRIEV falsely changed his position to claim as though MANN did not pay him back anything.

## B. CONVERSION BY YUSUP OSMANOV OF BUSINESS RECORDS AND COMMERCIAL PAPERS OF MANN; CONSPIRACY WITH PETR DMITRIEV

36.     In late 2018 and 2018, using his access to MANN's business documentation, OSMANOV, despite his fiduciary obligations to his employer MANN, started to use various pretexts not to provide MANN the necessary documentation including concerning DMITRIEV, as necessary.

37.     As it turned out, OSMANOV, abusing his access to the boxes of documents, converted MANN's business documentation and valuable commercial paper belonging to MANN.

OSMANOV entered a conspiracy with DMITRIEV to write off all repayments installments made by MANN to DMITRIEV and to demand from MANN to repay the $1.5 million loan anew.

38.     Furthermore, OSMANOV approached other parties in a business relationship with MANN and, on information and belief, proposed to all to ruin MANN's businesses, confiscating his assets and proposing financial benefits to such parties.

39.     OSMANOV converted the financial records proving the repayments of the loans by S-Info and MANN, even though DMITRIEV was uninvolved in that.

40.     DMITRIEV was a knowing and willing participant in that conspiracy with OSMANOV, now claiming that MANN repays the $1.5 million loan, for business purposes of S-Info, for the second time.  DMITRIEV was a willing participant in the conspiracy to ruin MANN's assets in Russia and to divide those among the co-conspirators.

41.     The conversion by OSMANOV of MANN's business records, including the evidence of the repayments to DMITRIEV, resulted in MANN's inability to defend himself in the Russian Courts.  OSMANOV, DMITRIEV, and others essentially expunged MANN from doing business in Russia.

42.     OSMANOV and others abused their access to the Russian Courts by filing the untrue claims with material omissions and disallowing MANN to use his evidence that got under OSMANOV's control in Moscow.

43.     The Russian Court declared S-Info bankrupt, all being the results of their improper attacks on the business assets of S-Info and MANN.

44.     On January 22, 2020, the Russian Court adjudged that MANN's residential property at 32 Marshal Biryuzova Street, Apt 71, Moscow, his stock holdings, other assets, and

property, including even furniture and other valuables, were subject to sale and disposition, to satisfy the claims of the creditors.

## COUNT I. ACCOUNTING

45.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-44, with the same force as though repled again and further state as follows.

46.     As mentioned above, in or about 2018, OSMANOV, using MANN's absence from Russia, converted MANN's business documentation and commercial papers, held in boxes and stored in computers in MANN's office in Moscow.

47.     On information and belief, DMITRIEV willingly supported OSMANOV's illegal activities, participating in the benefits of MANN's inability to use his business documentation.

48.     MANN demands all and any accounting by DMITRIEV regarding his taking money from S-Info and MANN for over 6.5 years.  That should include the documentation controlled by OSMANOV, with the encouragement or participation of DMITRIEV, be returned to MANN and accounted for.

49.     DMITRIEV should be ordered to produce the banking records from Russia, Israel, and Switzerland, concerning the repayment of the $1.5 million loan he had provided for S-Info.

50.     MANN is entitled to an accounting stated against DMITRIEV.

## COUNT II.  FRAUDULENT CONCEALMENT.

51.     Plaintiffs incorporate by reference the allegations in preceding Paragraphs 1-44, with the same force as though repled again and further state as follows.

52.     In or about 2018, DMITRIEV, using the conspiracy with OSMANOV, arranged that nearly all evidence of MANN's repaying her about $1.5 million become unavailable to MANN while being confiscated by OSMANOV for the benefit of DMITRIEV.

53.     DMITRIEV fraudulently concealed in this matter and before other parties the evidence of the repayment of about $1.5 million, essentially willing MANN personally to repay the loan for the second time.

54.     Plaintiff MANN is entitled to damages for fraudulent concealment stated against DMITRIEV.

## COUNT III.  BREACH OF CONTRACT.

55.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-44 with the same force as though repled against and further states as follows.

56.     On February 6, 2012, DMITRIEV concluded with MANN in Moscow the investment agreement described above, under which DMITRIEV invested $1.5 million for the operation and development of S-Info's business.

57.     MANN made all installments due to DMITRIEV for over six years until mid-2018, when DMITRIEV entered into a conspiracy with OSMANOV.

58.     Despite the fact that DMITRIEV made his loan ostensibly interest-free, he demanded payment of dividends in the form of wages and cash payments, explaining this as a matter of business convenience.

59.     In the course of that relationship with DMITRIEV, from 2012 to 2018, MANN paid DMITRIEV about $780,000. That represented both repayments of principal and interest on the S-info loan. These payments were part of MANN's payments for S-Info.  If DMITRIEV maintains

he is owed money, his claim must have been directed against S-Info LLC (Russia), not against MANN individually.

60.    DMITRIEV concealed repayment of a substantial portion of his investment in this matter and before third parties, thereby acting in breach of contract.

61.    Plaintiff MANN is entitled to damages for breach of contract stated against DMITRIEV.

## COUNT IV.  MONEY HAD AND RECEIVED.

62.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-44, with the same force as though repled again and further state as follows.

63.    As stated above, MANN repaid to DMITRIEV a substantial portion of the loan from 2012 for investing in S-Info, which represented money had and received.

64.    The present Count is stated in addition or the alternative to the claims based on the contract.

65.    Plaintiff MANN is entitled to damages based on the equitable theory of money had and received against DMITRIEV.

## COUNT V.  UNJUST ENRICHMENT.

66.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-44, with the same force as though repled again and further state as follows.

67.    As stated above, MANN was making regular repayments of the loan from DMITRIEV, in regular payments, from February of 2012 until mid-2018, when DMITRIEV entered into a conspiracy with OSMANOV.

68.     DMITRIEV got unjustly enriched for the repayment amounts of the loan to him, which he fraudulently did not include in the Complaint's claim made against MANN.

69.     The present Count is stated in addition or the alternative to the claims based on the contract.

70.     Plaintiff MANN is entitled to the cause of action based on damages for unjust enrichment against DMITRIEV.

## COUNT VI.  RESTITUTION

71.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-44, with the same force as though repled again and further state as follows.

72.     As stated above, DMITRIEV elected to ignore the repayments under the contract dated February 6, 2012.  Therefore, DMITRIEV has opened the door to a restitution claim of over $0.8 million paid by MANN back to DMITRIEV.

73.     The present Count is stated in addition or the alternative to the claims based on the contract.

74.     Plaintiff MANN is entitled to the cause of action based on the restitution of over $0.8 million from DMITRIEV to the full extent allowed by the law.

## COUNT VII.  CIVIL CONSPIRACY.

75.     Plaintiffs incorporate by reference the allegations in preceding Paragraphs 1-44, with the same force as though repled again and further state as follows.

76.     In approximately mid-2018, as evidence shows, OSMANOV entered into a conspiracy with DMITRIEV.

12

77.    OSMANOV spearheaded that civil conspiracy, whereas he had access to the business documentation belonging to MANN and confiscated it, including for DMITRIEV's benefit, albeit illegally.

78.    It was a part of the conspiracy that OSMANOV withheld the documentary evidence on MANN's repayment to DMITRIEV of information and belief, over $0.8 million so that DMITRIEV made false claims against MANN.  DMITRIEV de facto assisted OSMANOV in that conspiracy.

79.    The purpose of that civil conspiracy was unlawful, namely to deprive MANN of assets, his access to documentation, and his entitlement to dividends and assets.

80.    Plaintiff MANN is entitled to damages for civil conspiracy stated against DMITRIEV.

## COUNT VIII.  DAMAGE TO BUSINESS REPUTATION.

81.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-44 with the same force as though repled against and further states as follows.

82.    In approximately mid-2018, as evidence shows, OSMANOV entered into a conspiracy with DMITRIEV.  They intended to keep MANN out of Russia, confiscate all of his assets in Russia and divide those among the participants.

83.    On information and belief, OSMANOV, who had access to MANN's business documentation.  OSMANOV illegally confiscated it, including for DMITRIEV's benefit.

84.    As evidence shows, OSMANOV orchestrated a criminal case opened by the Interior Ministry in Russia and an arrest warrant.

85.    It was a part of the conspiracy to mislead the law enforcement that OSMANOV withheld the documentary evidence on MANN's repayment to DMITRIEV of, on information and

belief, over $0.8 million so that DMITRIEV made false claims against MANN.  DMITRIEV willingly participated in the conspiracy to damage MANN's business reputation.

86.     The purpose of that damage to MANN's business reputation was to ruin MANN's business in Russia, confiscate his assets, and divide those among the participants in the conspiracy.

87.     The loss to MANN's business reputation exceeded $10 million, given the appraisal of S-Info and the volume of the assets and MANN's business expectations based on his businesses in Russia.

88.     Plaintiff MANN is entitled to damages for damage to business reputation caused by DMITRIEV.

### COUNT IX.  MISREPRESENTATION.

89.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-44 with the same force as though repled against and further states as follows.

90.     In approximately mid-2018, as evidence shows, OSMANOV entered into a conspiracy with DMITRIEV, intending to keep MANN out of Russia, confiscate all of his assets in Russia and divide those among the participants.

91.     Thereby, OSMANOV had access to the business documentation belonging to MANN, confiscating it, including for DMITRIEV's benefit.

92.     As evidence shows, OSMANOV, supported by DMITRIEV, made misrepresentations against MANN, as though MANN did not repay the loan.

93.     The primary purpose of the misrepresentations is that the conspiracy's participants misled the law enforcement that OSMANOV as though MANN did not repay the $1.5 million loan to DMITRIEV with interest.

94.     The purpose of those misrepresentations in which DMITRIEV participated was to ruin MANN's business in Russia, confiscate his assets, and divide those among the participants in the conspiracy.

95.     MANN is entitled to damages based on misrepresentation by DMITRIEV.

## X.  MISAPPROPRIATION.

96.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-44 with the same force as though repled against and further states as follows.

97.     As mentioned above, MANN repaid or paid DMITRIEV a total of over $0.8 million from 2012 to 2018.

98.     However, while making misrepresentations and undertaking concealment of facts, DMITRIEV withheld that information from various parties, including law enforcement, over $0.8 million had been repaid by MANN after the agreement of February 6, 2012.

99.     DMITRIEV renounced the fact that he had been in part repaid under those agreements.  DMITRIEV thus placed over $0.8 million outside of those contracts, which amounted to misappropriation by DMITRIEV.

100.     MANN is entitled to damages based on DMITRIEV's misappropriation.

## COUNT XI.  DAMAGE TO BUSINESS REPUTATION.

101.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-44 with the same force as though repled against and further states as follows.

102.     In approximately mid-2018, as evidence shows, OSMANOV entered into a conspiracy with DMITRIEV and other parties to keep MANN out of Russia, confiscate all of his assets in Russia and divide those among the participants.

15

103.    On information and belief, that civil conspiracy was orchestrated by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it, including for DMITRIEV's benefit, illegally.

104.    As evidence shows, OSMANOV orchestrated a criminal case opened by the Interior Ministry in Russia and an arrest warrant.

105.    For example, to mislead the law enforcement that OSMANOV withheld the documentary evidence on MANN's repayment to DMITRIEV of over $0.8 million, DMITRIEV made false claims against MANN.

106.    The purpose of OSMANOV's and DMITRIEV's damage to MANN's business reputation was to ruin MANN's business in Russia, confiscate his assets, and divide those among the participants in the conspiracy.

107.    The loss to MANN's business reputation exceeded $10 million, given the valuation of S-Info and the volume of the assets and MANN's business expectations based on his businesses operated in Russia.

108.    Plaintiff MANN is entitled to damages for damage to business reputation, with a devastating effect, caused by DMITRIEV.

## XIII. MISREPRESENTATION.

109.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-44 with the same force as though repled against and further states as follows.

110.    DMITRIEV, among other defendants in Counterclaim, undertook (1) false statements to third parties concerning material facts; (2) he knew that their representations were false; (3) he and others had an intention that the representation induced other parties to act on it;

16

which resulted in (4) the consequent injury to MANN, while various parties acted in reliance on their representations.

111.    As supported by evidence, MANN arranged regular payments to DMITRIEV, usually every month, which DMITRIEV subsequently concealed.

112.    In approximately mid-2018, as evidence shows, OSMANOV entered into a conspiracy with DMITRIEV, RYAZANOV, LATOUR, and her sons ARSENYI and GEORGY later with SEMENETS, intending to keep MANN out of Russia, confiscate all of his assets in Russia and divide those among the participants.

113.    On information and belief, that civil conspiracy and misrepresentations accompanying it were ratified by DMITRIEV and orchestrated by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it, including for the benefit of DMITRIEV, all being illegal.

114.    As evidence shows, DMITRIEV, joined by OSMANOV, RYAZANOV, LATOUR, ARSENYI, GEORGY, and SEMENETS, in a conspiracy, made misrepresentations to the Russian investigators concerning MANN, as though MANN did not repay the interest, loan principal, thus orchestrating a criminal case opened by the Interior Ministry in Russia, along with an arrest warrant.

115.    The primary purpose of the misrepresentaions of the conspiracy's participants was to mislead various parties as though MANN did not repay debts to DMITRIEV.

116.    DMITRIEV's and OSMANOV's misrepresentations were to ruin MANN's business in Russia, confiscate his assets, and divide those among the participants in the conspiracy.

117.    MANN is entitled to damages based on misrepresentation stated against DMITRIEV.

**WHEREFORE**, Plaintiff MANN prays for the relief in this action against DMITRIEV, as follows:

- Orders to DMITRIEV directing accounting for MANN's investments and other transactions allowed by local law and international business standards to the full extent.

- Damages inclusive interest, and/or to the full extent of the applicable law, on all Counts for which damages are sought.

- In the alternative, restitution by DMITRIEV of all money paid by MANN.

- Damages for breach of contract, damage to business reputation, and on other Counts, where damages are proper.

- To the extent allowed by the applicable law, punitive and/or exemplary damages relating to fraudulent concealment, civil conspiracy, and other claims.

- Such other and further relief as the Court will find just and fair.

- Attorney's fees and costs, as allowed by the applicable Federal Rules of Civil Procedure.

Dated: April 25, 2022.    Respectfully submitted,


_____/signed George Lambert/
George Lambert, Esq.
MA bar #568769
100 Cambridge Street, 14th Floor
Boston, MA 02114
Tel. (617) 925 7500, fax (800) 852 1950
Email: Lawoffice2279@gmail.com
Attorney for Defendant and Plaintiff
in Counterclaim Andrei MANN

## VERIFICATION

I, ANDREI MANN, party in the present action, state and declare that to the best of my

knowledge, the factual allegations stated herein are true and correct.

Andrei Mann,

Date: April 25, 2022

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day, April 25, 2022, the foregoing Answer was served via efiling by Pacer on the parties as follows:

Kenneth C. Pickering
Lauren E. Sparks,
Mirick, O'Connell, DeMallie & Lougee LLP
100 Front Street
Worcester MA 01608-1477
Tel. (508) 791-8500
kpickering@mirickoconnell.com
lsparks@mirickoconnell.com
Attorneys for all Plaintiffs;

Sean T. Carnathan
O'Connor, Carnathan and Mack LLC
67 South Bedford Street, #400W
Burlington, MA 01803
781-359-9002, Fax: 781-359-9001
Email: scarnathan@ocmlaw.net
Attorney for Defendant Michael Hellman

Date: April 25, 2022

                    */George Lambert/*
                    _____

                    George Lambert