IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMINETS<br><br>Plaintiffs,<br><br>v.<br><br>ANDREI MANN and MICHAEL HELLMAN<br><br>Defendants. | CIVIL ACTION No. 21cv40068-NMG<br><br>**VERIFIED COUNTERCLAIM OF DEFENDANT ANDREI MANN, PLAINTIFF IN COUNTERCLAIM,**<br><br>**AGAINST YUSUP OSMANOV, DEFENDANT IN COUNTERCLAIM**<br><br>**I. ACCOUNTING**<br>**II. FRAUDULENT CONCEALMENT** |
| ANDREI MANN<br><br>Plaintiff in Counterclaim<br><br>v.<br><br>PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMINETS<br><br>Defendants in Counterclaim | **III. BREACH OF CONTRACT**<br>**IV. MONEY HAD AND RECEIVED**<br>**V. UNJUST ENRICHMENT**<br>**VI. RESTITUTION**<br>**VII. CIVIL CONSPIRACY**<br>**VIII. BREACH OF FIDUCIARY DUTIES**<br>**IX. MISAPPROPRIATION**<br>**X. CONVERSION**<br>**XI. INTERFERENCE WITH BENEFICIAL BUSINESS RELATIONSHIP**<br>**XII. DAMAGE TO BUSINESS REPUTATION**<br>**XIII. MISREPRESENTATION**<br>**VX. DECLARATORY RELIEF**<br>**V. INJUNCTIVE RELIEF** |

**Preamble**

The present Counterclaim is brought, simultaneously with the Answer to the Complaint,

by an American investor, ANDREI MANN, against his former employee YUSUP OSMANOV,

as a part of the Answer to the Complaint brought by said party, as well as by six more parties.

Among other things, OSMANOV induced MANN to invest in two companies incorporated in

Croatia, about $ 1.6 million.  The American investor has become a shareholder in both Croatian companies located in the City of Pula, Croatia, on the Adriatic Sea.  Later, OSMANOV caused to confiscate MANN's assets.  Likewise, OSMANOV fraudulently caused to confiscate MANN's assets in the Russian Federation.  The Counterclaim includes accounting and damages based on fraudulent concealment, breach of contract, and seeking, in the alternative, equitable relief, e.g., unjust enrichment and restitution.  The action also seeks damages for civil conspiracy among the defendants and damages for breach of fiduciary duties.

## PARTIES.

1.      The plaintiff in Counterclaim ANDREI MANN (hereinafter MANN) is a resident of the Commonwealth of Massachusetts, with offices in Newton and the State of New York, having resided in the City of New York.  For over 30 years, MANN has been an entrepreneur, running several businesses, with a substantial portion of the activities in the publishing industry.  For example, one of MANN's publications exceeded a circulation of 4.5 million copies. MANN is also an investor with investment projects in various jurisdictions internationally.

2.      The defendant in Counterclaim YUSUP OSMANOV (herewith OSMANOV) is a Russian national whose address is 4/7 Troilinskiy pereulok, Apt 65, Moscow, 119002. OSMANOV is a defendant in this Counterclaim because after working for MANN and his business for several years, he abused his access to financial and other documentation.  OSMANOV breached his fiduciary obligations and turned against MANN, causing various monetary damages and causing other harm to MANN.

NON-PARTIES AFFILIATED WITH DEFENDANT IN COUNTERCLAIM
YUSUP OSMANOV, GLOSSARY.

3.     For purposes of this Counterclaim, the following parties, which are not defendants, but are most relevant for the facts alleged below, are identified hereinafter.

4.     FIRST CRANDULL CONSTRUCTION INC. (hereinafter also CRANDULL) is a corporation registered in Massachusetts on December 12, 2006, upon conversion of the Delaware corporation under that name, originally incorporated on February 13, 2001, State Docket #3355576.  MANN has participated in CRANDULL for investments and holding purposes, particularly in the Russian Federation.

5.     OOO KRISTA-2 (hereinafter also CRISTA-2) is a company incorporated in Moscow, Russia, in 1993, with the latest information about its office: 1, 3rd Frunzenskaya St., Apt 1.  MANN has been one of the investors in KRISTA-2.

6.     ZLATNA DUGA D.O.O. (hereinafter ZLATNA) is a company registered in Croatia in 2007, Croatian TIN (taxpayer ID) 28415046278, at Valica 11, 52100 Pula, Croatia. According to the description of the directors in the registry of businesses, ZLATNA's business is buying and selling properties and various realty projects.  MANN has a 50% stake in that company. Other Plaintiff himself, MANN, is aware of one other investor with a 50% stake, OSMANOV, TIN: 69140074183.

7.     A.A. IMOVINA I SERVIS D.O.O. (hereinafter IMOVINA) is a company registered in Croatia in 2007, Croatian TIN: 61151635514, at the address: Istarskih Brigada 10, 52100 Pula, Croatia.  According to the description by the directors in the registry of businesses, IMOVINA's business is trade, housebuilding, and acting as a tourist agency and travel agency. MANN has an 18.75% stake in that company.  Other than Plaintiff himself, MANN is aware of other investors: ANDREY KARPENKO, TIN: 65771402510, ANDREY ZVEREV, TIN: 83700615757, and OSMANOV, IN: 69140074183.  MANN's investment was made equal to

OSMANOV through a company SPID-INFO, namely 38.5%.  Later MANN and OSMANOV, splitting their stakes, treated their investments separately.

8.    SULEIMAN GUSEINOV, aka SULEIMAN MAGOMETOVICH GUSEINOV (hereinafter GUSEINOV), is a Russian national residing, on information and belief, at 24 Kutuzovsky Ave., Apt 354, Moscow, 121115.  On information and belief, GUSEINOV is OSMANOV's father-in-law. GUSEINOV has served as a nominee for OSMANOV for confiscating for OSMANOV on or about February 20, 2020, the real estate assets in Russia in which MANN has an interest.  The total value of that realty is over $1 million.

9.    ANDREY KARPENKO (hereinafter KARPENKO) has been a director, member, and stakeholder in ZLATNA and IMOVINA.  KARPENKO's holding is registered under TIN: 65771402510.  On information and belief, KARPENKO is a permanent resident in Croatia or holds a Croatian passport.  MANN is unaware of KARPENKO's address(es) at this time, other than the companies' office addresses in Pula, Croatia.  KARPENKO is a director who has been or is entitled to have control over documentation of either of the above companies.

10.    ARSEN KOMUTAEV (hereinafter KOMUTAEV) has been, to the best of MANN's knowledge, a director and member in ZLATNA and IMOVINA.  KOMUTAEV is, on information and belief, a distant relative and a representative of Defendant in Counterclaim OSMANOV, acting on his behalf in both companies.  On information and belief, KOMUTAEV's address in Russia is 38 Svoboda Street, Apt 65, Moscow, Russia.  KOMUTAEV is a director who has been entitled to control the documentation of the above companies in Croatia.

11.    MIKHAIL MANUKYAN (hereinafter MANUKYAN) has been, to the best of MANN's knowledge, a director and member of IMOVINA.  MANN is aware of MANYKYAN's addresses in Cyprus: Cipra, 4040 Limassol, Flat 102, Andrea Zappa 9, Cyprus; and Μακαρίου III

& Λόρδου Βύρωνος, P. LORDOS, Center Block B, Floor 2, Flat 202 Νεάπολη 3105, Λεμεσός, Κύπρος, Cyprus.  MANUKYAN is a defendant in this action as a director of IMOVINA, who has been or is entitled to have control over documentation of IMOVINA.

12.    SANJA BOLKOVIC, aka SANJA BOLKOVIĆ (hereinafter BOLKOVIC), has been a director at ZLATNA and IMOVINA.  Other than serving as a director, BOLKOVIC has worked as an interpreter and translator. MANN is aware of BOLKOVIC's address, Alde Negrija 31, 52 100 Pula, Croatia.  BOLKOVIC is a director who has been in control of documentation of both or either of the above companies.

13.    SANDRA SEMOLIC, aka SANDRA SEMOLIĆ (hereinafter SEMOLICH), has been the accountant at ZLATNA and IMOVINA.  SEMOLIC's name is on a series of banking records related to both companies.  MANN is unaware of the address(es) of SEMOLIC, other than the corporate addresses of the above two companies in Pula, Croatia.  SEMOLIC has been in control of the documentation of the above Croatian companies.

## JURISDICTION.

14.    This Court has jurisdiction in this action over the present defendant in Counterclaim residing, on information and belief, in the Russian Federation because he submitted himself to the jurisdiction of this Court while filing a Complaint on June 22, 2021.

### FACTS RELEVANT TO ALL COUNTS OF CLAIMS.

#### A. YUSUP OSMANOV'S WORK FOR ANDREI MANN IN MOSCOW, OSMANOV'S ACTS IN BAD FAITH

15.    On February 13, 2001, MANN caused to incorporate in Delaware FIRST CRANDULL CONSTRUCTION INC., State docket #3355576, for various business purposes.  On

December 12, 2006, it was converted into a Massachusetts corporation, with an address: 61 Great Meadow Rd., Newton, MA 02459, EIN ID #113587928.

16.     In 2004, CRANDULL was registered in the Russian Federation as a representative office of a foreign corporation, with the right to hold assets.  CRANDULL was registered with the Tax Interdistrict Department No. 47 for Moscow.

17.     MANN caused that certain realty in the Russian Federation, acquired on or about September 22, 2004, to be held in the name of CRANDULL.

18.     From the date of CRANDULL's registration in Russia, OSMANOV has served as a representative office director.  OSMANOV's information shows tax ID 770401516773, at 4/7 Troilinsky pereulok, Apt 59, Moscow, 119002.

19.     From about 2017, MANN learned from reliable sources that OSMANOV engaged in activities without MANN's or CRANDULL's authorization.

20.     MANN also learned that OSMANOV engaged in self-dealing.  OSMANOV directed S-Info and MANN to direct the payments, from time to time, to his account at Sabadell Bank, Alicante, Spain, on information and belief to bypass the taxes in Russia.  OSMANOV used those moneys to maintain his house at Ciudad Quesada, Rojales, in the Province Alicante, Spain.

21.     On June 17, 2019, CRANDULL's corporate act terminated OSMANOV, prohibiting him from acting on behalf of its Moscow Office.

## B. OSMANOV'S CONFISCATION OF REALTY ASSETS IN RUSSIA

22.     Despite being terminated, OSMANOV unlawfully and fraudulently continued to act as the director of CRANDULL's office in Moscow, signing papers on its letterhead, including filing those in administrative offices in Russia.

23.     While unlawfully holding himself out as CRANDULL's director in Moscow, OSANOV engaged in a scheme to confiscate CRANDULL's realty assets in Russia.

24.     CRANDULL's realty included a property in Moscow Region, Uspenski District, town Nikolina Gora, the plots registered as plot № 245, #50:20:005 02 11:0267, 995 sq. meters, #50:20:005 02 11:0328, 574 sq. meters, plot № 244, # 50:20:005 02 11:0269, 1,005 sq. meters, #50:20:005 02 11:0329, 426 sq. meters.

25.     As evidence shows, on or about February 20, 2020, OSMANOV caused to illegally transferred the rights to that real estate to GUSEINOV, his father-in-law, and his nominee.

26.     On information and belief,  OSMANOV paid off either non-existent debts or disputed debts of MANN and arranged for the confiscation of CRANDULL real estate for himself. However, MANN was not approved as a debtor to OSMANOV or GUSEYNOV. For example, by a court decision in Moscow dated August 17, 2021, OSMANOV was excluded from the list of MANN creditors.  In any event, it was CRANDULL that owned that realty, not MANN.

27.     OSMANOV acted illegally and in violation of the Operating Agreement of CRANDULL issued by the Board on December 12, 2006.  CRANDULL's Operating Agreement stated that a power of attorney to the corporation's representative in Russia does not allow him/her to transfer any assets, pledge those, or dispose of those under any circumstances.  That illegal transaction, transferring corporate assets to an individual, OSMANOV's relative, was illegal.

28.     By acting in that manner, OSMANOV caused CRANDULL's losses,  over $1 million.  While MANN has an interest in CRANDULL, OSMANOV caused damages to MANN.

C. CONVERSION BY YUSUP OSMANOV OF BUSINESS RECORDS AND COMMERCIAL
PAPERS OF MANN; INITIATION OF CONSPIRACY

29.     Using his access to MANN's business documentation, in or about 2019, OSMANOV, despite his fiduciary obligations to his employer MANN, started to use various pretexts not to provide MANN with the necessary documentation as necessary.

30.     As it turned out, OSMANOV, abusing his access to the boxes of documents, converted MANN's business documentation and valuable commercial paper belonging to MANN. OSMANOV did so to fabricate false documents in the name of CRANDULL, S-Info, and other entities that MANN managed.

31.     Furthermore, OSMANOV approached various parties in a business relationship with MANN and, on information and belief, proposed to ruin MANN's businesses, confiscate his assets, proposing financial benefits to such parties.  That included DARIA LATOUR.  Using his access to the business records, OSMANOV converted the financial records memorializing the repayments of the loan to LATOUR.

D. CONFISCATION BY YUSUP OSMANOV OF ANDREI MANN'S ASSETS IN CROATIA

32.     In or about 2007, both ZLATNA and IMOVINA were registered in Croatia in the City of Pula, on the Adriatic Coast of Croatia.

33.     The main assets of ZLATNA and IMOVINA were the rights to the land with permits for development.  Those rights were held in the companies' names by the prior owners.

34.     From 2008-to 2010, MANN received a series of business proposals from Croatia connected to ZLATNA and IMOVINA.  Those proposals were received through KARPENKO, who happened to be a contractor for MANN's residential house in the neighborhood of Moscow, Russia.

35.    KARPENKO represented to MANN, had powerful and beneficial connections in Croatia. He was involved in the construction business in that country.

36.    KARPENKO and OSMANOV, who had a prior relationship before acquaintance with MANN, proposed MANN to join a construction project in Croatia.  The investments were to be channeled, in part, through Petrotek-Holding, a company registered in Moscow.

37.    In 2008-2010, the prior owners of the rights completed their complex claims among themselves to clear the rights to the titles to the land.

38.    KARPENKO and OSMANOV made representations to MANN that investments in Croatia were now safe and that they controlled the legality and safety of the proposed investments in Croatia.

39.    Additionally, MANN got similar assurances from Petrotek-Holding's principals, Viktor Islamov, Albert Kharisov, and Sergey Chernikov, whom MANN knew before.

40.    MANN also received assurances from other Petrotek-Holding's managers, namely Defendant MANYKYAN and Andrey Zverev.

41.    The business purposes of both companies were declared, for registration, to be construction, transportation, and travel agencies' services.  Defendants opened the bank accounts for both companies.

42.    What was not disclosed to MANN in the course of the representations by the above persons associated with Petrotek-Holding was that they all were to benefit from MANN's investments directly.

43.    At some point, OSMANOV bought a 50% stake in ZLATNA from Petrotek-Holding.

44.    It was represented to MANN that Petrotek paid in 2008 about $3 million to purchase land in Croatia.

45.    As proposed to MANN, he was to invest and buy out half of that amount, about $1.6 million with interest, as a loan.

46.    Thereby, all investments by all participants were memorialized as personal investments of the participants in their individual capacities, regardless of the corporate structures.

47.    ZLATNA's bank account was No: 2340009-1110311460, at Privredna Banka Zagreb d.d., with the address: Zagreb, Podruznicz, Pula, Ulica Sergijevaca 11, Pula, Croatia, bank's IBAN ID: HR08 2340 0091 1103 1146 0.  The account had a local currency and Euros sub-accounts.

48.    Likewise, IMOVINA's bank account was at the same bank, No. 082340009-111 0284395 Priveredna Banka Zagreb,  with the same information on the bank, likewise having a local currency and Euros sub-accounts.

49.    MANN did due diligence research and had no concerns as to the reliability of the bank for sending investments in Croatia.  Privredna Banka Zagreb, or PBZ, established in 1966, is the second-largest bank in Croatia (after Zagrebačka Banka), owned by the Intesa Sanpaolo group of Italy. It is listed on the Zagreb Stock Exchange and is one of 24 companies included in the CROBEX share index.

50.    MANN's due diligence research showed that that bank was fully privatized in 1999. As of 2017-2018, that bank had a net income of €223 million (about $250 million), total assets of about €10,047 million (about $10.5 billion), and about 3,650 employees.  MANN was satisfied that that bank was stable, had sufficient documentation, and could be the source of detailed financial documentation concerning its clients ZLATNA and IMOVINA.

51.     MANN considered, among other things, that Croatia executed the Bilateral Investment Treaty with the USA.  It was signed on July 13, 1996, and entered into force on June 20, 2001.  That Treaty contains typical terms aimed at protecting American investors in that country.

52.     By approximately 2014, OSMANOV, acting in concert with KARPENKO, MANUKYAN, and KOMUTAEV, became the driving force for both companies, ZLATNA and IMOVINA.  Namely, OSMANOV replaced Petrotek as the investor in these two companies.

53.     In the latest available company assets and liabilities statement of ZLATNA for 2014, there is an entry that the debt of ZLATNA to its investors was 18,160,511 Croatian kunas (local currency), which is, at the current rate of exchange, about $2.8 million, plus interest.  Since MANN has a 50% stake in that entity, ZLATNA's debt to MANN is at least $1.4 million.

54.     In 2015, MANN conducted negotiations to sell his stake in ZLATNA and IMOVINA with a potential buyer, a Croatian national Jadranka Maksic, a local realtor.  Those negotiations were not successful, given the complications with the rights to the titles to the land, coming with the ownership stakes in ZLATNA and IMOVINA.

55.     Likewise, in the latest available company assets and liabilities of IMOVINA, for 2014, there is an entry that the debt of IMOVINA to its investors was 6,316,848.19 Croatian kunas, which at the present exchange rate is about $1 million, plus interest.  Since MANN has an 18.75% stake in IMOVINA, the debt of IMOVINA to MANN is in excess of $190,000.

56.     From time to time, the local directors of both companies sent out invoices for certain payments for the day-to-day business of the companies in Croatia.

57.     In 2017, MANN executed with OSMANOV a loan agreement for about $650,000. However, a loan did not mean that MANN transferred his material rights to the land held in the

names of ZLATNA or IMOVINA. That loan agreement was not officially registered or certified by any authority.

58.     Since 2018, MANN has been unable to obtain substantive information or accounting documents from ZLATNA and IMOVINA. Furthermore, MANN's loan did not allow OSMANOV to remove MANN from control over the accounting in ZLATNA and IMOVINA.

59.     On November 4, 2019, MANN executed in New York City a Power of Attorney to German Kisselman, a Russian national, who proposed facilitating the collection of information and liquidation of the assets for MANN.

60.     After that Power of Attorney, Apostilled, was sent to Kisselman, it turned out that Kisselman became unavailable or unreachable. MANN suspects that OSMANOV used Kisselman to deprive MANN of his interest in ZLATNA and IMOVINA. Otherwise, Kisselman's silence despite MANN's inquiries could be inexplicable.

61.     Once the COVID-19 pandemic started to spread in Europe, MANN understood that there could be delays in accounting and documentation.

62.     MANN has been able to find out from the companies' registry in Croatia that both companies are active, which eased MANN's concerns.

63.     Yet, despite the passage of time, MANN has been unable to obtain accounting documentation from either of the companies.

64.     Given the silence from the directors, MANN has made a business decision to withdraw his investment(s) from ZLATNA and IMOVINA, pulling out the assets due to him.

E. CONFISCATION BY YUSUP OSMANOV OF MANN'S INVESTMENT IN KRISTA-2.

65.     On or about April 28, 1993, on information and belief, OOO Krista-2 (Krista-2) was incorporated at the registered address, with the office since 2004; 1 3rd Frunzenskaya St., Apt 1, Moscow, Russia.

66.     Since the early 2000s, the meetings of the Board took place at S-Info's office at 10A/1, Tysyacha Devyatsot Pyatogo Goda str., Moscow, 123022.

67.     MANN invested in Krista-2 over $200,000.   There were three more investors: OSMANOV and two more investors.   Subsequently, KOMUTAEV replaced OSMANOV as the shareholder.

68.     Since 2018, OSMANOV and others at OOO Krista-2 stopped sending to MANN any information about the company's affairs.

69.     On information and belief, OSMANOV, using fraudulent concealment, confiscated MANN's investment in Krista-2.


F.  OSMANOV'S CONVERSION OF THE SHCHEPINS' TRUST PROCEEDS AND FALSELY SHIFTING BLAME ON MANN.

70.     From about 1997-to 1998, Dmitry placed the proceeds from his salary and benefits and other amounts in a trust for his two sons, ARSENYI and GEORGY, at Fleet National Bank in Boston (presently merged into Bank of America).   MANN had nothing to do with that trust, as the production of documents has shown.

71.     The trust documentation says that Fleet National Bank in Boston was the trustee for the sons.   Thereby MANN had no connections with anyone at that bank and had nothing to do with the bank's attorneys setting up the trust documentation for LATOUR's sons.

72.     On information and belief, in June of 2016, Dmitry, the main contributor to the trust in Massachusetts, LATOUR, ARSENYI, and GEORGY closed the trust in Massachusetts.

73.     They caused the trust proceeds, approximately $600,000 for each of both sons, a total of $1.2 million, to be transferred to the account or account at Otkrytye bank, a Russian bank in Moscow.  MANN had nothing to do with those transactions nor control over the account(s) at Otkrytye bank.

74.     MANN has no information as to what happened to that money.  MANN had no control over such an account or accounts at Otrytye Bank and had no statements from those bank accounts, controlled at that time by LATOUR's family members.

75.     MANN has information, albeit by word of mouth, that OSMANOV was involved in liquidating those proceeds for his benefit in Moscow, misappropriating the trust proceeds to his benefit.  Thereupon, OSMANOV blamed MANN.

76.     LATOUR and her co-conspirator and accomplice OSMANOV began to make false representations and provide falsified documentation to various parties, as though MANN had access to the account at Otkrytye Bank, which he did not have.

77.     LATOUR and OSMANOV intentionally ignored that MANN had no signature right for the account(s) at Otkryetye bank, had no access to bank statements from that account or accounts, and could not possibly transfer anything out of those accounts.

## G. SUMMARY OF BUSINESS DAMAGES TO MANN.

78.     As a result of the subversive activities in which OSMANOV engaged contrary to MANN's interests, using the confiscation of the documentation and blocking MANN's access to any documentation, OSMANOV spearheaded the conspiracy to ruin MANN's assets and life.

79.     S-Info, where MANN was the majority stakeholder, was subject to yearly official auditing at the end of 2017, the last year before OSMANOV engaged, as an insider, in the

destruction of business and seizing of various assets. Under auditing, S-Info's assets in 2017 included: newspapers, magazines, books, children's books, advertising, trademarks' and trade names' ownership, including those registered outside of Russia. S-Info owned literary rights, rights to domain names on the net, rights to published production, such as periodic publications, books, children's textbooks, archives, and the library of all publications under the umbrella of S-Info, both in the printed and electronic form.

80.    The aggregate value of those assets under S-Info's control was valued at $7.8 million.

81.    However, the actual market value of S-Info was 2 to 3 times greater because the business typically could be sold in Russia for an amount 2-3 times more than its Earnings before Interest, Taxes, Depreciation, and Amortization (EBITDA), used in Russia.

82.    Accordingly, MANN's loss due to OSMANOV's and others' destruction of S-Info alone was over $10 million.

## COUNT I. ACCOUNTING

83.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89, with the same force as though repled again and further state as follows.

84.    In or about 2020, OSMANOV, using his father-in-law GUSEINOV, caused to confiscate CRANDULL's realty in Moscow Region and MANN's stake in Krista-2. Likewise, OSMANOV, using his agent KOMUTAEV, caused the indebtedness of ZLATNA to MANN, in which he has held a 50% stake, was $1.4 million and the indebtedness of IMOVINA to MANN, in which he has held an 18.75% stake, was about $190,000. Those numbers were as of 2014, the latest time MANN could obtain those.

85.    MANN demands all and any accounting documentation from OSMANOV, to the full extent allowed by the local laws and international business standards of accounting regarding CRANDULL's operations in Moscow, KRISTA-2, ZLATNA, and IMOVINA.

86.    MANN demands from OSMANOV disclosure of the allegedly illegal wire transfers that OSMANOV made from S-Info's or MANN's assets to his account at Sabadell Bank, Alicante, Spain.  On information and belief, OSMANOV used that money, among other things, to maintain his house at Ciudad Quesada, Rojales in Alicante, Spain.

87.    OSMANOV should also be ordered to account for his role in the trust proceeds of ARSENYI and GEORGY.

88.    OSMANOV should be ordered to produce the banking records from Russia and Croatia that he controls personally or through his agents GUSEINOV, KOMUTAEV, and others.

89.    As a victim of fraud, an investor, shareholder, and former employer, MANN is entitled to an accounting from OSMANOV.

## COUNT II.  FRAUDULENT CONCEALMENT.

90.    Plaintiffs incorporate by reference the allegations in preceding Paragraphs 1-89, with the same force as though repled again and further state as follows.

91.    From about 2017 onwards, MANN observed that, because of OSMANOV's and KOMUTAEV's activities, it became difficult or impossible to obtain sufficient documentation from ZLATNA and IMOVINA.

92.    MANN observed KOMUTAEV, acting under OSMANOV's direction, and other directors, who had been contact persons for MANN's questions to ZLATNA and IMOVINA, stopped sending documents, which they had in their capacities as directors, to account before

MANN as the investor, shareholder, and one more director.  Such conduct was intentional and constituted fraudulent concealment by OSMANOV.

93.    OSMANOV, exercising his control over both companies, arranged that a local director in Croatia, BOLKOVIC, aka BOLKOVIĆ, failed to produce the documentation due to MANN.

94.    Likewise, OSMANOV, exercising his control over the realty in Moscow Region, confiscated from CRANDULL and his control over KRISTA-2, concealed most relevant information concerning MANN's material interests.

95.    Plaintiff MANN is entitled to damages for fraudulent concealment stated against OSMANOV.

## COUNT III.  BREACH OF CONTRACT.

96.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89 with the same force as though repled against and further states as follows.

97.    While serving as CRANDULL's representative in Moscow, OSMANOV breached his employment contract and/or obligations.  Using his access to the documentation and holding himself out as an authorized person, OSMANOV continued to act in CRANDULL's name.  That occurred after CRANDULL terminated OSMANOV from being its representative in Moscow.

98.    Based on the contractual relationship of MANN with OSMANOV, MANN's investments in the ZLATNA and IMOVINA, amounting to $1.4 million and $190,000, respectively, created a contractual relationship between the investor and the company debtors.

99.    Under that contractual relationship, OSMANOV and both companies under his indirect control in Croatia were obligated to safely and responsibly use MANN's business investments and development in Croatia and internationally.

100.    That included OSMANOV's, ZLATNA's, and IMOVINA's obligation to provide accounting, pay off dividends when due, and submit documentation when requested.

101.    Plaintiff MANN is entitled to damages for breach of contract stated against OSMANOV.

## COUNT IV.  MONEY HAD AND RECEIVED.

102.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89, with the same force as though repled again and further state as follows.

103.    As stated above, ZLATNA and IMOVINA, controlled by OSMANOV, admitted to MANN and other investors that debts existed to the investors.  Out of that debt, MANN's entitlement to the debt of ZLATNA was about $1.4 million, and the debt of IMOVINA about $190,000.  That admission of the debt was based on MANN's contributions of capital and other payments both to ZLATNA and IMOVINA, both under OSMANOV's control.

104.    As stated above, MANN invested over $200,000 into KRISTA-2, after which OSMANOV, on information and belief, confiscated MANN's investment.

105.    The present Count is stated in addition or the alternative to the claims based on the contract.

106.    Plaintiff MANN is entitled to damages based on the equitable theory of money had and received against OSMANOV.

## COUNT V.  UNJUST ENRICHMENT.

107.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89, with the same force as though repled again and further state as follows.

108.    In February of 2020, OSMANOV arranged for the fraudulent transfer of the realty held by CRANDULL to his father-in-law GUSEINOV, all without authority, with malice.  MANN has a stake in CRANDULL.  OSMANOV got unjustly enriched for the value of that realty, for a total of over $1 million.

109.    As stated above, ZLATNA and IMOVINA, under the control of OSMANOV, admitted to MANN and other investors that debts existed to the investors.  Out of that debt, MANN's entitlement to the debt of ZLATNA was about $1.4 million, and the debt of IMOVINA about $190,000.  That admission of the debt was based on MANN's contributions of capital and other payments both to ZLATNA and IMOVINA, controlled by OSMANOV.

110.    As stated above, both ZLATNA nor IMOVINA, controlled by OSMANOV, failed to provide the documentation required from the companies before the investors.

111.    Moreover, under the directives of OSMANOV, the directors of ZLATNA and IMOVINA stopped providing any accounting.  MANN has concluded that ZLATNA and IMOVINA, because of OSMANOV's confiscating MANN's assets, have no intention to account for their investors' capital, dividends, or any corporate affairs.

112.    Plaintiff MANN is entitled to the cause of action based on damages for unjust enrichment against OSMANOV.

## COUNT VI.  RESTITUTION

113.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89, with the same force as though repled again and further state as follows.

114.    As stated above, OSMANOV caused the realty in Moscow Region, held by CRANDULL, to be confiscated and transferred on February 20, 2020, to his father-in-law,

GUSEINOV.  MANN has a stake in CRANDULL and is entitled to claim restitution, namely that GUSEINOV return the title to CRANDULL.

115.    As stated above, ZLATNA and IMOVINA, controlled by OSMANOV and KOMUTAEV, admitted to MANN and other investors that debts existed to the investors.  Out of that debt, MANN's entitlement to the debt of ZLATNA was about $1.4 million, and the debt of IMOVINA about $190,000.  That admission of the debt was based on MANN's contributions of capital and other payments both to ZLATNA and IMOVINA, controlled by OSMANOV and KOMUTAEV.

116.    As mentioned above,  ZLATNA and IMOVINA stopped providing any accounting. MANN has concluded that OSMANOV caused that ZLATNA and IMOVINA have no intention to account for their investors' capital, dividends, or any corporate affairs.

117.    Plaintiff MANN is entitled to the cause of action based on restitution from OSMANOV.

## COUNT VII.  CIVIL CONSPIRACY.

118.    Plaintiffs incorporate by reference the allegations in preceding Paragraphs 1-89, with the same force as though repled again and further state as follows.

119.    OSMANOV was the driving force in several conspiracies he organized against MANN, as facts show.

120.    In or about 2017, as MANN has observed, OSMANOV arranged through KOMUTAEV and other contact persons at ZLATNA and IMOVINA, with whom he had communicated before, stopped responding or providing documentation to MANN.

121.    On information and belief, that civil conspiracy was orchestrated by OSMANOV, who had sufficient influence upon the business conduct of his relative KOMUTAEV, as well as KARPENKO and MANUKYAN.

122.    As mentioned above, OSMANOV was removed from the heading of the representative office of CRANDULL in Moscow and from doing anything for or on behalf of MANN. Yet, Osmanov continued setting up conspiracies against him with other parties.

123.    On or about February 20, 2020, OSMANOV, acting in agreement and a conspiracy with his father-in-law GUSEINOV, caused to confiscate the realty held by CRANDULL, located in Moscow Region.

124.    The purpose of that civil conspiracy was unlawful, namely to deprive MANN of his access to documentation and his entitlement to dividends and assets.

125.    Plaintiff MANN is entitled to damages for civil conspiracy stated against OSMANOV.

## COUNT VIII.  BREACH OF FIDUCIARY DUTIES.

126.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89 with the same force as though repled against and further states as follows.

127.    OSMANOV worked for MANN for several years and owed fiduciary duties to MANN not to engage in fraudulent activities and preserve MANN's assets.  Instead, OSMANOV engaged in raiding MANN's assets.

128.    OSMANOV also induced MANN to invest in two Croatian companies that OSMANOV, as it turned out, was in a position to control. MANN's investments in the ZLATNA and IMOVINA, exceeding, with interest, a total of $1.4 million and $190,000, respectively, created

a contractual relationship between the investor and the company regarding dividends and other terms.

129.    Under that contractual relationship, OSMANOV, ZLATNA, and IMOVINA were obligated to safely and responsively use MANN's business investments and development in Croatia and internationally.    That included the obligations of OSMANOV, ZLATNA, and IMOVINA to provide accounting, pay off dividends when due, and submit documentation and pay dividends when warranted.

130.    Likewise, as a director, OSMANOV's relative KOMUTAEV had fiduciary obligations before the investors with a substantial stake, namely 50% and 18.75%, respectively.

131.    In another instance, OSMANOV breached his fiduciary duties after CRANDULL terminated him to act on its behalf.    Despite being terminated, OSMANOV continued to carry on to materialize unlawful acts as the director of CRANDULL's office in Moscow.    That included, as described above, the confiscation on or about February 20, 2020, of CRANDULL's real estate property in the Moscow Region.

132.    OSMANOV had fiduciary obligations not to act unlawfully and provide an accounting to MANN.

133.    Plaintiff MANN is entitled to damages for breach of fiduciary duties, stated against OSMANOV.

## COUNT IX.  MISREPRESENTATION.

134.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89 with the same force as though repled against and further states as follows.

135.    On numerous occasions, OSMANOV engaged in misrepresentations to MANN and before third parties, affecting MANN.

136.    While acting as a director of Moscow's office of CRANDULL, OSMANOV made misrepresentations to MANN as to the status of affairs with CRANDULL's assets in Russia.

137.    OSMANOV also fraudulently induced MANN to invest in two Croatian companies, making misrepresentations as though such investment was safe, knowing that he was in a position to cut off MANN from all information and to confiscate MANN's stake.

138.    MANN is entitled to damages against OSMANOV based on misrepresentation.

## X. CONVERSION.

139.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89 with the same force as though repled against and further states as follows.

140.    As mentioned above, in or about 2019, OSMANOV, abusing his access to the business documentation of MANN, confiscated MANN's business documentation and commercial paper.  Using that conversion, OSMANOV started to illegally hold himself out as CRANDULL's representative of its Moscow office and engage in the scheme of converting assets, all without authority or rights.

141.    On June 17, 2019, OSMANOV's powers were terminated by CRANDULL.  Yet, OSMANOV continued to act as if he still was in control, perpetuating the conversion of the business documentation and commercial paper belonging to MANN, to which he had no title.

142.    MANN is entitled to damages based on OSMANOV's conversion.

    //

## XI.  INTERFERENCE WITH BENEFICIAL BUSINESS RELATIONSHIP.

143.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89 with the same force as though repled against and further states as follows.

144.    While converting MANN's business records and commercial paper, in 2019, OSMANOV approached several of the plaintiffs in this action, proposing to ruin MANN's businesses and confiscate his assets to benefit himself and other business parties.

145.    For example, in 2019, OSMANOV approached LATOUR, using his conversion of the business records of repayment to her of the business loan, which originated in 2010.  As a result, MANN's beneficial business relationship with LATOUR was ruined.   Using the confiscation of the MANN's records, LATOUR turned against MANN, demanding to repay the loan from LATOUR and interest thereupon for the second time, causing damages to MANN.

146.    MANN is entitled to damages against OSMANOV for interference with his beneficial relationship.

## COUNT XII.  DAMAGE TO BUSINESS REPUTATION.

147.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89 with the same force as though repled against and further states as follows.

148.    In June 2018, OSMANOV, supported by RYAZANOV, entered into a conspiracy with LATOUR and her sons ARSENYI and GEORGY, and other parties to keep MANN out of Russia, confiscate all of his assets in Russia and divide those among the participants.

149.    On information and belief, that civil conspiracy was orchestrated by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it, including

for RYAZANOV, LATOUR, and her sons' benefit, and later for SEMENETS's benefit.  All that was illegal.

150.    As evidence shows, OSMANOV, supported by LATOUR, ARSENYI, GEORGY, and others, orchestrated a criminal case opened by the Interior Ministry in Russia and an arrest warrant.    OSMANOV prepared false claims for ratification by LATOUR, ARSENYI, and GEORGY.

151.    For example, to mislead law enforcement that OSMANOV withheld the documentary evidence on MANN's repayment to LATOUR of about $1 million (the principal amount and interest repayments), LATOUR acts in conspiracy with OSMANOV made false claims against MANN.  As it turned out, OSMANOV attained the cooperation of ARSENYI and GEORGY, even though their money, about $1.2 million, got under OSMANOV's control and benefit.

152.    The purpose of OSMANOV's damage to MANN's business reputation was to ruin MANN's business in Russia, confiscate his assets, and divide those among the participants in the conspiracy.

153.    The loss to MANN's business reputation should be over $10 million, given the volume of the assets and MANN's business expectations based on his businesses operated in Russia.

154.    Apart from the direct losses, Plaintiff MANN is entitled to damages for damage to business reputation, with a devastating effect, caused by OSMANOV.

//

//

## COUNT XIII.  MISREPRESENTATION.

155.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89 with the same force as though repled against and further states as follows.

156.    OSMANOV, among other defendants in Counterclaim, undertook (1) false statements to the Russian investigators and other persons concerning material facts; (2) they knew that their representations were false; (3) they had an intention that the representation induced other parties to act on it; which resulted in (4) consequent injury to MANN, while various parties acted in reliance on their representations.

157.    As facts supported by evidence show, MANN arranged for regular payments, usually every month, to OSMANOV, which the latter subsequently concealed.

158.    In approximately mid-2018, as evidence shows, OSMANOV entered into a conspiracy with RYAZANOV, LATOUR, and her sons ARSENYI and GEORGY, and later with SEMENETS, intending to keep MANN out of Russia, confiscate all of his assets in Russia and divide those among the participants.

159.    That civil conspiracy and misrepresentations were orchestrated by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it, including for RYAZANOV's,  LATOUR's, her sons' benefit, and for the benefit of SEMENETS, all being illegal.

160.    As evidence shows, OSMANOV, joined by RYAZANOV, LATOUR, ARSENYI, GEORGY, and SEMENETS, in a conspiracy, made misrepresentations to the Russian investigators concerning MANN, as though MANN did not repay the interest, loan principal, thus orchestrating a criminal case opened by the Interior Ministry in Russia, along with an arrest warrant.

161.    The primary purpose of the misrepresentation was that the conspiracy's participants misled the law enforcement as though MANN did not repay debts to OSMANOV.

162.    OSMANOV participated in, endorsed, or ratified the misrepresentations by LATOUR, ARSENYI, and GEORGY concerning the trust proceeds placed in 2016 to the account or accounts at Otkrytye bank in Moscow and then elsewhere.  Those transactions could not be made without their approval, participation, and misrepresentations.

163.    The purpose of OSMANOV's misrepresentations was to ruin MANN's business in Russia, confiscate his assets, and divide those among the participants in the conspiracy.

164.    MANN is entitled to damages based on misrepresentation by OSMANOV.

## COUNT XIV.  DECLARATORY RELIEF.

165.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89 with the same force as though repled against and further states as follows.

166.    On February 24, 2022, the Russian Federation started its invasion of Ukraine.  In response, the U.S. imposed several sanctions, including prohibiting U.S. citizens from paying in dollars to citizens or residents of Russia.

167.    On April 6, 2020, and other dates, the U.S. President signed the Executive Orders imposing sanctions against Russia, affecting its residents.  By powers vested in the President by the Constitution and the U.S. laws, including the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) (IEEPA), the National Emergencies Act (50 U.S.C. 1601 et seq.), and section 301 of title 3, United States Code.  Several Departments have implemented that and other Executive Orders concerning the U.S. sanctions.

168.    The Department of the Treasury implemented that and other Executive Orders, imposing various financial sanctions.  The sanctions prohibit U.S. citizens, such as MANN, from paying anything to Russian citizens and residents in U.S. dollars.

169.    As a law-abiding person, MANN is prohibited from paying anything to OSMANOV, even if he possibly could or wished to, as long as the U.S. sanctions continue to be in force.

170.    The alleged facts also satisfy all elements for granting declaratory relief, such as:

- (a)  a bona fide, actual, present practical need for a declaration that the U.S. citizen, MANN, is prohibited from paying anything to that Defendant in Counterclaim because

- (b) the declaration concerns a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts;

- (c) a right of the complaining party is dependent upon the facts or the law applicable to the facts;

- (d) parties have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or the law;

- (e) the antagonistic and adverse interest(s) are all before the Court by a proper process; and

- (f) the relief sought is not merely giving legal advice or the Answer to questions propounded for curiosity.

171.    Plaintiff MANN is entitled to declaratory relief, stated against OSMANOV.

//

//

## XV.  INJUNCTIVE RELIEF (TEMPORARY INJUNCTION)

172.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-89 with the same force as though repled against and further states as follows.

173.    The alleged facts satisfy the elements to establish entitlement to a preliminary injunction, having shown, to wit:

(1) the likelihood of irreparable harm to MANN;

(2) the unavailability of an adequate remedy at law;

(3) a substantial likelihood of success on the merits, given a pattern of the law violations by defendants; and

(4) consideration of the public interest.

174.    Based on the sanctions imposed by the U.S. against Russia, affecting Russian nationals and residents, OSMANOV should be forbidden from demanding from MANN any payments in U.S. dollars.

175.    The public interest in the U.S. imposes an obligation on the judicial branch to assure that foreigners do not demand from U.S. citizens any payments to them in U.S. dollars for as long as the U.S. sanctions are in force.

176.    Furthermore, MANN seeks an injunction against OSMANOV, prohibiting making misrepresentations to the Russian law enforcement representatives that are intentionally false.

177.    Plaintiff MANN is entitled to relief of a temporary injunction against OSMANOV.

**WHEREFORE**, Plaintiff MANN prays for the relief in this action as follows:

-    Orders to OSMANOV of accounting for MANN's investments and other transactions cited above, allowed by local law and international business standards to the full extent.

29

- Orders to OSMANOV granting requested declaratory and injunctive relief, consistent with the public policy in the U.S.

- Damages of at least $4 million, inclusive interest, and/or to the full extent of the applicable law, on all Counts for which damages are sought.

- In the alternative, restitution by OSMANOV of all investments made by MANN, per OSMANOV's requests, that OSMANOV caused to confiscate for his benefit.

- Damages for breach of contract and other Counts, where damages are proper.

- To the extent allowed by the applicable law, punitive and/or exemplary damages relating to fraudulent concealment, civil conspiracy, and breach of fiduciary duties claims.

- Such other and further relief as the Court will find just and fair.

- Attorney's fees and costs, to the extent allowed by the applicable Federal Rules of Civil Procedure.

Dated: April 25, 2022.    Respectfully submitted,


_____/signed George Lambert/
George Lambert, Esq.
MA bar #568769
100 Cambridge Street, 14th Floor
Boston, MA 02114
Tel. (617) 925 7500, fax (800) 852 1950
Email: Lawoffice2279@gmail.com
Attorney for Defendant and Plaintiff
in Counterclaim Andrei MANN

## VERIFICATION

I, ANDREI MANN, a party in the present action, state and declare that to the best of my knowledge, the factual allegations stated herein are true and correct.

Andrei MANN,

Date: April 25, 2022

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day, April 25, 2022, the foregoing Answer was served via efiling by Pacer on the parties as follows:

Kenneth C. Pickering
Lauren E. Sparks,
Mirick, O'Connell, DeMallie & Lougee LLP
100 Front Street
Worcester MA 01608-1477
Tel. (508) 791-8500
kpickering@mirickoconnell.com
lsparks@mirickoconnell.com
Attorneys for all Plaintiffs;

Sean T. Carnathan
O'Connor, Carnathan and Mack LLC
67 South Bedford Street, #400W
Burlington, MA 01803
781-359-9002, Fax: 781-359-9001
Email: scarnathan@ocmlaw.net
Attorney for Defendant Michael Hellman

Date: April 25, 2022

*/George Lambert/*
_____
George Lambert