IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETR RYAZANOV, DARIA RYAZANOV, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMINETS<br><br>Plaintiffs,<br><br>v.<br><br>ANDREI MANN and MICHAEL HELLMAN<br><br>Defendants.<br><br>ANDREI MANN<br><br>Plaintiff in Counterclaim<br><br>v.<br><br>PETR RYAZANOV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMINETS<br><br>Defendants in Counterclaim | CIVIL ACTION No. 21cv40068-NMG<br><br>**VERIFIED COUNTERCLAIM OF DEFENDANT ANDREI MANN**<br><br>**AGAINST PLAINTIFF AND DEFENDANT IN COUNTERCLAIM YURI RYAZANOV**<br><br>**I.  ACCOUNTING**<br>**II.  FRAUDULENT CONCEALMENT**<br>**III.  BREACH OF CONTRACT**<br>**IV.  MONEY HAD AND RECEIVED**<br>**V.  UNJUST ENRICHMENT**<br>**VI.  RESTITUTION**<br>**VII.  CIVIL CONSPIRACY**<br>**VIII.  DAMAGE TO BUSINESS REPUTATION**<br>**IX.  MISREPRESENTATION**<br>**X.  MISAPPROPRIATION.**<br>**XI.  RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO);**<br>**XII.  DECLARATORY RELIEF;**<br>**XIII.  INJUNCTIVE RELIEF** |

**Preamble**

The present Counterclaim is brought simultaneously with the Answer to the Complaint by

an American investor, ANDREI MANN, against YURI RYAZANOV.  That Counterclaims is

brought as a part of the Answer to the Complaint brought by said party, as well as by six more

1

parties.    The Counterclaim includes accounting and damages based on fraud, fraudulent concealment, breach of contract, and seeking, in the alternative, equitable relief, e.g., unjust enrichment, damage to business reputation.   The Counterclaim also seeks damages for civil conspiracy among the Defendants in the Counterclaim and other damages.

## PARTIES.

1.      The plaintiff in Counterclaim ANDREI MANN (hereinafter MANN) is a resident of the Commonwealth of Massachusetts, with offices in Newton and the State of New York, having resided in the City of New York.  For over 30 years, MANN has been an entrepreneur, running several businesses, with a substantial portion of the activities in the publishing industry.  For example, one of MANN's publications exceeded a circulation of 4.5 million copies. MANN is also an investor with investment projects in various jurisdictions internationally.

2.      The defendant in Counterclaim YURI RYAZANOV (RYAZANOV) is an individual currently residing at 50 Gilyarovskogo Street, Apt. 68, Moscow, Russia.  RYAZANOV first got acquainted and used to work together with MANN at S-Info.  RYAZANOV is the defendant in the Counterclaim because he confiscated the partial repayment by MANN of the loan. RYAZANOV embezzled the proceeds given to him in an emergency per his request and engaged in other fraudulent schemes causing damages to MANN.

## JURISDICTION.

3.      This Court has jurisdiction in this action over the defendant in the Counterclaim residing, on information and belief, in the Russian Federation because he submitted himself to the jurisdiction of this Court while filing a Complaint on June 22, 2021.

## FACTS RELEVANT TO ALL COUNTS OF COUNTERCLAIM.

### A.  YURI RYAZANOV'S BUSINESS ASSOCIATION WITH ANDREI MANN IN MOSCOW RYAZANOV'S ACTS IN BAD FAITH

4.      MANN got acquainted with RYAZANOV in the 1990s, after MANN accumulated experience in the publishing business in Russia.

5.      MANN founded S-Info in Moscow, with a subsidiary in Massachusetts.  Namely, S-Info LLC was listed on the Secretary of State's portal for Massachusetts.

6.      S-Info LLC, a Massachusetts company, was owned by a Russian company, registered on January 17, 2003, under a similar name OOO S-Info, with registered address: 22/40 Pervomaiskaya St., Moscow, 105043.

7.      Initially, MANN was a 62% stakeholder in that company, along with Tatiana Ivanova (28%) and Igor Gurinovich (10%).

8.      S-Info was affiliated with Callisto Media Corporation, that managed Publishing House Callisto S-Info (in Cyrillic «Калисто.  Издательский Дом С-Инфо»), INN 77036333271.

9.      RYAZANOV was MANN's manager, and de-facto partner at S-Info in Moscow MANN managed as a Chief Executive Officer.  At an early S-Info operated in part as a company, several salaried people, including RYAZANOV, reinvested a part of their income back into S-Info, which provided substantial dividends to the investors, working at managerial positions at S-Info.

10.      RYAZANOV worked at S-Info's office, located at 10A-1 1905 Goda Street, Moscow, in a managerial position.

11.     RYAZANOV's investment and reinvestment from his salary in S-Info were primarily in a cash form, as was his salary, which was usual or standard in Russia at the time.  All his investment installments were entered in the accounting books of S-Info.

12.     In or about 2011, RYAZANOV directed S-Info and MANN to pay his dividends, interest, and the repayment to his account in Cyprus.  That was not prohibited in Russia, and MANN advised S-Info that RYAZANOV's request to direct money to his account in Cyprus should be accommodated.

13.     MANN was aware that all corporate taxes of S-Info were regularly paid in Russia.

14.     RYAZANOV was aware of all the affairs in S-Info and its financial condition. RYAZANOV was aware of the structure of that company.  RYAZANOV elected to invest his money in the company where he was working.

15.     In the Complaint in this action, RYAZANOV silenced that he had received money back on his loans, worked for S-Info, and omitted other material facts concerning his actual financial relationship with the company.

16.     While filing the Complaint in this action, RYAZANOV fraudulently concealed that a substantial portion of the debt to him, for business purposes, had been repaid.

17.     Furthermore, RYAZANOV did not disclose that his investment was into S-Info, not MANN personally, engaging in perpetuated misrepresentation as though MANN was personally liable to him, which was untrue.

B.  EMBEZZLEMENT BY YURI RYAZANOV OF $384,067, MONEY LOANED FOR APARTMENT OF HIS DAUGHTER

18.     On April 8, 2014, RYAZANOV took a loan in Ergo Bank (the full corporate name ООО КВ Ergobank, in Cyrillic ООО КБ Эргобанк) a loan to purchase an apartment for his

daughter, Anna Yurievna Ryazanova.  The apartment was at the address: 50 Giliarovskogo St., Apt. 69, Moscow, Russia, close to RYAZANOV's apartment.

19.    RYAZANOV failed to repay the loan to the bank, according to the mortgage schedule, in 2017-2018.

20.    Ergo bank put the apartment on sale for 22,775,153 rubles, or $384,067, and published November 2, 2017, a public announcement on the forced sale in the newspaper Kommersant.

21.    RYAZANOV approached MANN with an urgent appeal to help him out to prevent the sale of his daughter's apartment.

22.    On November 13, 2017, MANN gave the bank his personal guarantee of repayment of RYAZANOV's debt.  The letter of guarantee said that MANN "…takes the obligation to pay per credit contract No. 39/13-FL of April 8, 2014, till January 14, 2018.

23.    In December 2017, MANN gave that amount through MANN's driver M. Belov from his own money to RYAZANOV in cash through MANN's driver M. Belov.  RYAZANOV asked to deliver that money to him in his country-house in the Klyazma district in Moscow Region.

24.    When MANN provided RYAZANOV with that money, the amount in rubles was $384,067.  RYAZANOV was to repay that amount on a fast track.

25.    Most of the documentation on that loan to RYAZANOV, from MANN's funds, has been kept in the S-Info office.

26.    On information and belief, RYAZANOV contacted YUSUP OSMANOV (OSMANOV), a Russian national whose address is 4/7 Troilinskiy pereulok, Apt 65, Moscow, 119002.  After having worked for MANN and his business for several years, OSMANOV used his

access to financial and other documentation and, breaching his fiduciary obligations, turned against MANN, causing various monetary damages and causing other harm to MANN.

27.    On information and belief, OSMANOV persuaded RYAZANOV not to credit MANN's repayment of the loan or give credit to other payments he received from S-Info because he controlled evidence on the repayments and could deprive MANN of that evidence.

28.    RYAZANOV's claims against MANN were that MANN was the Director-General of S-Info, which only allowed civil claims against the company. Yet, in June 2018, RYAZANOV initiated the criminal matter against MANN. RYAZANOV falsely claimed that MANN was personally responsible for S-Info's loans and that RYAZANOV did not get any repayments at all.

29.    RYAZANOV and his Russian attorney Kaloi Akhilgov (Akhilgov), made little or no effort to hide the purpose of the criminal matter that they staged through a law enforcement officer.

30.    As evidence shows, RYAZANOV and Akhilgov arranged that in June of 2018, Major of Justice I.N. Evlampieva, the senior investigator of the Interior Ministry for Krasnopresnensky District for Moscow, opened the criminal case targeting MANN.

31.    RYAZANOV blackmailed MANN extorting money on numerous occasions. MANN has in his possession 48 recordings of his conversations with RYAZANOV.

32.    For example, in the telephonic conversation with MANN on July 26, 2018, RYAZANOV stated: "there will be no talk about 6-7 million, 2.7 (million), and she closes the matter".

33.    On the same day, about two hours later, RYAZANOV called, saying, "I called a big man in the Prosecutor's Office. We agreed: Your man comes to the bank with the money. My man from the Prosecutor's office comes with documents about closing your criminal case. They

exchange the packages, and he takes the money.  You will get a package on closing your criminal case."

34.    On July 29, 2018, in a new telephonic conversation, RYAZANOV continued to blackmail and extort money from MANN, stating: "Yes, money in exchange for closing your criminal case."

35.    In that conversation, RYAZANOV further impressed upon MANN that he controlled the criminal investigation, including calling the S-Info's chief financial officer for questioning.

36.    Namely, RYAZANOV said: "Yes, I direct the investigator; I will call him tomorrow and tell him to cancel the summons to Zoe (the chief financial officer).  You should resolve the issue of money for me as soon as possible.  Many people are awaiting that money"…

37.    All 48 recordings, with RYAZANOV's voice, show that he criminally interfered with the law enforcement, blackmailed MANN, extorted money from him, and proposed that money be given to the Prosecutor in exchange for the written decision to close the criminal case. Thereby, RYAZANOV was extorting money in extraordinary amounts, lowering the demand to $2.7 million in cash.

38.    On August 21, 2018, RYAZANOV's co-conspirator Akhilgov wrote to MANN a letter with either implied or direct threat that if MANN agreed to settle, namely pay an extraordinary "payoff" amount, "nobody wants (your) blood or pursue anyone."

39.    RYAZANOV, through Akhilgov, did not conceal that they were in charge of the criminal matter, writing in that letter: "In our case, our administrative resources, rather works in the opposite direction, in the direction of holding back"…

40.    RYAZANOV and Akhilgov demanded from MANN personally to pay $3,467,938 and €2,498,390 (Euros), totaling, at the rate of the day, about $6.2 million, only proposing a "rebate" if the money, $2.7 million, was to be given to the Prosecutor in cash.

## C. CONVERSION BY YUSUP OSMANOV OF BUSINESS RECORDS AND COMMERCIAL PAPERS OF MANN; CONSPIRACY WITH YURI RYAZANOV

41.    Using his access to MANN's business documentation, in or about 2019, OSMANOV, despite his fiduciary obligations to his employer MANN, started to use various pretexts not to provide to MANN the necessary documentation concerning RYAZANOV.

42.    As it turned out, OSMANOV, abusing his access to the boxes of documents, converted MANN's business documentation and valuable commercial paper belonging to MANN. In the fall of 2019, OSMANOV entered a conspiracy with RYAZANOV to write off all repayments and installments made by S-Info and demand from MANN to repay the loans anew.

43.    The conspiracy into which OSMANOV entered with RYAZANOV was illegal because it pursued extortionist means.

44.    Furthermore, OSMANOV approached other parties in a business relationship with MANN and, on information and belief, proposed to all to ruin MANN's businesses, confiscating his assets and proposing financial benefits to such parties.

45.    Using his access to the business records, OSMANOV converted the financial records memorializing the payments between RYAZANOV and MANN, all in furtherance of their conspiracy to convert MANN's funds and assets.

46.    RYAZANOV was a knowing and willing participant in that conspiracy with OSMANOV, now claiming money but omitting his debt to MANN.  RYAZANOV was a willing

participant in the conspiracy to ruin MANN's assets in Russia and to divide those among the co-conspirators.

47.    The conversion by OSMANOV of MANN's business records, including the evidence of the repayments to RYAZANOV, resulted in MANN's inability to defend himself in the Russian Courts.

48.    After RYAZANOV, OSMANOV, and others expunged MANN out of Russia, forcing him to return to the U.S., they abused their access to the Russian Courts by filing the untrue claims with material omissions and disallowing MANN to use his evidence, which got under OSMANOV's control in Moscow.

49.    S-Info has been declared bankrupt by the Russian Court in light of RYAZANOV's, OSMANOV's, and other co-conspirators' activities.  That became the result of their improper attacks on the business assets of S-Info and MANN.

50.    When OSMANOV and several other parties filed in 2018 a case in the Russian Court to declare MANN bankrupt, RYAZANOV first joined that case as one more creditor of MANN.  However, in early 2019, the Russian Court expressed doubts about the authenticity or validity of documents provided by RYAZANOV in evidence of MANN's indebtedness to him.

51.    On November 8, 2019, the Russian Court entered RYAZANOV's declination to seek any debts from MANN.

## D. YURI RYAZANOV'S MAKING FALSE CLAIMS BEFORE LAW ENFORCEMENT

52.    While civil claims against MANN were weak and then collapsed in the Russian Court, RYAZANOV improperly used his connections in the law enforcement offices to make the claims under the guise of the criminal prosecution at a top level of the law enforcement.

53.    In June of 2018, Major of Justice I.N. Evlampieva, the senior investigator of the Interior Ministry for Krasnopresnensky District for Moscow, opened the criminal case against MANN, which was opened on false pretenses.

54.    RYAZANOV and his attorney did not conceal that they were misusing access to and connections with the police to harm MANN and "knock out" from MANN as much money as possible.

55.    The correspondence on RYAZANOV's and his attorney's threats to crush MANN through law enforcement, including recordings of the telephone conversations with such threats, is retained.

56.    Subsequently, in November 2019, RYAZANOV joined OLEG SEMENETS (SEMENETS), another purported creditor who extended the conspiracy to elevate the matter.

57.    SEMENETS joined RYAZANOV's efforts to harm MANN for material gain. Previously, SEMENETS worked in the law enforcement agencies of the City of Shchelkovo, the Moscow Region. While in law enforcement agencies, SEMENETS closely communicated with a colleague who currently holds the high position of Deputy Prosecutor General of Russia. Their friendship continues, this former colleague and high official of the Russian Prosecutor's Office is the godfather of SEMENETS' daughter. On information and belief, SEMENETS misused his professional connections in law enforcement and prosecutorial bodies for nothing other than illegal personal gain.

58.    On information and belief, SEMENETS used his connection with Dmitry V. Demeshin (Demeshin), currently the Deputy Prosecutor General of the Russian Federation.  From the late 1990s, SEMENETS, on information and belief, was a friendly contact with Demeshin.

59.    In conspiracy with SEMENETS and others, RYAZANOV improperly achieved his objective, to harm MANN, ruin his life and have his assets in Russia confiscated for division with other parties.

60.    RYAZANOV improperly achieved his objective, to harm MANN, ruin his life and have his assets in Russia confiscated for division with other parties.

61.    As a result of that conspiracy, MANN lost his stake in S-Info, valued at over $5 million.  MANN lost his stake in the real estate in Russia, his personal property.  MANN's losses and damages arising from RYAZANOV's and other co-conspirators' activities exceeded $10 million.

62.    In July of 2021, MANN's contacts in the Russian Federation alerted him that pictures of MANN and his wife, taken on the streets in New York, had been circulated via Whatsapp.

63.    On information and belief, RYAZANOV and OSMANOV undertook person(s), currently unknown to MANN, to follow MANN and his wife in New York.  On information and belief, the source of such circulation of the pictures was RYAZANOV and OSMANOV, who reportedly commented to MANN's counterparts and contacts: "We have tracked him down, now we will knock out money from him."  MANN concluded that he and his wife were threatened as a part of the ongoing plot to extort money from MANN by all means, including illegal means.

## G. SUMMARY OF BUSINESS DAMAGES TO MANN.

64.    As a result of the subversive activities in which RYAZANOV engaged contrary to MANN's interests, using the confiscation of the documentation and blocking MANN's access to any documentation, OSMANOV spearheaded the conspiracy to ruin MANN's assets and life.

65.    S-Info, where MANN was the majority stakeholder, was subject to yearly official auditing at the end of 2017, the last year before RYAZANOV engaged, as an insider, in wrongdoing.  Under auditing, S-Info's assets in 2017 included: newspapers, magazines, books, children's books, advertising, trademarks' and trade names' ownership, including those registered outside of Russia.  S-Info owned literary rights, rights to domain names on the net, rights to published production, such as periodic publications, books, children's textbooks, archives, and the library of all publications under the umbrella of S-Info, both in the printed and electronic form.

66.    The aggregate value of those assets under S-Info's control was valued at $7.8 million.  However, the actual market value of S-Info was 2 to 3 times greater because the business typically could be sold in Russia for an amount 2-3 times more than its Earnings before Interest, Taxes, Depreciation, and Amortization (EBITDA), used in Russia.

67.    Accordingly, MANN's loss due to RYAZANOV's and others' destruction of S-Info alone was over $10 million.

## COUNT I. ACCOUNTING

68.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-67, with the same force as though repled again and further state as follows.

69.    As mentioned above, in or about 2018, OSMANOV, using MANN's absence from Russia, converted MANN's business documentation and commercial papers maintained in boxes and stored in computers in MANN's office in Moscow.

70.    That included documents regarding MANN's loan when he helped RYAZANOV repay his daughter's apartment, after Ergo bank put the apartment on sale for 22,775,153 rubles, or $384,067, as published on November 2, 2017, a public announcement on the forced sale.

71.    On information and belief, RYAZANOV willingly supported OSMANOV's illegal activities, participating in the benefits of MANN's inability to use his business documentation.

72.    MANN demands all and any accounting by RYAZANOV.  That should include the documentation controlled by OSMANOV, with the encouragement or participation of RYAZANOV, be returned to MANN and accounted for.

73.    RYAZANOV should be ordered to produce the financial records concerning the repayments to RYAZANOV, provided by MANN and S-Info.

74.    MANN is entitled to an accounting from RYAZANOV.

## COUNT II.  FRAUDULENT CONCEALMENT.

75.    Plaintiffs incorporate by reference the allegations in preceding Paragraphs 1-67, with the same force as though repled again and further state as follows.

76.    As mentioned above, MANN's loan when he helped RYAZANOV repay his daughter's apartment, after Ergo bank put the apartment on sale for 22,775,153 rubles or $384,067 published on November 2, 2017.

77.    RYAZANOV concealed that information in this matter and before other parties the evidence, essentially willing that MANN was deprived of the rights to recover that payment for RYAZANOV.

78.    Plaintiff MANN is entitled to damages for fraudulent concealment stated against RYAZANOV.

## COUNT III.  BREACH OF CONTRACT.

79.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-67 with the same force as though repled against and further states as follows.

80.     As mentioned above, RYAZANOV was in a contractual relationship with S-Info, his employer.  RYAZANOV invested in S-Info and took back dividends and other money from S-Info.  In violation of RYAZANOV's contractual obligations, he failed to disclose the payments RYAZANOV received.

81.     That included documents regarding MANN's loan when he helped RYAZANOV repay his daughter's apartment, after Ergo bank put the apartment on sale for 22,775,153 rubles, or $384,067, as published on November 2, 2017, a public announcement on the forced sale.

82.     RYAZANOV breached the contract not to return that money to MANN.

83.     RYAZANOV concealed repayment of a substantial portion of his investment in this matter and before third parties, thereby acting in breach of contract.

84.     Plaintiff MANN is entitled to damages for breach of contract stated against RYAZANOV.

## COUNT IV.  MONEY HAD AND RECEIVED.

85.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-67, with the same force as though repled again and further state as follows.

86.     As stated above, MANN repaid to RYAZANOV a substantial portion of the loan from 2012 for investing in S-Info, which represented money had and received.

87.     As mentioned above, MANN provided RYAZANOV a loan when he helped RYAZANOV repay his daughter's apartment after Ergo bank put the apartment on sale for 22,775,153 rubles, or $384,067, as published on November 2, 2017, a public announcement on the forced sale.

88.     That money was delivered to RYAZANOV and represented money had and received.

14

89.    The present Count is stated in addition or the alternative to the claims based on the contract.

90.    Plaintiff MANN is entitled to damages based on the equitable theory of money had and received against RYAZANOV.

## COUNT V.  UNJUST ENRICHMENT.

91.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-67, with the same force as though repled again and further state as follows.

92.    As stated above, MANN and S-Info were making regular repayments of the loan from RYAZANOV, where RYAZANOV benefitted from his salary, dividends, and other payments from S-Info.

93.    RYAZANOV was unjustly enriched after MANN's loan when he helped RYAZANOV repay his daughter's apartment after Ergo bank put the apartment on sale for 22,775,153 rubles, or $384,067, as published on November 2, 2017.

94.    RYAZANOV got unjustly enriched for the amounts of repayments that he fraudulently did not include in the Complaint's claim made against MANN.

95.    The present Count is stated in addition or the alternative to the claims based on the contract.

96.    Plaintiff MANN is entitled to the cause of action based on damages for unjust enrichment against RYAZANOV.

## COUNT VI.  RESTITUTION

97.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-67, with the same force as though repled again and further state as follows.

98.     As stated above, RYAZANOV elected to ignore MANN's loan for RYAZANOV's apartment.  Therefore, RYAZANOV has opened the door to a claim of restitution.

99.     RYAZANOV should restitute MANN's loan when he helped RYAZANOV preserve his daughter's apartment after Ergo bank put the apartment on sale for 22,775,153 rubles, or $384,067, as published on November 2, 2017.

100.    The present Count is stated in addition or the alternative to the claims based on the contract.

101.    Plaintiff MANN is entitled to the cause of action based on restitution against RYAZANOV to the full extent allowed by the law.

## COUNT VII.  CIVIL CONSPIRACY.

102.    Plaintiffs incorporate by reference the allegations in preceding Paragraphs 1-67, with the same force as though repled again and further state as follows.

103.    In approximately mid-2018, as evidence shows, RYAZANOV entered into a conspiracy with OSMANOV.

104.    On information and belief, that civil conspiracy was orchestrated by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it, including for RYAZANOV's benefit, albeit illegally.

105.    It was a part of the conspiracy that OSMANOV withheld the documentary evidence on MANN's repayments and loan to RYAZANOV so that RYAZANOV made false claims against MANN.  RYAZANOV de facto assisted OSMANOV in that conspiracy.

106.    The documents confiscated by OSMANOV in conspiracy with RYAZANOV included documents regarding MANN's loan that helped RYAZANOV repay his daughter's

apartment after Ergo bank put the apartment on sale for 22,775,153 rubles, or $384,067, as published on November 2, 2017.

107.     The purpose of that civil conspiracy between RYAZANOV and OSMANOV was unlawful, namely to deprive MANN of assets, his access to documentation, and his entitlement to dividends and assets.

108.     Plaintiff MANN is entitled to damages for civil conspiracy stated against RYAZANOV.

### COUNT VIII.  DAMAGE TO BUSINESS REPUTATION.

109.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-67 with the same force as though repled against and further states as follows.

110.     In approximately mid-2018, as evidence shows, OSMANOV entered into a conspiracy with RYAZANOV, intending to keep MANN out of Russia, confiscate all of his assets in Russia and divide those among the participants.

111.     On information and belief, that civil conspiracy was orchestrated by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it, including for RYAZANOV's benefit, illegally.

112.     As evidence shows, RYAZANOV, assisted by OSMANOV and others, orchestrated a criminal case opened by the Interior Ministry in Russia and an arrest warrant.

113.     RYAZANOV improperly used his connections in the law enforcement offices to make the claims under the guise of the criminal prosecution.

114.     As mentioned above, RYAZANOV unlawfully arranged that in June of 2018, Major I.N. Evlampieva, the senior investigator of the Interior Ministry for Krasnopresnensky District for Moscow, opened the criminal case against MANN.

115.    RYAZANOV and his attorney did not conceal that they were abusing access to and connections in the Interior Ministry to harm MANN and "knock out" from MANN as much money as possible, damaging his reputation.

116.    It was a part of the conspiracy to mislead the law enforcement on the facts, including withholding documents regarding MANN's loan.  RYAZANOV invested into S-Info, not lending to MANN personally.

117.    The purpose of that damage to MANN's business reputation was to ruin MANN's business in Russia, confiscate his assets, and divide those among the participants in the conspiracy.

118.    The loss to MANN's business reputation should be more than $10 million, given the volume of the assets and MANN's business expectations based on his businesses operated in Russia.

119.    Plaintiff MANN is entitled to damages for damage to the business reputation caused by RYAZANOV.

## COUNT IX.  MISREPRESENTATION.

120.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-67 with the same force as though repled against and further states as follows.

121.    In approximately mid-2018, as evidence shows, OSMANOV entered into a conspiracy with RYAZANOV to keep MANN out of Russia, confiscate all of his assets in Russia and divide those among the participants.

122.    RYAZANOV misrepresented the facts to the law enforcement in Russia that he held no debt to MANN.   That included RYAZANOV's withholding documents regarding

MANN's loan when he helped RYAZANOV repay his daughter's apartment after Ergo bank put the apartment on sale for 22,775,153 rubles, or $384,067, as published on November 2, 2017.

123.   On information and belief, those misrepresentations were supported by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it, including for RYAZANOV's benefit.

124.   The purpose of those misrepresentations, in which RYAZANOV participated was to ruin MANN's business in Russia, confiscate his assets, and divide those among the participants in the conspiracy.

125.   MANN is entitled to damages based on misrepresentation made by RYAZANOV.

## X.  MISAPPROPRIATION.

126.   Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-67 with the same force as though repled against and further states as follows.

127.   As mentioned above, MANN gave RYAZANOV a loan to help RYAZANOV repay his daughter's apartment after Ergo bank put the apartment on sale for 22,775,153 rubles, or $384,067 on November 2, 2017.

128.   Even though RYAZANOV lawfully received that money under his control, he never intended to repay it, which amounted to embezzlement.

129.   MANN is entitled to damages based on RYAZANOV's embezzlement.

## XI.  RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT

130.   Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-67 with the same force as though repled against and further states as follows.

131.    As prohibited by the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. §1961 et seq (RICO), RYAZANOV, assisted by OSMANOV and SEMENETS, committed predicate acts in a pattern.

132.    RYAZANOV's acts, as alleged here, satisfied the elements of civil RICO are as follows: (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, (5) resulting in injury.

133.    RYAZANOV's acts, such as sending to MANN in the U.S. extortionist writings and false demands by electronic communications, amounted to violations of 18 U.S.C. Sec. 1343 (relating to wire fraud).

134.    As mentioned above, RYAZANOV's claim in the civil court was weak, and it was against S-Info.  MANN was personally responsible for S-Info's loans, and as though RYAZANOV did not get any repayments at all.

135.    RYAZANOV and his Russian attorney Kaloi Akhilgov (Akhilgov), made little or no effort to hide the purpose of the criminal matter that they staged through a law enforcement officer.

136.    As evidence shows, RYAZANOV and Akhilgov arranged that in June of 2018, Major of Justice I.N. Evlampieva, the senior investigator of the Interior Ministry for Krasnopresnensky District for Moscow, opened the criminal case targeting MANN.

137.    RYAZANOV blackmailed MANN extorting money on numerous occasions. MANN has in his possession 48 recordings of his conversations with RYAZANOV.

138.    For example, in the telephonic conversation with MANN on July 26, 2018, RYAZANOV stated: "there will be no talk about 6-7 million, 2.7 (million), and she closes the matter".

139.    On the same day, about two hours later, RYAZANOV called, saying, "I called a big man in the Prosecutor's Office.  We agreed: Your man comes to the bank with the money.  My man from the Prosecutor's office comes with documents about closing your criminal case.  They exchange the packages; he takes the money.  You will get a package on closing your criminal case."

140.    On July 29, 2018, in a new telephonic conversation, RYAZANOV continued to blackmail and extort money from MANN, stating: "Yes, money in exchange for closing your criminal case."

141.    In that conversation, RYAZANOV further impressed upon MANN that he controlled the criminal investigation, whether or not a chief financial officer of S-Info would be called for questioning or not.

142.    Namely, RYAZANOV said: "Yes, I direct the investigator; I will call him tomorrow and tell him to cancel the summons to Zoe (the chief financial officer).  You should resolve the issue of money for me as soon as possible.  Many people are awaiting that money"…

143.    All 48 recordings, with RYAZANOV's voice, show that he criminally interfered with the law enforcement, blackmailed MANN, extorted money from him, and proposed that money be given to the Prosecutor in exchange for the written decision to close the criminal case.  Thereby, RYAZANOV was extorting money in extraordinary amounts, lowering the demand to $2.7 million in cash.

144.    On August 21, 2018, RYAZANOV's co-conspirator Akhilgov wrote to MANN a letter with either implied or direct threat that if MANN agreed to settle, namely pay an extraordinary "payoff" amount, "nobody wants (your) blood or pursue anyone."

145.    RYAZANOV, through Akhilgov, did not conceal that they were in charge of the criminal matter, writing in that letter: "In our case, our administrative resources, rather works in the opposite direction, in the direction of holding back"...

146.    RYAZANOV and Akhilgov demanded from MANN personally to pay $3,467,938 and €2,498,390 (Euros), totaling, at the rate of the day, about $6.2 million, only proposing a "rebate" if the money, $2.7 million, was to be given to the Prosecutor in cash.

147.    RYAZANOV improperly used his connections in the law enforcement offices to make the claims under the guise of the criminal prosecution at a top level of law enforcement.

148.    In June of 2018, Major I.N. Evlampieva, the senior investigator of the Interior Ministry for Krasnopresnensky District for Moscow, opened the criminal case against MANN, which was opened on false pretenses.

149.    Subsequently, in November 2019, RYAZANOV joined SEMENETS, another purported creditor, extending the conspiracy and elevating the matter.

150.    SEMENETS assisted in RYAZANOV's efforts to harm MANN for material gain. SEMENETS used to be a prosecutor in the City of Schelkovo, the Moscow Region and worked with another prosecutor, the godfather of SEMENETS's daughter.  Currently, that former colleague of SEMENETS occupies a high position as the Deputy Prosecutor General of Russia. On information and belief, SEMENETS improperly used his professional connections within the law enforcement and prosecutorial offices for nothing else but an illegal private gain.

151.    On information and belief, SEMENETS used his connection with Demeshin, currently the Deputy Prosecutor General of the Russian Federation.  From the late 1990s, SEMENETS, on information and belief, was a friendly contact with Demeshin.

152.    In conspiracy with SEMENETS and others, RYAZANOV improperly achieved his objective, to harm MANN, ruin his life and have his assets in Russia confiscated for division with other parties.

(a) Formation of a Racketeering Enterprise.

153.    In June 2018, RYAZANOV and Akhilgov, associated among themselves, formed a racketeering enterprise.  They agreed to conduct and did participate in the conduct, of the enterprise's affairs, in violation of 18 U.S.C. §1962(c).

(b) Pattern of Racketeering Activities.

154.    RYAZANOV and Akhilgov committed predicate acts falling under 18 U.S.C. §1343 ('wire fraud') when they sent communications to MANN.

155.    Those predicate acts constitute a pattern of racketeering activity under 18 U.S.C. §1961(5).  The predicate acts relevant herein began in June of 2016.  RYAZANOV and Akhilgov, assisted by OSMANOV and later SEMENETS, did cooperate jointly and severally to commission over ten predicate acts falling under 18 U.S.C. §1961(1)(A), (B), in violation of several statutes, e.g., 18 U.S.C. 1962(d).

(c) Defendants' Interest in Racketeering Enterprise under 18 U.S.C. §1962

156.    RYAZANOV and Akhilgov have directly or indirectly acquired and maintained interests in, and control of, the enterprise through the pattern of racketeering activity, in violation of 18 U.S.C. §1962(b).  RYAZANOV has benefitted from confiscating the repayments by S-Info, and MANN's loan for the apartment for RYAZANOV's daughter.

157.    RYAZANOV and Akhilgov agreed and conspired to violate 18 U.S.C. §§1962(b),(c), affecting a U.S. citizen.  RYAZANOV and Akhilgov thus formed a racketeering enterprise, extorting money from MANN.

(d) Defendants' Predicate Acts Falling under 'Wire Fraud' Statute.

158.    RYAZANOV and Akhilgov, sending communications to a U.S. citizen for extortionate objectives, engaged in numerous acts in violation of 18 U.S.C. §1343 ('Wire fraud').

(e) Injury to MANN Resulting from RYAZANOV's and Akhilgov's Racketeering.

159.    MANN has been injured in their business and property as a direct and proximate result of RYAZANOV's and Akhilgov's racketeering activities.

(g) Continuous, Open-Ended Nature of Defendants' Racketeering Activities.

160.    While having been initiated in June of 2018, the racketeering activities of RYAZANOV and Akhilgov have continued into today.  Those activities will undoubtedly continue into the future unless this Court adjudges their activities as racketeering.

161.    MANN is entitled to relief under RICO, 18 U.S.C. §1964(c), without limitation, stated against RYAZANOV and Akhilgov, where the latter is not a defendant in this action at this time.

162.    As a result of that racketeering conspiracy, MANN lost his stake in S-Info, valued at over $5 million.  MANN lost his stake in the real estate in Russia, his personal property. MANN's losses and damages arising from RYAZANOV's and other co-conspirators' activities exceeded $10 million.

163.    Plaintiff is entitled to relief against RYAZANOV based on RICO, private civil claims per 18 U.S.C. §1964, to apply to the direct damages of $10 million.

## XII.  DECLARATORY RELIEF.

164.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-67 with the same force as though repled against and further states as follows.

165.    On February 24, 2022, the Russian Federation started its invasion of Ukraine.  In response, the U.S. imposed several sanctions, including prohibiting U.S. citizens from paying in dollars to citizens or residents of Russia.

166.    On April 6, 2022, and other dates, the U.S. President signed the Executive Orders imposing sanctions against Russia, affecting its residents.  By virtue of powers vested in the President by the Constitution and the U.S. laws, including the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) (IEEPA), the National Emergencies Act (50 U.S.C. 1601 et seq.), and section 301 of title 3, United States Code.  Several U.S. Departments have implemented that and other Executive Orders concerning the U.S. sanctions.

167.    The U.S. Department of the Treasury implemented that and other Executive Orders, imposing various financial sanctions.  Since that is relevant to this action, the sanctions prohibit U.S. citizens, such as MANN, from paying anything to Russian citizens and residents in the U.S. dollar's national currency.

168.    As a law-abiding person, MANN is prohibited from paying anything to the RYAZANOV, even if he possibly could or wished to, as long as the U.S. sanctions continue to be in force.

169.    The alleged facts also satisfy all elements for granting declaratory relief, such as - (a)  a bona fide, actual, present practical need for a declaration that the U.S. citizen, MANN, is prohibited from paying anything to these Defendants because - (b) the declaration concerns a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; - (c) a right of the complaining party is dependent upon the facts or the law applicable to the facts; - (d) parties have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or the law; - (e) the antagonistic and adverse interest(s) are all before the Court by a proper process;

and - (f) the relief sought is not merely giving legal advice or the Answer to questions propounded for curiosity.

170.    Accordingly, Plaintiff MANN is entitled to declaratory relief.

## XIII.  INJUNCTIVE RELIEF (TEMPORARY INJUNCTION)

171.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-67 with the same force as though repled against and further states as follows.

172.    The alleged facts satisfy the elements to establish entitlement to a preliminary injunction, to wit: - (1) the likelihood of irreparable harm to MANN; - (2) the unavailability of an adequate remedy at law; - (3) a substantial likelihood of success on the merits, given a pattern of the law violations by defendants; and - (4) consideration of the public interest.

173.    Based on the sanctions imposed by the U.S. against Russia, affecting Russian nationals and residents, RYAZANOV should be forbidden from demanding from MANN any payments in U.S. dollars.

174.    The public interest in the U.S. imposes an obligation on the judicial branch to assure that foreigners do not demand from U.S. citizens any payments to them in U.S. dollars for as long as the U.S. sanctions are in force.

175.    Furthermore, MANN seeks an injunction against RYAZANOV not to make misrepresentations to the Russian law enforcement representatives that are intentionally false, contrary to the evidence.

176.    As mentioned above, RYAZANOV and OSMANOV, on information and belief, conspired to stage an illegal private surveyance on them in New York, or rather staged stalking them.  RYAZANOV and OSMANOV obtained the pictures of MANN and his wife and

177.    Plaintiff MANN is entitled to relief of a temporary injunction against RYAZANOV defendants, including any demands for payments and illegal stalking on U.S. soil.

**WHEREFORE**, Plaintiff MANN prays for the relief in this action against RYAZANOV:

- Orders to RYAZANOV directing accounting for MANN's investments and other transactions cited above, allowed by local law and international business standards to the full extent; declaratory judgment and injunctive orders against RYAZANOV.

- Damages inclusive interest, and/or to the full extent of the applicable law, on all Counts for which damages are sought, including trebling under RICO.

- In the alternative, restitution by RYAZANOV of all money paid by MANN.

- Damages for breach of contract, damage to business reputation, and on other Counts, where damages are proper.

- To the extent allowed by the applicable law, punitive and/or exemplary damages relating to fraudulent concealment, civil conspiracy, and other claims.

- Such other and further relief as the Court will find just and fair.

- Attorney's fees and costs, to the extent allowed by the applicable Federal Rules of Civil Procedure.

Dated: April 25, 2022.    Respectfully submitted,

_____/signed George Lambert/
George Lambert, Esq.
MA bar #568769
100 Cambridge Street, 14th Floor
Boston, MA 02114
Tel. (617) 925 7500, fax (800) 852 1950
Email: Lawoffice2279@gmail.com
Attorney for Defendant and Plaintiff
in Counterclaim Andrei Mann

# VERIFICATION

I, ANDREI MANN, party in the present action, state and declare that to the best of my knowledge, the factual allegations stated herein are true and correct.

Andrei Mann,

Date: April 25, 2022

19

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day, April 25, 2022, the foregoing Answer was served via efiling by Pacer on the parties as follows:

Kenneth C. Pickering
Lauren E. Sparks,
Mirick, O'Connell, DeMallie & Lougee LLP
100 Front Street
Worcester MA 01608-1477
Tel. (508) 791-8500
kpickering@mirickoconnell.com
lsparks@mirickoconnell.com
Attorneys for all Plaintiffs;

Sean T. Carnathan
O'Connor, Carnathan and Mack LLC
67 South Bedford Street, #400W
Burlington, MA 01803
781-359-9002, Fax: 781-359-9001
Email: scarnathan@ocmlaw.net
Attorney for Defendant Michael Hellman

Date: April 25, 2022

                         /George Lambert/
                         _____
                         George Lambert