IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETR SEMENETS, DARIA SEMENETS, YUSUP OSMANOV, YURI SEMENETS, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMENETS<br><br>Plaintiffs,<br><br>v.<br><br>ANDREI MANN and MICHAEL HELLMAN<br><br>Defendants. | CIVIL ACTION No. 21cv40068-NMG<br><br>**VERIFIED COUNTERCLAIM OF DEFENDANT ANDREI MANN**<br><br>**AGAINST PLAINTIFF AND DEFENDANT IN COUNTERCLAIM OLEG SEMENETS**<br><br>**I.  ACCOUNTING**<br>**II.  FRAUDULENT CONCEALMENT**<br>**III.  BREACH OF CONTRACT**<br>**IV.  MONEY HAD AND RECEIVED**<br>**V.  UNJUST ENRICHMENT** |
| ANDREI MANN<br><br>Plaintiff in Counterclaim<br><br>v.<br><br>PETR SEMENETS, DARIA LATOUR, YUSUP OSMANOV, YURI SEMENETS, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMENETS<br><br>Defendants in Counterclaim | **VI.  RESTITUTION**<br>**VII.  CIVIL CONSPIRACY**<br>**VIII.  DAMAGE TO BUSINESS REPUTATION**<br>**IX.  MISREPRESENTATION**<br>**X.  DECLARATORY RELIEF**<br>**XI.  INJUNCTIVE RELIEF** |

**Preamble**

The present Counterclaim is brought simultaneously with the Answer to the Complaint by an American investor, ANDREI MANN, against OLEG SEMENETS.  That Counterclaims is brought as a part of the Answer to the Complaint brought by said party, as well as by six more parties. The Counterclaim includes damages based on fraud, fraudulent concealment, breach of contract, and seeking, in the alternative, equitable relief, e.g., unjust enrichment, damage to business reputation.  The Counterclaim seeks damages for civil conspiracy among the present

Defendant in the Counterclaim and other damages. The Counterclaim also seeks declaratory relief and injunctive relief.

## PARTIES.

1.      The plaintiff in Counterclaim ANDREI MANN (hereinafter MANN) is a resident of the Commonwealth of Massachusetts, with offices in Newton and the State of New York, having resided in the City of New York. For over 30 years, MANN has been an entrepreneur, running several businesses, with a substantial portion of the activities in the publishing industry. For example, one of MANN's publications exceeded a circulation of 4.5 million copies. MANN is also an investor with investment projects in various jurisdictions internationally.

2.      The defendant in Counterclaim OLEG SEMENETS (SEMENETS) is an individual currently residing at 4a Sirenevaya Street, Schelkovo, Moscow Region, Russia. SEMENETS first got acquainted with MANN in about 2010 through managers at S-Info. SEMENETS is a defendant in the Counterclaim because he confiscated the partial repayment by MANN of the loan, embezzled the proceeds given to him in repayment, and engaged in other fraudulent schemes causing damages to MANN.

## JURISDICTION.

3.      This Court has jurisdiction in this action over Defendant in Counterclaim SEMENETS residing, on information and belief, in the Russian Federation because he submitted himself to the jurisdiction of this Court while filing a Complaint on June 22, 2021.

## FACTS RELEVANT TO ALL COUNTS OF COUNTERCLAIM.

## A.  OLEG SEMENETS'S BUSINESS ASSOCIATION AS INVESTOR WITH S-INFO AND ANDREI MANN IN RUSSIA

4.    MANN got acquainted with SEMENETS in or about 2013, after MANN accumulated experience in the publishing business in Russia.

5.    By that time, MANN managed S-Info in Moscow, one of the largest publishing companies in Russia, with a subsidiary in Massachusetts.  Namely, S-Info LLC was listed on the Secretary of State's portal for Massachusetts.

6.    S-Info LLC, a Massachusetts company, was owned by a Russian company, registered on January 17, 2003, under a similar name OOO S-Info, with registered address: 22/40 Pervomaiskaya St., Moscow, 105043.

7.    Initially, MANN was a 62% stakeholder in that company, along with Tatiana Ivanova (28%) and Igor Gurinovich (10%).

8.    S-Info was affiliated with Publishing House Callisto (in Cyrillic «Калисто. Издательскоий Дом С-Инфо»), INN 77036333271.

9.    In about 2013, one of S-Info's business partners introduced SEMENETS to MANN. SEMENETS has expressed interest in participating in S-Info through its investments and other involvement in S-Info's publishing and media business in Russia.  SEMENETS knew that S-Info was a profitable enterprise interested in further development and further investment. At first, SEMENTS' investments in S-info were small.

10.    SEMENETS started with relatively small investments, which were all paid back to him.

11.    From the very start, MANN arranged for repayments as becoming due.  For example, on October 11, 2014, MANN wrote to SEMENETS: "In the afternoon, the driver will bring to you what is due.  He will give the interest amount and the surplus to the young woman.

Is her name Maria, as I recall?"  SEMENETS responded: "All is correct; thank you in advance and success!

12.     In another example, on July 31, 2015, MANN wrote to SEMENETS:  "Have you received the payment?  Has the amount matched what is due?  All in order?"  SEMENETS responded on the same day: "Yes, thank you.  I have received all.  The amount is correct.  Have a good day!"

13.     In another example, on October 30, 2015, SEMENETS wrote to MANN: "Hello, Andrei Yurievich!  Today is the due day of the interest repayment.  And where?  Have a good day!"  Later in the day, SEMENETS, following up, wrote to MANN: "I have received all.  Thank you."

14.     On or about March 2, 2016, SEMENETS entered into an investment agreement with S-Info. Under this investment agreement, SEMENETS invested $500,000 in S-Info. He knew that these funds were to refinance S-Info's debt to Sberbank, the largest bank in Russia. SEMENETS and MANN signed that agreement at the S-Info office at the address: 10A 1905 Goda Street, Moscow.

15.     The repayment of the loan, with interest, took place in installments through an office called Belle at 2 Talsinskaya Street, Schelkovo, Moscow Region.  SEMENETS had appointed that location because he owned the business at that address.

16.     The money in installments was delivered in cash by Nikolay E. Kozlov (Kozlov), a manager of S-Info, who resides at the address: 13-2 Izumrudnaya Street, Apt. 332, Moscow, Russia.

17.     In addition to the contract of March 2, 2016, SEMENETS also made a series of short-term investments for a quick turnover and quick return of interest.

18.     Like with the principal loan, SEMENETS received the returns of short-term loans through Kozlov, the manager of S-Info.

19.     In the course of two years after SEMENETS acted as a private investor in S-Info, SEMENETS received back over $400,000 in dividends and interest and the repayment of the invested funds.

20.     SEMENETS's investment and reinvestment were primarily in a cash form, which was usual or standard in Russia at the time.  All his investment installments were entered in the accounting books of S-Info.  OSMANOV maintained separate control over accounting and reconciliation of the accounts with SEMENETS.

21.     SEMENETS was aware that all corporate taxes of S-Info were regularly paid in Russia.

22.     SEMENETS was aware of all the affairs in S-Info and its financial condition. SEMENETS was aware of S-Info's structure.  SEMENETS elected to invest money in S-Info on his volution.

23.     In the Complaint in this action, SEMENETS silenced that he had received money back on his loans and omitted other material facts concerning his true financial relationship with the company.

24.     While filing the Complaint in this action, SEMENETS fraudulently concealed that the debt to him, for business purposes, had been repaid.

25.     Until OSMANOV entered into a conspiracy with SEMENETS, the latter was satisfied with the financial relationship with MANN.  SEMENETS had not stated earlier that he had not received interest on his loans or that the money was not returned to him as agreed.

However, suddenly SEMENETS falsely changed his position, claiming that S-Info MANN had not paid him anything.

## B. CONVERSION BY YUSUP OSMANOV OF BUSINESS RECORDS AND COMMERCIAL PAPERS OF MANN; RESULTING IN CONSPIRACY WITH OLEG SEMENETS

26.    Using his access to MANN's business documentation, in or about 2019, OSMANOV, despite his fiduciary obligations to his employer MANN, started to use various pretexts not to provide to MANN the necessary documentation including concerning SEMENETS, as necessary.

27.    As it turned out, OSMANOV, abusing his access to the boxes of documents, converted MANN's business documentation and valuable commercial paper belonging to MANN. OSMANOV entered a conspiracy with SEMENETS to write off all repayments installments made by MANN to SEMENETS and to demand from MANN to repay the loans anew.

28.    Furthermore, OSMANOV approached other parties in a business relationship with MANN and, on information and belief, proposed to all to ruin MANN's businesses, confiscating his assets and proposing financial benefits to such parties.

29.    Using his access to the business records, OSMANOV converted the financial records memorializing the payments between SEMENETS and MANN, all in furtherance of their conspiracy to convert MANN's funds and assets.

30.    As it turned out, SEMENETS was a knowing and willing participant in that conspiracy with OSMANOV, now claiming money but omitting his debt to MANN.  SEMENETS was a willing participant in the conspiracy to ruin MANN's assets in Russia and to divide those among the co-conspirators.

31.    The conversion by OSMANOV of MANN's business records, including the evidence of the repayments to SEMENETS, resulted in MANN's inability to defend himself in the Russian Courts.  OSMANOV, SEMENETS, and others essentially expunged MANN from doing business in Russia.

32.    OSMANOV, SEMENETS, and others abused their access to the Russian Courts by filing untrue claims with material omissions and disallowing MANN to use his evidence under OSMANOV's control in Moscow.

33.    In light of SEMENETS's, OSMANOV's, and other co-conspirators' activities, the Russian Court declared S-Info bankrupt.  That resulted from their improper attacks on the business assets S-Info and MANN.

34.    As a part of the dialogue with MANN, including SEMENETS, on April 5, 2018, the 100% ownership of S-Info was taken over by Yuri Nigmedzyanov, a business contact of SEMENETS.  That company is currently under the control of a receiver, Vitali Likhachev.

35.    On May 1, 2019, MANN and SEMENETS met in Spain, where SEMENETS has had a house.

36.    MANN concluded with SEMENETS an agreement on agency services to represent MANN's interests in Moscow.  MANN discussed with SEMENETS the business plan to restructure MANN's personal assets, sell specific unnecessary holdings and assets, and collect debts from various parties.

37.    Upon returning from Spain to Moscow, SEMENETS changed his attitude and joined the campaign staged by OSMANOV to destroy MANN's business in Moscow and confiscate and divide his assets.

38.    When OSMANOV and several other parties filed in 2018-2019 claims in the Russian Courts to declare MANN bankrupt, SEMENETS ultimately joined them as one more creditor of MANN, making now a false claim for $1,750,000, which has nothing to do with the actual facts.

39.    While conspiring to harm MANN, SEMENETS established contacts with RYAZANOV and one more insider of S-Info, who had suggested inflating claims against MANN manifold without any justification.

40.    As a part of the co-conspirators' activities,  SEMENETS arranged to impose his control over S-Info, acting through a new CEO.  Because SEMENETS could not manage or supervise publishing and media business, S-Info was ultimately destroyed and into bankruptcy. Consequently, S-Info is presently under the control of a receiver.

## D. OLEG SEMENETS'S MAKING FALSE CLAIMS BEFORE LAW ENFORCEMENT

41.    SEMENETS did not conceal that they were misusing access to and connections in the Interior Ministry to harm MANN and "knock out" from MANN as much money as possible.

42.    In June of 2018, Major of Justice I.N. Evlampieva, the senior investigator of the Interior Ministry for Krasnopresnensky District of the City of Moscow, opened the criminal case against MANN.  As evidence shows, YURI RYAZANOV orchestrated the opening of that criminal case and started to extort money, offering to close that case.

43.    Subsequently, in the fall of 2019, SEMENETS joined RYAZANOV to elevate the matter in the police department RYAZANOV and his attorney.  SEMENETS did not conceal that they were misusing connections in the Interior Ministry to harm MANN and "knock out" from MANN as much money as possible.

44.     SEMENETS joined RYAZANOV's efforts to harm MANN for material gain. Previously, SEMENETS worked in the law enforcement agencies of the city of Shchelkovo, Moscow Region. SEMENETS worked and closely communicated with a colleague who currently holds the high position of Deputy Prosecutor General of Russia in law enforcement agencies. Their friendship continues; that high official of the Russian Prosecutor's Office is the godfather of SEMENETS' daughter. According to available information and convictions, SEMENETS misused his connections in the law enforcement and prosecutorial bodies for nothing other than illegal personal gain.

45.     On information and belief, SEMENETS improperly used his professional connections within the law enforcement and prosecutorial offices for nothing else but an illegal private gain of SEMENETS, who had his investments in S-Info essentially already repaid.

46.     The correspondence on the co-conspirators' threats to crush MANN through law enforcement, including recordings of the telephone conversations with such threats, are retained.

47.     On information and belief, SEMENETS has used his connection with Dmitry V. Demeshin (Demeshin), currently the Deputy Prosecutor General of the Russian Federation.  From the late 1990s, SEMENETS, on information and belief, was a friendly contact with Demeshin.  On information and belief, Demeshin is the godfather of SEMENETS's daughter.

48.     In conspiracy with others, SEMENETS improperly achieved his objective, to harm MANN, ruin his life and have his assets in Russia confiscated for division with other parties.

E.  SEMENETS PARTICIPATED IN DESTROYING MANN'S BUSINESS.

49.     As a result of the subversive activities in which SEMENETS engaged contrary to MANN's interests, using the confiscation of the documentation and blocking MANN's access to any documentation, OSMANOV spearheaded the conspiracy to ruin MANN's assets and life.

50.     S-Info, where MANN was the majority stakeholder, was subject to yearly official auditing at the end of 2017, the last year before SEMENETS engaged, as an insider, in the destruction of business and seizing of various assets.  Following auditing, S-Info's assets in 2017 included: newspapers, magazines, books, children's books, advertising, trademarks' and trade names' ownership, including those registered outside of Russia.  S-Info owned literary rights, rights to domain names on the net, rights to published production, such as periodic publications, books, children's textbooks, archives, and the library of all publications under the umbrella of S-Info, both in the printed and electronic form.

51.     The aggregate value of those assets under S-Info's control was valued at $7.8 million.

52.     However, the actual market value of S-Info was 2 to 3 times greater because the business could commonly be sold in Russia for an amount 2-3 times more than its Earnings before Interest, Taxes, Depreciation, and Amortization (EBITDA), used in Russia.

53.     Accordingly, MANN's loss due to SEMENETS's and others' destruction of S-Info alone was more than $10 million.

## COUNT I. ACCOUNTING

54.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-53, with the same force as though repled again and further state as follows.

55.     As mentioned above, in or about 2018, OSMANOV, using MANN's absence from Russia, converted MANN's business documentation and commercial papers held in boxes and stored in computers in MANN's office in Moscow.

56.     On information and belief, starting from May of 2019, SEMENETS willingly supported OSMANOV's illegal activities, participating in the benefits of MANN's inability to use his business documentation.

57.     MANN demands all and any accounting by SEMENETS.  That should include the documentation controlled by OSMANOV, with the encouragement or participation of SEMENETS, be returned to MANN and accounted for.

58.     SEMENETS should be ordered to produce the financial records concerning the loan and repayments by S-Infor to SEMENETS, provided directly and through MANN.

59.     MANN is entitled to an accounting, stated against SEMENETS.

## COUNT II.  FRAUDULENT CONCEALMENT.

60.     Plaintiffs incorporate by reference the allegations in preceding Paragraphs 1-53, with the same force as though repled again and further state as follows.

61.     SEMENETS fraudulently concealed that loans he provided to S-Info had been repaid with interest.

62.     SEMENETS concealed that information in this matter and before other parties, essentially willing that MANN personally pays S-Info's non-existing debt to SEMENETS for the second time.

63.     Plaintiff MANN is entitled to damages for fraudulent concealment stated against SEMENETS.

## COUNT III.  BREACH OF CONTRACT.

64.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-53 with the same force as though repled against and further states as follows.

65.     As mentioned above, SEMENETS was in a contractual relationship with S-Info, starting from the base contract of March 2, 2016.  SEMENETS invested in S-Info and took back dividends, interest, and other money from S-Info.  In violation of SEMENETS's contractual obligations, SEMENETS failed to disclose his payments to third parties.

66.     SEMENETS was in breach of contract, demanding that MANN pays S-Info's debt, repaid by July of 2018, for the second time.

67.     SEMENETS concealed repayment of a substantial portion of his investment in this matter and before third parties, thereby acting in breach of contract.

68.     Plaintiff MANN is entitled to damages for breach of contract stated against SEMENETS.

## COUNT IV.  MONEY HAD AND RECEIVED.

69.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-53, with the same force as though repled again and further state as follows.

70.     As stated above, S-Info, managed by MANN, repaid to SEMENETS the $500,000 investment, with dividends and interests, including repayments of SEMENETS' short-term loans, which represented money had and received.

71.     The present Count is stated in addition or the alternative to the claims based on the contract.

72.     Plaintiff MANN is entitled to damages based on the equitable theory of money had and received against SEMENETS.

## COUNT V.  UNJUST ENRICHMENT.

73.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-53, with the same force as though repled again and further state as follows.

74.    As stated above, MANN and S-Info were making regular repayments of the loan from SEMENETS, where SEMENETS benefitted from repayment of the loans, dividends, and other repayments from S-Info.

75.    SEMENETS got unjustly enriched for the amounts of repayments that he fraudulently did not include in the Complaint's claim made against MANN.

76.    The present Count is stated in addition or the alternative to the claims based on the contract.

77.    Plaintiff MANN is entitled to the cause of action based on damages for unjust enrichment against SEMENETS.

## COUNT VI.  RESTITUTION

78.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-53, with the same force as though repled again and further state as follows.

79.    As stated above, SEMENETS elected to ignore S-Info's repayments on his investments.  Therefore, SEMENETS has opened the door to a claim of restitution.

80.    SEMENETS should be ordered to return all dividends and interest on the $500,000 loan, where that loan would have been canceled.  The same principle of restitution should apply to the short-term investments by SEMENETS.

81.    The present Count is stated in addition or the alternative to the claims based on the contract.

82.    Plaintiff MANN is entitled to the cause of action based on restitution against SEMENETS, allowed by the law in equity.

## COUNT VII.  CIVIL CONSPIRACY.

83.    Plaintiffs incorporate by reference the allegations in preceding Paragraphs 1-53, with the same force as though repled again and further state as follows.

84.    In approximately May of 2019, as evidence shows, OSMANOV entered into a conspiracy with SEMENETS.

85.    On information and belief, that civil conspiracy was orchestrated by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it, including for SEMENETS's benefit, albeit illegally.

86.    It was a part of the conspiracy that OSMANOV withheld the documentary evidence on MANN's repayments and loan to SEMENETS so that SEMENETS made false claims against MANN.  SEMENETS de facto assisted OSMANOV in that conspiracy and became its active participant starting from May of 2019.

87.    The purpose of that civil conspiracy between SEMENETS and OSMANOV was unlawful, namely to deprive MANN of assets, his access to documentation, and his entitlement to dividends and assets.

88.    Plaintiff MANN is entitled to damages for civil conspiracy stated against SEMENETS.

## COUNT VIII.  DAMAGE TO BUSINESS REPUTATION.

89.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-53 with the same force as though repled against and further states as follows.

90.    As evidence shows, in approximately May of 2019, OSMANOV entered into a conspiracy with SEMENETS, intending to keep MANN out of Russia, confiscate all of his assets in Russia, and divide those among the participants.

91.    OSMANOV orchestrated that civil conspiracy, using his access to the business documentation belonging to MANN and confiscating it, including for SEMENETS's benefit, illegally.

92.    As evidence shows, SEMENETS, with the assistance of OSMANOV and other co-conspirators, organized a criminal case initiated by the Russian Ministry of Internal Affairs, securing the issuance of an arrest warrant.  That was used to keep MANN out of the country, away from the Russian court proceedings, where MANN was determined to prove his bonafide and that the claims against him had no basis on the facts.

93.    SEMENETS improperly used his connections in the prosecutors' and other law enforcement offices to make the claims under the guise of the criminal prosecution.

94.    As mentioned above, SEMENETS unlawfully supported the criminal matter opened in June 2018 by Major of Justice I.N. Evlampieva, the senior investigator of the Interior Ministry for Krasnopresnensky District for Moscow.

95.    SEMENETS did not conceal that they were abusing access to and connections in the Interior Ministry to destroy MANN's business reputation.

96.    It was a part of the conspiracy to mislead the law enforcement on the facts, including withholding documents regarding S-Info's MANN's repayments of the investments.

97.    As stated above, on information and belief, SEMENETS has used his connection with Demeshin, currently the Deputy Prosecutor General of the Russian Federation.  From the late

1990s, SEMENETS, on information and belief, was a friendly contact with Demeshin.    On information and belief, Demeshin is the godfather of SEMENETS's daughter.

98.    The purpose of that damage to MANN's business reputation was to ruin MANN's business in Russia, confiscate his assets, and divide those among the participants in the conspiracy.

99.    The loss to MANN's business reputation exceeded $10 million, given the volume of the assets and MANN's business expectations based on his businesses operated in Russia.

100.    Plaintiff MANN is entitled to damages for damage to business reputation caused by SEMENETS.

### COUNT IX.  MISREPRESENTATION.

101.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-53 with the same force as though repled against and further states as follows.

102.    In approximately mid-2019, as evidence shows, OSMANOV entered into a conspiracy with SEMENETS, forcing MANN out of Russia, confiscating all of his assets in Russia, and dividing those among the participants.

103.    SEMENETS misrepresented the facts to the law enforcement in Russia that he held no debt of S-Info or MANN.

104.    On information and belief, those misrepresentations were supported by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it, including for SEMENETS's benefit, illegally.

105.    The purpose of those misrepresentations, in which SEMENETS participated, was to ruin MANN's business in Russia, confiscate his assets, and divide those among the participants in the conspiracy.

106.    MANN is entitled to damages based on misrepresentations made by SEMENETS.

## X.  DECLARATORY RELIEF.

107.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-53 with the same force as though repled against and further states as follows.

108.    On February 24, 2022, the Russian Federation started its invasion of Ukraine.  In response, the U.S. imposed several sanctions, including prohibiting U.S. citizens from paying in dollars to citizens or residents of Russia.

109.    On April 6, 2020, and other dates, the U.S. President signed the Executive Orders imposing sanctions against Russia, affecting its residents.  By powers vested in the President by the Constitution and the U.S. laws, including the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) (IEEPA), the National Emergencies Act (50 U.S.C. 1601 et seq.), and section 301 of title 3, United States Code.  Several Departments have implemented that and other Executive Orders concerning the U.S. sanctions.

110.    The Department of the Treasury implemented that and other Executive Orders, imposing various financial sanctions.  The sanctions prohibit U.S. citizens, such as MANN, from paying anything to Russian citizens and residents in U.S. dollars.

111.    As a law-abiding person, MANN is prohibited from paying anything to SEMENETS, even if he possibly could or wished to, as long as the U.S. sanctions continue to be in force.

112.    The alleged facts concerning SEMENETS also satisfy all elements for granting declaratory relief, such as:

- (a)  a bona fide, actual, present practical need for a declaration that the U.S. citizen, MANN, is prohibited from paying anything to this Defendant because

- (b) the declaration concerns a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts;

- (c) a right of the complaining party is dependent upon the facts or the law applicable to the facts;

- (d) parties have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or the law;

- (e) the antagonistic and adverse interest(s) are all before the Court by a proper process; and

- (f) the relief sought is not merely giving legal advice or the Answer to questions propounded for curiosity.

113.    Plaintiff MANN is entitled to declaratory relief.

## XI.  INJUNCTIVE RELIEF (TEMPORARY INJUNCTION)

114.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-53 with the same force as though repled against and further states as follows.

115.    The alleged facts satisfy the elements to establish entitlement to a preliminary injunction, to wit:

- (1) the likelihood of irreparable harm to MANN;

- (2) the unavailability of an adequate remedy at law;

- (3) a substantial likelihood of success on the merits, given a pattern of the law violations by defendants; and

- (4) consideration of the public interest.

116.    Based on the sanctions imposed by the U.S. against Russia, affecting Russian nationals and residents, SEMENETS should be enjoyed from demanding from MANN any payments in U.S. dollars.

117.    The public interest in the U.S. imposes an obligation on the judicial branch to assure that foreigners do not demand from U.S. citizens any payments to them in U.S. dollars for as long as the U.S. sanctions are in force.

118.    Furthermore, MANN seeks an injunction against SEMENETS not to make misrepresentations to the Russian law enforcement representatives that are intentionally false.

119.    Plaintiff MANN is entitled to relief of a temporary injunction against SEMENETSs.

**WHEREFORE**, Plaintiff MANN prays for the relief in Counterclaim against SEMENETS, as follows:

- Orders to SEMENETS directing accounting for MANN's investments and other transactions cited above are allowed by local law and international business standards to the full extent.

- Orders granting declaratory relief and injunctive relief.

- Damages inclusive interest, and/or to the full extent of the applicable law, on all Counts for which damages are sought.

- In the alternative, restitution by SEMENETS of all money paid by MANN.

- Damages for breach of contract, damage to business reputation, and on other Counts, where damages are proper.

- To the extent allowed by the applicable law, punitive and/or exemplary damages relating to fraudulent concealment, civil conspiracy, and other claims.

- Such other and further relief as the Court will find just and fair.

- Attorney's fees and costs, to the extent allowed by the applicable Federal Rules of Civil Procedure.

Dated: April 25, 2022.    Respectfully submitted,


_____/signed George Lambert/
George Lambert, Esq.
MA bar #568769
100 Cambridge Street, 14th Floor
Boston, MA 02114
Tel. (617) 925 7500, fax (800) 852 1950
Email: Lawoffice2279@gmail.com
Attorney for Defendant and Plaintiff
in Counterclaim Andrei MANN

**VERIFICATION**

I, ANDREI MANN, party in the present action, state and declare that to the best of my knowledge, the factual allegations stated herein are true and correct.

Andrei Mann,

Date: April 25, 2022

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day, April 25, 2022, the foregoing Answer was served via efiling by Pacer on the parties as follows:

Kenneth C. Pickering
Lauren E. Sparks,
Mirick, O'Connell, DeMallie & Lougee LLP
100 Front Street
Worcester MA 01608-1477
Tel. (508) 791-8500
kpickering@mirickoconnell.com
lsparks@mirickoconnell.com
Attorneys for all Plaintiffs;

Sean T. Carnathan
O'Connor, Carnathan and Mack LLC
67 South Bedford Street, #400W
Burlington, MA 01803
781-359-9002, Fax: 781-359-9001
Email: scarnathan@ocmlaw.net
Attorney for Defendant Michael Hellman

Date: April 25, 2022

*/George Lambert/*
_____
George Lambert