IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMENETS<br><br>Plaintiffs,<br><br>v.<br><br>ANDREI MANN and MICHAEL HELLMAN<br><br>Defendants. | CIVIL ACTION No. 21cv40068-NMG<br><br>**VERIFIED THIRD-PARTY COMPLAINT OF DEFENDANT ANDREI MANN**<br><br>**AGAINST ARSEN KOMUTAEV, DEFENDANT IN THIRD-PARTY COMPLAINT**<br><br>**I.  ACCOUNTING**<br>**II.  FRAUDULENT CONCEALMENT**<br>**V.  UNJUST ENRICHMENT**<br>**VI.  RESTITUTION**<br>**VII.  CIVIL CONSPIRACY**<br>**VIII.  BREACH OF FIDUCIARY DUTIES**<br>**IX. MISAPPROPRIATION**<br>**X. CONVERSION**<br>**XI.  MISREPRESENTATION** |
| ANDREI MANN<br><br>Plaintiff in Counterclaim<br><br>v.<br><br>PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMINETS<br><br>Defendants in counterclaim | |
| ANDREI MANN<br><br>Plaintiff in Third-Party Complaint<br><br>v.<br><br>SULEIMAN GUSEINOV, ALEKSEY PETROV, and ARSEN KOMUTAEV<br><br>Defendants in Third-Party Complaint | |

1

**Preamble**

Pursuant to F.R.Civ.P. 14, the present Third-Party Complaint is brought, in connection with the Answer to the Complaint, within less than fourteen days, by an American investor, ANDREI MANN, against ARSEN KOMUTAEV, a relative of YUSUP OSMANOV, Plaintiff and Defendant in Counterclaim.  KOMUTAEV acted as an agent for OSMANOV for confiscating MANN's assets in Russia, worth over $1 million, and Croatia.  Among other things, OSMANOV induced MANN to invest in two companies incorporated in Croatia, about $ 1.6 million.  MANN, the American investor, has become a shareholder in both Croatian companies located in Croatia. Later, OSMANOV, cooperating with KOMUTAEV, caused to confiscate MANN's assets.  The Third-Party Complaint's claim includes accounting and damages based on fraudulent concealment, breach of contract, and seeking, in the alternative, equitable relief, e.g., unjust enrichment and restitution.  MANN also seeks damages for civil conspiracy among the defendants and damages for breach of fiduciary duties.

**PARTIES.**

1.      Plaintiff in Third-Party Complaint and Counterclaim ANDREI MANN (hereinafter MANN) is a resident of the Commonwealth of Massachusetts, with offices in Newton and the State of New York, having resided in the City of New York.  For over 30 years, MANN has been an entrepreneur, running several businesses, with a substantial portion of the activities in the publishing industry.  For example, one of MANN's publications exceeded a circulation of 4.5 million copies. MANN is also an investor with investment projects in various jurisdictions internationally.

2.      Defendant in Third-Party Complaint ARSEN KOMUTAEV (hereinafter KOMUTAEV) is a resident of Moscow.  KOMUTAEV's address in Russia is 38 Svoboda Street, Apt 65, Moscow.  On information and belief, KOMUTAEV is a relative of YUSUP OSMANOV (husband of the sister of OSMANOV's wife)).  KOMUTAEV has served as a director of two companies in Croatia in which MANN had an interest.   Acting in concert with others, KOMUTAEV confiscated MANN's interest in two Croatian companies and the realty assets held in their names.  As a director, KOMUTAEV has been controlling the documentation of two companies in Croatia.  KOMUTAEV has been named as a co-defendant in the related action in this Court *Andrei Mann v. Zlatna Duga D.O.O. et al.*, 1:21-cv-11882-LTS.    However, KOMUTAEV has been evading the service of process in Croatia as a director of two Croatian companies. In this action, KOMUTAEV is to be served in Moscow, Russia.

### NON-PARTIES AFFILIATED WITH THIRD-PARTY DEFENDANT, GLOSSARY.

3.      For purposes of this Third-Party Complaint, the following parties, which are not defendants, but are most relevant for the facts alleged below, are identified.

4.      Defendant in Counterclaim YUSUP OSMANOV (herewith OSMANOV) is a Russian national whose address is 4/7 Troilinskiy pereulok, Apt 65, Moscow, 119002.    As mentioned above, OSMANOV is KOMUTAEV's relative (on information and belief, husband of the sister of OSMANOV's wife).  After having worked for MANN and his business for several years, OSMANOV used his access to financial and other documentation and, breaching his fiduciary obligations, turned against MANN, causing various monetary damages and causing other harm to MANN.

5.      Another Third-Party Defendant in this action ALEKSEY PETROV, aka ALEKSEY EDUARDOVICH PETROV (PETROV), is an individual residing at 36/2 Frunzenskaya embankment, Apt. 333, Moscow, 119146, Russian Federation.  With some legal training but without an attorney license, PETROV was hired by OSMANOV ostensibly for CRANDULL's Moscow office.  PETROV has acted as OSMANOV's and KOMUTAEV's legal advisor for converting MANN's assets.

6.      Another Third-Party Defendant in the present action is SULEIMAN GUSEINOV, aka SULEIMAN MAGOMETOVICH GUSEINOV (hereinafter GUSEINOV), is a Russian national residing, on information and belief, at 24 Kutuzovsky Ave., Apt 354, Moscow, 121115, Russian Federation.  On information and belief, GUSEINOV is the father-in-law of YUSUP OSMANOV (OSMANOV), Plaintiff under the original Complaint, whose role is described hereinafter.  GUSEINOV has served as a nominee for OSMANOV for purposes of confiscating MANN's assets for OSMANOV.

7.      ZLATNA DUGA D.O.O. (hereinafter ZLATNA) is a company registered in Croatia in 2007, Croatian TIN (taxpayer ID) 28415046278, at Valica 11, 52100 Pula, Croatia. According to the description of the directors in the registry of businesses, ZLATNA's business is buying and selling properties and various realty projects.  MANN has a 50% stake in that company. Other Plaintiff himself, MANN, is aware of one other investor with a 50% stake, OSMANOV, TIN: 69140074183.  KOMUTAEV and OSMANOV fraudulently confiscated MANN's stake in ZLATNA for their benefit.

8.      A.A. IMOVINA I SERVIS D.O.O. (hereinafter IMOVINA) is a company registered in Croatia in 2007, Croatian TIN: 61151635514, at the address: Istarskih Brigada 10, 52100 Pula, Croatia.  According to the description by the directors in the registry of businesses,

IMOVINA's business is trade, housebuilding, and acting as a tourist agency and travel agency. MANN has an 18.75% stake in that company. Other than Plaintiff himself, MANN is aware of other investors: ANDREY KARPENKO, TIN: 65771402510, ANDREY ZVEREV, TIN: 83700615757, and OSMANOV, IN: 69140074183. MANN's investment was made equal to OSMANOV through a company SPID-INFO, namely 38.5%. Later MANN and OSMANOV, splitting their stakes, treated their investments separately. KOMUTAEV and OSMANOV fraudulently confiscated MANN's stake in IMOVINA for their benefit.

9.      ANDREY KARPENKO (hereinafter KARPENKO) has been a director, member, and stakeholder in ZLATNA and IMOVINA. KARPENKO's holding is registered under TIN: 65771402510. On information and belief, KARPENKO is a permanent resident in Croatia or holds a Croatian passport. MANN is unaware of KARPENKO's address(es) at this time, other than the companies' office addresses in Pula, Croatia. KARPENKO is a director who has been or is entitled to have control over documentation of either of the above companies.

10.     MIKHAIL MANUKYAN (hereinafter MANUKYAN) has been, to the best of MANN's knowledge, a director and member of IMOVINA. MANN is aware of MANYKYAN's addresses in Cyprus: Cipra, 4040 Limassol, Flat 102, Andrea Zappa 9, Cyprus; and Μακαρίου III & Λόρδου Βύρωνος, P. LORDOS, Center Block B, Floor 2, Flat 202 Νεάπολη 3105, Λεμεσός, Κύπρος, Cyprus. MANUKYAN is a defendant in this action as a director of IMOVINA, who has been or is entitled to have control over documentation of IMOVINA.

11.     SANJA BOLKOVIC, aka SANJA BOLKOVIĆ (hereinafter BOLKOVIC), has been a director at ZLATNA and IMOVINA. Other than serving as a director, BOLKOVIC has worked as an interpreter and translator. MANN is aware of BOLKOVIC's address, Alde Negrija

31, 52 100 Pula, Croatia.  BOLKOVIC is a director who has been in control of documentation of both or either of the above companies.

12.    SANDRA SEMOLIC, aka SANDRA SEMOLIĆ (hereinafter SEMOLICH), has been the accountant at ZLATNA and IMOVINA.  SEMOLIC's name is on a series of banking records related to both companies.  MANN is unaware of the address(es) of SEMOLIC, other than the corporate addresses of the above two companies in Pula, Croatia.  SEMOLIC has been in control of the documentation of either of the above companies.

## JURISDICTION.

13.    This Court has jurisdiction in this action over Defendant in Third-Party Complaint KOMUTAEV, residing, on information and belief, in the Russian Federation, under the diversity of citizenship principle under 28 U.S.C. § 1332.  The amount of the claim exceeds the statutory minimum.

14.    MANN, the American investor, who was the victim of fraudulent confiscations of his assets overseas, asserts that there is long-arm jurisdiction over KOMUTAEV for his acts, having an adverse material effect in the U.S.

15.    The present Third-Party Complaint seeks monetary damages against KOMUTAEV, as opposed to adjudication of rights to the realty located overseas, not superseding the jurisdiction of local courts to adjudicate the titles to the local real estate.

## FACTS RELEVANT TO ALL COUNTS OF CLAIMS.

### A. YUSUP OSMANOV'S WORK FOR ANDREI MANN IN MOSCOW, OSMANOV'S ACTS IN BAD FAITH

16.    On February 13, 2001, MANN caused to incorporate in Delaware FIRST CRANDULL CONSTRUCTION INC., State docket #3355576, for various business purposes.  On

December 12, 2006, it was converted into a Massachusetts corporation, with an address: 61 Great

Meadow Rd., Newton, MA 02459, EIN ID #113587928.

17.     In 2004, CRANDULL was registered in the Russian Federation as a representative

office of a foreign corporation, with the right to hold assets.  CRANDULL has been registered

with the Tax Interdistrict Department No. 47 for Moscow.

18.     Since 2004, OSMANOV has served as a director of the representative office.

OSMANOV's information shows tax ID 770401516773, at 4/7 Troilinsky pereulok, Apt 59,

Moscow, 119002.

19.     From about 2017, MANN learned from reliable sources that OSMANOV engaged

in activities without MANN's or CRANDULL's authorization and engaged in self-dealing.

20.     On June 17, 2019, OSMANOV was terminated by a lawful corporate act by the

Massachusetts corporation, CRANDULL.

B. KOMUTAEV AND OSMANOV CONFISCATED MANN'S ASSETS IN RUSSIA

21.     MANN has been the titleholder of the real estate property in the proximity of

Moscow, at the address: 260/1, Village Condominium Ranis-ZAO SKP, Uspensky, Odintsovo

District, Moscow Region, Russia.

22.     That real property contained a plot of 1,361 sq.m. (14,650 sq.f.), plot ID

50:20:0050211:43.

23.     That realty also included a non-residential house (sauna), with the 86.5 sq.m. (931

sq.f.), with the same address and plot number.

24.     Despite being terminated, OSMANOV unlawfully and fraudulently continued to

act as the director of CRANDULL's office in Moscow, signing papers on its letterhead, including

filing those in administrative offices in Russia.  Furthermore, OSMANOV acted as though he was MANN's representative based on fabricated documents for all purposes.

25.    In order to materialize his schemes, OSMANOV used PETROV as a legal advisor of CRANDULL's Moscow office.

26.    As it turned out, while unlawfully holding himself out as MANN's representative in Moscow, OSMANOV and KOMUTAEV engaged in a scheme to confiscate the above-described realty assets in Russia, which MANN had owned.

27.    On July 23, 2018, OSMANOV and his father-in-law, GUSEINOV, concluded a cession contract (assignment) between them.  Under that assignment, OSMANOV assigned to GUSEINOV the right to claim the realty held by MANN.

28.    The documentation from July 23, 2018, showed that the co-conspirators planned to confiscate MANN's real estate at least six months in advance, all in secrecy from MANN.

29.    As private investigation shows, on February 8, 2019, KOMUTAEV, aided by OSMANOV and PETROV, fabricated documents as though he had concluded with MANN an agreement on using the above property as "collateral."  The value of the above property was stated in that purported agreement as 65 million rubles (about $920,000 at the time).  Currently, the value of that realty is over $1 million, subject to additional appraisal.

30.    However, MANN never signed that agreement and did not even know about KOMUTAEV's and OSMANOV's preparing a fabrication.

31.    On the same day, February 8, 2019, GUSEINOV assigned to KOMUTAEV the claims to a non-existent "debt" for 65 million rubles, the same amount as the above fraudulent transaction where PETROV acted instead of MANN, without authority.

32.     OSMANOV was aware that his claims against MANN were not supportable.  In order to shield himself from the direct consequences, OSMANOV assigned to KOMUTAEV the purported debts of MANN to himself, all after the fact.  PETROV was instrumental in preparing invalid documents, particularly those that were backdated.

33.     On May 21, 2020, KOMUTAEV brought in a Moscow Court a claim against MANN upon a fabricated loan agreement No. 18/4 of April 1, 2017.  KOMUTAEV valued his baseless claims for 170,708,118 or about $2,360,862.

34.     KOMUTAEV's claim was fraudulent because MANN never signed any agreements with KOMUTAEV, had no relationship with KOMUTAEV, and had never even met KOMUTAEV.

35.     OSMANOV's claims against MANN were repeatedly denied in the Russian Courts.  For example, by a court decision in Moscow dated August 17, 2021, OSMANOV was excluded from the list of MANN creditors.

36.     PETROV, who is not a lawyer, but has acted as a legal adviser to OSMANOV and KOMUTAEV, misused a power of attorney from CRANDULL for representative functions. PETROV has no right to alienate CRANDULL's property.  Acting without any authority, PETROV prepared and assisted in fabricating fraudulent documents dated February 8, 2019, and fraudulently signed those instead of MANN. The contract under which PETROV signed a contract with MANN was illegal and invalid from the very beginning.

37.     However, on May 14, 2021, KOMUTAEV obtained ex parte a decision of the Moscow Arbitration Court, which declared that KOMUTAEV left for himself the "collateral", representing the plot of land the building identified above.

38.    Thus, MANN could not familiarize himself with the documents fabricated by KOMUTAEV for that Court's session. As a result, MANN did not have the opportunity to object to the issue's merits and present his position.

39.    While MANN has an interest in the confiscated realty, KOMUTAEV, acting in conspiracy with OSMANOV and PETROV, caused damages to MANN.

## C. CONVERSION OF BUSINESS RECORDS AND COMMERCIAL PAPERS OF MANN.

40.    Using his access to MANN's business documentation, in or about 2017, OSMANOV, assisted by PETROV, started to use various pretexts not to provide MANN with the necessary documentation.  OSMANOV, assisted by PETROV, both acted in violation of their employer MANN.

41.    As it turned out, OSMANOV, abusing his access to the boxes of documents, converted MANN's business documentation and valuable commercial paper belonging to MANN. OSMANOV did so to fabricate false documents.

## D. CONFISCATION KOMUTAEV AND OSMANOV OF ANDREI MANN'S ASSETS IN CROATIA

42.    In or about 2007, both ZLATNA and IMOVINA were registered in Croatia in the City of Pula, on the Adriatic Coast of Croatia.

43.    The main assets of ZLATNA and IMOVINA were the rights to the land with permits for development.  Those rights were held in the companies' names by the prior owners of those rights to simplify the sale of the rights.

44.    From 2008-to 2010, MANN received a series of business proposals from Croatia connected to ZLATNA and IMOVINA.  Those proposals were received through KARPENKO,

who happened to be a contractor for MANN's residential house in the neighborhood of Moscow, Russia.

45.    Apart from acting as a contractor to MANN, KARPENKO, as he represented to MANN, had powerful and beneficial connections in Croatia. He was involved in the construction business in that country.

46.    KARPENKO and OSMANOV, who had a prior relationship before acquaintance with MANN, proposed that MANN participate in a construction project in Croatia.    The investments were to be channeled, in part, through Petrotek-Holding, a company registered in Moscow.

47.    In 2008-2010, the prior owners of the rights completed their complex claims among themselves to clear the rights to the titles to the land.

48.    KARPENKO and OSMANOV made representations to MANN that investments in Croatia were now safe and that they controlled the legality and safety of the proposed investments in Croatia.

49.    Additionally, MANN got similar assurances from Petrotek-Holding's principals, Viktor Islamov, Albert Kharisov, and Sergey Chernikov, whom MANN knew before.

50.    MANN also received assurances from other Petrotek-Holding's managers, namely Defendant MANYKYAN and Andrey Zverev.

51.    The business purposes of both companies were declared, for registration, to be construction, transportation, and travel agencies' services.  Defendants opened the bank accounts for both companies.

52.    What was not disclosed to MANN in the course of the representations by the above persons associated with Petrotek-Holding was that they all were to benefit from MANN's investments directly.

53.    At some point, OSMANOV bought a 50% stake in ZLATNA from Petrotek-Holding.

54.    It was represented to MANN that Petrotek paid in 2008 about $3 million to purchase land in Croatia.

55.    As proposed to MANN, he was to invest and buy out half of that amount, about $1.6 million with interest, as a loan.

56.    Thereby, all investments by all participants were memorialized as personal investments of the participants in their individual capacities, regardless of the corporate structures.

57.    ZLATNA's bank account was No: 2340009-1110311460, at Privredna Banka Zagreb d.d., with the address: Zagreb, Podruznicz, Pula, Ulica Sergijevaca 11, Pula, Croatia, bank's IBAN ID: HR08 2340 0091 1103 1146 0.  The account had a local currency and Euros sub-accounts.

58.    Likewise, IMOVINA's bank account was at the same bank, No. 082340009-111 0284395 Priveredna Banka Zagreb,  with the same information on the bank, likewise having a local currency and Euros sub-accounts.

59.    MANN did due diligence research and had no concerns as to the reliability of the bank for sending investments in Croatia.  Privredna Banka Zagreb, or PBZ, established in 1966, is the second-largest bank in Croatia (after Zagrebačka Banka), owned by the Intesa Sanpaolo group of Italy. It is listed on the Zagreb Stock Exchange and is one of 24 companies included in the CROBEX share index.

60.     MANN's due diligence research showed that that bank was fully privatized in 1999. As of 2017-2018, that bank had a net income of €223 million (about $250 million), total assets of about €10,047 million (about $10.5 billion), and about 3,650 employees.  MANN was satisfied that that bank was stable, had sufficient documentation, and could be the source of detailed financial documentation concerning its clients ZLATNA and IMOVINA.

61.     MANN considered, among other things, that Croatia executed the Bilateral Investment Treaty with the USA.  It was signed on July 13, 1996, and entered into force on June 20, 2001.  That Treaty contains typical terms aimed at protecting American investors in that country.

62.     By approximately 2014, OSMANOV, acting in concert with KOMUTAEV, KARPENKO, and MANUKYAN became the driving force for both companies, ZLATNA and IMOVINA.  Namely, OSMANOV replaced Petrotek as the investor in these two companies.

63.     In the latest available company assets and liabilities statement of ZLATNA for 2014, there is an entry that the debt of ZLATNA to its investors was 18,160,511 Croatian kunas (local currency), which is, at the current rate of exchange, about $2.8 million, plus interest.  Since MANN has a 50% stake in that entity, ZLATNA's debt to MANN is at least $1.4 million.

64.     In 2015, MANN conducted negotiations to sell his stake in ZLATNA and IMOVINA with a potential buyer, a Croatian national Jadranka Maksic, a local realtor.  Those negotiations were not successful, given the complications with the rights to the titles to the land, coming with the ownership stakes in ZLATNA and IMOVINA.

65.     Likewise, in the latest available company assets and liabilities of IMOVINA, for 2014, there is an entry that the debt of IMOVINA to its investors was 6,316,848.19 Croatian kunas,

which at the present exchange rate is about $1 million, plus interest. Since MANN has an 18.75%

stake in IMOVINA, the debt of IMOVINA to MANN is in excess of $190,000.

66.     From time to time, the local directors of both companies sent out invoices for

certain payments for the day-to-day business of the companies in Croatia.

67.     In 2017, MANN executed with OSMANOV a loan agreement for about $650,000.

However, a loan did not mean that MANN transferred his material rights to the land held in the

names of ZLATNA or IMOVINA. That loan agreement was not officially registered or certified

by any authority.

68.     Since 2018, MANN has not obtained substantive information or accounting

documents from ZLATNA, IMOVINA, KOMUTAEV, or OSMANOV. Furthermore, MANN's

loan did not allow OSMANOV to remove MANN from control over the accounting in ZLATNA

and IMOVINA.

69.     On November 4, 2019, MANN executed in New York City a Power of Attorney to

German Kisselman, a Russian national, who proposed facilitating the collection of information

and liquidation of the assets for MANN.

70.     After that Power of Attorney, Apostilled, was sent to Kisselman, it turned out that

Kisselman became unavailable or unreachable. MANN suspects that OSMANOV used Kisselman

to deprive MANN of his interest in ZLATNA and IMOVINA. Otherwise, Kisselman's silence

despite MANN's inquiries could be inexplicable.

71.     Once the COVID-19 pandemic started to spread in Europe, MANN understood that

there could be delays in accounting and documentation.

72.     MANN has been able to find out from the companies' registry in Croatia that both

companies are active, which eased MANN's concerns.

73.    Yet, despite the passage of time, MANN has been unable to obtain accounting documentation from either of the companies.

74.    Given the silence from the directors, MANN has made a business decision to withdraw his investment(s) from ZLATNA and IMOVINA, pulling out the assets due to him.

75.    As a result of the subversive activities in which KOMUTAEV OSMANOV engaged in conspiracy contrary to MANN's interests, using the confiscation of the documentation and blocking MANN's access to any documentation, OSMANOV spearheaded the conspiracy to ruin MANN's assets and life.  KOMUTAEV was an active participant in that conspiracy.

## COUNT I. ACCOUNTING

76.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-75, with the same force as though repled again and further state as follows.

77.    In or about 2020, OSMANOV, using his relative KOMUTAEV, confiscated MANN's realty in Moscow Region and MANN.  Likewise, OSMANOV, using his agent KOMUTAEV, caused the indebtedness of ZLATNA to MANN, in which he has held a 50% stake, was $1.4 million and the indebtedness of IMOVINA to MANN, in which he has held an 18.75% stake, was about $190,000.  Those numbers were as of 2014, the latest time MANN could obtain those.

78.    MANN demands all and any accounting documentation from KOMUTAEV, to the full extent allowed by the local laws and international business standards of accounting regarding KOMUTAEV's confiscation of MANN's realty in the Moscow region.

79.    KOMUTAEV should be ordered to produce the banking records from Russia and Croatia that he controls personally or through his co-conspirators OSMANOV, PETROV, and GUSEINOV.

80.     As a victim of fraud resulting in confiscating his assets, as an investor and shareholder, Plaintiff MANN is entitled to an accounting stated against KOMUTAEV.

## COUNT II.  FRAUDULENT CONCEALMENT.

81.     Plaintiffs incorporate by reference the allegations in preceding Paragraphs 1-75, with the same force as though repled again and further state as follows.

82.     From about 2017 onwards, MANN observed that, because of OSMANOV's and KOMUTAEV's activities, it became difficult or impossible to obtain sufficient documentation from ZLATNA and IMOVINA.

83.     KOMUTAEV, acting under OSMANOV's direction, and other directors, who had been contact persons for MANN's questions to ZLATNA and IMOVINA, stopped sending MANN documents.  Thereby, KOMUTAEV, as a director, had an obligation to account before MANN as the investor, shareholder, and one more director.  Such conduct was intentional and constituted fraudulent concealment by KOMUTAEV.

84.     KOMUTAEV, exercising his control as a director in both companies, arranged that co-directors or secretaries, permanently residing in Croatia, BOLKOVIC, aka BOLKOVIĆ, failed to produce the documentation due to MANN.

85.     Plaintiff MANN is entitled to damages for fraudulent concealment stated against KOMUTAEV.

## COUNT III.  DECLARATORY RELIEF
## (ANNULMENT OF FABRICATED CONTRACT).

86.     Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-75 with the same force as though repled again and further states as follows.

87.     As stated above, there is evidence that on July 23, 2018, KOMUTAEV prepared fraudulent documentation.  As discovered, it showed that the co-conspirators planned to confiscate MANN's realty, all in secrecy from MANN.

88.     As private investigation shows, on February 8, 2019, KOMUTAEV, aided by OSMANOV and PETROV, fabricated documents as though he had concluded with MANN an agreement on using the above property as "collateral."  The value of the above property in that purported agreement was stated as 65 million rubles (about $920,000 at the time).  Currently, the value of that realty is over $1 million, subject to additional appraisal.

89.     MANN never signed that agreement and did not even know about KOMUTAEV's and OSMANOV's preparing a fabrication.

90.     On the same day, February 8, 2019, GUSEINOV assigned to KOMUTAEV the claims to a non-existent "debt" for 65 million rubles, the same amount as the above fraudulent transaction where PETROV acted instead of MANN, without authority.

91.     PETROV, the non-attorney legal advisor for OSMANOV and KOMUTAEV, using a false power of attorney from CRANDULL, but without any authority whatsoever, prepared and assisted in the fabrication of the February 8, 2019, fraudulent documentation and, in one instance, signed it instead of MANN.  That contract where PETROV signed for MANN was illegal and void ab initio.

92.     The alleged facts also satisfy all elements for granting declaratory relief, such as:

- (a)  a bona fide, actual, present practical need for a declaration that the U.S. citizen, MANN, is prohibited from paying anything to these Defendants;

- (b) the declaration concerns a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts;

- (c) a right of the complaining party is dependent upon the facts or the law applicable to the facts;

- (d) parties have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or the law;

- (e) the antagonistic and adverse interest(s) are all before the Court by a proper process; and

- (f) the relief sought is not merely giving legal advice or the Answer to questions propounded for curiosity.

93.    Using fabricated documents, KOMUTAEV has illegally held MANN's real estate in the Moscow Region.

94.    Plaintiff MANN is entitled to declaratory relief against KOMUTAEV; for example, the documentation concerning using MANN's realty as collateral to non-existent debts was fabricated, nil and void.

## COUNT IV.  UNJUST ENRICHMENT.

95.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-75, with the same force as though repled again and further state as follows.

96.    As stated above, KOMUTAEV illegally obtained title to MANN's realty in the Moscow Region for over $1 million.

97.    As stated above, ZLATNA and IMOVINA, under control of KOMUTEV and OSMANOV, admitted to MANN and other investors that debts existed to the investors.  Out of that debt, MANN's entitlement to the debt of ZLATNA was about $1.4 million, and the debt of IMOVINA about $190,000.  That admission of the debt was based on MANN's contributions of

capital and other payments both to ZLATNA and IMOVINA, controlled by KOMUTAEV and OSMANOV.

98.    As stated above, both ZLATNA nor IMOVINA, controlled by KOMUTAEV and OSMANOV, failed to provide the documentation required from the companies before the investors.

99.    Moreover, under the directives of KOMUTAEV, the other directors of ZLATNA and IMOVINA stopped providing any accounting.  MANN has concluded that ZLATNA and IMOVINA, because of KOMUTAEV's and OSMANOV's confiscating MANN's assets, have no intention to account for their investors' capital, dividends, or any corporate affairs.

100.    Plaintiff MANN is entitled to the cause of action based on damages for unjust enrichment against KOMUTAEV.

## COUNT V.  RESTITUTION

101.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-75, with the same force as though repled again and further state as follows.

102.    As stated above, KOMUTAEV and OSMANOV caused the realty in Moscow Region, held by MANN, confiscated to them.

103.    As stated above, ZLATNA and IMOVINA, controlled by KOMUTAEV and OSMANOV, admitted to MANN and other investors that debts existed to the investors.  Out of that debt, MANN's entitlement to the debt of ZLATNA was about $1.4 million, and the debt of IMOVINA about $190,000.  That admission of the debt was based on MANN's contributions of capital and other payments both to ZLATNA and IMOVINA, controlled by OSMANOV and KOMUTAEV.

104.    As mentioned above, KOMUTAEV and other directors at ZLATNA and IMOVINA stopped providing any accounting to MANN.  MANN has concluded that KOMUTAEV, abusing his rights as a director, caused ZLATNA and IMOVINA to have no intention to account for their investors' capital, dividends, or any corporate affairs.

105.    Plaintiff MANN is entitled to the cause of action based on restitution from KOMUTAEV to the full extent allowed by the law.

## COUNT VI.  CIVIL CONSPIRACY.

106.    Plaintiffs incorporate by reference the allegations in preceding Paragraphs 1-75, with the same force as though repled again and further state as follows.

107.    KOMUTAEV's relative, OSMANOV, was the driving force in several conspiracies he organized against MANN, as facts show.

108.    In or about 2017, as MANN has observed, OSMANOV arranged through KOMUTAEV and other contact persons at ZLATNA and IMOVINA, with whom he had communicated before, stopped responding or providing documentation to MANN.

109.    On information and belief, that civil conspiracy was orchestrated by OSMANOV, who had sufficient influence upon the business conduct of his relative KOMUTAEV, as well as KARPENKO and MANUKYAN.

110.    As mentioned above, OSMANOV was removed from the head of the representative office of CRANDULL in Moscow and from doing anything for or on behalf of MANN.  Yet, Osmanov continued setting up conspiracies against him, in concert with KOMUTAEV and other persons, namely PETROV, GUSEINOV, and others.

111.    The purpose of that civil conspiracy was unlawful, namely to deprive MANN of his access to documentation and his entitlement to dividends and assets.

112.    Plaintiff MANN is entitled to damages for civil conspiracy stated against KOMUTAEV.

## COUNT VII.  MISREPRESENTATION.

113.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-75 with the same force as though  and further states as follows.

114.    On numerous occasions, KOMUTAEV misrepresented material facts before third parties, affecting MANN.

115.    While acting as a purported creditor of MANN, KOMUTAEV made misrepresentations to third parties to raid MANN's assets.

116.    KOMUTAEV, in concert with OSMANOV and other co-conspirators, undertook (1) false statements to the Russian investigators and other persons concerning material facts; (2) they knew that their representations were false; (3) they had an intention that the representation induced other parties to act on it; which resulted in (4) consequent injury to MANN, while various parties acted in reliance on their representations.

117.    In coordination with KOMUTAEV, OSMANOV fraudulently induced MANN to invest in two Croatian companies, making misrepresentations as though such investment was safe, knowing that he was in a position to cut off MANN from all information and confiscate MANN's stake.

118.    Thereupon OSMANOV nominated KOMUTAEV as a director of ZLATNA and IMOVINA to pursue the agenda to strip MANN of his stake in those companies.

119.    KOMUTAEV, acting as a director in ZLATNA and IMOVINA, made misrepresentations concerning MANN, as though MANN was his and OSMANOV's debtor, to confiscate his stake in those two companies.

120.    As a result of KOMUTAEV's misrepresentations, the conspiracy headed by OSMANOV succeeded in confiscating MANN's ownership of the realty in the Moscow Region, which KOMUTAEV took over MANN's stake in ZLATNA and IMOVINA.

121.    MANN is entitled to damages against KOMUTAEV based on misrepresentation.

## VIII.  CONVERSION.

122.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-75 with the same force as though  and further states as follows.

123.    As mentioned above, in 2018 and 2019, OSMANOV, abusing his access to the business documentation of MANN, confiscated MANN's business documentation and commercial paper.  OSMANOV was assisted in that by PETROV, acting, in a substantial part, for the benefit of KOMUTAEV.

124.    Using the conversation of the documents, OSMANOV and KOMUTAEV planned conversion of the real estate held by MANN in the Moscow Region and of the stakes in ZLATNA and IMOVINA.

125.    Using that conversion, KOMUTAEV gained control over the realty in the Moscow Region, held by MANN, upon a scheme of fabricated documents that MANN never signed.

126.    Likewise, KOMUTAEV and OSMANOV arranged to confiscate MANN's stakes in ZLATNA and IMOVINA, representing the rights to participate in their management and confiscating MANN's entitlement to dividends and benefits.

127.    On June 17, 2019, OSMANOV was terminated by the Massachusetts corporation CRANDULL and from any functions concerning MANN's business.  Yet, OSMANOV continued to act as if he still was in control and represented MANN's interests.  KOMUTAEV and OSMANOV used their control over MANN's business documentation to convert his assets.

128.    MANN is entitled to damages based on KOMUTAEV's conversion.

## COUNT XI.  MISREPRESENTATION.

129.    Plaintiff incorporates by reference the allegations in preceding Paragraphs 1-75 with the same force as though  and further states as follows.

130.    KOMUTAEV, in concert with OSMANOV and others, undertook (1) false statements to third parties concerning material facts; (2) he knew that his and his co-conspirators' representations were false; (3) he had an intention that the representation induced other parties to act on it; which resulted in (4) consequent injury to MANN, while various parties acted in reliance on their representations.

131.    As facts supported by evidence showing, KOMUTAEV participated in fabricating documents, as though MANN owed KOMUTAEV 65 million rubles, which KOMUTAEV, in conspiracy with PETROV and to OSMANOV, which the latter concealed from MANN.

132.    On information and belief, that civil conspiracy and misrepresentations accompanying it, in which KOMUTAEV participated, were orchestrated by OSMANOV, who had access to the business documentation belonging to MANN and confiscated it.

133.    As evidence shows, KOMUTAEV, assisted by OSMANOV and PETROV, misrepresented the various parties concerning MANN.  That included MANN's interest in ZLOTNA and IMOVINA.

134.    The purpose of KOMUTAEV's misrepresentations, in which OSMANOV and PETROV participated, was to ruin MANN's business in Russia, confiscate his assets, and divide those assets among the participants in the conspiracy.

135.    MANN is entitled to damages against KOMUTAEV based on his misrepresentations.

**WHEREFORE**, Plaintiff MANN prays for the relief against KOMUTAEV, as follows:

- Orders to KOMUTAEV to account for MANN's investments and other transactions cited above to the full extent allowed by local law and international business standards.

- Damages of at least $1 million, inclusive interest, and/or to the full extent of the applicable law, on all Counts for which damages are sought.

- In the alternative, restitution by KOMUTAEV of all investments made by MANN, that KOMUTAEV, acting in conspiracy with OSMANOV, caused to confiscate for his benefit.

- Damages on other Counts, where damages are proper.

- To the extent allowed by the applicable law, punitive and/or exemplary damages relating to fraudulent concealment, civil conspiracy, and breach of fiduciary duties claims.

- Such other and further relief as the Court will find just and fair.

- Attorney's fees and costs, as allowed by the Federal Rules of Civil Procedure.

## DEMAND OF JURY TRIAL.

MANN demands jury trial on all counts that are triable before the jury.

Dated: May 6, 2022.   Respectfully submitted,


_____/signed George Lambert/
George Lambert, Esq.
MA bar #568769
100 Cambridge Street, 14th Floor
Boston, MA 02114
Tel. (617) 925 7500, fax (800) 852 1950
Email: Lawoffice2279@gmail.com
Attorney for Andrei Mann, Plaintiff in Third-Party
Complaint

## VERIFICATION

I, ANDREI MANN, a party in the present action, state and declare, under the penalties of perjury under the laws of the United States, that to the best of my knowledge, the factual allegations stated herein are true and correct.

Andrei Mann

_____

Andrei Mann,

Date: May 6, 2022

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day, May 6, 2022, the foregoing Answer was served via efiling by Pacer on the parties as follows:

Kenneth C. Pickering
Lauren E. Sparks,
Mirick, O'Connell, DeMallie & Lougee LLP
100 Front Street
Worcester MA 01608-1477
Tel. (508) 791-8500
kpickering@mirickoconnell.com
lsparks@mirickoconnell.com
Attorneys for all Plaintiffs;

Sean T. Carnathan
O'Connor, Carnathan and Mack LLC
67 South Bedford Street, #400W
Burlington, MA 01803
781-359-9002, Fax: 781-359-9001
Email: scarnathan@ocmlaw.net
Attorney for Defendant Michael Hellman

Date: May 6, 2022

*/George Lambert/*
_____

George Lambert