IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMINETS<br><br>Plaintiffs,<br><br>v.<br><br>ANDREI MANN and MICHAEL HELLMAN<br><br>Defendants. | CIVIL ACTION No. 21cv40068-NMG<br><br>**VERIFIED MOTION OF DEFENDANT ANDREI MANN**<br><br>**TO DISQUALIFY MIRICK, O'CONNELL, DEMALLIE & LOUGEE, LLP FROM REPRESENTING SEVEN PLAINTIFFS BASED ON IMPERMISSIBLE CONFLICT** |
| ANDREI MANN<br><br>Plaintiff in Counterclaim<br><br>v.<br><br>PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMINETS<br><br>Defendants in counterclaim | |
| ANDREI MANN<br><br>Third-Party Plaintiff<br><br>v.<br><br>SULEIMAN GUSEINOV, ALEXEY PETROV, and ARSEN KOMUTAEV<br><br>Third-Party Defendants | |

1

Defendant and Plaintiff in Counterclaim and the Third-Party Complaint, ANDREI MANN (MANN), respectely moves this honorable Court to disqualify Mirick, O'Connell, DeMallie & Lougee, LLP from representing at least ARSENYI SHCHEPIN, and GEORGY SHCHEPIN, or from representing all seven Plaintiffs and Defendants in Counterclaim in this action.

## PREAMBLE.

In short, there is a $1.2 million controversy between Plaintiff and Defendant in Counterclaim YUSUP OSMANOV (OSMANOV), on the one hand, and two brothers, ARSENYI SHCHEPIN and GEORGY SHCHEPINS (collectively the SHCHEPINS).

Furthermore, there is a controversy between OSMANOV and four more Plaintiffs and Defendants in Counterclaim. Namely, OSMANOV, as the verified alleged facts show, seized control of MANN's documentation and financial issues. OSMANOV was concealing from those four parties the approved repayments of the loans, on information and belief, embezzling those as his own money.

Such factual circumstances, reflected in the verified pleadings, resulted in the impermissible conflict for the opposing counsel to represent all of them, taking risks unwarranted under the Rules of Professional Conduct in Massachusetts, Rule 1.7 ('Conflict of Interest: Current Clients') and other law.

In particular, Rule 1.7(a) states that representation, as described in the facts hereinafter, is prohibited:

> "(a) Except as provided in paragraph (b), a lawyer **shall not** represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or

2

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

### A. CERTIFICATION UNDER LOCAL RULE 7.1(a)(2)

Prior to bringing this Motion, MANN's counsel promptly raised these issues in a meet-and-confer with the partner of Mirick, O'Connell, DeMallie & Lougee LLP, inviting those to look into the issue of conflict and to withdraw voluntarily. Although the opposing counsel wrote he would look into that, it is clear to the movant that a large firm's pressure for the billing would likely result in no voluntary disqualification. The undersigned certifies that he has complied with Local Rule 7.1(a) (2), namely that he has conferred and has attempted in good faith to resolve or narrow the issue.

### B. PARTIES AMONG WHICH ALLEGED IMPERMISSIBLE CONFLICTS EXIST.

Plaintiff and Defendant in Counterclaim OSMANOV is a Russian national whose address is 4/7 Troilinskiy pereulok, Apt 65, Moscow, 119002. OSMANOV is Defendant in Counterclaim. After having worked for MANN and his business for several years, OSMANOV used his access to financial and other documentation and, breaching his fiduciary obligations, turned against MANN, causing various monetary damages and other harm to MANN.

Plaintiff and Defendant in counterclaim ARSENYI SCHEPIN (ARSENYI) is the son of co-Plaintiff and Defendant in counterclaim DARIA LATOUR (LATOUR). On information and belief, ARSENYI has been residing at 5 Skakovaya St., Apt 33-34, Moscow, Russia. ARSENYI has been named Defendant in the counterclaim because he was the beneficiary of a trust, whose operation LATOUR and her co-conspirator attributed to MANN, fraudulently claiming from MANN the trust money with which MANN had nothing to do.

Plaintiff and Defendant in counterclaim GEORGY SCHEPIN (GEORGY) is also the son of LATOUR. On information and belief, GEORGY has been residing at 4th Mikroraion, 404, Apt 89, Town Strezhevoy, Tomsk Region, Russia. GEORGY is Defendant in the counterclaim because he was the beneficiary of a trust, whose operation LATOUR and her co-conspirator attributed to MANN. The SHCHEPINS, apparently acting on misinformation by OSMANOV, fraudulently claimed from MANN the trust money with which MANN had nothing to do.

C. YUSUP OSMANOV SEIZING CONTROL OF MANN'S BUSINESS DOCUMENTATION

As stated in the pleadings, on February 13, 2001, MANN caused to incorporate in Delaware FIRST CRANDULL CONSTRUCTION INC., State docket #3355576, for various business purposes. On December 12, 2006, it was converted into a Massachusetts corporation, with an address: 61 Great Meadow Rd., Newton, MA 02459, EIN ID #113587928.

In 2004, CRANDULL was registered in the Russian Federation as a representative office of a foreign corporation, with the right to hold assets. CRANDULL has been registered with the tax authorities in Moscow. MANN caused that certain realty in the Russian Federation, acquired on or about September 22, 2004, to be held in the name of CRANDULL.

By way of a fundamental error in judgment, overtrusting a person, and without recognizing a true character, MANN hired OSMANOV. From the date of CRANDULL's registration in Russia, OSMANOV has served as a representative office director in Moscow. OSMANOV's information shows tax ID 770401516773, at 4/7 Troilinsky pereulok, Apt 59, Moscow, 119002.

Yet, as the pleadings show, from about 2017, MANN learned from reliable sources that OSMANOV engaged in activities without MANN's or CRANDULL's authorization.

MANN also learned that OSMANOV engaged in self-dealing. OSMANOV directed S-Info and MANN to direct the payments, from time to time, to his account at Sabadell Bank,

Alicante, Spain, on information and belief to bypass the taxes in Russia.  OSMANOV used those moneys, in particular, for maintaining his house at Ciudad Quesada, Rojales, in the Province of Alicante, Spain.

On June 17, 2019, OSMANOV was terminated by a lawful corporate act by the Massachusetts corporation, CRANDULL.  At that time, OSMANOV was obligated to transfer all documents to MANN, return any stamps and seals of CRANDULL, and account for financial matters.  OSMANOV failed to do any of that, instead, perpetuating his unlawful role, holding himself out as CRANDULL's and MANN's representative.

### D. CONVERSION AND MISUSE BY YUSUP OSMANOV OF MANN'S BUSINESS RECORDS AND COMMERCIAL PAPERS.

Using his access to MANN's business documentation, in or about 2019, OSMANOV, despite his fiduciary obligations to his employer MANN, started to use various pretexts not to provide MANN with the necessary documentation.

As it turned out, OSMANOV, abusing his access to the boxes of documents, converted MANN's business documentation and valuable commercial paper belonging to MANN. OSMANOV did so to fabricate false documents in the name of CRANDULL, S-Info, and other entities that MANN managed.

Furthermore, OSMANOV approached the SHCHEPINS and various parties in a business relationship with MANN. Based on information and belief, OSMANOV proposed to ruin MANN's businesses, confiscate his assets, and propose financial benefits to such parties.  That included DARIA LATOUR.

Using his access to the business records, OSMANOV converted the financial records memorializing the repayments of the loan to LATOUR, as described more in detail below.

### E.  ALLEGED CONVERSION BY OSMANOV OF THE SHCHEPINS' TRUST PROCEEDS AND FALSE SHIFTING OF BLAME ON MANN

In about 1997-1998, the SHCHEPINS's father, Dmitry Shchepin, placed the proceeds from his salary and benefits and other amounts in a trust for his two sons, ARSENYI and GEORGY, at Fleet National Bank in Boston (presently merged into Bank of America).  MANN had nothing to do with that trust, as the production of documents has shown.

The trust documentation says that Fleet National Bank in Boston was the trustee for the sons.  Thereby MANN had no connections with anyone at that bank and had nothing to do with the bank's attorneys setting up the trust documentation for LATOUR's sons.

On information and belief, in June of 2016, Dmitry, the main contributor to the trust in Massachusetts, LATOUR, ARSENYI, and GEORGY closed the trust in Massachusetts.

They caused the trust proceeds, approximately $600,000 for each of both sons, a total of $1.2 million, to be transferred to the account or account at Otkrytye bank, a Russian bank in Moscow.  MANN had nothing to do with those transactions nor control over the account(s) at Otkrytye bank.

MANN has no information as to what happened to that money.  In contrast, MANN had no control over such an account or accounts at Otrytye Bank and had no statements from those bank accounts, controlled at that time by LATOUR's family members.

MANN has information, and not only oral information, that OSMANOV was involved in the liquidation of these incomes in his favor in Moscow, misappropriating the trust's income in his favor. After that, OSMANOV shifted the blame to MANN.

Namely, on May 14, 2020, the Moscow Arbitration Court found that on **July 8, 2016**, ARSENYI and GEORGY transferred $600,000 each to **OSMANOV's personal account at Otkritie Bank "as a repayment of a loan" to OSMANOV**.

The Court decision is annexed as Exhibit 1 to the Motion. The Mirick firm was on notice on the existence of that decision at the time the Opposition to Motion to Dismiss was filed. That Exhibit was attached as Exhibit 8, which is now numbered Exhibit 1. The following language is highlighted in that Court decision:

"On July 8, 2016, Arseniy Dmitrievich Schepin transferred 40,953,314.44 rubles to Yu. M. Osmanov's account as the loan repayment, which is confirmed by Payment Order No.735 dated July 8, 2016.

On July 8, 2016, Georgiy Dmitrievich Schepin transferred 40,982,796.02 rubles to Yu. M. Osmanov's account, which is confirmed by Payment Order No.726 dated July 8, 2016."

See Exhibit 1, at p. 6.

That Exhibit, the Court decision, was filed in this Docket (as Exhibit 8) on **August 19, 2021**. The Mirick law firm has had it before it for review for more than eight months and has no excuse to ignore it, acting as though it had not existed.

That decision is not a novelty that the attorneys could possibly miss because of a short lag of time. On the contrary, the attorneys at the Mirick law firm were obligated not to plead allegations contrary to that Court decision. The attorneys at Mirick law firm, representing seven Plaintiffs and Defendants in Counterclaim, did not have any excuse not to investigate these facts.

Prior to filing this case, the Plaintiffs' attorneys were obligated to review all circumstances, including the above Court decision. That Court decision, albeit recognized in Russia, serves as collateral estoppel or issue preclusion or res judicata.

Even if that Court decision is not subject to recognition in the Commonwealth for collection purposes, MANN submits that it did operate as a prohibition to the Plaintiffs' attorneys to allege facts that are directly, flatly, and unequivocally conflicted with the adjudication of that

matter in the Russian Court. The Court also has grounds to find that the Complaint was frivolous on that particular factual allegation as though MANN took that money from the SHCHEPINS' account.

Despite the above Court decision, LATOUR and her co-conspirator and accomplice OSMANOV made false representations and falsified documentation. MANN had access to the account at Otkrytye Bank, which he did not have.

LATOUR and OSMANOV intentionally ignored that MANN had no signature right for the account(s) at Otkryetye bank, had no access to bank statements from that account or accounts, and could not possibly transfer anything out of those accounts.

Yet, OSMANOV, on information and belief, OSMANOV falsely represented before the SHCHEPINS as though MANN "stole" the $1.2 million. Nothing could be further from the truth and more absurd where MANN did not have access to Otrkytye Bank's accounts, as the Russian bank has already determined as a fact.

Moreover, as the pleadings show, OSMANOV confided to MANN that he, OSMANOV, took that $1.2 million because the SHCHEPINS "owed" to him. Yet, the unverified Complaint shows that OSMANOV fraudulently shifted the blame on MANN, apparently concealing from them the true circumstances.

The discovery of the third party's trust documents, in this case, was obtained in the name of the plaintiffs by the law firm Choate, Hall & Stewart LLP at 2 International Place, Boston, MA 02110. The documents were produced to the parties on November 12, 2021.

Contrary to the untrue allegations in the Complaint, the discovered documents showed that MANN had no involvement in any trust concerning the SHCHEPINS. As produced by Choate, Hall & Stewart, the documents did not show MANN's name, not a single time. MANN had no

involvement in that trust, contrary to the frivolous allegations in the unverified Complaint. MANN was not a settlor, not a manager, not anyone; MANN's name is absent from those documents, as it should be.

On November 12, 2021, the counsel for all Plaintiffs should have amended the Complaint to reflect these facts based on the documents. Furthermore, the counsel for all Plaintiffs should have taken out the SHCHEPINS from the Complaint because their only claim was based upon the allegation as though MANN was involved in their trust and that he took the trust money, which was a legal and factual impossibility.

Yet, the counsel for all Plaintiffs did neither; they did not seek to amend the Complaint, leaving frivolous allegations of fact in the Complaint that are in stark contrast with the documents. Furthermore, the counsel for all Plaintiffs did not withdraw the SHCHEPINS from the case as Plaintiffs.

That triggered the SHCHEPINS to become Defendants in the Counterclaim against LATOUR, ARSENYI SHCHEPIN, and GEORGY SHCHEPIN. See Dkt 35, filed on April 25, 2022. The counterclaim against the SHCHEPINS is about a fraudulent scheme, where they made false allegations in this case as though MANN was involved in their trust and took the $1.2 million. Based on the verified pleadings, that clearly subjects the SHCHEPINS and their attorneys to the sanctions under F.R.Civ.P. 11. Namely, the claims stated by the SHCHEPINS or on their behalf were knowingly false, unresearched, and/or undocumented, which is a separate matter, arising after November 12, 2021, a topic not addressed here.

The issue here is that not only the opposing law firm prejudices their clients, the SHCHEPINS. The opposing law firm also acts with unwarranted prejudice to MANN because he could have quickly settled the mutual claims between the SHCHEPINS and MANN, where the

SHCHEPINS did not have a claim. In a likely scenario, MANN would let the SHCHEPINS out of this action with a voluntary withdrawal rather than spend time and resources to expose the fraudulent scheme originated by OSMANOV, which resulted in the SHCHEPINS becoming co-Plaintiffs without a claim and making baseless claims concerning the $1.2 million. Again, MANN had nothing to do with the $1.2 million that, on information and belief, took somehow from Otkrytye bank as though the SHCHEPINS "owed" to OSMANOV, and it was OSMANOV's money.

As the pleadings show, OSMANOV has routinely used false documents, expired powers of attorney, and various documentary fabrications. He was helped by his legal assistant ALEXEY PETROV (PETROV), Defendant in the Third-Party Complaint. PETROV has had some legal background but without a lawyer's license in Russia. For more details on that "collaboration" between OSMANOV and PETROV, see the Third-Party Complaint by MANN, of May 6, 2022, Dkt 40.

These revelations could have been easily discovered if the SHCHEPINS were represented in this action by a different attorney or law firm, who would not have to overcome a conflict of interest with OSMANOV.

An attorney without a conflict would have required the SHCHEPINS to disclose all documentary evidence from Otkrytie Bank, quickly finding out that MANN had nothing to do with that money.

Furthermore, MANN has information from witnesses, albeit difficult to prove with documents at this point, because OSMANOV controls MANN's records, that OSMANOV "intercepted" some of the repayments made by MANN and S-Info to LATOUR. Again,

OSMANOV breached his duty of trust by converting the documents belonging to MANN and S-Info.

OSMANOV got acquainted with LATOUR in or about 2008, when OSMANOV, acting as a realtor, facilitated the sale of LATOUR's country house in Istra District, the Moscow Region. OSMANOV induced LATOUR to invest the sale proceeds in S-Info. Then OSMANOV often placed himself between the sources of repayments, S-Info or MANN, and the payee, LATOUR. The Counterclaim against OSMANOV should shed light on what portion of the repayments OSMANOV actually transferred to LATOUR and, on information and belief, what portion he embezzled for himself. As shown in numerous examples, OSMANOV quickly claims that someone "owes" him money and uses every opportunity to embezzle or take the money, which was not for him, as demonstrated in the matter of the SHCHEPINS' money at Otkrytye Bank. See Exhibit 1, at p. 6.

Based on the record of OSMANOV's dealings, MANN believes that OSMANOV did the same with other Plaintiffs-Defendants in Counterclaim in this action. That may explain why the Complaint made the claims for repayment of the loans, completely ignoring that most of the loans were repaid either in whole or substantially, even despite a high interest rate.

MANN believes that OSMANOV has orchestrated this action and supplied the opposing counsel with false representations. On information and belief, the opposing counsel had few to no contacts with the SHCHEPINS; at least, the opposing counsel failed to investigate the facts other than relying on OSMANOV.

F.  CASE LAW SUPPORTS FINDING IMPERMISSIBLE CONFLICT REQUIRING DISQUALIFICATION

In a very detailed opinion, the Supreme Court of the Commonwealth of Massachusetts ruled that the undivided loyalty that a lawyer owes to his clients forbids him, without the clients'

consent, from acting for a client in one action and at the same time against the same client in another. *Bryan Corp. v. Abrano* (2016) 52 N.E.3d 95, 474 Mass. 504. That applied when the interests were directly adverse.

The law firm, acting as a reasonable lawyer, should have known that agreeing to represent a shareholder whose interests were adverse to or were likely soon to become adverse. Ibid, *Bryan Corp. v. Abrano*.

A law firm may not represent a new client where the firm can reasonably anticipate that a conflict will develop with an existing client and then choose between the two clients when the conflict materializes. Ibid, *Bryan Corp. v. Abrano*.

In the substantive conclusion in that landmark case, the Supreme Court found that the trial court acted within its discretion when ordering disqualification as an appropriate remedy for the counsel's violation of its duty of loyalty. A disqualification furthered the policy rationale underlying rules of professional conduct by upholding the principle that the client was entitled to the undivided loyalty of his or her lawyer. Ibid, *Bryan Corp. v. Abrano*. To quote: "we conclude that YSR, acting as a reasonable lawyer, should have known at the time it agreed to represent Bryan, Bridget, and Dennon that their interests were adverse to, or were likely soon to become adverse to, those of the company, and, in these circumstances, both the duty of loyalty and **101 rule 1.7 required it to decline representation, or at least seek the informed consent of the company. See Mass. R. Prof. C. 1.7 comment 6." *Bryan Corp. v. Abrano*.

In this case, OSMANOV, on the one hand, and the SHCHEPINS, on the other hand, have had an impermissible conflict. Both sides are interested in the confidentiality of their respective information and documentation. That is mandated by the fact that the SHCHEPINS can end up suing OSMANOV for recovery of the $1.2 million with interest. However, the law firm

representing all three of those is required to disclose the confidences of OSMANOV, on the one hand, and the SHCHEPINS, on the other hand, to the presently—or prospectively—adverse parties, which are likely to end up suing each other in the court. However, the court has said that where there is an attorney-client relationship, even if an attorney ethically should not have entered into it without consent because of a conflicting representation, the client is entitled to protect confidential communications with the attorney. *Patel v. Martin* (2018) 111 N.E.3d 1082, 481 Mass. 29.

In another case, the court treated conflicts, like those here, as a "hot potato" that reasonable attorneys should avoid. The parties had a conflict of interest that existed or was foreseeable at the inception of the dual representation. It also asks the court to adopt the so-called "hot potato" doctrine. Such doctrine "limit [s] the ability of a law firm to terminate its relationship with an existing client 'like a hot potato'.." *National Med. Care, Inc. v. Home Med. of Am., Inc*., Mass.Super.Ct., No. 0081CV01225, 2002 WL 31068413, slip op. at note 5 (Middlesex County Sept. 12, 2002)

In the extreme situation, in combination with other factors, an attorney who, among other things, overstepped conflicts was disbarred. *Matter of Ablitt* (2021) 486 Mass. 1011, 161 N.E.3d 421. Of course, nobody claims that the alleged issue of the $1.2 million conflict is that severe or close, e.g., conflict among the parties represented by the same firm. However, it is best for the interests of the opposing counsel to assess the situation they put themselves, representing 7 (seven) clients, in one case, where their respective situation looks like, figuratively, a minefield, where, sooner or later, conflicts will start to explode, spill on the pages of filings in this case or to trigger other cases.

See 2 Mallen & Smith, Legal Malpractice, § 14.2, at 536-540 (5th ed.2000). The relationship between attorney and client is one of trust and confidence, giving rise to the attorney's fiduciary duties toward the client. See *Vanacore v. Kennedy*, 86 F.Supp.2d at 50 and cases cited; *Andrews v. Gorby*, 237 Conn. 12, 20 (1996). Conduct by an attorney in derogation of the client's interest breaches the attorney's fiduciary duty. See *Biller Associates v. Peterkin*, 58 Conn.App. 8, 18 (2000).  See also *Meehan v. Shaughnessy*, 404 Mass. 419, 439 (1989) (recovery for breach of fiduciary duty depends on "causal connection between [plaintiff's] claimed losses and the breach of duty"); *Van Brode Group, Inc. v. Bowditch & Dewey*, 36 Mass.App.Ct. 509, 517 (1994) ("It is fundamental that a tort action cannot be sustained without proof of damages, whether the action in this paragraph is framed as legal malpractice ... or breach of fiduciary duty").  Credit for the above citations is given to the unpublished decision in *McElroy v. Robinson & Cole, LLP*, Superior Court of Massachusetts, Oct.  25, 2001, not Reported in N.E.2d 2001 WL 1319970.

Apart from a claim of legal malpractice, "[b]reaches of [such fiduciary duties as] client confidences, inappropriate conflicts of interest, and the use of advantages arising out of the client-lawyer relationship may be intentional wrongs or may be negligent acts depending on the circumstances." *Clark v. Rowe*, 428 Mass. 339, 345 (1998).

A lawyer may be civilly liable to the client "[i]f a breach of one of these fiduciary duties is a substantial cause of injury to the client." Ibid.  Credit for the above citations is owed to the unpublished disposition in *McElroy v. Robinson & Cole LLP*, Appeals Court of Massachusetts, June 10, 2004, 61 Mass.App.Ct. 1110 809 N.E.2d 1100 (Table).

The Court has the inherent power to control the proceedings, including overseeing the issues of impermissible conflicts, in the rare cases when such conflicts among the represented parties get exposed, as in this case.

## SCOPE OF RELIEF SOUGHT.

The Court should disqualify the opposing counsel, Mirick, O'Connell, DeMallie & Lougee, LLP, from representing, at a minimum, the SHCHEPINS. In the alternative, the Court should disqualify that law firm from acting for seven Plaintiffs and Defendants in Counterclaim in this action altogether.

The Court should also issue an Order to Show Cause to the Mirick law firm. The Court should require that the law firm disclose a written waiver from the SHCHEPINS and explain what investigation they had made concerning the SHCHEPINS' trust and the $1.2 million that they pleaded as though MANN took when that was untrue.

The written waivers of conflict, if those were obtained, should be submitted to the Court's review for their sufficiency or insufficiency as to the issue of information. Such documents can be filed under seal.

The Court should also make other Orders that are just and proper. In particular, the Court has inherent powers to award the legal fees for preparing the present Motion. Likewise, an award of legal fees will be proper for MANN's defending against the baseless claims of the SHCHEPINS, stated in the Complaint, in conflict with the facts stated in the Russian Court decision. Exhibit 1. Those claims were stated in the name of the SHCHEPINS while overcoming the conflict with OSMANOV.

At a minimum, such claims were filed without proper investigation. The disclosure of the trust documentation concerning the SHCHEPINS by Choate, Hall & Stewart LLP on November 12, 2021, was made by that law firm under the Subpoena to that law firm. That Subpoena was endorsed by the Order of the U.S. Magistrate Judge. The Court should look into why the opposing counsel did not move to withdraw after they learned, from the documents, showing that MANN

was completely uninvolved in their trust. The allegations concerning the trust money were in between the opposing counsel's own clients, the SHCHEPINS and OSMANOV.

## CONCLUSION.

The Motion should be granted to the full extent required under the applicable law on attorneys' conflicts.

Dated: May 8, 2022.   Respectfully submitted,

_____/*signed George Lambert*/
George Lambert, Esq.
MA bar #568769
100 Cambridge Street, 14th Floor
Boston, MA 02114
Tel. (617) 925 7500, fax (800) 852 1950
Email: Lawoffice2279@gmail.com
Attorney for Defendant and Plaintiff
in Counterclaim Andrei Mann

## VERIFICATION

I, ANDREI MANN, a party in the present action, state and declare, under the penalties of perjury under the laws of the United States, that to the best of my knowledge, the factual allegations stated above are true and correct.

*Andrei Mann*

Andrei Mann,

Date: May 8, 2022

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day, May 8, 2022, the foregoing Answer was served via efiling by Pacer on the parties as follows:

Kenneth C. Pickering
Lauren E. Sparks,
Mirick, O'Connell, DeMallie & Lougee LLP
100 Front Street
Worcester MA 01608-1477
Tel. (508) 791-8500
kpickering@mirickoconnell.com
lsparks@mirickoconnell.com
Attorneys for all Plaintiffs;

Sean T. Carnathan
O'Connor, Carnathan and Mack LLC
67 South Bedford Street, #400W
Burlington, MA 01803
781-359-9002, Fax: 781-359-9001
Email: scarnathan@ocmlaw.net
Attorney for Defendant Michael Hellman

Date: May 8, 2022

*/George Lambert/*

George Lambert