UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETR DMITRIEV, DARIA LATOUR,
YUSUP OSMANOV, YURI RYAZANOV,
ARSENIY SHCHEPIN, GEORGY
SHCHEPIN, and OLEG SEMENETS
    Plaintiffs

v.

ANDREI MANN and MICHAEL HELLMAN,
    Defendants

CIVIL ACTION NO. 1:21-CV-40068-NMG

# PLAINTIFFS' OPPOSITION TO DEFENDANT ANDREI MANN'S MOTION TO DISQUALIFY MIRICK O'CONNELL

The Plaintiffs, Petr Dmitriev, Daria Latour, Yusup Osmanov, Yuri Ryazanov, Arseniy Shchepin, Georgy Shchepin, and Oleg Semenets (collectively "Plaintiffs"), hereby oppose the Motion of Defendant, Andrei Mann ("Mann"),[1] to Disqualify Mirick, O'Connell, DeMallie & Lougee, LLP from representing Plaintiffs.

This Court should deny Mann's Motion to Disqualify. First, Plaintiffs executed a joint representation agreement, made in writing and with informed consent, which vitiates any purported conflict that Mann attempts to manufacture among Plaintiffs. The existence of this agreement alone defeats Mann's claims. Second, Mann's motion runs afoul of the deep-seated policy that courts should not interrupt attorney-client relationships absent exceptional circumstances, particularly where such motions are used to gain a tactical advantage.

---

[1] Mann's co-defendant, Michael Hellman, has not joined in this Motion.

It should be noted at the outset that Mann himself is not a party to the alleged conflict. Mann raises this issue on behalf of the Plaintiffs. What's more, the Plaintiffs dispute that a conflict even exists. If ever there was a case of a party manufacturing a conflict of interest to gain a tactical advantage, this is it.

## MANN'S ALLEGATIONS

Mann's Motion to Disqualify is predicated on self-serving allegations in Mann's own counterclaim, purportedly creating a conflict of interest among Plaintiffs. Contrary to the claims in Plaintiffs' Complaint, Mann contends that Plaintiff Yusup Osmanov (not Mann), seized money belonging to Arseniy and Georgy Shchepin. In their answers to Mann's counterclaims the Plaintiffs dispute these allegations.

Mann principally relies on a statement made in a Moscow Arbitration Court opinion that Osmanov received $600,000 through a bank transfer from each Arsenyi and Georgy on July 8, 2016 as a "loan repayment." The reference to an alleged "loan repayment" by the Moscow Arbitration Court appears to derive from information supplied by Mann and/or his attorney. The explanation "repayment of a loan" was apparently included to satisfy bank requirements.

The decision of the Moscow Arbitration Court included the statement in the memorandum, but conspicuously absent from the opinion is any finding that any Plaintiffs personally instituted any such transfer, personally endorsed a "loan repayment," or personally provided the reasoning/memorandum underlying the transfer. As the Plaintiff's Complaint states, is was Mann who encouraged the transfer. Compl. ¶ 63. Mann should not be allowed to

use such self-serving statements as a weapon to create an artificial conflict of interest among Plaintiffs.[2]

Contrary to the assertions in Mann's motion, Plaintiffs' counsel has not failed to "investigate these facts," nor has counsel "ignore[d] it, acting as though it had not existed." Undersigned counsel has operated consistent with Plaintiffs' position that the alleged facts underlying Mann's counterclaim are contested.

Mann's suggestion that Plaintiffs' counsel has not appropriately taken note of these transfers is curious where the transfer of $1,200,000 form the basis for at least some of Plaintiffs' claims against Mann.  For instance, Plaintiffs' Complaint states that, based on Mann's representations, Arseniy, Georgy, and Dmitry "signed paperwork to close the trust and transfer $1,200,000 USD from the trust to Russian bank accounts Mann opened in Arseniy and Georgy's names and from there to yet another account designated by Mann.  Mann insisted that the funds be transferred in this way so that he could then move the funds to a Swiss trust fund."  Compl. ¶ 62.  Certain Plaintiffs requested at various times that Mann provide proof that the transferred monies were in a Swiss account as promised, but Mann refused to comply.  Compl. ¶¶ 63-64.  Because Plaintiffs' complaint is based in part on Mann's direct or indirect involvement with improper bank transfers, it is unpersuasive to suggest that Plaintiffs have not contemplated the effect of such transfers.  As discussed *infra*, Mann's mere assertion of facts in support of his counterclaims cannot create a conflict of interest among Plaintiffs.

---

[2] In his motion, Mann makes a vague reference to collateral estoppel, issue preclusion, and res judicata. Although Mann does not expound upon this position, to the extent Mann is suggesting that a statement in the Moscow Arbitration Court is irrefutably binding and cannot be contested by Plaintiffs as to all facts in connection with that statement, that argument is inconsistent with the foregoing preclusion principles.  Because Mann has failed to develop this argument further—assuming it is Mann's argument—Plaintiffs do not provide further argument here.  Plaintiffs state simply that the statements are not material findings against Plaintiffs particularly in a different forum where different issues are implicated.

**ANALYSIS**

"Disqualification may occur only if the trial court judge determines that a lawyer's continued participation as counsel taints the legal system." *Slade v. Ormsby*, 69 Mass. App. Ct. 542, 545 (2007) ("Motions to disqualify must be considered in light of the principle that courts should not lightly interrupt the relationship between a lawyer and a client.") (quotations and alterations omitted). "[J]udges should hesitate to order disqualification 'except when absolutely necessary'" in order to "protect the attorney-client relationship." *Adoption of Erica*, 426 Mass. 55, 58 (1997) (*quoting G.D. Mathews & Sons Corp. v. MSN Corp.*, 54 Mass. App. Ct. 18, 21 (2002)). The onus is on the moving party to show that disqualification is proper. *Eaves v. City of Worcester*, C.A. No. 12-10336-TSH, 2012 WL 6196012, at *2 (D. Mass. Dec. 11, 2012); *See also Rivera Molina v. Casa La Roca, LLC*, 546 F. Supp. 3d 108, 110 (D.P.R. 2021) ("Courts [] should be cautious in analyzing a disqualification motion because they are often used for strategic purposes.").

Even if the allegations in Mann's self-serving counterclaim could form the basis for a conflict, Plaintiffs have nonetheless executed a joint representation agreement, made in writing and with informed consent, thereby vitiating any purported conflict. *See* Affidavit of Kenneth C. Pickering, attached as **Exhibit A**. Plaintiffs can and did waive any potential conflict for the purposes of jointly pursuing this action against the defendants.

A. Joint Representation Agreement

It is well settled that informed consent is the solution to a purported conflict of interest. § 17:1. Introduction, 2 Legal Malpractice § 17:1 (2022 ed.). The existence of a joint representation agreement among the Plaintiffs defeats Mann's Motion. *Altova GmbH v. Syncro Soft SRL*, 320 F. Supp. 3d 314, 319 (D. Mass. 2018) ("[A] lawyer may continue to represent a client despite a

concurrent conflict of interest, but must obtain written informed consent for the representation from every affected client.").

Rule 1.7 of the Massachusetts Rules of Professional Conduct states that "a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing." Mass. R. Prof. C. 1.7(b). "Consent to the representation where there are or may be conflicts of interest is the recognized means of avoiding the restrictions imposed by the prohibition on conflicted representation." § 17:28. Defenses—Disclosure, consent and waiver—Introduction, 2 Legal Malpractice § 17:28 (2022 ed.). By way of the joint representation agreement, Plaintiffs have provided their informed consent, confirmed in writing, as required by Rule 1.7.

Mann's Motion relies on *Byran Corp. v. Abrano*, 474 Mass. 504 (2016) for the proposition that a law firm was required to decline representation of multiple parties due to a conflict. However, the *Abrano* case concerns the representation of a client in one action and against the same client in another action. And even here, Mann admits that the client may waive such a conflict. Other cases cited in Mann's motion similarly contemplate that consent obviates a conflict. Dkt. No. 42, Mot. to Disqualify, at 13 (citing *Patel v. Martin*, 481 Mass. 29 (2018) stating "even if an attorney ethically should not have entered into it *without consent* because of a conflicting representation . . . .") (emphasis added). The case law upon which Mann relies, and which is generally accepted, conclusively shows that informed consent – as was obtained here – resolves an otherwise impermissible conflict of interest.

Mann's Motion to Disqualify tacitly concedes, as it must, that a purported conflict can be resolved by consent. Here, Plaintiffs have consented in writing to the joint representation.

B. <u>The Purported Conflict is Consentable</u>

Mann's Motion does not suggest that the purported conflict of interest is nonconsentable by the Plaintiffs. Notwithstanding, there are limited circumstances where a conflict of interest is not consentable, such as where a lawyer cannot "reasonably believe that the lawyer will be able to provide competent and diligent representation to each affected client." § 17:31. Defenses—Disclosure, consent and waiver—Non-waivable or non-consentable conflicts, 2 Legal Malpractice § 17:31 (2022 ed.).

These situations are rare and generally require remarkable circumstances. Conflicts are nonconsentable where a direct conflict exists in attempting to represent irreconcilable positions, such as a law firm that attempted to simultaneously represent a client attempting to build a bridge and another client who was attempting to block or delay the construction of the same bridge. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 413-14 (6th Cir. 2008). *See, e.g.*, *Frias Holding Co. vs. Greenberg Traurig, LLP*, D. Nev., No. 2:11-CV-160-GMN-VCF (Sept. 27, 2012) (concluding conflict of interest was not waivable where litigation strategy was explicitly based on attacking co-represented client's integrity).

In assessing a disqualification motion, courts must exercise "cautious scrutiny," particularly "because they are often used for strategic purposes." *Rivera Molina v. Casa La Roca, LLC*, 546 F. Supp. 3d 108 (D.P.R. 2021) (quotations and alterations omitted); *Reyes Canada v. Rey Hernandez*, 193 F. Supp. 2d 409 (D.P.R. 2002). The mere possibility of a conflict is not enough to disqualify a party's chosen attorney. *Id.* Where a conflict arises during the case, representation is proper upon a showing of informed consent, either through an

agreement or affidavit. *Metro. Prop. and Cas. Ins. Co. v. Adv. Spine Centers, Inc.*, CV 07-10746-NMG, 2010 WL 11575512 (D. Mass. May 21, 2010) (requiring affidavit concerning informed consent).

The instant case does not raise the specter of a non-waivable conflict. This is not a case where counsel represents parties with different litigation positions. Similar to a joint defense agreement, where defendants put aside potential indemnification or contribution claims, Plaintiffs in the instant matter are united in their pursuit of monies wrongfully converted by Mann.

## **CONCLUSION**

Plaintiffs deny that there is a conflict of interest. But, even if a conflict exists, Plaintiffs waived the conflict and assent to joint representation to pursue their common claims against the defendants. Mann should not be allowed to manufacture a conflict in order to disqualify Plaintiffs' chosen counsel. For the foregoing reasons, this Court should deny Andrei Mann's Motion to Disqualify Mirick O'Connell.

PETR DMITRIEV, DARIA LATOUR,
YUSUP OSMANOV, YURI RYAZANOV,
ARSENIY SHCHEPIN, GEORGY
SHCHEPIN, and OLEG SEMENETS,

By their attorney,

*/s/ Kenneth C. Pickering*

Kenneth C. Pickering, BBO #634121
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax: (508) 791-8502
kpickering@mirickoconnell.com

Dated: May 23, 2022

## CERTIFICATE OF SERVICE

      I, Kenneth C. Pickering, hereby certify that this document(s), filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 23, 2022.

                                              Kenneth C. Pickering