IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMINETS<br><br>Plaintiffs,<br><br>v.<br><br>ANDREI MANN and MICHAEL HELLMAN<br><br>Defendants. | CIVIL ACTION No. 21cv40068-NMG<br><br><br><br>**OBJECTION OF ANDREI MANN, DEFENDANT AND PLAINTIFF IN COUNTERCLAIM, UNDER F.R.CIV.P. 72 TO THE MEMORANDUM AND ORDER OF U.S. MAGISTRATE JUDGE, OF SEPTEMBER 13, 2022, DKT #82** |
| ANDREI MANN<br><br>Plaintiff in Counterclaim<br><br>v.<br><br>PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENYI SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMINETS<br><br>Defendants in counterclaim | RE.: VERIFIED MOTION TO DISQUALIFY MIRICK, O'CONNELL, DEMALLIE & LOUGEE, LLP FROM REPRESENTING SEVEN PLAINTIFFS BASED ON IMPERMISSIBLE CONFLICT |
| ANDREI Mann<br><br>Third-Party Plaintiff<br><br>v.<br><br>SULEIMAN GUSEINOV, ALEXEY PETROV, and ARSEN KOMUTAEV<br><br>Third-Party Defendants | |

1

Defendant and Plaintiff in Counterclaim and the Third-Party Complaint, Andrei Mann ("Mann"), respectedly his Objection under Federal Rule of Civil Procedure 72, to the Memorandum and Order of the U.S. Magistrate Judge, dated September 13, 2022. The said Memorandum and Order denied Mann's Motion to disqualify Mirick, O'Connell, DeMallie & Lougee, LLP from representing at least Arsenyi Schchepin ("Arsenyi") and Georgy Shchepin ("Georgy") or from representing all seven Plaintiffs and Defendants in Counterclaim in this action.

1. **Relevant Procedural History.**

On June 21, 2021, the Complaint in this matter was filed. It took time for Mann to investigate the allegations and, relying upon solid evidence of an impermissible conflict of the opposing counsel's firm, to determine that the conflict was prohibited by Rule 1.7 of the Rules of Professional Conduct in Massachusetts.[1]

On May 8, 2022, Mann filed the underlying Motion to Disqualify Mirick, O'Connell, DeMallie & Lougee, LLP. The central piece of the conflict at issue, demonstrated therein, were two wire transfers for $1.2 million, made on June 8, 2016. The Plaintiffs and Defendants in Counterclaim stated in Paragraphs 159-161 that Arseny and Georgy paid Mann $1.2 million, stating their claim against Mann.

Instead, Arsenyi and Georgy paid that same money, $1.2 million, to the co-plaintiff Yusup Osmanov ("Osmanov").

---

[1] In particular, Rule 1.7(a) states that representation, as described in the facts hereinafter, is prohibited: "(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

2

**2. Summary of the Issue of the Impermissible Conflict with Magnitude of $1.2 Million.**

The Complaint made, at Para 159-161, a prima facie wrongful claim against Mann, where Arsenyi and Georgy have, instead, a claim against Osmanov. Arsenyi and Georgy have a direct controversy against Osmanov and an impermissible conflict.

The Complaint made a quintessential untrue claim: "203. Mann has refused to return the stolen money to Arseniy and Georgy, causing them to suffer damages in the amount of $1,200,000 USD."

Thus, the Complaint switched the beneficiary from Osmanov to Mann, where Arsenyi and Georgy, the Shchepin brothers, have the claim against co-plaintiff Osmanov, not Mann.

It was the obligation of the counsel for Mann to bring the issue before the court, following the implied or direct obligations of an attorney, as an officer of the Court, following the Rules of Professional Conduct and the applicable case law. Mann and his counsel believe that the counsel for Plaintiffs and Defendants in counterclaim should not have undertaken, in the first place, the representation of the parties with directly adverse interests and otherwise should have withdrawn, at a minimum, from representing Osmanov, Arsenyi, and Georgy.

Since the Motion to disqualify Mirick, O'Connell, DeMallie & Lougee, LLP was filed, all pretrial motions in the present matter have been assigned to the U.S. Magistrate Judge.

On September 6, 2022, the U.S. Magistrate Judge held a hearing on the Motion to disqualify. At the time, Mann did not have copies of the corresponding banking records. At the hearing, Mann's counsel reiterated that the Plaintiffs' counsel should be ordered to file the Docket or serve Mann's counsel with the banking copies of the two wire transfers. That relief was denied. Further, at the hearing, Mann's counsel asked to receive a copy "for attorney's eyes only" of the

retainer agreement of the above law firm with seven Plaintiffs and Defendants in Counterclaim. That relief was also denied.

### 3. Recovery of the Critical Evidence; Banking Records Showing True Beneficiary of $1.2 Million, Yusup Osmanov, not Andrei Mann.

Subsequently, a week after the hearing and the Memorandum and Order of September 13, 2022, Mann's attorney in Russia was ultimately able to obtain the subpoenaed banking documents through judicial proceedings in Russia. The attached banking records establish the prima facie facts alleged before, but without proof of the banking records. In its Memorandum and Order of September 13, 2022, the U.S. Magistrate Judge declined to find impermissible conflict, mainly because Mann could not support his allegations of impermissible conflict by the concrete banking records. At the time, Mann could establish that fact only indirectly, citing from the dicta in the decision of the Russian Court that mentioned those payments in dicta.

On September 23, 2022, none of the Plaintiffs and Defendants in Counterclaim filed or served the Initial Disclosure under Rule 26(a), required on that deadline date. Mann had anticipated that Osmanov, Arsenyi, and Georgy were obligated to voluntarily disclose information and banking records according to Paragraphs 159-161 of the Complaint (alleging that Mann received and "stole" that money, $1.2 million).

Within several days of receiving the copies, on September 25, 2022, Mann filed a Motion for leave to file and for reconsideration, submitting the banking records on the $1.2 million for consideration. The copies of the documents are the critical component of the claim of impermissible conflict and, as Mann submits, represent persuasive new evidence.

Mann has verified the certified banking records establishing that on July 8, 2016, Arsenyi and Georgy each transferred $600,000 (at the applicable rate of exchange) to Osmanov personal account at Otkritie Bank in Moscow, Russia.

Exhibits 1 and 2 represent true and correct copies of the certified banking records of Otkrytie Bank, with translations establishing those two wire transfers. See the verification in the Supplemental Verified Motion for Leave to File and for Reconsideration, of September 25, 2022, Dkt 84.

### 4. Standard of Review under Rule 72.

The law on Rule 72 is well established. Under the requirement that a district judge modifies or sets aside any part of a non-dispositive ruling of a magistrate judge on pretrial matters that is contrary to law, the district judge reviews pure questions of law de novo and factual findings for clear error; mixed questions of law and fact invoke a sliding scale of review pursuant to which the more fact-intensive the question, the more deferential the level of review, though never more deferential than the clear error standard, and the more law intensive the question, the less deferential the level of review. See *In re Celexa and Lexapro Marketing and Sales Practices Litigation*, D.Mass.2018, 293 F.Supp.3d 247.

This District Court and the First Circuit have said that if a party timely objects to the non-dispositive rulings of a magistrate judge on pretrial matters, the district judge must modify or set aside any part of the disputed order that is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The Court has found [a] respect for this standard is important, given the pivotal role that magistrate judges play in overseeing the conduct of the sort of complex pretrial discovery typified by this case. *Gargiulo v. Baystate Health Inc*., 279 F.R.D. 62, 64 (D. Mass. 2012). The "clearly erroneous" standard requires the district judge to accept the factual findings and conclusions of the magistrate judge unless, after reviewing the entire record, the district judge has a "strong, unyielding belief that a mistake has been made." *Green v. Cosby*, 160 F.Supp.3d 431, 433 (D. Mass. 2016)(citing *Phinney v. Wentworth Douglas Hosp*., 199 F.3d 1, 4

(1st Cir. 1999)). Under the "contrary to law" requirement, the district judge reviews pure questions of law de novo, see *PowerShare, Inc. v. Syntel, Inc.,* 597 F.3d 10, 15 (1st Cir. 2010), and factual findings for clear *250 error, *Phinney,* 199 F.3d at 4. Mixed questions of law and fact invoke a sliding scale of review pursuant to which [t]he more fact-intensive the question, the more deferential the level of review (though never more deferential than the clear error standard); the more law intensive the question, the less deferential the level of review. *In re IDC Clambakes, Inc.,* 727 F.3d 58, 64 (1st Cir. 2013).

For purposes of this Objection, a modifying factor emerged. At the time of the Motion and then the hearing, Mann did not have the banking records to document the $1.2 million claim of the Shchepins against Osmanov, improperly attributed to Mann in the pleading; it was Mann who "stole" instead of Osmanov.

Mann was able to obtain the attached documents, now with the translation, literally three days before this filing. Accordingly, Mann thought it was his obligation to bring that new evidence to the attention of the U.S. Magistrate Judge in a procedural step of a Motion for leave and reconsideration. Dkt 84.

Accordingly, the U.S. District Judge has an option to rule on the record as it as of the time of the Memorandum and Order of September 13, 2022, or await the U.S. Magistrate Judge's decision on the Motion for leave, submitting the certified banking records and then rule on both decisions. Dkt 84.

Alternatively, the U.S. District Judge, vested with full procedural power, may rule on the records, including the banking records, without awaiting the decision of the U.S. Magistrate Judge on the banking records, as raised by the Supplemental Verified Motion for Leave and for Reconsideration, on September 25, 2022.

5. **The $1.2 Million Claim Among Plaintiffs, Improperly Stated against Mann, Represented the Impermissible Conflict**.

Now, that issue is documented by the banking records from a Russian bank. There is a $1.2 million controversy between Plaintiffs and Defendants in Counterclaim Osmanov, on the one hand, and the Shchepins brothers, all three persons represented by the same law firm in the same case. The Shchepins brothers do not have a claim against Mann but have a claim against Osmanov. As it is now proven, the Shchepins brothers and Osmanov have an impermissible conflict that prejudices Mann, whereas the Shchepins have no claim against him but against Osmanov.

The Court's regrettably allowing the conflict to exist will fall, as Mann submits, under Rule 1.7(a) prohibitions regarding the impermissible conflict. Even though that impermissible conflict is among the Plaintiffs and Defendants in counterclaim, it brings prejudice to Mann and creates confusion in this case. For example, Mann would have promptly settled with the Shchepins, who have had no dealings with Mann and no claims either way and would have released them from this case, simplifying it. The opposing counsel's impermissible conflict does not allow that simplification, representing unfairness to Mann.

The Court may need to understand how this happened when the Complaint switched Osmanov and Mann. In sum, Osmanov, as the verified alleged facts show, seized control of Mann's documentation and financial issues in Moscow, Russia. Osmanov was concealing from the other co-plaintiffs, whom he enrolled to file this case, that it was he, Osmanov, who, as it is now established on the documents, was embezzling $1.2 million from the Shchepins. In contrast, Mann had nothing to do with that embezzlement. Osmanov used this case to shift the blame on Mann, hoping that the facts and banking records would not surface. Osmanov, on information and

belief, thought he could get away with embezzling $1.2 million by making false claims against Mann.[2]

Mann learned of that embezzlement by Osmanov from a court filing in Moscow. Namely, on May 14, 2020, the Moscow Arbitration Court found that on July 8, 2016, Arsenyi and Georgy transferred $600,000 each to Osmanov's personal account at Otkritie Bank "as a repayment of a loan" to Osmanov. See Exhibit 1 to Motion to disqualify. The following language is highlighted in that Court decision: "On July 8, 2016, Arseniy […] transferred 40,953,314.44 rubles to Yu.M. Osmanov's account as the loan repayment, which is confirmed by Payment Order No.735 dated July 8, 2016. On July 8, 2016, Georgiy […| transferred 40,982,796.02 rubles to Yu.M. Osmanov's account, which is confirmed by Payment Order No.726 dated July 8, 2016." Ref. Exhibit 1, at p. 6, is attached to the Motion.

That Exhibit, the Court decision, was filed in this Docket (as Exhibit 8) on August 19, 2021. The Mirick law firm has had it before it for review for more than eight months and has no excuse to ignore it, acting as though it had not existed.

That decision is not a novelty that the attorneys could possibly miss because of a short lag of time. On the contrary, the attorneys at the Mirick law firm were obligated not to plead allegations contrary to that Court decision. The attorneys at Mirick law firm did not have any excuse not to investigate these facts.

---

[2] The other key to understand that highly unusual situation is what the banking records show. It was Osmanov's agent Petrov who wire transferred that money, $1.2 million, from the accounts of Arsenyi and Georgy, not themselves. The banking records say that Petrov did so based on a Power of Attorney of June 6, 2016, about a month before the money was routed to Osmanov. As this Court is aware, Petrov is a party to a Third-Party Complaint of Mann in this matter, of May 6, 2022, Dkt 40.

The Court also has grounds to find that the Complaint was frivolous on that particular factual allegation, as though Mann took that money from the Shchepins' account, specifically constituting Count XVIII.  In Mann's opinion, a prudent attorney would have withdrawn the pleading that is starkly contrary to the fact, at least in that instance, culminating in Paragraph 202, which is in direct conflict with the banking records.

### 6. Prejudice to Mann of Dealing with Conflicted Representation of Plaintiffs with Impermissible Conflict.

It follows that Osmanov falsely represented before the Shchepins as though Mann "stole" the $1.2 million.  Again, the issue here is that the opposing law firm not only prejudices their clients, the Shchepins.

The opposing law firm also acts with unwarranted prejudice to Mann because he could have quickly settled the mutual claims between the Shchepins and Mann, where the Shchepins did not have a claim.  In a likely scenario, Mann would let the Shchepins out of this action with a voluntary withdrawal rather than spend time and resources to expose the fraudulent scheme originated by Osmanov, which resulted in the Shchepins becoming co-Plaintiffs without a claim and making baseless claims concerning the $1.2 million.  Again, Mann had nothing to do with the $1.2 million that, on information and belief, took somehow from Otkrytye bank as though the Shchepins "owed" to Osmanov, and it was Osmanov's money.

As the pleadings show, Osmanov has routinely used false documents, expired powers of attorney, and various documentary fabrications.  He was helped by his legal assistant Petrov, Defendant, in the Third-Party Complaint.  Dkt 40.  Petrov has a legal background but without a lawyer's license in Russia.  For more details on that "collaboration" between Osmanov and Petrov, see the Third-Party Complaint by Mann, May 6, 2022, Dkt 40.

These revelations could have been easily discovered if the Shchepins were represented in this action by a different attorney or law firm, who would not have had to overcome a conflict of interest with Osmanov.

An attorney without a conflict would have required the Shchepins to disclose all documentary evidence from Otkrytie Bank, quickly finding out that Mann had nothing to do with that money.

### 7. Case Law Is Indicative; Impermissible Conflict Should Be Found.

The present situation, with the $1.2 million direct claims among the parties represented by the same law firm, has few parallels in the case law.

More generally, in a very detailed opinion, the Supreme Court of the Commonwealth of Massachusetts ruled that the undivided loyalty that a lawyer owes to his clients forbids him, without the clients' consent, from acting for a client in one action and at the same time against the same client in another. *Bryan Corp. v. Abrano* (2016) 52 N.E.3d 95, 474 Mass. 504. That applied when the interests were directly adverse, as here. The law firm, acting as a reasonable lawyer, should have known that agreeing to represent a shareholder whose interests were adverse to or were likely soon to become adverse. Ibid, *Bryan Corp*.

A law firm may not represent a new client where the firm can reasonably anticipate that a conflict will develop with an existing client and then choose between the two clients when the conflict materializes. Ibid, *Bryan Corp. v. Abrano*.

In the substantive conclusion in that landmark case, the Supreme Court found that the trial court acted within its discretion when ordering disqualification as an appropriate remedy for the counsel's violation of its duty of loyalty. A disqualification furthered the policy rationale underlying rules of professional conduct by upholding the principle that the client was entitled to

the undivided loyalty of his or her lawyer. Ibid, *Bryan Corp*. To quote: "we conclude that YSR, acting as a reasonable lawyer, should have known at the time it agreed to represent Bryan, Bridget, and Dennon that their interests were adverse to, or were likely soon to become adverse to, those of the company, and, in these circumstances, both the duty of loyalty and **101 rule 1.7 required it to decline representation, or at least seek the informed consent of the company. See Mass. R. Prof. C. 1.7 comment 6." *Bryan Corp*.

In this case, Osmanov, on the one hand, and the Shchepins, on the other hand, have had an impermissible conflict. Both sides are interested in the confidentiality of their respective information and documentation. While representing Osmanov, the opposing firm is interested in not disclosing banking records and information that he received the $1.2 million instead of Mann. That is contrary to the interests of the Shchepins. For example, under Russian law, there is a 3-year statute of limitations. It seems to Mann that Osmanov, acting through the opposing counsel, seeks to prolong and extend the discovery of the facts by the Shchepins brother until it is too late to file their claims in the Russian courts and an inconvenient forum of that in the U.S., that has no jurisdiction over the accounts. This Court should not allow being used by one of the plaintiffs, Osmanov, to facilitate the embezzlement of $1.2 million by way of allowing the opposing counsel to represent the Shchepins brothers.

That is mandated by the fact that the Shchepins can end up suing Osmanov to recover the $1.2 million with interest. However, the law firm representing all three of those is required to disclose the confidences of Osmanov, on the one hand, and the Shchepins, on the other hand, to the presently—or prospectively—adverse parties, which are likely to end up suing each other in the court. One court has said that where there is an attorney-client relationship, even if an attorney ethically should not have entered into it without consent because of a conflicting representation,

the client is entitled to protect confidential communications with the attorney. *Patel v. Martin* (2018) 111 N.E.3d 1082, 481 Mass. 29.

In another case, the court treated conflicts, like those here, as a "hot potato" that reasonable attorneys should avoid. The parties had a conflict of interest that existed or was foreseeable at the inception of the dual representation. It also asks the court to adopt the so-called "hot potato" doctrine. Such doctrine "limit [s] the ability of a law firm to terminate its relationship with an existing client 'like a hot potato'.." *National Med. Care, Inc. v. Home Med. of Am., Inc*., Mass.Super.Ct., No. 0081CV01225, 2002 WL 31068413, slip op. at note 5 (Middlesex County Sept. 12, 2002)

In the extreme situation, in combination with other factors, an attorney who, among other things, overstepped conflicts was disbarred. *Matter of Ablitt* (2021) 486 Mass. 1011, 161 N.E.3d 421. Of course, nobody claims that the alleged issue of the $1.2 million conflict is that severe or close, e.g., conflict among the parties represented by the same firm. However, it is best for the interests of the opposing counsel to assess the situation they put themselves, representing 7 (seven) clients, in one case, where their respective situation looks like, figuratively, a minefield, where, sooner or later, conflicts will start to explode, spill on the pages of filings in this case or to trigger other cases. See 2 Mallen & Smith, Legal Malpractice, § 14.2, at 536-540 (5th ed.2000).

The relationship between attorney and client is one of trust and confidence, giving rise to the attorney's fiduciary duties toward the client. See *Vanacore v. Kennedy*, 86 F.Supp.2d at 50 and cases cited; *Andrews v. Gorby*, 237 Conn. 12, 20 (1996).

An attorney's conduct derogating the client's interest breaches the attorney's fiduciary duty. See *Biller Associates v. Peterkin*, 58 Conn.App. 8, 18 (2000). See also *Meehan v. Shaughnessy*, 404 Mass. 419, 439 (1989) (recovery for breach of fiduciary duty depends on "causal connection

between [plaintiff's] claimed losses and the breach of duty"); *Van Brode Group, Inc. v. Bowditch & Dewey*, 36 Mass.App.Ct. 509, 517 (1994) ("It is fundamental that a tort action cannot be sustained without proof of damages, whether the action in this paragraph is framed as legal malpractice ... or breach of fiduciary duty"). Credit for the above citations is given to the unpublished decision in *McElroy v. Robinson & Cole, LLP*, Superior Court of Massachusetts, Oct. 25, 2001, not Reported in N.E.2d 2001 WL 1319970.

Apart from a claim of legal malpractice, "[b]reaches of [such fiduciary duties as] client confidences, inappropriate conflicts of interest, and the use of advantages arising out of the client-lawyer relationship may be intentional wrongs or may be negligent acts depending on the circumstances." *Clark v. Rowe*, 428 Mass. 339, 345 (1998). A lawyer may be civilly liable to the client "[i]f a breach of one of these fiduciary duties is a substantial cause of injury to the client." Ibid. Credit for the above citations is owed to the unpublished disposition in *McElroy v. Robinson & Cole LLP*, Appeals Court of Massachusetts, June 10, 2004, 61 Mass.App.Ct. 1110 809 N.E.2d 1100 (Table).

### 8. Declination of the U.S. Magistrate Judge to have the Retainer Agreement of Plaintiffs Disclosed to Mann's Counsel "For Attorney Eyes Only" Should Be Held In Error.

As mentioned above, Mann's position is that he should be allowed to review the retainer agreement and the waivers allegedly executed by all plaintiffs, moreover so "with full disclosure." Mann believes that no full disclosure was made to the plaintiffs by the opposing firm.

At the hearing on the Motion, the U.S. Magistrate Judge ruled that, as Mirick, O'Connell, DeMallie & Lougee disclosed under seal to the Court, but not to Mann, the retainer agreement and the waivers. Mann's counsel proposed to disclose to Mann that documentation "for attorney's eyes only." That relief was denied from the bench. Mann objects to that ruling as in error. The

retainer agreement and the waivers were incident to the representation and typically are found not to be privileged. The rule of thumb is that retainer agreements are not privileged, however, unless they reveal a confidential communication of legal advice — the identity of the client, the fee arrangement, and the fact of retention are not privileged because they only involve the incidents of representation

Although rarely addressed, the court has found the subject documents discoverable. See *In re MI Windows & Doors, Inc*., MDL No. 2333, Case No. 2:12-mn-00001 (D.S.C. June 12, 2013) (retainer agreements are not privileged, however, unless they reveal a confidential communication of legal advice — the identity of the client, the fee arrangement, and the fact of retention are not privileged because they only involve the incidents of representation.) See *In re Grand Jury Subpoena*, 204 F.3d 516 (4th Cir. 2000) (retainer agreement not protected by the privilege). See also *Lawfinders Associates, Inc. v. Legal Research Center, Inc*. 193 F.3d 517, 518 (5th Cir. 1999) ("the attorney-client privilege does not protect the type of information contained in the retainer letters. See, e.g., *United States v. Davis*, 636 F.2d 1028, 1043-44 (5th Cir. Unit A Feb. 1981) (stating that attorney-client privilege only extends to communications related to the rendition of legal advice and holding that '[f]inancial transactions between the attorney and client ... are not within the privilege')"). See *Bowman v. Green Tree Servicing, Inc*., 2012 WL 4849616, at *3 (N.D. W. Va.)("[T]he retention agreement between Plaintiff and her counsel is not privileged.

The authority is unanimous for the proposition that 'in the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship.' *In re Semel*, 411 F.2d 195, 197 (3d. Cir.1969); see also *NLRB v. Harvey*, 349 F.2d 900, 904–05 (4th Cir.1965); *United States v. Pape*, 144 F.2d 778, 782–783 (2 Cir.1944); *Wirtz v. Fowler*, 372 F.2d

315, 332–333 (5th Cir.1966); *In re Wasserman*, 198 F.Supp. 564 (D.C.Cir.1961). The Court can find no unusual circumstances in this case to depart from this well established rule.")

Further, Mann's counsel should also have an opportunity to inquire whether such retainer agreement(s) were lawful under Russian law because the contracting parties are subject to the jurisdiction of the Russian Federation, and their entering into contracts must be lawful under local law.

The District Court should find that the declination of the U.S. Magistrate Judge to order the opposing counsel the retainer agreement(s) even "for attorney's eyes only" was in error and should also sustain the objection on that ground.

Even though Mann is unaware of a case in Massachusetts right on the point here, Mann adopts analysis in a sister District Court, for the District of Connecticut, in the case *Musante v. USI Ins. Servs., LLC*, (D.Conn), Jul 27, 2017 CASE NO. 3:16cv00799(RNC) (D. Conn. Jul. 27, 2017). "The mere fact that [a party] deems these items to be proprietary does not (by itself) render them to be proprietary." *Demutis v. Sally Beauty Supply LLC*, No. 09CV92A, 2010 WL 1038679, at *3 (W.D.N.Y. Mar. 19, 2010). "[M]erely labeling the material 'proprietary and confidential' is not by itself sufficient to bar its production." *Novomoskvovsk Joint Stock Co. "Azot" v. Revson*, No. 95 CIV. 5399 (BSJ), 1996 WL 282085, at *1 (S.D.N.Y. May 28, 1996).

"[A] long and unbroken line of cases in this Circuit have established that "in the absence of special circumstances, fee arrangements do not fall within the attorney-client privilege because they are not the kinds of disclosures that would not have been made absent the privilege and their disclosure does not incapacitate the attorney from rendering legal advice." *Torres v. Toback, Bernstein & Resiss LLP*, 278 F.R.D. 321, 322 (E.D.N.Y. 2012) (quoting *Vingelli v. United States*, 992 F.2d 449,452 (2d Cir. 1993) and holding that retainer agreement between a debt collection

firm and its client was not subject to attorney-client privilege, where the identity of firm's client was not secret, nothing of confidential nature would be revealed by the production of agreement, and the firm had failed to identify any other special circumstances warranting application of privilege).

See also *Williams v. Rushmore Loan Mgmt. Servs. LLC*, 2016 U.S. Dist. LEXIS 22807, *6 (D. Conn. February 16, 2016) (requiring production of a redacted version of the retainer agreement, along with in-camera inspection of the portion claimed to contain privileged information regarding discussions between attorney and client regarding legal strategy).

**9. Prompt Rebuttal to the Opposition of Plaintiffs' Counsel Filed on This Date.**

Earlier this day, the law firm representing all plaintiffs filed an Opposition to Mann's Verified Supplemental Motion for Leave and Reconsideration. Dkt 86. Mann is obligated to file the Objection today and may have no opportunity to submit his rebuttal to the representations made by the opposing counsel on behalf of all plaintiffs. Therefore, Mann's preliminary rebuttal is diligently stated herewith.

That Opposition on behalf of all plaintiffs is demonstrative that filings on behalf of the plaintiffs are poorly researched on the facts and consequently contain misleading statements. Although the substantive response to all contested representations cannot be made on the same day, Mann picks one example of such statements, irresponsible without familiarity with the documents and facts.

On page 2, the opposing counsel wrote that the Powers of Attorney of June 6, 2016, upon which Osmanov obtained the money, $1.2 million, "[T]hey were signed by Alexey Eduardovich Petrov – *one of Mann's representatives*." (Italics added).

In fact, Petrov has never had any association with Mann. On the contrary, Petrov had been working for Osmanov, and whatever powers of attorney were issued on June 6, 2016, those must have been on behalf of the Shchepins. See the Verified Third Party Complaint, showing the instances of Osmanov's and Petrov's engaging in fraudulent schemes. Dkt 40.

From the evidence now, it follows that Osmanov, acting through Petrov, routed to himself $1.2 million and then represented to the Shchepins as though it was Mann's misappropriation, which was a deception. Numerous questions arise regarding the obligation of Mirick, O'Connell, DeMallie & Lougee LLP's counsel to have reviewed and investigated the facts when making representations to the Court. That makes the inference that said law firm was not diligent enough to review or acknowledge that it had an impermissible conflict of interest among its clients, resulting in severe problems and unnecessary intervention in this case.

As a part of the problems the opposing counsel overlooked or created, Mirick, O'Connell, DeMallie & Lougee failed to recognize that its current clients could resort, on one day, to the recovery of the legal fees they have paid. The law firm has been acting overriding the prohibited conflict of interest; its clients, per case law, may seek forfeiture of all legal fees and demand a full refund of the paid legal fees for such a conflicted representation.

## Conclusion.

The Objection should be sustained. At a minimum, the U.S. District Judge should return the issues to the U.S. Magistrate Judge to review the banking records that became available later.

Incidental to the Objection being sustained, the U.S. Magistrate Judge's denial of the relief to inspect the retainer agreement(s) of the plaintiffs in a mode "for attorney's eyes only" should be found as an error of law.

Date: September 26, 2022.

Respectfully submitted,

                                                                _____/*signed George Lambert*/
George Lambert, Esq.
MA bar #568769
100 Cambridge Street, 14th Floor
Boston, MA 02114
Tel. (617) 925 7500, fax (800) 852 1950
Email: Lawoffice2279@gmail.com
Attorney for Defendant and Plaintiff
in Counterclaim Andrei Mann

**CERTIFICATE OF SERVICE**

       The undersigned certifies that on this day, September 26, 2022, the foregoing was served via efiling by Pacer on the parties as follows:

Kenneth C. Pickering
Lauren E. Sparks,
Mirick, O'Connell, DeMallie & Lougee LLP
100 Front Street
Worcester MA 01608-1477
Tel. (508) 791-8500
kpickering@mirickoconnell.com
lsparks@mirickoconnell.com
Attorneys for all Plaintiffs;

Sean T. Carnathan
O'Connor, Carnathan and Mack LLC
67 South Bedford Street, #400W
Burlington, MA 01803
781-359-9002, Fax: 781-359-9001
Email: scarnathan@ocmlaw.net
Attorney for Defendant Michael Hellman

Date: September 26, 2022

                                                  */George Lambert/*
                                                  _____
                                                  George Lambert