UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENIY SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMENETS<br>    Plaintiffs<br><br>    v.<br><br>ANDREI MANN and MICHAEL HELLMAN,<br>    Defendants | CIVIL ACTION NO. 1:21-CV-40068-NMG-PGL |

**PLAINTIFFS' OPPOSITION TO MANN'S MOTION TO QUASH
OR MODIFY SUBPOENAS AND FOR PROTECTIVE ORDER**

The plaintiffs, Petr Dmitriev, Daria Latour, Yusup Osmanov, Yuri Ryazanov, Arseniy Shchepin, Georgy Shchepin, and Oleg Semenets ("Plaintiffs") hereby oppose the Verified Motion of Defendant Andrei Mann ("Mann") to Quash or Modify Subpoenas Duces Tecum Served by Plaintiffs and for Protective Order ("Motion") because the discovery sought from third parties: (a) comports with notice requirements; (b) causes Mann no undue burden or oppression; and (c) is tailored to the issues in the case and seeks relevant information.  Additionally, Mann's request for a protective order should be denied because he has failed to establish that good cause warrants the issuance of such an order.

**BACKGROUND**

This action was brought by the Plaintiffs to recover monies that Mann (with support and assistance from co-defendant Michael Hellman) fraudulently obtained from the Plaintiffs. Relying on his prestigious family name and carefully crafted public reputation for business and

financial success, Mann manipulated the Plaintiffs into loaning him millions of dollars under false pretenses and with no intention of repaying the loans, or as he sometimes called them, "investments." See generally Complaint. Mann then transferred the monies out of Russia and fled to the United States, where he is a citizen, to avoid a Russian criminal investigation. The Plaintiffs assert claims of fraud, conspiracy, conversion, unjust enrichment, and breaches of contract.

The parties recently started the discovery phase of litigation. In an effort to obtain an understanding of how, when, and where Mann concealed the ill-gotten funds he obtained from the Plaintiffs, the Plaintiffs issued third party requests for documents to Webster Bank ("Webster Bank Subpoena") and the Digital Federal Credit Union ("DCU Subpoena"). The Plaintiffs also issued a subpoena to Tatiana Ivanova ("Ivanova Subpoena"), Mann's former friend and business partner seeking documents and communications relating to their business interactions.[1] Plaintiffs' counsel has worked cooperatively with counsel for the respective subpoena recipients to resolve any concerns raised about the scope and breadth of the subpoenas. At this time, no documents have been produced pursuant to the Webster Bank or the DCU subpoenas.

## LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1) permits parties to "obtain discovery regarding *any* nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added); see also KinectUs LLC v. Bumble Trading LLC, No. 21-MC-91665-ADB, 2021 WL 6066539, at * 2 (D. Mass. Dec. 22, 2021). Moreover, "[a]s the Supreme Court has instructed, because 'discovery itself is designed to help define and clarify

---

[1] Mann brought suit against Ms. Ivanova in a separate civil action titled, Anrion Corp. and Andrei Mann v. Tatiana Ivanova, Nathalie Roicomte-Cavallari, and SCI Maniv, U.S. District Court for the District of Massachusetts, No. 1:22-cv-11272-RGS.

the issues,' the limits set forth in Rule 26 must be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig., No. MDL 13-2419-FDS, 2013 WL 6058483, at *3 (D. Mass. Nov. 13, 2013) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). Accordingly, litigants may serve subpoenas on third parties pursuant to Rule 45 provided that the subpoena "fall[s] within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." Cates v. Zeltiq Asethetics, Inc., No. 20-MC-91234, 2020 WL 5517457, at *2 (D. Mass. Sept. 14, 2020) (quoting Green v. Cosby, 152 F. Supp. 3d 31, 34 (D. Mass. 2015), modified on reconsideration, 160 F. Supp. 3d 431 (D. Mass. 2016)).

When analyzing motions to quash "'courts weigh the need of the party seeking discovery against any undue hardships created by permitting it.'" Green, 152 F. Supp. 3d at 36 (quoting In re Methyl Tertiary, 269 F.R.D. 360, 363–64 (S.D.N.Y. 2010)). Factors germane to that analysis are "relevance, the requesting party's need, the breadth of the request, and the burden imposed." Id. "The party resisting discovery bears the burden of showing that the subpoena imposes an undue burden, and it cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance." In re New England Compounding Pharmacy, 2013 WL 6058483, at *6 (internal quotations omitted). Here, Mann has not met his burden of showing he will suffer any prejudice or other "injurious consequences" if the subpoenas are not quashed or modified.

    A.  **Rule 45.**

Fed. R. Civ. P. 45 provides that, "before [the subpoena] is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." This provision

was added to "afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things . . . . [W]hen production or inspection is sought independently of a deposition, other parties may need notice in order to monitor discovery and in order to pursue access to any information that may or should be produced." Fed. R. Civ. P. 45, 1991 cmt.  Mann argues that he should have been allowed "proper time" to review the subpoenas that were issued.  See Motion at 4.  Here, the subpoenas were issued to the non-parties and served on Mann's counsel in early October requesting that documents be produced by the middle of November, allowing each non-party and Mann more than 30 days in which to object or respond to the requests for documents.  Indeed, Mann's filing of this Motion shows that he has had ample time in which to review the subpoenas, conference them with Plaintiffs' counsel, and research, draft, and lodge objections to their issuance.

Mann acknowledges that, for the purposes of quashing a subpoena, a party that does not receive timely notice must have suffered demonstrable prejudice or harm.  See Motion at 4.  Mann has not suffered any prejudice and his reliance on Vondersaar v. Starbucks Corp., is misplaced.  See No. c 13-80061 SI, 2013 WL 1915746, at * 2 (N.D. Cal. May 8, 2013) (***denying*** motion to quash because Starbucks, despite having received notice of subpoena duces tecum three days after third-party was served, still had almost two weeks to object to subpoena and was therefore not prejudiced).  Mann was provided notice of the subpoenas, and suffered no prejudice from the timing or manner of their service.

### B. The Subpoenas No Not Pose An Undue Burden.

Mann's also argues that the subpoenas impose an undue burden.  See Motion at 5-6.  This argument is not Mann's to make.  Plaintiffs' counsel is working cooperatively with counsel for Ivanova, Webster Bank, and DCU to narrowly tailor the requests by providing time and scope

limitations, and additional time for compliance as needed. The Plaintiffs even revised and reissued the Webster Bank Subpoena to accommodate concerns that were raised by Webster Bank about the scope of the requests. The Plaintiffs have also agreed to pay the cost of any reasonable fees assessed by Webster Bank and DCU for the time spent responding to the subpoenas. Neither institution will suffer an undue burden or other oppression by having to respond to the subpoenas.

None of the third-parties subpoenaed filed motions to quash, or objected to the subpoenas as unduly burdensome. Mann cannot legitimately claim to be burdened, unduly or otherwise, as a result of others' compliance with the Plaintiffs' document requests, nor can he claim that the subpoenas are oppressive *to him*.

### C. The Subpoenas Request Relevant Information.

Throughout the Motion, Mann argues that the subpoenas seek information that has no bearing on the issues in the case. The Complaint is replete with references to Mann defrauding the Plaintiffs of millions of dollars and concealing, transferring, and withdrawing the stolen money through financial institutions and corporate entities. Mann's accounts and relationships with financial institutions that were used to conduct fraudulent transactions are exceedingly relevant to the Plaintiffs' claims. All of the Plaintiffs' requests in the subpoenas concern the concealment, transfer, and withdrawal of the funds that Mann stole. To the extent that Mann makes specific objections to relevance, they are addressed as follows:

1. **Webster Bank Subpoena:**

    a. *All documents concerning, relating to, or consisting of the Lake Louise Realty Trust.*

Mann argues that documents relating to the Lake Louise Realty Trust are "irrelevant to any claims in this action." See Motion at 7. To the contrary, the requested documents' relevance

is apparent from the face of the Complaint, which alleges that "on September 15, 2006, [Plaintiff Yusup Osmanov] signed a loan agreement with Hellman in the amount of $371,823 USD to loan funds to Lake Louise Realty Trust, which was created and administered by Hellman."  See Complaint at ¶¶ 80-81, Exhibit 3.  The Complaint further alleges that Hellman paid interest on the loan to the Lake Louise Realty Trust until as recently as 2017.  See id. at ¶ 81.  Any documents Webster Bank has related to or concerning the Lake Louise Realty Trust are critical to proving these allegations and to recouping Osmanov's damages.

### b. All documents related to any mortgages held on 314 Dartmouth Street, Unit C, Boston, MA 02116, including, but not limited to Loan No. 4703054331.

Mann argues that this request is irrelevant to any claims in this action.  Until recently, Mann owned 314 Dartmouth Street, Unit C in Boston ("Dartmouth Street Property").  The Dartmouth Street Property was an investment made by Mann and involved Hellman, his co-conspirator.  In 2003, Mann gave Hellman power of attorney and Hellman obtained a mortgage on the Dartmouth Street Property.  In 2018, Mann and Hellman sold the Dartmouth Street Property for $4.6 million.  This lucrative sale occurred within the same time period in which Mann: (a) extended his $1.5 million loan agreement with Plaintiff Petr Dmitriev due to a purported inability to repay the loan (see Complaint at ¶ 38); (b) refused to return the $1.2 million he claimed to have invested in a Swiss Trust for Plaintiffs Arseniy and Georgy Shchepin (see Complaint at ¶ 63); (c) refused to repay a loan to Plaintiff Daria Latour in the amount of approximately $495,000 (see Complaint at ¶ 68); (d) falsely claimed he would repay a $6.9 million loan to Plaintiff Yusup Osmanov (see Complaint at ¶ 84); and (e) fraudulently borrowed $150,000 from Plaintiff Oleg Semenets and promised to repay that and his existing debt of $1.6 million (see Complaint at ¶ 98).

Following Mann's financial transactions over the period of time during which he was actively defrauding the Plaintiffs is relevant and proportional to the needs of the case. Mann's lies about his finances, ability or inability to repay debts, and other deceptive conduct in or about 2018 are essential components of the Plaintiffs' case, and documents relating to the Dartmouth Street Property and its lucrative sale will reveal those deceptions. Moreover, documents and communications about the Dartmouth Street Property are likely to reveal information about the partnership between Mann and Hellman, which is highly relevant to the Plaintiffs' claims of civil conspiracy.

2. **DCU Subpoena:**

Mann argues that the Plaintiffs are not entitled to "[a]ll communications between the Digital Federal Credit Union and Bank Otkritie Financial Corporation concerning or relating to Andrei Mann . . ." because Bank Otkritie Financial Corporation ("Bank Otkritie") was not cited in the Complaint. See Motion at 8. However, Mann himself refers to Bank Otkritie in his counterclaim against Yusup Osmanov (see Andrei Mann's Verified Counterclaim against Yusup Osmanov at ¶¶ 73-77, 162); and again in his counterclaims against Daria Latour, Arseniy Shchepin, and Georgy Shchepin (see Andrei Mann's Verified Counterclaim against Daria Latour, Arseniy Shchepin, and Georgy Shchepin at ¶¶ 40-44, 63 69, 99, 107, 118).

In fact, in Count I of his counterclaim against Latour and the Shchepins, Mann requests an accounting that includes records from Bank Otkritie. Additionally, the Plaintiffs have a good faith basis to believe that Bank Otkritie is one of the many financial institutions that Mann used to perpetrate his fraud on the Plaintiffs. For all of these reasons, the communications requested are relevant to the issues in the Plaintiffs' Complaint and in Mann's counterclaims.

### 3. Ivanova Subpoena:

Mann's primary objections to the Ivanova Subpoena are that the Plaintiffs have engaged in a "fishing expedition" and seek irrelevant documents related to a variety of corporate entities in which Mann has had involvement. As alleged in the Complaint, Mann created "numerous business entities in Massachusetts that would receive funds from unwitting lenders and investors" and that these entities were used to "conceal or destroy traces of asset withdrawals from Russia." See Complaint at ¶¶ 18, 37. Accordingly, documents related to the entities enumerated in the Ivanova Subpoena, and communications from Mann concerning these entities, are very likely to contain information relevant to this lawsuit. Simply because an individual or corporate entity was not specifically identified in the complaint does not mean the Plaintiffs do not have a legitimate basis on which to propound document requests to that entity or individual.

### D. The Discovery Is Not Being Propounded For Use In Russia.

Pursuant to Fed. R. Civ. P. 26(c), the court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden, or expense. Here, Mann has failed to show that good cause exists for the issuance of a protective order. He suggests that the Plaintiffs "seek discovery that they will use in Russia one way or another" and that a protective order is warranted. See Motion at 12. Mann claims that American citizens such as himself are "considered nationals of a hostile country" and he will not be afforded any objectivity in the Russian courts.[2] Id. The Plaintiffs note that proceedings in Russia, particularly the criminal case that has been brought against Mann, are ineffectual because, as noted in the

---

[2] This position blatantly contradicts the one taken in Mann's previously filed Motion to Dismiss which was based, in part, on a theory of *forum non conveniens*. There, Mann urged the court to dismiss the case so that the claims could be resolved in the Russian courts. See Case 1:21-cv-40068-NMG, Document No. 13, Mann's Motion to Dismiss, 12. Mann plainly is attempting to use the Plaintiffs' foreign citizenship and international scale of his fraud to thwart discovery and gain an advantage in this litigation.

Complaint, Mann has fled Russia and is hiding in the United States to avoid his creditors and criminal prosecution.  See generally Complaint.

That notwithstanding, the Plaintiffs are seeking the requested discovery for use in this litigation and deny that the discovery is being propounded for use in any proceedings that may be ongoing in Russia.  The court should deny Mann's request for a protective order.

## CONCLUSION

For these reasons, the Plaintiffs request that this Court deny the Verified Motion of Defendant Andrei Mann to Quash or Modify the Subpoenas Duces Tecum Served by Plaintiffs and for Protective Order.

> PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENIY SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMENETS,
>
> By their attorney,
>
> */s/ Kenneth C. Pickering*
> Kenneth C. Pickering, BBO #634121
> Mirick, O'Connell, DeMallie & Lougee, LLP
> 100 Front Street
> Worcester, MA 01608-1477
> Phone: (508) 791-8500
> kpickering@mirickoconnell.com

Dated: November 10, 2022

## CERTIFICATE OF SERVICE

I, Kenneth C. Pickering, hereby certify that I filed the foregoing document through the Court's ECF MA E-file system, and that it will be sent electronically to the registered participants listed to receive electronic filings in this case.

Dated: November 10, 2022

> */s/ Kenneth C. Pickering*
> Kenneth C. Pickering