UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENIY SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMENETS,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREI MANN and MICHAEL HELLMAN,<br><br>Defendants. | Civ. Action No.<br>1:21-CV-40068-NMG |

## MEMORANDUM AND ORDER

**LEVENSON, U.S.M.J.**

### INTRODUCTION

Before the Court is Defendant Andrei Mann's[1] ("Mann") Motion to Quash or Modify Subpoenas Duces Tecum Served By Plaintiffs And Defendants In Counterclaim And For Protective Order (the "Motion to Quash"). Docket No. 95. The Motion to Quash seeks to prevent Plaintiffs from serving third-party subpoenas on two banking institutions, Webster Bank and Digital Federal Credit Union, and an individual, Tatiana Ivanova.

Mann argues that he received insufficient notice of the third-party subpoenas, that the subpoenas pose an undue burden, that the subpoenas request information that is either irrelevant to the action or overbroad, and that Plaintiffs fail to properly identify and cordon-off subpoenaed information that is not relevant to the claims of individual plaintiffs. *See* Motion to

---

[1] Defendants Mann and Michael Hellman ("Hellman") are represented separately. Docket Nos. 8-9.

Quash, Docket No. 95, at 2-3. On the basis of these arguments, Mann requests that the Court quash or modify the third-party subpoenas. Mann also argues that, if any portion of the third-party subpoenas are permitted, the Court should enter a protective order restricting financial records to "attorneys' eyes only." *Id.* In support of this argument, Mann raises the specter that Plaintiffs' ulterior purpose is to provide the subpoenaed information to Russian authorities. *Id.* at 12-13.

Plaintiffs argue that Mann was not prejudiced by the timing of the notice of the third-party subpoenas, that the third-party subpoenas are not a burden on him personally, and that the information sought in the third-party subpoenas is relevant to Plaintiffs' claims or Mann's counterclaims. *See generally*, Opp. to Motion to Quash, Docket No. 96. Plaintiffs argue that Mann has not articulated specific reasons sufficient to meet the good cause standard for issuing a protective order.

For the reasons identified below, the Court DENIES the Motion to Quash and DENIES Mann's request for a protective order.

I.  **Background**

In early October 2022, counsel for Plaintiffs served third-party subpoenas on two banks and upon an individual. Motion to Quash, Exhibits 1-3, Docket Nos. 95-1, 95-2, 95-3. On each of the accompanying forms, counsel for Plaintiffs indicated that the "name of party . . . who issues or requests this subpoena" was "Plaintiffs." *Id.* A copy of each subpoena was sent to counsel for Mann and Hellman when the subpoena was served on the respective third-party. *Id.*; *see* Opp. to Motion to Quash, Docket No. 96, at 4.

On October 14, 2022, counsel conferred regarding the third-party subpoenas. *See* Motion to Quash, Docket No. 95, at 2.

On October 27, 2022, Mann filed the Motion to Quash; Hellman did not join the motion. Docket No. 95. On November 10, 2022, Plaintiffs filed their opposition. Docket No. 96.

The parties have not requested oral argument.

II.     **Legal Standard**

In civil cases, "it is now beyond dispute that '[b]road discovery is a cornerstone of the litigation process contemplated by the Federal Rules of Civil Procedure.'" *Zubulake v. UBS Warburg*, 217 F.R.D. 309, 311 (S.D.N.Y. 2003) (alteration in original). Rule 26 of the Federal Rules of Civil Procedure defines the general scope of discovery as follows:

> Parties may obtain *discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. Pro. 26(b)(1) (emphasis added). Rule 45 permits litigants to serve subpoenas on third parties; these subpoenas "must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015), *modified on other grounds*, 160 F. Supp. 3d 431 (D. Mass. 2016).

A party may move to quash or modify a third-party subpoena under Rule 45. Rule 45(d) provides that, on a timely motion, the court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the information's value to the serving party." *W Holding Co. v.*

*Chartis Ins. Co. of P.R.*, 42 F. Supp. 3d 319, 322 (D.P.R. 2014). "The party resisting discovery bears the burden of showing that the subpoena imposes an undue burden, and it cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance." *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013) (internal quotations omitted).

A court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "[T]he party seeking a protective order bears the burden of establishing good cause and a specific need for protection." *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 437 (D.P.R. 2016) (citing *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 779 (1st Cir. 1988)). "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Id.* (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986)).

### III. Analysis

#### A. Notice Requirements

Rule 45(d) states that if "the subpoena commands the production of documents . . . then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). Plaintiffs copied Mann and Hellman on the third-party subpoenas, but did not send either defendant an advance copy.

There is some question whether a "cc" of a third-party subpoena is sufficient to meet the advance notice requirements of Rule 45. *See Planet Fitness Int'l Franchise v. JEG-United*, LLC, No. 22-MC-11-LM, 2022 WL 1444504, at *2 (D.N.H. May 6, 2022) ("Courts are divided about

whether notice provided to the other parties simultaneously with service of the subpoena complies with Rule 45(b)(4)."). The express language of the rule, however, suggests that some degree of advance notice is required.

In any event, there is no hint that Mann has been prejudiced by the timing of notice on the third-party subpoenas; the third parties have not yet responded to the subpoena and Mann has had time to file his motion to quash. Courts have repeatedly found that a mere failure to provide advance notice is not grounds to quash, absent prejudice to the moving party. *See In re New England Compounding Pharmacy*, 2013 WL 6058483, at *5 (collecting cases); *see also Vondersaar v. Starbucks Corp.*, No. C 13-80061 SI, 2013 WL 1915746, at *2 (N.D. Cal. May 8, 2013) (declining to quash subpoena where subpoena issued without advance notice because moving party had time to object to the subpoena and suffered no prejudice).

Even less persuasive is Mann's contention that the subpoenas were defective because they identified the serving party as "Plaintiffs," as opposed to specifying individual plaintiff(s) by name. Motion to Quash, Docket No. 95, at 4-5. Mann offers no support for his claim that there is an impropriety here, beyond the fact that the subpoena form refers to the singular "name of party." In any event, Plaintiffs are identified in the caption of the subpoena (albeit with an "et al.") and are jointly represented.[2] There is no prospect of a material misunderstanding about whose subpoenas are at issue.

The gist of Mann's argument seems to be that documents responsive to the subpoena will be sent to Plaintiffs writ-large, which would permit individual plaintiffs to access responsive documents that are not relevant to their individual claims. Mann offers no authority for any

---

[2] Mann has repeatedly pressed his dissatisfaction with the Plaintiffs' joint representation. But the Court has already ruled that Plaintiffs' joint representation, on the present facts, is not improper. *See* Docket No. 82.

5

general notion that discovery must be firewalled from named plaintiffs to whom the information is not specifically relevant, where the information is relevant to Plaintiffs' claims in general. And, as discussed below, Mann has not made a persuasive showing that any special protective order is warranted in this case.

In the absence of indication of actual harm, the Court rejects Mann's effort to elevate these purely technical issues. *See* Fed. R. Civ. P. 1 (directing that rules "be construed . . . and employed . . . by the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

### B. Undue Burden

Mann contends that the third-party subpoenas impose an undue burden. But the issue of burden is not really Mann's to raise, as he is not the one responding to these subpoenas. As noted above, "[a]n evaluation of undue burden requires the court to weigh the burden *to the subpoenaed party* against the information's value to the serving party." *W Holding Co.,* 42 F. Supp. 3d at 322 (emphasis added). The subpoena recipients have not filed a motion to quash or modify the third-party subpoenas. To the contrary, Plaintiffs report that they are "working cooperatively" with counsel for the recipients and have agreed to pay reasonable fees identified by the two banking institutions for time spent responding to the subpoenas. *See* Opp. to Motion to Quash, Docket No. 96, at 5.

Accordingly, Mann's contentions that the subpoenas are unduly burdensome do not carry weight here.

**C. Relevance**

i.   Webster Bank

Mann argues that the subpoena to Webster Bank requests information that is irrelevant to Plaintiffs' claims.

Mann contends that the "Lake Louise Realty Trust has not been mentioned in the Complaint, and its relevance for this action is objected to as entirely irrelevant." Docket No. 95, at 6. But the Complaint itself belies Mann's assertion. *See, e.g.*, Complaint, Docket No. 1, at ¶ 80 ("Eventually, Osmanov relented and on September 15, 2006, he signed a loan agreement with Hellman in the amount of $371,823 USD to loan funds to Lake Louise Realty Trust, which was created and administered by Hellman.").

Mann also complains that a particular transaction, a mortgage on 314 Dartmouth Street, Unit C, Boston, is beyond the scope of discovery. Plaintiffs respond that Mann's financial activity and transactions during the period of alleged fraudulent activity identified in the Complaint are relevant to Mann's representations about his personal finances. *See* Opp. to Motion to Quash, Docket No. 96, at 6-7. Plaintiffs have alleged that Mann misappropriated or misapplied monies that the Plaintiffs entrusted to Mann. *See, e.g.*, Complaint, Docket No. 1, at ¶¶ 63, 68, 84, 98. Plaintiffs have also alleged that Mann claimed he lacked liquid funds to make immediate repayment of a particular debt. *Id.* at ¶ 38.

Given that the Complaint describes a fraudulent scheme to misappropriate or misapply the Plaintiffs' money through a variety of nominee entities and investments, it is reasonable to permit discovery into Mann's and Hellman's business dealings.

Mann also objects to Plaintiffs' failure to designate a pertinent time period in the subpoenas. It is true that the better practice is to include such a designation. As a practical

matter, however, the point is moot. The Complaint describes a course of financial dealings that reach back more than two decades. Few if any financial institutions maintain detailed account records going back that far. Documents with continuing significance, such as account opening statements, loan agreements and the like, would be relevant without regard to time frame.

In sum, given the breadth of Plaintiffs' claims, it is reasonable to expect that it will be necessary to review a significant amount of financial information in the course of discovery. The subpoena to Webster Bank does not appear unreasonably broad or disproportionate to the needs of the case.

    ii.    <u>Digital Federal Credit Union</u>

Mann contends that the subpoena to Digital Federal Credit Union ("DCU") requests information that is irrelevant to Plaintiffs' claims.

Mann focuses his objection on the subpoena's demand for production of documents reflecting communications, in connection with Mann, between DCU and Bank Otkritie. Mann complains that Bank Otkritie is not identified in the Complaint. *See* Motion to Quash, Docket No. 95, at 8 ("That bank was not cited in the Complaint."). This contention is flatly disingenuous. As Plaintiffs counter, Bank Otkritie is repeatedly identified in Mann's own counterclaims against individual plaintiffs. *See* Opp. to Motion to Quash, Docket No. 96, at 7. Moreover, one of Mann's counterclaims includes an express request for information that appears adjacent, or possibly identical, to the information at issue. *See* Andrei Mann's Verified Counterclaim against Daria Latour, Arseniy Shchepin, and Georgy Shchepin, Docket No. 35, at ¶63 ("That accounting should include the information from Bank Otkritie regarding the statements on the account where the money was deposited upon the wire transfer(s) from Boston.").

8

The information in question appears to be directly relevant to Mann's counterclaims against Plaintiffs.

iii.     Tatiana Ivanova

Mann also challenges the subpoena to Tatiana Ivanova, which seeks records relating to various business entities, as well as communications between Ivanova and Mann. Mann argues that the subpoena to is overly broad. *See* Motion to Quash, Docket No. 95, at 9-12.

Plaintiffs identify Ivanova as a former business partner of Mann who was involved with the various enumerated entities and likely communicated with Tatiana Ivanova about those entities.

Plaintiffs have the better argument here. Mann offers no authority for the proposition that a party is forbidden to subpoena information about an entity that is not named in the underlying complaint. On the contrary, the discovery rules do not lend themselves to any such bright-line rule. The question is, instead, one of relevance and proportionality. *See* Fed. R. Civ. P. 26.

Mann refers to a separate lawsuit pending in this Court, *Anrion Corp. et al. v. Tatiana Ivanova et al.*, 1:22-cv-11272-RGS ("*Anrion*"). Mann asserts that "[t]he allegations pleaded therein show that Ivanova has nothing to do with transactions with any of the seven plaintiffs here, demonstrating that the Subpoena served on Ivanova is little more than a 'fishing expedition.'" Motion to Quash, Docket No. 95, at 12. In reviewing the complaint in *Anrion*,[3] it is unclear which allegations might be said to support the proposition that Mann advances. Indeed, one paragraph in that complaint appears to support – perhaps tangentially – Plaintiffs' contention that Mann's business dealings were spread over multiple accounts and intermingled a

---

[3] Mann is himself one of the plaintiffs in *Anrion*. No answer has yet been filed in that case. In effect, Mann is citing his own unproven allegations as support for his position in this motion.

variety of personal and entity interests.  *See Anrion* Complaint, 1:22-cv-11272-RGS, Docket No. 1, at ¶ 9 ("Ivanova, who generated substantial income from S-Info and other enterprises that Mann created as an entrepreneur, invested in several of Mann's business projects.  Even though personal and business accounts were sometimes used interchangeably, Mann's projects in which Ivanova invested were business-related.  Ivanova's investments typically did not create Mann's personal liability before Ivanova but were to be repaid from business revenues.").

In this case, Plaintiffs have alleged that Mann "created numerous business entities in Massachusetts that would receive funds from unwitting lenders and investors."  Complaint, Docket No. 1, at ¶¶ 18, 37.  Plaintiffs are not required to identify each corporate entity potentially involved in the allegations of the Complaint.  Plaintiffs have adequately connected the dots between Mann, Tatiana, and the enumerated entities, and have plausibly identified the relevance of the subpoenaed information.

### D. Protective Order

Mann argues that a protective order is necessary for two purposes.

First, Mann contends that the various individual Plaintiffs should be prevented from sharing with one another information that may be pertinent only to some individual plaintiffs and not to others.  Mann cites no authority for a general presumption that co-plaintiffs in a case should be prevented from sharing discovery information.  It is, of course, possible to imagine special circumstances in which nuanced line-drawing may be required in setting the scope of a protective order.  *See, e.g., Cummins-Allison Corp. v. SBM Co.,* No. 12-CV-00207 HG-KSC, 2013 WL 12250448, at *3 (D. Haw. Nov. 8, 2013) (provisionally excluding a party's in-house counsel from access to trade secrets covered by protective order).  But Mann has made no showing that any such uniquely sensitive information is at issue here.

Second, Mann seeks to preclude Plaintiffs from disclosing any subpoenaed information to authorities in Russia.  *See* Motion to Quash, Docket No. 95, at 11 ("On information and belief, the Russian investigator has archived that criminal case . . . . These parties will use any opportunity of using documents obtained through a civil case in a foreign country's criminal case or cases. That tool is simple: "new circumstances" discovered.").

Mann's claim of harm appears speculative and he fails to make a "particular factual demonstration of potential harm" that would satisfy his burden of showing good cause for a protective order.  *Autoridad de Carreteras y Transportacion*, 319 F.R.D. at 437.

It is, moreover, unclear as a matter of legal principle whether a party should be precluded from taking information that was obtained pursuant to discovery in a U.S. court and using it in a foreign court.  *Cf. Oracle Corp. v. SAP AG*, No. C-07-07658 PJH (EDL), 2010 WL 545842, at *3 (N.D. Cal. Feb. 12, 2010) ("Arguably, however, this Court could take into account whether the foreign tribunal would be receptive to considering the kind of information that has been obtained here, even if that information would not be discoverable through its own proceedings, due to the generally broader scope of United States discovery compared to European jurisdictions.  However, the better view might be to allow Plaintiffs to proffer the fruits of discovery conducted in this case to the foreign tribunal, which would appear to be best equipped to decide for itself whether to accept or refuse that proffer.").

Moreover, Mann has himself expressed varying views about the appropriateness of allowing Russian tribunals to consider some of the matters at issue in this case.  The Court notes that Mann previously sought to dismiss this case on the grounds of *forum non conveniens*, arguing that Russia, not this Court, is the appropriate tribunal for resolving this dispute.  *See* Motion to Dismiss, Docket No. 13, at 12 ("Here, this Court should logically rule that the

11

Plaintiffs should resolve their claims in the Russian courts."). That prior position cuts against Mann's present argument that "[n]o objectivity regarding American citizens can be expected in Russian Courts." Motion to Quash, Docket No. 95, at 12-13.

The Court need not unravel this knot, however, as Plaintiffs have explicitly assured the Court that they "are seeking the requested discovery for use in this litigation and deny that the discovery is being propounded for use in any proceedings that may be ongoing in Russia." Opp. to Motion to Quash, Docket No. 96, at 9.

On the basis of Plaintiffs' representation, the parties should be able to work out a protective order requiring that appropriate categories of information be used only in connection with this case, absent further order of the Court. Such protections should extend only to information as to which a party may have a cognizable privacy interest – such as bank accounts for which a party is an account holder. Furthermore, agreed-upon protections may not extend to information that is subsequently disclosed in pleadings or submissions to the Court; for such materials, there is a presumption of public access. *See generally United States v. Kravetz*, 706 F.3d 47, 55 (1st Cir. 2013) ("[T]he courts of appeals have uniformly held that the public has no common law or constitutional right of access to materials that are gained through civil discovery but neither introduced as evidence at trial nor submitted to the court as documentation in support of motions or trial papers.").

Accordingly, the parties are encouraged to meet and confer in order to craft a proposed protective order, as discovery will likely require the exchange of confidential financial information**.**

## CONCLUSION

For the reasons set forth above, Defendant Mann's Motion to Quash or Modify Subpoenas Duces Tecum Served By Plaintiffs And Defendants In Counterclaim And For Protective Order (Docket No. 95) is **DENIED**, except insofar as the parties are directed to confer with respect to an appropriate Protective Order.[4]

November 29, 2022

SO ORDERED,

/s/ Paul G. Levenson
PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE

---

[4] The parties are advised that under Rule 72(a) of the Federal Rules of Civil Procedure and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party seeking review by a district judge of these determination(s) and order(s) must serve and file any objections within fourteen (14) days of being served a copy of this order, unless a different time is prescribed by the magistrate judge or the district judge. *See* Fed. R. Civ. P. 72(a). Such objections must specifically designate the order, or part, to be modified or set aside and the basis for objection. The district judge will set aside any portion of the magistrate judge's order that is found to be clearly erroneous or contrary to law. The parties are further advised that failing to follow the objection procedures of Rule 2(b) may preclude further appellate review. *See Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999); *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964-65 (1st Cir. 1997).