UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PETR DMITRIEV, DARIA LATOUR, YUSUP OSMANOV, YURI RYAZANOV, ARSENIY SHCHEPIN, GEORGY SHCHEPIN, and OLEG SEMENETS,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREI MANN and MICHAEL HELLMAN,<br><br>Defendants.<br><br>ANDREI MANN,<br><br>Third Party Plaintiff,<br><br>v.<br><br>SULEIMAN GUSEINOV, ALEXEI PETROV, ARSEN KOMUTAEV<br><br>Third Party Defendants. | Civ. Action No.<br>1:21-CV-40068-NMG |

## REPORT AND RECOMMENDATION

LEVENSON, U.S.M.J.

### INTRODUCTION

Before the Court are three submissions from Defendant Andrei Mann ("Mann"), each styled as a Request to Clerk of Court Or In The Alternative Motion of Andrei Mann, Defendant and Plaintiff in Third Party Complaint, For Entry of Default Against Third Party Defendant (together, "Requests for Default"). Docket Nos. 90-92. For the reasons identified below, I recommend denying Mann's Requests for Default.

1. **<u>Procedural Posture</u>**

Mann is a defendant in the underlying civil action. On May 5, 2022, Mann filed two third-party complaints, alleging causes of action against Suleiman Guseinov ("Guseinov"), Alexei Petrov ("Petrov"), and Arsen Komutaev ("Komutaev") (together, "Third-Party Defendants"). Third-Party Complaints, Docket Nos. 40-41. Subsequently, without prior permission or order from this Court, Mann filed three affidavits to prove personal service of process on each Third-Party Defendant. Docket Nos. 59-61. There are no facts of record to show that any of the Third-Party Defendants have communicated with Mann, this Court, or with any counsel of record. Mann now requests that the clerk enter a default against the Third-Party Defendants under Rule 55(a) of the Federal Rules of Civil Procedure. Docket Nos. 90-92. Alternatively, Mann argues that this Court may enter a default against the Third-Party Defendants "where the servered [sic] party has not appeared to defend," and so moves. *Id*. at 3 (citing *Steele v. Turner Broad. Sys., Inc.*, 746 F. Supp. 2d 231, 235 (D. Mass Sept. 27, 2010)).

On August 19, 2022, Judge Gorton referred this case to me for all pretrial proceedings and dispositive motions. Docket No. 69. A district judge may designate a magistrate judge "to hear and determine any pretrial matter pending before the court," excepting various dispositive motions, for which the magistrate judge must submit a report and recommendation. 28 U.S.C. § 636(b)(1)(A). Although motions for default judgment are not among the dispositive motions enumerated in Section 636(b)(1)(A), courts in this district treat motions to enter default, even when such entry is denied, as a "dispositive motion" that may only be determined by a district judge. *See* R. U.S. Mag. JJ. D. Mass. 3(a)(12) (identifying "motions for review of default judgment" as dispositive motions requiring report and recommendation); *Simon v. Plymouth Police Dep't*, No. 15-CV-11788-PBS, 2015 WL 12966201, at *2 (D. Mass. Sept. 4, 2015),

*report and recommendation adopted*, No. 15-CV-11788-PBS, Docket No. 33 (D. Mass. Sept. 29, 2015) (treating a motion for entry of default as a dispositive matter and recommending that the district judge deny the motion).

   2. **Relevant Facts**

Mann alleges that the Third-Party Defendants reside in Russia. Third-Party Complaints, Docket Nos. 40-41 at ¶¶ 2-3.

To support his claim that the Third-Party Defendants are subject to the jurisdiction of this Court, Mann alleges simply that the individuals "are necessary parties to adjudicate [Mann's] Counterclaim" and that they were "agents for illegal transactions with real estate, in which Mann . . . has an interest." *E.g.,* Third-Party Complaint against Guseinov & Petrov, Docket No. 40, at ¶ 7. The real estate at issue is alleged to be in Russia. *Id.* at ¶ 50; Third-Party Complaint against Komutaev, Docket No. 41, at ¶ 21. Mann further alleges that there is diversity of citizenship under 28 U.S.C. § 1332 and that the amount in controversy "exceeds the statutory minimum." *E.g.*, Third-Party Complaint against Komutaev, Docket No. 41, at ¶ 13. As an "American investor," Mann asserts that because of "fraudulent confiscations of his assets overseas, … there is long-arm jurisdiction over [Third-Party Defendants] for [their] acts, having an adverse material affect in the U.S." *E.g.*, *id*. at ¶ 14.

To prove service of process, Mann points to affidavits from a Russian "licensed private detective," Dmitry Bogolyubov ("Bogolyubov"). These affidavits, which are in Russian, were filed with a certified English translation. Affidavits for Proof of Service, Docket Nos. 59-61, at 3, 5. Bogolyubov's affidavits recite that he was hired by Mann to serve process on the Third-Party Defendants, who were "residing in Moscow." *Id.* at ¶ 2. Bogolyubov states that he "received [an] explanation at the Ministry of Justice of the Russian Federation" for how to serve

U.S. legal documents because "the legal assistance between the Russian Federation and the U.S. is currently suspended." *Id.* at ¶ 3 ("A collection by any sovereign party to the [Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters of 1965] of fees for service of documents will be considered by the Russian Federation as a refusal to implement the Convention. Accordingly, the Russian Federation will not implement the Convention concerning such a country."). Bogolyubov states that the Russian Ministry of Justice instructed him as follows:

> [A] Russian private detective licensed on the territory of the Russian Federation has the right to accomplish service of judicial and extrajudicial documents independently. That position was explain to me in the ministry of justice of the Russian federation. In such a case, the following conditions must be met:
>
>  - the address of the recipient must be known (address of residence, location, including the place of work or study);
>
>  - only judicial and extrajudicial documents, e.g., subpoenas, objections, and court decisions, may be subject to service.

*Id.* Bogolyubov states that this procedure was confirmed by a Russian lawyer. *Id.* For each Third-Party Defendant, Bogolyubov provides a home address along with a vehicle make, model, and "state registration plate" number that were "established" by his detective agency. *Id.* at ¶ 4. Bogolyubov also lists a phone number for Third Party Defendants Petrov and Komutaev. Affidavits for Proof of Service on Petrov & Komutaev, Docket Nos. 60-61, at ¶ 4.

On May 26, 2022, Bogolubov reports, he "made the first attempt" to serve the Third-Party Defendants at their respective "established" addresses. Affidavits for Proof of Service, Docket Nos. 59-61, at ¶ 5. Bogolyubov states that he served Guseinov and Petrov at their respective apartment doors on May 26, 2022. Affidavits for Proof of Service on Guseinov & Petrov, Docket Nos. 59-60, at ¶ 6. After a failed first attempt, Bogolyubov served Komutaev after he "determined the actual place of residence of [Komutaev]" was different from what was

4

first established. Affidavit for Proof of Service on Komutaev, Docket No. 61, at ¶ 6. Bogolyubov states that he served Komutaev at his "residential building" on June 8, 2022. *Id.* at ¶ 7.

With respect to his serving process on each Third-Party Defendant, Bogolyubov states the following:

> - I addressed [Third-Party Defendant] by name and asked if it was him . . . [and he] confirmed;
>
> - Thereafter, I handed . . . [the complaint] containing information about the initiation of legal proceedings against [Third-Party Defendant] in the Territory of the United States of America, namely, in the District Court of the District of Massachusetts of the United States of America.
>
> - I also explained to [Third-Party Defendant] that he was being served documents, [the complaint], in the above case, and that he had twenty-one days to respond to the complaint filed against him.

*Id.*; Affidavits for Proof of Service on Guseinov & Petrov, Docket Nos. 59-60 at ¶ 6.

Bogolyubov represents that "[his] detective agency has [photographs] and video [recordings] confirming" each service and can provide such documentation to the court. *E.g.*, *id.* at ¶ 8.

3. **Legal Standard**

Before moving for a default entry or default judgment against a defendant, a plaintiff must establish that the defendant in question has received proper service of process. *Simon*, 2015 WL 12966201, at *2 ("[D]efault judgment is not appropriate unless proper service has been made.").

Service of process is a critical threshold step in determining whether a court may exercise personal jurisdiction over a defendant, which is a prerequisite to any grant of judgment

5

against that defendant.[1]  *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 93 (1st Cir. 2022) ("[A] basis for service of a summons on the defendant is prerequisite to the exercise of personal jurisdiction.") (quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)); *Narbut v. Manulife Fin. Corp.*, No. 1:17-CV-10639-ADB, 2020 WL 3577939, at *6 ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of process must be satisfied.").[2]

A federal court sitting in diversity looks to Rule 4 to determine the requirements for service of process.  *See Hanna v. Plumer*, 380 U.S. 460, 464-65 (1965) (finding that in a civil action in which subject-matter jurisdiction is based on diversity of citizenship, service of process shall be made in the manner set forth in Fed. R. Civ. P. 4, rather than in the manner prescribed by state law).

Rule 4(f) lays out three potential avenues for effecting service upon an international defendant, each of which must be "reasonably calculated to give notice."  By its terms, however, the second of these options is limited to particular circumstances not relevant to this case:

> (f) Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

---

[1] Although Mann's allegations are conspicuously thin with respect to any basis for asserting personal jurisdiction over the Third-Party Defendants, unless and until the Third-Party Defendants are properly served, there is no occasion to address the statutory or Constitutional due process requirements of personal jurisdiction.  *See Semtek Int'l v. Merkuriy Ltd.*, 1996 U.S. Dist. LEXIS 22248, at *4-5 (D. Mass. Aug. 13, 1996) (vacating default judgment because service was not properly effected against Russian corporate defendant, based on insufficiency of service under Rule 4(f), without further analyzing personal jurisdiction).

[2] Absent proper service of process, a court may consider alternative grounds whereby a defendant may subject to personal jurisdiction, such as by a waiver.  *See Marcantonio v. Primorsk Shipping Corp.*, 206 F. Supp. 2d 54, 56 (D. Mass. Feb. 19, 2002) (inquiring whether "if [service was not proper], did [the defendant] waive its objections to personal jurisdiction?").  In this case, however, there is no suggestion of waiver or voluntary appearance by any of the Third-Party Defendants.

6

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>> (C) unless prohibited by the foreign country's law, by:
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f); *see also Google LLC v. Starovikov*, No. 21-CV-10260-DLC, 2022 WL 1239656, at *14-15 (S.D.N.Y. Apr. 27, 2022) ("[U]nder the Due Process Clause, service must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (quoting *Jones v. Flowers*, 547 U.S. 220, 226 (2006)).

It is the plaintiff's burden to prove that service of process is proper. *See Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992) ("[P]laintiffs have the burden of proving proper service."). Establishing proper service of process requires the plaintiff to file factual evidence of service with the court. Fed. R. Civ. Pro. 4(l)(1)-(2).

4. <u>Analysis</u>

   a. *Service of Process*

Where the defendant resides outside the United States, federal courts first look to "internationally agreed means of service" under Rule 4(f)(1). *See Narbut*, 2020 WL 3577939 at *8 (finding that "[t]he clause in subsection (f)(2), 'if there is no internationally agreed means,'

7

implies that service must first be attempted under subsection (f)(1) . . . if such [internationally agreed] means exists").

As between the United States and Russia, there appear to be two potential candidates for "internationally agreed means of service": the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention") and a 1935 diplomatic agreement with the former USSR ("Moscow Agreement").[3] *See generally* Exchange of Notes Relating to the Execution of Letters Rogatory, 49 Stat. 3840 (Nov. 22, 1935); Hague Convention, 20 U.S.T. 361, 658 U.N.T.S 163 (Nov. 15, 1965); *see also Semtek Int'l v. Merkuriy Ltd.*, 1996 U.S. Dist. LEXIS 22248, at *4-5 (D. Mass. Aug. 13, 1996) (finding the Moscow Agreement to be a "mutually agreed-upon means of service between Russia and the United States" under Fed. R. Civ. P. 4(f)(1)).

---

[3] Under the Moscow Agreement, service of U.S. judicial documents upon a Russian defendant must be made via a letter of request, also known as a letter rogatory. *See Semtek,* 1996 U.S. Dist. LEXIS 22248 at *5 (vacating a default judgment against the Russian defendant because service of process was not proper when the plaintiff attempted service of process via mail, which does "not comport with the Moscow Agreement"); *see generally* Fed. R. Civ. P. 4 advisory committee's note on 1993 amendment (explaining that "letter rogatory" is synonymous with "letter of request," which is reflected in the Hague Convention, but "letter of request is preferred in modern usage"). The letter of request process under the Moscow Agreement requires that a plaintiff request that a U.S. court send, via the U.S. Embassy in Russia, a letter requesting that the Russian court system execute service of process on behalf of the U.S. court. *See* generally Tatyana Gidirimski, Comment, *Service of United States Process in Russia under Rule 4(f) of the Federal Rules of Civil Procedure*, 10 Pac. Rim L & Pol'y J. 691 (2001).

Russia acceded to the Hague Convention on May 1, 2001, with reservations as to particular articles. *See* Status Table, *Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters,* HCCH, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited Mar. 10, 2023). Under the Hague Convention, requests for service are submitted through diplomatic channels, which are then received by a country's designated Central Authority, which effectuates service itself or through an appropriate agency. *See generally*, Full Text, *Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters,* HCCH, https://www.hcch.net/en/instruments/conventions/full-text/?cid=17 (last visited Mar. 10, 2023).

Since 2003, however, Russia has "unilaterally suspended all judicial cooperation with the United States in civil and commercial matters. *See* U.S. DEP'T OF STATE, *Judicial Assistance Country Information: Russia Federation,* https://travel.state.gov/content/travel/ en/legal/Judicial-Assistance-Country-Information/RussianFederation.html (last visited Mar. 10, 2023). This suspension extends to cooperation through any "internationally agreed means," whether the Moscow Agreement or the Hague Convention. *See id.* ("The Russian Federation refuses to serve letters of request from the United States for service of process presented under the terms of the 1965 Hague Service Convention or to execute letters rogatory requesting service of process[.]"). Consequently, service of process under Rule 4(f)(1) is no longer available because there is no effective "internationally agreed means," given Russia's refusal to cooperate. *See Smith v. Wolf Performance Ammunition*, No. 2:13-CV-02223-JCM, 2015 WL 315891, at *7-8 (D. Nev. Jan. 23, 2015) (finding that alternate service in Russia satisfied due process requirements where "traditional methods of foreign service are impossible").

When an "internationally agreed means" is unavailable due to a foreign country's unwillingness to cooperate with an existing treaty, Rule 4(f)(3) is the appropriate alternative to Rule 4(f)(1).[4] *See* Fed. R. Civ. P. 4(f)(1) advisory committee's note to 1993 amendment ("[W]hen the [foreign] signatory state was dilatory or refused to cooperate for substantive reasons . . . resort may be had to the provisions set forth in subdivision (f)(3)."). In such cases, Rule 4(f)(3) may apply so long as the means for alternate service are "not prohibited by international agreement." *See* Fed. R. Civ. P. 4(f)(3).

---

[4] Rule 4(f)(2) only applies when the defendant's country of residence is not a signatory to an international treaty defining service of process procedures. *See* Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment ("Therefore, [Rule 4(f)(1)] provides that, when service is to be effected outside a judicial district of the United States, the methods of service appropriate under an applicable treaty *shall* be employed *if available* and if the treaty so requires.") (emphasis added).

Mann has reasonably established that it is not practicable to perfect service by "internationally agreed means" (*i.e.*, via the Hague Convention or the Moscow Agreement) under Rule 4(f)(1). Accordingly, he may properly request a court order to pursue service under Rule 4(f)(3).

It is for the court to set the conditions for alternate service pursuant to Rule 4(f)(3). *Cf. Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) ("[W]e commit to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3).").

In setting conditions for service upon a Russian resident, the court will be guided by the principles embodied in the Moscow Agreement and the Hague Convention, so as to comport generally with "international agreement." Fed. R. Civ. P. 4(f)(3); *see Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12-CIV-9258 ALC MHD, 2014 WL 1331046, at *9 (S.D.N.Y. Mar. 31, 2014) (rejecting mail service on a Russian defendant because, despite "Russia's failure to abide by the [Hague] Convention," Russia had "objected to Article 10 [of the Hague Convention], which permits service by mail"); *Smith*, 2015 WL 315891, at *3 (ordering alternate service to include Russian translations for all service documents even after Russia's unilateral suspension of the Moscow Agreement). Such efforts to mirror the terms of existing agreements are advisable not only to ensure that the mode of service is "reasonably calculated" to provide notice, but also to increase the likelihood that any judgment rendered by this Court will comply with Russian notice requirements. *See Gidirimski*, *supra*, at 706 ("U.S. litigants can use the [Moscow] Agreement as a rough guide for serving process in Russia if compliance with Russian procedural rules is desirable.") (*n.b.*, this article was written *prior* to Russia's accession to the Hague Convention).

Accordingly, Mann must apply for and receive court approval pursuant to Rule 4(f)(3) if he wishes to make alternate service upon the Third-Party Defendants. In applying for such court approval, Mann is directed to describe the proposed manner of service to be ordered and, further, to explain whether, and to what degree, the proposed manner of service of process comports with pertinent terms of international agreements. For example, the Moscow Agreement and the Hague Convention alike require service of Russian language translations, along with the actual (English-language) court papers being served. This is a condition that can – and should – be included in any court-ordered mode of alternate service; it comports with a relevant requirement of international agreements and "is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

### b. *Procedure Required for Default Judgment*

The Court notes that, apart from the insufficiency of the claimed service of process, Mann's Requests for Default are procedurally defective in several respects.

#### i. *Entry of Default Must Precede a Motion for Default*

Mann has moved for the Court to enter default "in the alternative." This is not a viable path. The *clerk*, not the Court, is the only judicial agent that may enter a default under Rule 55(a). *See* Fed. R. Civ. P. 55(a)-(b); *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998) (reversing default judgment on interlocutory appeal where a clerk did not first enter a default because an "entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)."); *see also O'Callaghan v. Sifre*, 242 F.R.D. 69, 72 (S.D.N.Y. Mar. 14, 2007) ("[Plaintiff] has moved for a default judgment without first taking the required step of obtaining an entry of default from the Clerk of the Court.") (denying a motion for entry of default and

default judgment because a hearing was needed to settle the propriety of disputed service).

"[T]he entry of default judgment in federal court is governed by Federal Rule of Civil Procedure 55." *Hoyos v. Telecorp Communs., Inc.*, 488 F.3d 1, 5 (1st Cir. 2007) (citing *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 n.7 (1996)) (affirming summary judgment for the defendant and finding that the plaintiff was not entitled to a default judgment under Rule 55(b) merely because a default was entered under Rule 55(a)).

Rule 55 outlines a two-step process. First, a clerk must enter a default when a moving party has provided sufficient evidence under Rule 55(a), which states:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a).

Only after the clerk has entered a default under Rule 55(a), may a default judgment be entered under Rule 55(b)(1) or 55(b)(2).

### ii. *Movant Must File a Servicemember's Affidavit*

It is unclear whether Mann's intention is to seek, prematurely, a default judgment or whether he asks the Court to enter a default, in place of the clerk. Whatever Mann's intention, the Court notes that, under the Servicemember Civil Relief Act, any plaintiff moving for default judgment must file a declaration or affidavit concerning the defendant's military service status before any judgment may be granted. *See* 50 U.S.C. § 3931(b) (requiring a plaintiff moving for default judgment to state that a defendant is in military service, is not in military service, or that the plaintiff cannot determine the defendant's military status). Failure to do so renders Mann's request for a default nugatory.

## CONCLUSION

For the reasons set forth above, I recommend **DENYING**, without prejudice, the Requests for Entry of Default against Third-Party Defendants (Docket Nos. 90-92).[5]

SO RECOMMENDED,

March 10, 2023

/s/    Paul G. Levenson
PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE

---

[5] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).