UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETR DMITRIEV, YUSUP OSMANOV, YURI RYAZANOV and OLEG SEMENETS,<br>    Plaintiffs,<br><br>v.<br><br>ANDREI MANN,<br>    Defendant. | Civil Action No. 1:21-CV-40068-DLC |

### AFFIDAVIT OF KENNETH C. PICKERING IN SUPPORT OF MOTION TO PERMIT OLEG SEMENETS TO TESTIFY AS FACT WITNESS AND MOTION FOR RECONSIDERATION

I, Kenneth C. Pickering, hereby depose and state as follows:

1. I am counsel to the plaintiffs in the above captioned action.

2. Attached as <u>Exhibit A</u> is a true and accurate copy of the Agency Agreement between Oleg Semenets and Andrei Mann, dated May 1, 2019.

3. Plaintiffs' 16 trial exhibits, including the Agency Agreement, were sent to Mr. Mann on Feb. 28, 2025.

4. Attached as <u>Exhibit B</u> is a true and accurate copy of page 30 of Mr. Mann's Responses to Plaintiffs' Requests for Admission.

5. In his Responses to the Requests for Admission, Mr. Mann admits that he met with Mr. Semenets on May 1, 2019. Mr. Mann states that he entered into an agreement with Mr. Semenets whereby Mr. Semenets would provide agency services to

represent Mr. Mann's interests.  Mr. Mann states that the Agency Agreement did not come into force because he did not transfer any money to Mr. Semenets.  <u>See</u> Response to Request No. 98 attached as <u>Exhibit B</u>.

Signed under the pains and penalties of perjury this 4th day of March 2025.

_____
Kenneth C. Pickering, BBO #634121

CERTIFICATE OF SERVICE

I, Kenneth C. Pickering, hereby certify that this day I served the foregoing document, via email, on the Defendant, Andrei Mann, 8855 Bay Parkway, Brooklyn, New York 11217, *andreimann@hotmail.com*.

Dated: March 4, 2025                                      Kenneth C. Pickering

2

# Exhibit A



Agency Agreement

May 1, 2019

Citizen of the Russian Federation Semenets Oleg Vitalievich, passport 46 11 150042 issued by the RO in the city of Shchelkovo OUFMS of Russia in the Moscow region in the Shchelkovo district on 07 10 2010, code of subdivision 500-179, registered at the following address: Moscow region, the city of Shchelkovo, Sirenevaya Str., h. 4a, apt. 32, hereinafter **"Agent"**, on the one hand, and citizen of the Russian Federation Mann Andrei Yurievich, passport 45 05 160682, issued by the Passport Office No.1 OVD Krasnoselskiy district UVD TSAO of the city of Moscow on 18.04.2003, code of subdivision 772-124, registered at the following address: Moscow, Marshall Biriuzov Str., house 32, building 1, apt. 71, hereinafter **"Principal"**, on the other hand, have entered into this Agreement as follows.

### 1. Subject of the Agreement

1.1 The Principal authorizes, and the Agent undertakes to perform the following legal actions on behalf of and at the expense of the Principal for a fee:

- To make payments from one's bank account in favor of third parties upon the Principal's instructions, which are made in writing, including by e-mail, the address of which is specified in this Agreement, and shall be deemed issued by the Principal. Instructions must be lawful, feasible and specific.

- To perform any other actions required to perform the duties under this Agreement.

1.2. The total amount of funds to be transferred to the account of the Agent (either as a lump sum or in installments) under this Agreement is 15 (fifteen) million US dollars.

### 2. Rights and Obligations of the Parties

2.1. The Agent shall do the following:

2.1.1. Start execution of an assignment immediately after receiving funds from the Principal to the account of the Agent in the amount necessary to execute a specific instruction.

2.1.2. Provide the Principal, upon his request, with all information on the progress of the assignment.

2.1.3. Personally perform an assignment entrusted to him.

2.1.4. Submit a report on the execution of the assignment to the Principal quarterly, by the 5th day of the first month of the quarter following the reporting month. The report shall be submitted to the e-mail address specified in this Agreement.

2.2. The Principal shall do the following:

2.2.1. Immediately accept the report of the Agent, all documents provided by him and all actions performed by him in accordance with this Agreement.

2.2.2. Make a payment to the Agent in accordance with this Agreement.

2.2.3. Consider the report on the execution of the assignment not later than five calendar days after the report is sent to the Agent and to inform about any objections regarding the report. If the Principal does not object to the report within the specified period of time, the report of the Agent is deemed accepted without objections.

3. An Agent shall not be liable under agreements and obligations that are the basis for payments specified in clause 1.1. of this Agreement; shall not verify the validity or reality of business transactions; shall not be a tax agent under such agreements and shall not acquire the rights of a party to the transactions. The Agent is not a commercial representative of the Principal.

### 3. Payment Procedure




*I, Andrew Hryhorov, professional translator, hereby certify that I have translated this document into English from the original source document in Russian, and that this translation is true to the best of my knowledge. For and in collaboration with 001 Translation Inc, October 21, 2020. Tel. (646) 503-1172.*
*Translation Reference # : 20-2110-01*

3.1. The amount of the Appointee's fee under this Agreement is the ruble equivalent of the US dollars in the amount of 0.5% of each specific payment to a third party. This amount is converted into rubles at the official exchange rate of the Central Bank of the Russian Federation established at the date of receipt of the remuneration.

3.2. The remuneration is paid by the Appointor to the Appointee no later than three calendar days after the acceptance of the report on the execution of the Appointment. The Appointee has the right to withhold the amount of remuneration from the funds received from the Appointor to the Appointee's account.

**CERTIFIED TRANSLATION**

## 4. Responsibility of the parties

4.1. In case of delay in payment of remuneration to the Appointee, the Appointor pays the latter a penalty in the amount of 0.1% of the overdue amount for each day of delay.

## 5. Duration of the Appointment

5.1. This Appointment comes into force from the moment of receipt of the amount specified in clause 1.2. by the Appointee and is valid until December 31, 2019.

## 6. Disputes Resolution Procedure

6.1. The Appointor and the Appointee will take all measures to resolve all disputes and disagreements that may arise from this Agreement or in connection with it through negotiations.

6.2. If the parties cannot come to an Agreement, all disputes and disagreements arising from this Agreement or in connection with it are subject to resolution in court:

at the location of the Appointee - if the claim is initiated by the Appointee;

in the city of Boston, USA when a claim is initiated by the Appointor.

## 7. Termination of the contract

7.1. This Agreement may be terminated with the written consent of the Appointee and the Appointor.

## 8. Consequences of the termination of this Appointment Agreement.

8.1. If this contract of Appointment is terminated before the Appointment is fully executed by the Appointee, the Appointor is obliged to reimburse the Appointee for the expenses incurred by him in the execution of the Appointment and pay remuneration commensurate with the work performed by the Appointee.

## 9. Confidentiality

9.1. The parties have agreed to keep in confidentiality any information received by one party in relation to the other in the course of fulfilling obligations under this Agreement. The confidentiality regime applies to the text of the Agreement and its basic conditions, as well as to any other information related to the execution of this Agreement.

9.2. Information recognized as confidential in accordance with this Agreement cannot include information that is publicly available in accordance with the requirements of the legislation of the Russian Federation.

9.3. For violation of the confidentiality regime under this Agreement, the party that committed such a violation is obliged to compensate the other party for the direct losses incurred in connection with this violation.

## 10. Final provisions

10.1. All changes and additions to this Agreement are considered valid if they are made in writing and signed by duly authorized persons of the parties.

10.2. Any Agreement between the Parties entailing new obligations that do not arise from this Agreement must be confirmed in writing by the Parties and the corresponding addition must be signed to this Agreement.

*/Signed/*

---

*I, Tanya Smith, professional MCIL translator (member number 30765), hereby certify that I have translated this document into English from the original source document in Russian, and that this translation is true and correct to the best of my knowledge.*
*For and in collaboration with 001 Translation Inc, 27th October 2020.*
*Translation Reference # 20-1027-03*



10.3. After the signing of this Agreement, all previous written and oral agreements, negotiations and correspondence between the Parties shall become null and void if they are not referred to in this Agreement.

10.4. This Agreement has been signed in two counterparts in the Russian language, one for each Party, and both counterparts shall have the same legal force.

| **Principal** | **Agent** |
|---|---|
| Citizen of the Russian Federation | Citizen of the Russian Federation |
| Mann Andrei Yurievich | Semenets Oleg Vitalievich |
| Date of birth: 21.12.1957 | Date of birth: 29.09.1965 |
| Passport 45 05 160682 issued by the Passport Office No. 1 OVD Krasnoselskiy district UVD TSAO in the city of Moscow on 18.04.2003 | Passport 46 11 150042 issued by the RO in the city of Shchelkovo OUFMS of Russia in the Moscow region in Shchelkovo district on 07.10.2010 |
| Code of subdivision 772-124 | Code of subdivision 500-179 |
| Registered at the following address: Moscow, Marshall Biriuzov Str., House 32, building 1, apt. 71 | Registered at the following address: Moscow region, city of Shchelkovo, Sirenevaya Str., h. 4a, apt. 32 |

Email: andreimann@hotmail.com

Email: olegsemenec@mail.ru

___Signed___ A.Yu. Mann

___Signed___ O.V. Semenets



*I, Andrew Hryhorov, professional translator, hereby certify that I have translated this document into English from the original source document in Russian, and that this translation is true to the best of my knowledge. For and in collaboration with 001 Translation Inc, October 21, 2020. Tel. (646) 503-1172.*
*Translation Reference # : 20-2110-01*

## Договор поручения

1 мая 2019 года

**Гражданин Российской Федерации Семенец Олег Витальевич**, паспорт 46 11 150042 выдан ТП в гор. Щелково ОУФМС России по Московской области Щелковском районе 07.10.2010, код подразделения 500-179, зарегистрирован по адресу Московская обл., г. Щелково, ул. Сиреневая, д. 4а, кв. 32, именуемый в дальнейшем *«Поверенный»*, с одной стороны, и гражданин Российской Федерации Манн Андрей Юрьевич, паспорт 45 05 160682 выдан паспортным столом №1 ОВД Красносельского района УВД ЦАО города Москвы 18.04.2003 года, код подразделения 772-124, зарегистрирован по адресу Москва, ул. Маршала Бирюзова, дом 32, корп. 1, кв. 71, именуемый в дальнейшем *«Доверитель»*, с другой стороны, заключили настоящий договор о нижеследующем.

### 1. Предмет договора.

1.1. Доверитель поручает, а Поверенный принимает на себя обязательство совершать за вознаграждение от имени и за счет Доверителя следующие юридические действия:

- производить платежи со своего банковского счета в пользу третьих лиц по указаниям Доверителя, которые оформляются в письменной форме, в том числе по электронной почте, адрес которой указан в настоящем договоре, и считаются выданными Доверителем. Указания должны быть правомерными, осуществимыми и конкретными.

- выполнять любые другие действия, необходимые для выполнения обязанностей по настоящему договору.

1.2. Общая сумма денежных средств, которые поступят на счет Поверенного (единовременно либо частями) в рамках настоящего Договора, составляет 15 (пятнадцать) миллионов долларов США.

### 2. Права и обязанности сторон.

*2.1. Поверенный обязуется:*

2.1.1. Приступить к выполнению поручения сразу после получения от Доверителя денежных средств в размере, необходимом для выполнения конкретного указания, на счет Поверенного.

2.1.2. Сообщать Доверителю по его требованию все сведения о ходе исполнения поручения.

2.1.3. Лично выполнять данное ему поручение.

2.1.4. Представлять Доверителю отчет о выполнении поручения ежеквартально, в срок не позднее 05 числа первого месяца квартала, следующего за отчетным. Отчет предоставляется по адресу электронной почты, указанной в настоящем договоре.

*2.2. Доверитель обязуется:*

2.2.1. Без промедления принять отчет Поверенного, все предоставленные им документы и все исполненное им в соответствии с настоящим договором.

2.2.2. Уплатить Поверенному обусловленное настоящим договором вознаграждение.

2.2.3. В срок не позднее пяти календарных дней после направления Поверенным отчета о выполнении поручения – рассмотреть его и сообщить о наличии возражений по отчету. При ненаправлении возражений по отчету Доверителем в указанный срок отчет Поверенного считается принятым без возражений.

3. Поверенный не несет ответственности по договорам и обязательствам, являющимся основанием платежей, указанных в п.1.1. настоящего договора; не осуществляет проверку их действительности или реальности осуществления хозяйственных операций; не является по ним налоговым агентом и не приобретает права стороны по сделкам. Поверенный не является коммерческим представителем Доверителя.

### 3. Порядок осуществления расчетов



3.1. Размер вознаграждения Поверенного по настоящему Договору составляет рублевый эквивалент долларов США в размере 0,5 процента от каждого конкретного платежа в адрес третьего лица. Данная сумма пересчитывается в рубли по официальному курсу Центрального банка Российской Федерации, установленному на дату получения вознаграждения.

3.2. Вознаграждение выплачивается Доверителем Поверенному не позднее трех календарных дней после принятия отчета о выполнении поручения. Поверенный имеет право удержать сумму вознаграждения из денежных средств, поступивших от Доверителя на счет Поверенного.

### 4. Ответственность сторон

4.1. В случае просрочки в уплате вознаграждения Поверенному Доверитель выплачивает последнему пени в размере 0,1 % от просроченной суммы за каждый день просрочки.

### 5. Срок действия поручения

5.1. Настоящее поручение вступает в силу с момента получения Поверенным указанной в п. 1.2 суммы и действует до 31 декабря 2019 года.

### 6. Порядок разрешения споров

6.1. Доверитель и Поверенный примут все меры к разрешению всех споров и разногласий, которые могут возникнуть из настоящего договора или в связи с ним, путем переговоров.

6.2. В случае если Стороны не могут прийти к соглашению, все споры и разногласия, возникшие из настоящего договора или в связи с ним, подлежат разрешению в суде :

по месту нахождения Поверенного - в случае когда иск инициирован Поверенным;

в г. Бостон(США) – когда иск инициирован Доверителем.

### 7. Прекращение договора

7.1. Настоящий договор может быть прекращен по письменному согласию Поверенного и Доверителя.

### 8. Последствия прекращения настоящего договора поручения

8.1. В случае, если настоящий договор поручения прекращается до того, как поручение исполнено Поверенным полностью, Доверитель обязан возместить Поверенному понесенные им при исполнении поручения расходы и уплатить вознаграждение соразмерно выполненной Поверенным работе.

### 9. Конфиденциальность

9.1. Стороны договорились сохранять в режиме конфиденциальности любые сведения, полученные одной Стороной в отношении другой в ходе исполнения обязательств по настоящему договору. Режим конфиденциальности распространяется на текст договора и его основные условия, а также на любую иную информацию, связанную с исполнением настоящего Договора.

9.2. К информации, признаваемой в соответствии с настоящим договором конфиденциальной, не могут относиться сведения, являющиеся в соответствии с требованиями законодательства Российской Федерации общедоступными.

9.3. За нарушение режима конфиденциальности по настоящему договору Сторона, совершившая подобное нарушение, обязана возместить другой Стороне возникшие у нее в связи с этим нарушением понесенные прямые убытки.

### 10. Заключительные положения

10.1. Все изменения и дополнения к настоящему договору считаются действительными, если они совершены в письменном виде и подписаны надлежащим образом уполномоченными лицами Сторон.

10.2. Любая договоренность между Сторонами, влекущая за собой новые обязательства, которые не вытекают из настоящего договора, должна быть письменно подтверждена Сторонами, и соответствующее дополнение должно быть подписано к настоящему договору.

10.3. После подписания настоящего договора все предыдущие письменные и устные соглашения, переговоры и переписка между Сторонами теряют силу, если на них отсутствует ссылка в настоящем договоре.

10.4. Настоящий договор подписан в двух экземплярах на русском языке, по одному экземпляру для каждой Стороны, и оба экземпляра имеют одинаковую юридическую силу.

| Доверитель | Поверенный |
|---|---|
| Гражданин Российской Федерации | Гражданин Российской Федерации |
| Манн Андрей Юрьевич, | Семенец Олег Витальевич |
| Дата рождения 21.12.1957 | Дата рождения 29.09.1965 |
| Паспорт 45 05 160682 выдан паспортным столом №1 ОВД Красносельского района УВД ЦАО города Москвы 18.04.2003 года, код подразделения 772-124, | Паспорт 46 11 150042 выдан ТП в гор. Щелково ОУФМС России по Московской области Щелковском районе 07.10.2010 Код подразделения 500-179 |
| Зарегистрирован по адресу Москва, ул. Маршала Бирюзова, дом 32, корп. 1, кв. 71, | Зарегистрирован по адресу: Московская обл., г. Щелково, ул. Сиреневая, д. 4а, кв. 32 |
| Адрес электронной почты: andreimann@hotmail.com | Адрес электронной почты: olegsemenec@mail.ru |
| _____ А.Ю.Манн | _____ О.В. Семенец |



**Addendum to Agency Agreement dated May 1, 2019**

May 01, 2019

Citizen of the Russian Federation Semenets Oleg Vitalievich, passport 46 11 150042 issued by the RO in the city of Shchelkovo OUFMS of Russia in the Moscow region in the Shchelkovo district on 07.10.2010, code of subdivision 500-179, registered at the address: Moscow region, the city of Shchelkovo, Sirenevaya Str., h. 4a, apt. 32, hereinafter **"Agent"**, on the one hand, and

citizen of the Russian Federation Mann Andrei Yurievich, passport 45 05 160682, , issued by the Passport Office No.1 OVD Krasnoselskiy district UVD TSAO of the city of Moscow on 18.04.2003, code of subdivision 772-124, registered at the following address: Moscow, Marshall Biriuzov Str., h.32, bldg.1, apt. 71, hereinafter "Principal", on the other hand, have entered into this Addendum to Agency Agreement dated May 01, 2019 as follows:

1. Two paragraphs of 1.1. of the Agency Agreement should be set out in the following wording:

The Principal authorizes, and the Agent undertakes to perform the following legal actions on behalf of and at the expense of the Principal for a fee:

- to make payments for the benefit of third parties under agreements and obligations of the Principal, which are executed in writing. By the written form the parties mean, including, without limitation, sending a letter by the Principal to the Agent by means of email, the addresses of which are specified in this contract. The Principal, who sent a letter to the Agent in this way, may not later refer to the absence of the original letter at the Agent. Instructions must be lawful, feasible and specific".

Remainder of the text of the Agreement unchanged.

2. Paragraph 6.2. of the Agency Agreement should be set out in the following wording:

"If the Parties are not able to reach an agreement, all disputes and disagreements arising out of this Agreement or in connection with it shall be settled in court in accordance with the current legislation of the Russian Federation".

3. Other terms and conditions of the Agency Agreement dated May 01, 2019 shall remain unchanged.

4. This Addendum shall enter into force upon signing by the Parties and is an integral part of the Agency Agreement dated May 01, 2019.

5. This Addendum is drafted in two counterparts, one for each of the Parties.

SIGNATURES OF THE PARTIES:

| _____Signed_____ | _____Signed_____ |
|---|---|
| Semenets O.V. | Mann A.Yu. |

*I, Andrew Hryhorov, professional translator, hereby certify that I have translated this document into English from the original source document in Russian, and that this translation is true to the best of my knowledge. For and in collaboration with 001 Translation Inc, October 21, 2020. Tel. (646) 503-1172.*
*Translation Reference # : 20-2110-01*

Дополнительное соглашение к Договору поручения от 01 мая 2019 года

01 мая 2019 года

Гражданин Российской Федерации Семенец Олег Витальевич, паспорт 46 11 150042 выдан ТП в гор. Щелково ОУФМС России по Московской области Щелковском районе 07.10.2010, код подразделения 500-179, зарегистрирован по адресу Московская обл., г. Щелково, ул. Сиреневая, д. 4а, кв. 32, именуемый в дальнейшем *«Поверенный»*, с одной стороны, и

Гражданин Российской Федерации Манн Андрей Юрьевич, паспорт 45 05 160682, выдан паспортным столом №1 ОВД Красносельского района УВД ЦАО г.Москвы 18.04.2003 года, код подразделения 772-124, зарегистрирован по адресу: г.Москва, ул.Маршала Бирюзова, д.32, кор.1, кв.71, именуемое в дальнейшем *«Доверитель»*, с другой стороны, заключили настоящее дополнительное соглашение к Договору поручения от 01 мая 2019 года о нижеследующем:

1. Два абзаца пункта 1.1. Договора поручения изложить в следующей редакции:

« Доверитель поручает, а Поверенный принимает на себя обязательство совершать за вознаграждение от имени и за счет Доверителя следующие юридические действия:
- производить платежи в пользу третьих лиц по договорам и обязательствам Доверителя, которые оформляются в письменной форме. Под письменной формой стороны понимают, в том числе, направление Доверителем письма Поверенному с использованием электронной почты, адреса которой указаны в настоящем договоре. Доверитель, отправивший письмо Поверенному таким образом, не вправе впоследствии ссылаться на отсутствие оригинала письма у Поверенного. Указания должны быть правомерными, осуществимыми и конкретными».

Далее по тексту Договора.

2. Пункт 6.2 Договора поручения изложить в следующей редакции:

«В случае если Стороны не могут прийти к соглашению, все споры и разногласия, возникшие из настоящего договора или в связи с ним, подлежат разрешению в суде в соответствии с действующим законодательством РФ».

3. Прочие условия Договора поручения от 01 мая 2019 года остаются неизменными.

4. Настоящее Дополнительное Соглашение вступает в силу с момента подписания Сторонами и является неотъемлемой частью Договора поручения от 01 мая 2019 года.

5. Настоящее Дополнительное Соглашение составлено в двух экземплярах, по одному для каждой из Сторон.

ПОДПИСИ СТОРОН:

_____                                         _____
Семенец О.В.                                                                  Манн А.Ю.

# Exhibit B

RESPONSE 96.
If the Agreement between Semenets and Mann was signed on the specified date, then it was signed in the interests of the S-info Company. The money could not have been intended for Mann personally, for his personal needs. The money could be intended for the production needs of S-info. Semenets, who was closely connected with the Company through his close friend Igor Gurinovich, one of the founders of S-info, must have known about the true purpose of the loan.

REQUEST NO 97.
A copy of a certified translation of the Semenets Loan Agreement, and a copy of the original handwritten document in Russian, is attached to the Plaintiff's Complaint as Exhibit 6.

REQUEST NO 98.
On May 1, 2019, Mr. Mann and Mr. Semenets met in Marbella, Spain to discuss the money that Mr. Mann owed Mr. Semenets and others.
OBJECTION 98.
In this formulation, the statement is not true.
RESPONSE 98.
On May 1, 2019, MANN and SEMENETS met in Spain. MANN entered into an agreement with SEMENETS for agency services to represent the interests of MANN in Moscow.
The agreement was not an agreement to obligate anyone to anyone.
There is not a word in the "Agency Agreement" about "Mann's debts to Semenets."
There is not a word in the "Agency Agreement" about "Mann's debts to other persons."
MANN discussed with SEMENETS a business plan for restructuring MANN's personal assets, the sale of specific assets that Mann no longer needs in the Russian Federation, as well as a plan for collecting debts from third parties.
The Agreement determined payment to Semenets for the specified work in the form of a percentage of the amounts received into Semenets' account.
The agency agreement did not come into force, since the condition for its entry into force was the transfer of any funds to Semenets' account for the upcoming work. (clause 5.1 of the Agency Agreement.).
No funds were transferred to Sements for the execution of the Agreement. Thus, the Treaty did not enter into force.
Initially, clause 6.2 of the Agency Agreement stated that "all disputes and disagreements of this Agreement are subject to resolution in court:
at the location of the Attorney - in the case when the claim is initiated by the Attorney;
in Boston (USA) - when the claim is initiated by the Principal."
In the Additional Agreement of the same date, on the initiative of Semenets, clause 6.2 is stated as follows:
"If the Parties cannot reach an agreement, all disputes and disagreements. arising from this Agreement or in connection with it, are subject to resolution in court in accordance with the current legislation of the Russian Federation."
The Agency Agreement is presented in full by Semenets in the case.